**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TARA KULWICKI, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 3:22-cv-00229 (RNC) |
| -v- | |
| AETNA, INC. and AETNA LIFE INSURANCE COMPANY, | April 1, 2022 |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

# TABLE OF CONTENTS

I. 1
PRELIMINARY STATEMENT 1
II. 2
FACTUAL AND PROCEDURAL BACKGROUND 2
    A.  Factual Background. ...................................................................................... 2

    B.  Procedural Background. .................................................................................. 8

III. 9
LEGAL STANDARDS 9
IV. 11
ARGUMENT AND AUTHORITIES 11
    A.  Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(7) because she has failed to join plans, plan sponsors, and plan administrators, which are necessary and indispensable parties. ..................................................................................... 11

    B.  Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(1) because she does not have Article III standing for the relief she seeks. ............................................. 21

    C.  Aetna Inc. is not a proper party and should be dismissed pursuant to Rule 12(b)(6). ...... 25

CONCLUSION 26

I. PRELIMINARY STATEMENT ..................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ................................................................ 2
_Toc99719019
    A.  Factual Background. ...................................................................................... 2

    B.  Procedural Background. .................................................................................. 8

III. LEGAL STANDARDS ..................................................................................... 9

IV. ARGUMENTS AND AUTHORITIES ..................................................................... 11

    A.  Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(7) because she has failed to join plans, plan sponsors, and plan administrators, which are necessary and indispensable parties. ..................................................................................... 11

    B.  Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(1) because she does not have Article III standing for the relief she seeks. ............................................. 21

    C.  Aetna Inc. is not a proper party and should be dismissed pursuant to Rule 12(b)(6). ...... 25

CONCLUSION ..................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004)........................................................................................................23

*Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*,
  795 F.3d 351 (2d Cir. 2015).......................................................................................13, 18

*Baur v. Veneman*,
  352 F.3d 625 (2d Cir. 2003)...........................................................................................23

*Bekker v. Neuberger Berman Group LLC*,
  No. 16 CV 6123 (LTS) (BCM), 2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018)......................9

*Berni v. Barilla S.P.A.*,
  964 F.3d 141 (2d Cir. 2020)...........................................................................................23

*Carter v. HealthPort Tech., LLC*,
  822 F.3d 47 (2d Cir. 2016).............................................................................................10

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)..................................................................................11

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)...............................................................................................22

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).............................................................................................22

*Cuevas v. Joint Benefit Trust*,
  2013 WL 3578496 (N.D. Cal. July 12, 2013)......................................................19

*Curtiss-Wright Corp. v. Schoonejongen*,
  514 U.S. 73 (1995)...............................................................................................14

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006).............................................................................................22

*Dickerson v. Feldman*,
  426 F. Supp. 2d 130 (S.D.N.Y. 2006)..................................................................24

*Errico v. Stryker Corp.*,
  No. 10 Civ 3960 (VM)(JLC), 2010 WL 5174361 (S.D.N.Y. Dec. 14, 2010) .......21

*Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*,
  544 F.2d 1126 (2d Cir. 1976)...............................................................................10

*FMC Corp. v. Holliday*,
  498 U.S. 52 (1990)...............................................................................................14

*Gibbs Wire and Steel Co., Inc. v. Johnson*,
  255 F.R.D. 326 (D. Conn. 2009)...........................................................................10

*Jayboy Music Corp. v. Metro-Goldwyn-Mayer Pictures, Inc.*,
  No. 05 Civ 8575 (JFK), 2006 WL 1738079 (S.D.N.Y. June 23, 2006) ................12

*Jones v. Trump*,
  919 F. Supp. 583 (D. Conn. 1996).........................................................................16

*Kamen v. Am. Tel. & Tel. Co.*,
  791 F.2d 1006 (2d Cir. 1986)................................................................................10

*Kermanshah v. Kermanshah*,
  No. 08-cv-409 (BSJ)(AJP), 2010 WL 1904135 (S.D.N.Y. May 11, 2010)............21

*Kraebel v. New York City Dep't of Hous. Pres. & Dev.*,
  No. 90 Civ 4391 (CSH), 1994 WL 132239 (S.D.N.Y. Apr. 14, 1994) .................21

*Liberty Mut. Ins. Co. v. Donegan*,
    746 F.3d 497 (2d Cir. 2014).................................................................................14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................22, 23

*Mattera v. Clear Channel Commc'n, Inc.*,
    239 F.R.D. 70 (S.D.N.Y. 2006) .................................................................................20

*McCormick ex rel. McCormick v. School Dist. of Mamaroneck*,
    370 F.3d 275 (2d Cir. 2004).................................................................................22

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996).................................................................................16

*Nechis v. Oxford Health Plans, Inc.*,
    421 F.3d 96 (2d Cir. 2005).................................................................................24

*New York State Elec. and Gas Corp. v. FirstEnergy Corp.*,
    766 F.3d 212 (2d Cir. 2014).................................................................................25

*Nicholas v. Trump*,
    433 F. Supp. 3d 581 (S.D.N.Y. 2020).................................................................................21

*Polargrid LLC v. Videsh Sanchar Nigam Ltd.*,
    No. 04 CV 9578 (TPG), 2006 WL 2266351 (S.D.N.Y. Aug. 7, 2006) ...............................10

*Quinn v. Fishkin*,
    117 F. Supp. 3d 134 (D. Conn. 2015).................................................................................10

*Ryder v. Coldwell Banker Real Estate LLC*,
    No. 14-cv-231 (AVC), 2014 WL 2875831 (D. Conn. June 24, 2014) ...............................10

*Selby v. Principal Mut. Life Ins. Co.*,
    197 F.R.D. 48 (S.D.N.Y. 2000) .................................................................................24

*Shields v. Barrow*,
    58 U.S. 130 (1854).................................................................................12, 13

*SM Kids, LLC v. Google LLC*,
    963 F.3d 206 (2d Cir. 2020).................................................................................9, 22

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).................................................................................22

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009).................................................................................22

*Takeda v. Nw. Nat. Life Ins. Co.*,
    765 F. 2d 815 (9th Cir. 1985) ........................................................................19

*TransUnion LLC v. Ramirez*,
    141 S.Ct. 2190 (2021) ................................................................................22

*U.S. v. Bestfoods*,
    524 U.S. 51 (1998) ......................................................................................25

*Viacom Int'l v. Kearney*,
    212 F.3d 721 (2d Cir. 2000) ......................................................12, 13, 16, 17, 21

*Williby v. Aetna Life Ins. Co.*,
    867 F.3d 1129 (9th Cir. 2017) ....................................................................14

## STATUTES

29 U.S.C. § 1002(16)(a) ......................................................................................14

29 U.S.C. § 1132(d)(1) ........................................................................................14

42 U.S.C. § 18116(a) ............................................................................................9

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1) .................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ..........................................................2, 23, 25, 26

Fed. R. Civ. P. 12(b)(7) .................................................................... *passim*

Fed. R. Civ. P. 19 ............................................................................. *passim*

Plaintiff's Complaint seeks relief she lacks standing to pursue, fails to name indispensable parties solely responsible for the benefit decisions she challenges, and sues an entity that has no responsibility for the benefit plan at issue.  Plaintiff's Complaint, accordingly, must be dismissed.  Defendants Aetna Inc.[1] and Aetna Life Insurance Company (collectively, "Aetna") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(b)(7).

# I.

## PRELIMINARY STATEMENT

Plaintiff's Complaint is at once both too broad and too narrow.  She seeks to rewrite a health plan of which she is no longer a member and demands wide-ranging declaratory and injunctive relief, as well as monetary benefits, on behalf of a putative class that would impact a multitude of employer-sponsored health plans that are not parties to this action.  Yet she has sued none of the parties who can provide the relief she seeks.

This is clear from her own individual claim.  Plaintiff formerly was a beneficiary under a health plan funded and sponsored by her employer, Wellstar Health System, Inc.  Her employer designed the plan, determined what benefits would be offered under the plan and on what terms, had final authority over the plan, and is responsible for payment of any benefits under the plan.  Yet Plaintiff has sued neither Wellstar Health System, Inc. nor the plan.

Plaintiff instead sues only Aetna, who was hired merely to process claims as directed by the terms of her employer's plan.  But Aetna neither insures the plan nor controls what benefits the plan offers, and the plan documents explicitly state that Aetna has no authority to determine

---

[1] Plaintiff's Complaint incorrectly refers to "Aetna, Inc."  Defendant's proper legal name is Aetna Inc.

whether a member is entitled to benefits under the plan.  Only the employer-sponsor that funds the plan has that power.  Plaintiff thus has failed to join parties who are necessary and indispensable to the Court's ability to award the relief she seeks, and Aetna moves to dismiss her Complaint pursuant to Rule 12(b)(7).

Moreover, Plaintiff lacks Article III standing to pursue the relief she seeks because she is no longer a member of the Wellstar Health System, Inc. plan.  She thus has no present or forward-looking personal stake in the outcome of this litigation, and Aetna also moves to dismiss her Complaint pursuant to Rule 12(b)(1).

Finally, Defendant Aetna Inc. is not a proper party and should be dismissed.  Aetna Inc. is a holding company that has no insurance operations or products, is not licensed to sell insurance, and had no involvement with or responsibility for administering Plaintiff's benefit plan.  Plaintiff's Complaint makes no independent allegations against Aetna Inc. and fails to state a claim under Rule 12(b)(6).

In sum, Plaintiff seeks to rewrite a plan of which she is no longer a member but has failed to sue the parties who are responsible for the plan.  Her Complaint should be dismissed.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    Factual Background.**

**1.    Plaintiff and Wellstar Health.**

Plaintiff Tara Kulwicki resides in Georgia.  Compl. ¶ 19.  In February 2019, Plaintiff began working for Wellstar Cobb Hospital in Atlanta, Georgia, which is part of Wellstar Health

System, Inc. ("Wellstar Health").  *Id.* at ¶¶ 4, 26.  Wellstar Health is a health system based entirely in Georgia.[2]

### 2.    The Wellstar Plan.

As part of her employment with Wellstar Health, Plaintiff was enrolled in the Wellstar Employee Medical Plan ("Wellstar Plan"), an employee health benefit plan sponsored by Wellstar Health.  *Id.* at ¶¶ 4, 26.  The terms of the Wellstar Plan are set forth in a Summary Plan Description ("Wellstar Plan SPD") issued by Wellstar Health.[3]  Declaration of Teresa DiBartola ("DiBartola Decl."), Exhibit A at 1.  The Wellstar Plan is a self-insured plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  *Id.* at 118.

Wellstar Health is both the Plan Sponsor and the Plan Administrator for the Wellstar Plan.  *Id.* at 118.  Wellstar Health, as the Plan Administrator, has complete authority and absolute discretion to construe and interpret the plan and, as Plan Sponsor, pays all benefits.  *Id.* at 7, 118.

Aetna Life Insurance Company is the Claims Administrator for the Wellstar Plan.[4]  *Id.* at 12, 118, 121.  The Wellstar Plan SPD describes the self-funded nature of the plan and Aetna's limited role as Claims Administrator as follows:

> Medical benefits are self-insured.  Benefits are paid out of a general fund of the Company and are not guaranteed under contract of insurance. The Claim Administrator does *not* have fiduciary authority for determining whether you are entitled to benefits and the authorized payment.

---

[2] *See* www.wellstar.org/about-us; *see also* Declaration of Sarah E. Reeves ("Reeves Decl.") ¶¶ 2-5.

[3] Plaintiff's claim at issue in this action was submitted in 2021 and thus is governed by the 2021 Summary Plan Description for the Wellstar Plan.

[4] Aetna Inc., the other Aetna defendant in this action, is holding company; it not an insurer or third-party administrator and has no responsibility for claims handling or any other operations of the Wellstar Plan.

*Id.* at 12, 118 (emphasis added).  Wellstar Health, as Plan Administrator, thus sets and construes the terms of the Wellstar Plan and determines entitlement to benefits; Aetna, as Claims Administrator, merely administers the claims process Aetna and has no authority to dictate or direct how Wellstar Health spends its own funds or what benefits Wellstar Health elects to offer its employees.  *Id.* at 7, 118, 121.

Wellstar Health established the Wellstar Plan through a Flexible Benefit Plan document dated December 13, 2018, also known as the Wellstar "wrap plan document" ("Wellstar Wrap Document").  *Id.* at 117; DiBartola Decl., Exhibit B at 1.  Wellstar Health, as the Plan Sponsor, expressly reserved the power to adopt and amend the Plan and to appoint and remove any Plan Administrator or Claim Administrator.  DiBartola Decl., Exhibit B at 8, 66.

The Wellstar Wrap Document provides that the Plan Administrator is the party "authorized and responsible for managing and directing the operation and administration of the Plan."  *Id.* at 8.  In that capacity, the Plan Administrator has "full discretion with respect to the administration, operation, and interpretation of the Plan," including "full power and discretionary authority" to, among other things:

- "interpret the Plan and decide all matters arising under the Plan, including the right to remedy possible ambiguities, inconsistencies, or omissions;

- determine all questions concerning the eligibility of any individual to participate in, be covered by, receive benefits under the Plan pursuant to the provisions of the Plan;

- determine whether objective criteria set forth in the Plan have been satisfied respecting any term, condition, limitation, exclusion, and restriction or waiver thereof; [and]

- determine the amount of benefits payable, if any, to any person or entity in accordance with the provisions of the Plan [and] to provide a full and fair review to any individual whose claim for benefits has been denied in whole or in part."

*Id.* at 64-65.

The Wellstar Wrap Document also provides that the Claims Administrator is the party "authorized and responsible for receiving and reviewing claims for benefits under the Plan; determining what amount, if any, is due and payable; making appropriate disbursements to persons entitled to benefits under the Plan; and reviewing and determining denied claims and appeals." *Id.* at 4. That document further provides that, with respect to benefits provided under the self-funded Wellstar Plan, the Plan Administrator shall retain final authority over the disposition of any review of any adverse benefit determination and any appeal. *Id.* at 46, 52-59.

The Wellstar Wrap Document finally provides that any legal action seeking redress related to the Plan must be brought in the U.S. District Court for the Northern District of Georgia and that "the Company [Wellstar Health] and the Plan Administrator [Wellstar Health] are the only necessary parties to any action or proceeding that involves the Plan or its administration." *Id.* at 69-70.

**3.    Infertility Benefits Under Wellstar Plan.**

The Wellstar Plan provides coverage for the costs to "diagnose and to surgically treat the underlying medical cause of infertility." Compl. ¶ 27. The Wellstar Plan provides coverage for Comprehensive Infertility Services and Advanced Reproductive Technology Services, which include intrauterine insemination ("IUI") and in vitro fertilization ("IVF"). *Id.* at ¶¶ 27-30. To be eligible for infertility benefits under the terms of the Wellstar Plan, a member must fulfill several requirements, including having "[a] condition that is a demonstrated cause of infertility

which has been recognized by a gynecologist, or an infertility specialist, and your physician who diagnosed you as infertile, and it has been documented in your medical records." DiBartola Decl., Exhibit A at 76. The Wellstar Plan defines the medical condition of "infertility" as follows:

> For a woman who is under 35 years of age: 1 year or more of timed, unprotected coitus, or 12 cycles of artificial insemination; or [f]or a woman who is 35 years of age or older: 6 months or more of timed, unprotected coitus, or 6 cycles of artificial insemination.

Compl. ¶¶ 28, 31-32.

In its role as third-party claims administrator of self-insured benefit plans, like the Wellstar Plan, Aetna has developed a Clinical Policy Bulletin 0327[5] (the "Infertility CPB"), which helps physician reviewers understand and assess the medical diagnosis of infertility and provides:

> For purposes of this policy, a member is considered infertile if he or she is unable to conceive or produce conception after 1 year of frequent, unprotected heterosexual sexual intercourse, or 6 months of frequent, unprotected heterosexual sexual intercourse if the female partner is 35 years of age or older. Alternately, a woman without a male partner may be considered infertile if she is unable to conceive or produce conception after at least 12 cycles of donor insemination (6 cycles for women 35 years of age or older).

*Id.* at ¶ 48. The Infertility CPB tracks the definition of medical "infertility" set forth in the Wellstar Plan. *Id.* at ¶¶ 28, 48.

### 4.    Plaintiff's IUI Claim.

Plaintiff asserts in her Complaint that she is a homosexual woman without a male partner. *Id.* at ¶¶ 3, 19, 35. In June 2021, while covered by the Wellstar Plan, Plaintiff submitted a request to Aetna for precertification to receive benefits for IUI treatment. *Id.* at ¶ 43.

---

[5] Plaintiff's Complaint incorrectly refers to the Infertility CPB as "No. 0237." Compl. ¶ 48, n. 3. The correct number is 0327, as reflected in the Aetna website link cited in Plaintiff's Complaint. *Id.*

Aetna denied Plaintiff's request by letter dated June 29, 2021 on the ground that she did not meet the medical definition of infertility under the terms of the Wellstar Plan.  *Id.* at ¶ 44. Plaintiff was, at that time, a 40-year-old single woman and, as noted above, the Wellstar Plan offers infertility benefits to individuals over the age of 35 who are medically "infertile," which the plan defines as the inability to conceive or produce conception after six months of frequent, unprotected heterosexual intercourse or six cycles of donor insemination.[6]  *Id.* at ¶¶ 28-32.  In its denial letter, Aetna quoted the terms of the Wellstar Plan and stated, "This coverage denial was based on the terms of the member's benefit plan document…  The plan limits coverage for infertility treatment."  Declaration of Donna Lynch ("Lynch Decl."), Exhibit A at 3.

Plaintiff submitted an administrative appeal on July 15, 2021, requesting that Aetna reconsider its denial.  Compl. at ¶ 45.  Aetna denied Plaintiff's benefits appeal by letter dated July 27, 2021, again on the ground that that Plaintiff did not meet the coverage criteria Wellstar Health set forth in its Wellstar Plan.  *Id.* at ¶ 46.  In its letter, Aetna cited both the medical infertility definition from the WellStar Plan, as well as the Infertility CPB.  *Id.* at ¶¶ 46-47.

**5.     Plaintiff's Discrimination Complaint.**

Plaintiff also asserted in her July 15, 2021 benefits appeal to Aetna that the Wellstar Plan discriminated against her and other similarly situated non-heterosexual individuals assigned female at birth who, because of their sexual orientation, are unable to engage in coitus for the required number of months.  *Id.* at ¶ 45. Aetna responded to Plaintiff's discrimination complaint by letter dated September 8, 2021.  *Id.* at ¶ 49.  As set forth in Plaintiff's Complaint, Aetna stated in its letter that its "actions are in no way to discriminate against [Plaintiff], but to [apply benefits

---

[6] Individuals who are under the age of 35 are considered infertile if they are unable to conceive or produce conception after 12 months of frequent, unprotected sexual intercourse or 12 cycles of donor insemination.  Compl. ¶ 28.

and] process claims equitably to all plan participants, in accordance with our claims policies and procedures." *Id.* at ¶ 50.  Aetna stated further that it "is not discriminating against its members but [is] following the guidelines of [its] medical plan provision." *Id.*

### 6.      Plaintiff's Current Membership Status.

According to Aetna's membership records, Plaintiff terminated her participation in the Wellstar Plan on November 30, 2021 and is no longer covered by that Plan.  DiBartola Decl. ¶¶ 5-6.

### 7.      Aetna Inc.

Aetna Inc. is a holding company that has no insurance operations or products and is not licensed to sell insurance.  Declaration of Craig Allocca ("Allocca Decl.") ¶¶ 4, 10.  Aetna Inc. has no employees.  *Id.* ¶ 13.  Aetna Inc. is a Pennsylvania corporation.  *Id.* ¶ 3.

The Aetna entity that serves as the Claims Administrator for the Wellstar Plan is Aetna Life Insurance Company.  DiBartola Decl., Exhibit A at 12, 118, 121.  Aetna Inc. has no involvement with the daily insurance operations of Aetna Life Insurance Company or with the provision or administration of Aetna health insurance plans.  Allocca Decl. ¶ 12.  Specifically, Aetna Inc. had no responsibility for or involvement with the Wellstar Plan or the services performed by Aetna Life Insurance Company as Claims Administrator for that Plan.  *Id.* ¶ 6.

## B.      Procedural Background.

Plaintiff filed her complaint against Aetna on February 9, 2022.  Plaintiff brings this case as a class action on behalf of herself and all individuals who:

> 1) were assigned "female" at birth; 2) are covered by an Aetna medical or health insurance plan that includes or is governed by the definition of "infertility" appearing in Aetna's Clinical Policy Bulletin No. 0237 [sic] or a substantively similar definition; 3) because of their sexual orientation, cannot engage in coitus; and 4) either (a) submitted a claim for infertility treatment benefits and were denied; (b) paid out-of-pocket for infertility treatment; or (c) will submit and be denied benefits, or pay-out-of-pocket, for infertility treatment.

Compl. at ¶ 55.  Plaintiff asserts that because she and members of the putative class are unable to get pregnant through "unprotected coitus" with a male partner and require alternative fertility treatments, they are unfairly required to pay out-of-pocket for IUI to establish infertility.  *Id.* at ¶¶ 3, 11. This, she alleges, excludes them from full participation in the Wellstar Plan and constitutes discrimination on the basis of sexual orientation in violation of Section 1557 of the ACA. *Id.* at ¶¶ 15, 89.

Plaintiff asserts two counts of disparate treatment discrimination under Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a) (the "ACA") and seeks a declaratory judgment that (1) Aetna has a legal duty under the ACA to provide infertility benefits according to the terms of its health benefit plans and to not deny benefits on the basis of sexual orientation, (2) reasonable consumers would expect Aetna to provide infertility benefits to Plaintiff and the putative class, and (3) Aetna continues to breach its legal duties by denying Plaintiff and the putative class infertility benefits.  *Id.* at ¶ 90.  Plaintiff requests that the Court "issue prospective injunctive relief requiring Defendant to provide benefits for infertility treatment to Plaintiff and the Class." *Id.* at ¶ 91.  Plaintiff also asks that the Court reform the Wellstar Plan and "all other applicable plans" to provide the infertility coverage she demands.  *Id.* at ¶ 90, p. 21.

## III.

## LEGAL STANDARDS

Because standing under Article III pertains to a court's subject matter jurisdiction, a defendant may challenge it in a motion to dismiss under Rule 12(b)(1).  *See, e.g., SM Kids, LLC v. Google LLC,* 963 F.3d 206, 210 (2d Cir. 2020).  And, in resolving a motion challenging Article III standing, a court may consider extrinsic evidence. *Bekker v. Neuberger Berman Group LLC*, No. 16 CV 6123 (LTS) (BCM), 2018 WL 4636841, at *3 (S.D.N.Y. Sept. 27, 2018) ("When considering a motion to dismiss for lack of subject matter jurisdiction, such as one for

9

lack of standing, the Court may consider extrinsic evidence proffered by the parties in addition to facts alleged in the pleadings.").[7]

A defendant may raise a facial or a factual challenge to a plaintiff's complaint for lack of subject matter jurisdiction. *See Carter v. HealthPort Tech., LLC,* 822 F.3d 47, 56 (2d Cir. 2016). In a factual challenge, such as Aetna's challenges to subject matter jurisdiction in this motion, "the court may resolve disputed factual issues by reference to evidence outside the pleadings . . . [and] 'no presumptive truthfulness attaches to the complaint's jurisdictional allegations." *Ryder v. Coldwell Banker Real Estate LLC*, No. 14-cv-231 (AVC), 2014 WL 2875831, at *2-3 (D. Conn. June 24, 2014); *see also Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[W]hen, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise."). "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Carter*, 822 F.3d at 57 (*citing Exchange Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

Similarly, when considering a motion to dismiss under Rule 12(b)(7) for failure to join a party under Rule 19, "a court may consider evidence outside of the pleadings." *Quinn v. Fishkin,* 117 F. Supp. 3d 134, 139 (D. Conn. 2015); *see also* 5C Wright & Miller, Federal Practice & Procedure § 1359 (3d ed. 2021). This is because "[t]he Rule 19 inquiry is a fact-specific and practical one." *Gibbs Wire and Steel Co., Inc. v. Johnson,* 255 F.R.D. 326, 331 (D. Conn. 2009) (*citing Polargrid LLC v. Videsh Sanchar Nigam Ltd.,* No. 04 CV 9578 (TPG), 2006 WL 2266351, at *9 (S.D.N.Y. Aug. 7, 2006).

---

[7] Internal citations, quotations and emphasis are omitted from citations unless otherwise noted.

Finally, in considering Aetna's motions under Rule 12(b)(1) and (7), the Court may consider the Wellstar Plan documents because Plaintiff's Complaint arises from and is based on the terms of that Plan. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## IV.

## <u>ARGUMENT AND AUTHORITIES</u>

**A.     Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(7) because she has failed to join plans, plan sponsors, and plan administrators, which are necessary and indispensable parties.**

Aetna first moves to dismiss Plaintiff's Compliant pursuant to Rule 12(b)(7) because she has failed to join numerous necessary and indispensable parties—namely, the WellStar Employee Medical Plan and its Plan Sponsor and Plan Administrator, WellStar Health System, Inc., as well as the many other similarly situated employee benefit plans and plan sponsors and administrators whose members and plans would be impacted by Plaintiff's putative class.

The gravamen of Plaintiff's Complaint is that she was denied coverage for fertility benefits under the Wellstar Plan because she could not satisfy the definition of "infertility" set forth in the Plan, which definition she contends is discriminatory. Though she alludes in passing to Aetna's Infertility CPB, the definition of "infertility" in Aetna's policy was materially identical to the definition set by the Wellstar Plan. *See id*. at ¶¶ 28, 48. And Plaintiff's Complaint repeatedly makes clear that her claim was denied because she did not satisfy the terms of the *Wellstar Plan* and that Aetna applied the express terms of the *Wellstar Plan* in reviewing her claim. *See, e.g.,* Compl. ¶¶ 4, 27-32, 36-41, 43-46, 50-54, 69-70, 81-82.  Further, in her request for declaratory and injunctive relief, Plaintiff seeks to reform the *Wellstar Plan* and similar plans. *Id.* at ¶¶ 90-94.

Yet Plaintiff has sued neither the Wellstar Plan nor Wellstar Health, who as both the Plan Sponsor and Plan Administrator, sets the terms of the Plan, decides who receives benefits, and pays any benefits.  Instead, Plaintiff sues only Aetna.  And alleges only that Aetna administered the Wellstar Plan according to its express terms.  But Aetna is only the Claims Administrator of the Plan, responsible only for administration of the claims process, and the Plan makes explicitly clear that "[t]he Claim Administrator does *not* have fiduciary authority for determining whether you are entitled to benefits and the authorized payment."  DiBartola Decl., Ex. A at 12, 118 (emphasis added).  In short, Aetna has no authority to force Wellstar Health to alter its Plan or to pay benefits contrary to the terms of the Plan.

Under Rule 12(b)(7), an action must be dismissed where the plaintiff fails to join an indispensable party under Rule 19.  *Viacom Int'l v. Kearney,* 212 F.3d 721, 724 (2d Cir. 2000). Courts apply a multi-step test when analyzing whether to require the joinder of additional parties under Rule 19.  *Id.*

- First, the court must determine whether a nonparty should be joined under Rule 19(a) as a "necessary" party.  *Id.*  Absentees whom it is desirable to join under Rule 19(a) are "[p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act."  *Id.* (quoting *Shields v. Barrow,* 58 U.S. 130, 139 (1854)).

- If an absentee is necessary, the second inquiry is whether it is feasible to order that the absentee be joined.  *Id.* at 725.  Joinder is not feasible "when venue is improper [or] when the absentee is not subject to personal jurisdiction."  *Jayboy Music Corp. v. Metro-Goldwyn-Mayer Pictures, Inc.*, No. 05 Civ 8575 (JFK), 2006 WL 1738079, at *2 (S.D.N.Y. June 23, 2006) ("If the absentee is necessary, the court then assesses

whether joinder is feasible in terms of jurisdiction and venue."); *see also* Fed. R. Civ.

P. 19(a)(3).

- If joinder is not feasible, the court must determine whether the case can proceed

  without the absentee, or whether the absentee is an "indispensable party" such that the

  action must be dismissed. *Viacom Int'l,* 212 F.3d at 725. A party is indispensable

  under Rule 19(b) when "in equity and good conscience, the party is one without

  whom the action between the remaining parties cannot proceed." *Am. Trucking*

  *Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 357 (2d Cir. 2015).

Here, by Plaintiff's own admission in her Complaint, the Wellstar Plan and its Plan

Sponsor and Plan Administrator, Wellstar Health, all of which are Georgia-based, are necessary

and indispensable parties as to her own individual claims. And all similarly situated plans and

plan sponsors administrators are similarly necessary and indispensable parties as to her putative

class claims. She has joined none of these parties, nor can she, and her Complaint thus should be

dismissed pursuant to Rule 12(b)(7). *Viacom Int'l,* 212 F.3d 721 at 724 (if the absentee is

indispensable, the action should be dismissed).

### 1.  Wellstar Health and the WellStar Plan and other similarly situated plans and plan sponsors and administrators are necessary parties.

The first inquiry under Rule 12(b)(7) is whether a nonparty should be joined under Rule

19(a) as a "necessary" party—i.e., a party who ought to be joined so the Court may act. *Viacom*

*Int'l,* 212 F.3d 721 at 724; *Shields*, 58 U.S. at 139. Wellstar Health and the Wellstar Plan are

necessary parties here. Indeed, the Court cannot award the individual relief Plaintiff seeks

without the presence of these missing parties.

13

The Wellstar Plan is self-funded by its Plan Sponsor, Wellstar Health.[8]  In the case of self-funded plans, it is the plan sponsor—usually the employer, and in any event not the claims administrator (i.e., Aetna here)—that creates the terms of the plan and funds the benefits.  *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78-79 (1995). ("Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.")  When a health plan is self-funded, the employer does not purchase an insurance policy to cover its plan obligations but instead pays benefits from its own coffers and retains a third-party administrator to process and pay claims.  *Liberty Mut. Ins. Co. v. Donegan,* 746 F.3d 497, 501 (2d Cir. 2014); *Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129, 1131 (9th Cir. 2017); *see also FMC Corp. v. Holliday*, 498 U.S. 52, 54 (1990) (describing self-funded plans).

The infertility policy at issue here, including the definition of "infertility" applied to Plaintiff's claim, is set by the terms of the Wellstar Plan. As Plan Sponsor, Wellstar Health has the exclusive power to adopt and amend the Wellstar Plan, including setting its terms, and pays all benefits under the Plan.  DiBartola Decl., Exhibit B at 8, 66; DiBartola Decl., Exhibit A at 118.   As Plan Administrator, Wellstar Health has "full discretion with respect to the administration, operation, and interpretation of the Plan," including "full power and discretionary authority" to construe the terms of the Plan, to decide whether a member is entitled to benefits under the Plan and in what amount, and to resolve any benefit appeals.  DiBartola Decl., Exhibit B at 64-65.

---

[8] Self-funded ERISA plans are, by statute, separate entities that can sue and be sued.  29 U.S.C. § 1132(d)(1).  The plan "sponsor," which ERISA generally defines as "the employer," *see id.* § 1002(16)(b), is the party that establishes or maintains the ERISA plan and its terms. *Schoonejongen*, 514 U.S. at 78-79. Finally, the self-funded "plan administrator" (distinct from a claims administrator) is the entity so designated by the ERISA plan; and if the plan fails to designate one, it is the plan sponsor by default. 29 U.S.C. § 1002(16)(a).

In sum, the Wellstar Plan is a creation of Wellstar Health, and whether the Plan offers a particular benefit, and under what terms, is entirely within the discretion of Wellstar Health. Indeed, the Plan makes clear that Aetna itself has no such authority.  Wellstar Health thus clearly is a necessary party here.  Not surprisingly, the instrument creating the Wellstar Plan expressly provides that "the Company [Wellstar Health] and the Plan Administrator [Wellstar Health] are the *only* necessary parties to any action or proceeding that involves the Plan or its administration."  DiBartola Decl., Exhibit B at 69-70 (emphasis added).

Plaintiff seeks relief under the Wellstar Plan and the class members' plans that would (1) rewrite the terms of the plans, (2) direct how the plans are administered, and (3) require payment of specific benefits under those plans.  Yet she has sued none of the parties who are legally responsible for the terms of those plans.  She has not sued the parties who designed the Wellstar Plan and determined what benefits the Plan would provide and on what terms.  Nor has she sued the parties who are obligated to pay benefits under the Wellstar Plan.  Nor has she joined the many other parties responsible for the many other plans whose terms govern the members of her broad putative class.

All of these missing parties are necessary parties because, in their absence, "the court cannot accord complete relief among existing parties" and proceeding without those plans "may … as a practical matter impair or impede [their] ability to protect" their legal interests. *See* Fed. R. Civ. P. 19(a)(1)(A)-(B).  The very relief she seeks—reformation of the numerous plans and, ultimately, payment of benefits thereunder—can be achieved only through the numerous responsible plans and their sponsors and administrators.  Plaintiff has therefore failed to join necessary parties to her individual and class claims under Rule 19.

2. **Wellstar Health and the Wellstar Plan and other similarly situated plans and plan sponsors and administrators cannot be feasibly joined.**

The second Rule 12(b)(7) question is whether it is feasible to order that the absentee party be joined. *Viacom Int'l,* 212 F.3d 721 at 724. Joinder is not feasible when venue is improper or when the absentee is not subject to personal jurisdiction. *Id.*; *see also* Fed. R. Civ. P. 19(a)(3).

Wellstar Heath is a healthcare system based entirely with the State of Georgia. Reeves Decl. ¶¶ 2-5. The Wellstar Plan was created in Georgia, and its agent for service of legal process is in Georgia. DiBartola Decl., Ex. A at 118. Its Plan Sponsor (Wellstar Health) and Plan Administrator (Wellstar Health) have offices in and operate in Georgia. *Id.* The Plan is funded, and benefits paid, entirely through Wellstar Health's operations in Georgia. *Id.* Plaintiff herself is a resident of Georgia and was a member of the Wellstar Plan by virtue of her employment at a Wellstar-affiliated hospital in Georgia.

It thus is highly unlikely that Plaintiff can establish that the Wellstar Plan or Wellstar Health is subject to either venue or personal jurisdiction in this district. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (Noting the due process requirements for personal jurisdiction require that (1) the defendant have sufficient contacts with the forum state to justify the court's exercise of jurisdiction, and (2) the assertion of jurisdiction comports with the traditional notions of fair play and substantial justice); *Jones v. Trump*, 919 F. Supp. 583, 587 (D. Conn. 1996) ("A district is a proper venue for a claim if 'a substantial part of the events or omissions giving rise to the claim occurred' there."). Indeed, the instrument creating the Plan expressly requires that "[a]ny legal action, whether in law or in equity, must be brought in the

16

U.S. District Court for the Northern District of Georgia."  DiBartola Decl., Ex. B at 70.  Neither

absent party can be feasibly joined in the present action.[9]

Nor can Plaintiff feasibly join the multitude of other plans and plan sponsors and

administrators embraced by her extremely broad class.  Although Plaintiff identifies none of the

other plans that may be implicated by her proposed class, it is clear just from Plaintiff's putative

class definition that the class could include any plan administered by Aetna, regardless of the

states in which the plans and their sponsors and administrators are located.  It is virtually certain

that many of these missing parties will not be subject to venue in this district or will lack

minimum contacts necessary to establish personal jurisdiction in this district. The Court can

conclusively determine now, at a minimum, that serious practical and legal limitations prevent

joining the Wellstar Plan and Wellstar Health and all the many other absent plans, and their

sponsors and administrators, for all the putative class members.

It is clear that Plaintiff has failed thus far to join any party that would be responsible for

setting the terms of the Wellstar Plan or funding benefit payments on behalf of the Plan.  If she is

unable or unwilling do so, her Complaint should be dismissed.  *Viacom Int'l*, 212 F.3d at 724.

3.     **Wellstar Health and the WellStar Plan and other similarly situated plans and
       plan sponsors and administrators are indispensable parties that cannot be
       joined and the action thus must be dismissed.**

The final inquiry under Rule 12(b)(7) is whether the case can proceed without the

absentee, or whether the absentee is an "indispensable party" such that the action must be

dismissed.  *Viacom Int'l,* 212 F.3d at 725.  A party is indispensable under Rule 19(b) when in

---

[9] For the many reasons discussed above, Aetna is not responsible for the administration or
operation of the Wellstar Plan, and Plaintiff cannot obtain relief as to Wellstar Health or the
Wellstar Plan by suing Aetna.  To the extent Plaintiff seeks benefits under the Wellstar Plan,
reformation of the Plan, or any other relief that can come only from Wellstar Health or the Plan,
that relief must be sought in the U.S. District Court for the Northern District of Georgia.

equity and good conscience, the action should not be allowed to proceed without them. *Am. Trucking Ass'n, Inc.*, 795 F.3d at 357.

It is impossible here, both legally and literally, for the Court to award the relief Plaintiff seeks for herself without the presence of the Wellstar Plan and Wellstar Health.

- <u>Benefits</u>. Plaintiff asks that the Court "issue prospective injunctive relief requiring Defendant to provide benefits for infertility treatment to Plaintiff and the Class." Compl. ¶ 91. But Aetna has no authority over the funds of the Wellstar Plan or ability to pay benefits contrary to the terms of the Plan. Indeed, the Plan document makes explicitly clear that Aetna, as Claims Administrator, "does *not* have fiduciary authority for determining whether you are entitled to benefits and the authorized payment." DiBartola Decl., Ex. A at 118 (emphasis added). That power and authority rests solely with Wellstar Health, as the Plan Sponsor and Plan Administrator. *Id.* at 7, 118; DiBartola Decl., Ex. B at 4, 8, 46, 52-59, 64-66, 69-70. And the Court can award benefits only through Wellstar Health.[10]

- <u>Reformation of Wellstar Plan</u>. Plaintiff asks that the Court reform the Wellstar Plan to require the infertility coverage she demands. Compl. ¶ 90, p. 21. But just as Aetna has no authority over the funds of the Plan, it likewise has no power to rewrite the terms of the Plan. The exclusive power to and amend the Plan rests with Wellstar Health, as Plan Sponsor. DiBartola Decl., Ex. B at 8, 66. And the "full power and

---

[10] Moreover, as discussed below with respect to Plaintiff's lack of Article III standing, Plaintiff fails to assert a claim for benefits that the Court can redress. The Wellstar Plan, and any entitlement Plaintiff might have to benefits under the Plan, is governed by ERISA, but Plaintiff asserts no cause of action under ERISA in her Complaint. In addition, Plaintiff is no longer a member of the Wellstar Health plan—meaning the only way to effectuate the relief Plaintiff seeks for herself would be to re-enroll her in the benefit plan. But once again, only Wellstar Health has the authority to add members to a plan or otherwise make Plan eligibility determinations.

discretionary authority" to construe the terms of the Plan, to decide whether a member is entitled to benefits under the Plan and in what amount, and to resolve any benefit appeals rests with Wellstar Health, as the Plan Administrator. *Id.* at 64-65. Again, the Court can reform the Plan only through Wellstar Health.

In sum, Aetna lacks the both the legal authority and the practical power to rewrite the terms of the Wellstar Plan, to enroll members into the Plan, or to spend the funds of Wellstar Health, and the Court cannot award the relief Plaintiff requests without the presence of the Wellstar Plan and Wellstar Health. A judgment against Aetna alone would be no more than an advisory opinion in contravention of the case-or-controversy requirements of the U.S. Constitution with no binding effect on Wellstar Health or the Wellstar Plan. Certainly, the relief Plaintiff seeks in their absence would prejudice their interests. *See* Fed. R. Civ. P. 19(b)(1)-(2). Those entities have every right to defend the plan terms they created and to defend against Plaintiff's claims for benefits from their coffers. If they cannot be properly joined in this district, then the action must be dismissed.

This case is similar to *Takeda v. Nw. Nat. Life Ins. Co.*, 765 F. 2d 815 (9th Cir. 1985), where the court held that the employer–administrator of a self-funded health plan was a necessary and indispensable party. The court reasoned that (1) the employer had final authority to determine whether to allow a claim, and thus complete relief might not be possible without it, and (2) there was a risk of prejudice if the employer was not joined because there was a risk that it could be collaterally estopped from relitigating issues decided against it. *Id.* at 819-21; *see also Cuevas v. Joint Benefit Trust*, 2013 WL 3578496, at *3 (N.D. Cal. July 12, 2013) ("That a plaintiff may assert an ERISA claim against parties other than … the plan administrator in no way precludes a finding that … [the] administrator is a necessary party ….").

The court reached a similar conclusion in *Mattera v. Clear Channel Commc'n, Inc.*, 239 F.R.D. 70, 76 (S.D.N.Y. 2006).  Plaintiff there brought a proposed class action alleging that defendants made unauthorized deductions from the wages of employees.  The defendants moved to dismiss the action on the ground that plaintiff failed to join a party who employed a significant number of the members of the purported class.  "It is difficult to see how [plaintiff] could be accorded complete relief without [the missing employer], the entity that employs and, moreover, pays and makes charge backs of the wages of, members of the putative class."  *Id.*  Because joinder of the missing party would destroy complete diversity, the court dismissed the complaint pursuant to Rule 12(b)(7).  *Id.* at 81.

Plaintiff's Complaint presents these same issues of incomplete relief and potential prejudice.  Plaintiff seeks wide-ranging injunctive and declaratory relief, as well as monetary benefits, that can come only from parties she has not sued.  Plaintiff's proposed class includes all participants in Aetna-administered plans who were denied benefits for infertility treatment.  This means that *all* putative class members' plans (and their plan sponsors and administrators) are necessary and indispensable parties for the same reasons the Wellstar Plan and Wellstar Health are necessary and indispensable to Plaintiff's individual claim—because those employer–sponsors and administrators designed the plans, determined what benefits would be offered under the plans and on what terms, have final authority over the plans, and would be responsible for payment of any benefits under the plans. These missing employer–sponsors and administrators are the only parties with the power and authority to pay the benefits and implement the forward-looking injunctive relief Plaintiff seeks.  As a result, it is indispensable that those self-funded plan entities participate in this action, defend the plan terms they created, and defend against Plaintiff's claims for their money.

Indeed, in suits "where, as here, equitable relief is sought . . . the presence of all parties is necessary." *Kermanshah v. Kermanshah,* No. 08-cv-409 (BSJ)(AJP), 2010 WL 1904135, at *3 (S.D.N.Y. May 11, 2010).   This is because unlike a claim for monetary damages, where complete relief can be afforded without an absent party, granting injunctive relief without joinder of a necessary, absent party results in incomplete, "hollow" relief.   *See Errico v. Stryker Corp.*, No. 10 Civ. 3960 (VM)(JLC), 2010 WL 5174361, at *2 (S.D.N.Y. Dec. 14, 2010); *Kraebel v. New York City Dep't of Hous. Pres. & Dev.*, No. 90 Civ 4391 (CSH), 1994 WL 132239, at *4 (S.D.N.Y. Apr. 14, 1994).

In sum, Plaintiff has failed to join numerous necessary and indispensable parties, and there is no practical way to join those parties to this case or afford complete relief on Plaintiff's claims against Aetna alone.   Under clear Second Circuit law, Plaintiff's Complaint should be dismissed.  *Viacom Int'l,* 212 F.3d at 724.

**B.      Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(1) because she does not have Article III standing for the relief she seeks.**

In her Complaint, Plaintiff asks the Court to issue "prospective injunctive relief requiring Defendant to provide benefits for infertility treatment to Plaintiff and the Class consistent with applicable law to ensure that benefits are not improperly denied or excluded on the basis of sexual orientation."  Compl. ¶ 91.  She also asks that the Court reform the Wellstar Plan and all similar plans to require the infertility coverage she demands.  Compl. ¶ 90, p. 21.  Plaintiff lacks Article III standing to pursue these claims for prospective relief, however, because she is no longer a member of the Wellstar plan and has no right to future benefits under that Plan.

A court may properly dismiss a case for lack of subject matter jurisdiction where it lacks the statutory or constitutional power to adjudicate the case.  *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020).  Because standing under Article III pertains to a court's subject matter

jurisdiction, a defendant may challenge it in a motion to dismiss under Rule 12(b)(1). *See, e.g.,* *SM Kids, LLC v. Google LLC,* 963 F.3d 206, 210 (2d Cir. 2020).

A plaintiff must demonstrate Article III standing for each claim and form of relief sought. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  This requires a plaintiff to plead—for *each* claim and for *each* form of relief— that (1) she has suffered or is imminently threatened with a concrete and particularized injury-in-fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that is likely to be redressed by the requested relief. *TransUnion*, 141 S.Ct. at 2203; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

To satisfy the injury in fact requirement for injunctive relief, Plaintiff must allege an "actual and imminent, not conjectural or hypothetical" threat of injury.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  This means that the "threatened injury must be certainly impending" and "allegations of possible future injury are not sufficient."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  To seek injunctive relief, Plaintiff must demonstrate there is a likelihood she will be *injured in the future*. *McCormick ex rel. McCormick v. School Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004). Plaintiff cannot establish the requisite *prospective* harm simply by pointing to some *past* injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).  The Second Circuit very recently reiterated this principle:

> Our analysis starts with the familiar principle that injunctive relief is only proper when a plaintiff, lacking an adequate remedy at law, is likely to suffer from injury at the hands of the defendant if the court does not act in equity.  The prospective-orientation of the analysis is critical: to maintain an action for injunctive relief, a

plaintiff cannot rely on past injury but must show a likelihood that he will be injured in the future…. If the injury occurred in the past—or if some future injury is merely conjectural or hypothetical—then plaintiffs will lack the kind of injury necessary to sustain a case or controversy, and necessary to establish standing, under Article III.

*Berni v. Barilla S.p.A.*, 964 F.3d 141, 146-47 (2d Cir. 2020).

Moreover, the injury Plaintiff alleges also must be one that is fairly traceable to the defendant and that is likely to be redressed by the relief she requests. *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003). Article III thus requires, not only that Plaintiff allege an injury-in-fact, but also that the injury be traceable to the defendant she has sued and that the relief she requests is likely to redress the injury she alleges. It must be likely, as opposed to merely speculative, that the injury will be redressed by favorable decision. *Lujan*, 504 U.S. at 561.

Plaintiff can meet none of these requirements in this case for the following reasons:

- Plaintiff does not allege that she has suffered any past monetary damages. She does not allege, for example, that she actually has paid out-of-pocket for the fertility treatments she seeks.

- Although Plaintiff asks the Court for an award of benefits under the Wellstar Plan, the Plan is governed by ERISA and any claim for benefits from the Plan must be made pursuant to ERISA, *see, e.g., Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-09 (2004), but Plaintiff asserts no cause of action under ERISA in her Complaint.[11]

- Instead, Plaintiff asks to Court to rewrite the Wellstar Plan to require the infertility coverage she demands. But Plaintiff is no longer a member of the Wellstar plan and thus has no future right to benefits under that Plan. According to Aetna's

---

[11] To the extent Plaintiff's Complaint asks the Court to order an award of benefits from the Wellstar Plan without regard to the requirements of ERISA and without asserting a cause of action under ERISA, Plaintiff's Complaint fails to state a claim and should be dismissed pursuant to Rule 12(b)(6).

membership records, Plaintiff terminated her participation in the Wellstar Plan on November 30, 2021 and is no longer covered by that Plan.  DiBartola Decl. ¶¶ 5-6. She thus has no present interest in the Wellstar Plan, no future rights under the Plan, and no forward-looking personal stake in the outcome of this litigation.

- Finally, the only party she has sued—Aetna—did not make the coverage determination she challenges and has no power or authority either to award benefits contrary to the terms of the Wellstar Plan or to rewrite the Plan in the manner she demands.

Even if Aetna had the power and authority to rewrite the Wellstar Plan or to pay benefits contrary to its terms (which it clearly does not), ordering Aetna to modify plan terms, change claims handling processes, adopt new standards, or perform any act on a going-forward basis would not affect *Plaintiff* in any way—because she would not herself be entitled to coverage for the benefits sought even if the plan were reformed.  *See, e.g., Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (plaintiff did not have standing to sue her insurer under ERISA because she was no longer a member of the plan and would not benefit from the injunctive relief requested); *Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 64 (S.D.N.Y. 2000) (former plan members lacked standing because they would not benefit from requested injunctive relief); *Dickerson v. Feldman*, 426 F. Supp. 2d 130, 135 (S.D.N.Y. 2006) (former plan member could not demonstrate that "he has an injury that is redressable by this Court because he fails to show either a reasonable expectation of returning to covered employment or … a colorable claim to vested benefits.").

In sum, Plaintiff alleges no past monetary loss, asserts no ERISA claim for benefits from the Wellstar Plan, and has no future interest in the terms or operation of the Plan.  Plaintiff thus

lacks standing under Article III for the relief she seeks, and the Court therefore lacks subject matter jurisdiction over Plaintiff's claims.

**C.      Aetna Inc. is not a proper party and should be dismissed pursuant to Rule 12(b)(6).**

Aetna Inc. is a holding company that has no insurance operations or products, is not licensed to sell insurance, and has no role in the administration of Aetna health insurance plans. Allocca Decl. ¶¶ 4, 11-12.  The Plan documents make clear that the Claims Administrator for the WellStar Plan is Aetna Life Insurance Company.  DiBartola Decl., Exhibit A at 12, 118, 121. Aetna Inc. has no involvement with the daily insurance operations of Aetna Life Insurance Company and had no responsibility for or involvement with operations of the Wellstar Plan or the services performed by Aetna Life Insurance Company as Claims Administrator for that Plan. Allocca Decl. ¶¶ 6, 12.

Plaintiff's Complaint makes no allegations against Aetna Inc. except that Aetna Life Insurance Company is its subsidiary.  Compl. ¶ 21.  Plaintiff does not allege that Aetna Inc. had anything at all to do with the Wellstar Plan.  That Aetna Inc. is a parent company of Aetna Life Insurance Company does not, by itself, make Aetna Inc. a proper party to this action.  "It is fundamental that a parent is considered a legally separate entity from its subsidiary, and cannot be held liable for the subsidiary's actions based solely on its ownership of a controlling interest in the subsidiary." *New York State Elec. and Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014) (citing *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998)).

Aetna Inc. is not a proper party and should be dismissed pursuant to Rule 12(b)(6).

**V.**

## **CONCLUSION**

For the foregoing reasons, Aetna respectfully requests the Court dismiss Plaintiff's complaint pursuant to Rules 12(b)(1), 12(b)(6) and 12(b)(7).

Dated at Glastonbury, Connecticut this 1st day of April, 2022.

*/s/ Dennis O. Brown*
Dennis O. Brown (ct04598)
Gordon Rees Scully Mansukhani LLP
95 Glastonbury Blvd, Suite 206
Glastonbury, Connecticut 06033
Tel.: (860) 278-7448
Fax: (860) 560-0185
dbrown@grsm.com

Earl B. Austin
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Tel.: (212) 408-2500

Mariellen Dugan
CALCAGNI & KANEFSKY LLP
One Newark Center
1085 Raymond Boulevard, 14th Floor
Newark, New Jersey 07102
Tel.: 862-397-1796
mdugan@ck-litigation.com

*Attorneys for Defendants Aetna, Inc. and
Aetna Life Insurance Company*