**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TARA KULWICKI, on behalf of herself and all others similarly situated, | Case No. 3:22-CV-00229 (RNC) |
| PLAINTIFF, | |
| V. | |
| | **JURY TRIAL DEMANDED** |
| AETNA LIFE INSURANCE COMPANY, | |
| DEFENDANT | |

**AMENDED COMPLAINT – CLASS ACTION**

1.     Plaintiff, Tara Kulwicki, by and through her undersigned counsel, on behalf of herself and all others similarly situated, upon personal knowledge as to herself, and upon information and belief as to all other matters, alleges as follows:

**<u>INTRODUCTORY STATEMENT</u>**

2.     A person's access to health care must not be determined by their sex, sexual orientation, race, national origin, age, disability, or religion. When a health insurance policyholder seeks treatment from a physician, hospital, or other medical facility that is otherwise covered by the insurer, the policyholder expects, and is entitled to receive, the appropriate available care, regardless of whether they are a member of any class protected from discrimination by the Affordable Care Act ("ACA").

3.     This class action challenges the health insurance plan issued and administered by Defendant, Aetna Life Insurance Company ("Defendant" or "Aetna") which, on its face,

discriminates on the basis of sex, by denying those individuals assigned female sex at birth who cannot engage in coitus by reason of their sexual orientation, equal access to infertility treatments.

4.  Tara Kulwicki ("Plaintiff" or "Kulwicki") wants to have a child. As a homosexual woman, she cannot engage in coitus, but can become pregnant with alternative infertility treatments such as intrauterine insemination ("IUI"), in vitro fertilization ("IVF") or other Advanced Reproduction Technology ("ART").

5.  Plaintiff was employed as a Registered Labor and Delivery Nurse for Wellstar Health System at Wellstar Cobb Hospital in Atlanta, GA, and was enrolled in the Wellstar Employee Medical Plan (the "Medical Plan").

6.  The pertinent terms of the Medical Plan were drafted and designed by Aetna.

7.  Aetna performs claim administration services under the Medical Plan.

8.  Because Aetna is a health program or activity and issues and administers the Medical Plan, and because Aetna receives federal financial assistance including credits, subsidies, or contracts of insurance, Aetna is subject to the nondiscrimination provisions of the ACA. *See* 42 U.S.C. § 18116.

9.  Defendant's Medical Plan is a health program or activity that provides advanced infertility services benefits for individuals who wish to have a child but are considered "infertile," as defined in the Medical Plan.

10.  The Medical Plan defines an individual as "infertile" if they are under the age of 35 and have had either: 1) 12 months of timed, unprotected coitus; or 2) twelve cycles of IUI.[1]

---

[1] The twelve-month/twelve-cycle requirement is reduced to six-months/six-cycles for individuals older than age 35.

11.     The Medical Plan, designed by Defendant, provides full health benefits for infertility treatment services to females who represent to Defendant that they have engaged in unprotected coitus for the requisite number of months without a successful pregnancy.

12.     However, for Plaintiff and other non-heterosexuals, the option of "unprotected coitus" is unavailable. Consequently, Plaintiff and other non-heterosexual individuals assigned female sex at birth are discriminatorily forced to pay out-of-pocket for the costs of the requisite number of IUI cycles before they can obtain benefits for infertility treatment services (including IUI).

13.     In short, heterosexual individuals assigned female sex at birth may obtain infertility treatment without paying out-of-pocket for IUI treatments under the Medical Plan, while non-heterosexual individuals assigned female sex at birth must first pay for 6 or more IUI treatments before becoming eligible for infertility treatments under the Medical Plan (which, ironically, includes IUI treatments). In this regard, Defendant's Medical Plan is facially discriminatory against non-heterosexual individuals assigned female sex at birth.

14.     Plaintiff has suffered financial harm and emotional distress as a result of Defendant's discriminatory Medical Plan. After being denied coverage for IUI treatments under the Medical Plan, Plaintiff incurred the costs of IUI treatments directly.

15.     Defendant's Medical Plan facially subjects Plaintiff and other similarly situated non-heterosexual individuals assigned female sex at birth to discrimination, as it denies them, on the basis of their sexual orientation, the benefit of choosing how to establish "infertility" without out-of-pocket costs before they can qualify for alternative methods of infertility treatment under the Medical Plan.

16.     The Medical Plan, by its very terms, subjects non-heterosexual individuals assigned female sex at birth to discrimination by forcing them to pay out-of-pocket for IUI, compared to heterosexuals assigned female sex at birth, who are offered a choice between engaging in coitus or paying for IUI.

17.     Lacking such a choice, Plaintiff and other non-heterosexual individuals assigned female sex at birth have been excluded from full participation in Defendant's Medical Plan.

18.     Plaintiff brings this action on behalf of herself and all other similarly situated non-heterosexual individuals assigned female sex at birth who seek infertility treatment benefits under Defendant's Medical Plan, in order to end Defendant's willful and facial violation of the ACA's nondiscrimination provisions, by denying Plaintiff and similarly situated non-heterosexual individuals assigned female sex at birth the benefits of, and full participation in the Medical Plan, based on the sexual orientation of the individuals enrolled in the Medical Plan (the "Plan Holders"), and for a declaratory judgment.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under 28 U.S.C. § 18116(a).

20.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because, at all times relevant to this Complaint, Aetna's corporate headquarters and principal place of business is located in this District at 151 Farmington Ave, Hartford, Connecticut, 06156, and substantial parts of the events or omissions giving rise to the claims at issue in this Complaint occurred in this District. Venue is also proper because the causes of action arose here.

**PARTIES**

21.     Plaintiff Tara Kulwicki is a 40-year-old woman, and a citizen of the State of Georgia. Plaintiff is a homosexual woman assigned female sex at birth.

22.     Defendant Aetna Life Insurance Company is a subsidiary of Aetna Inc., with its principal place of business in Hartford, Connecticut, and is a citizen of the State of Connecticut.

23.     Aetna is one of the nation's largest health benefits companies and issues, administers, participates in, or is made up of numerous health programs and activities, including medical insurance plans that Aetna designs and issues to employers, educational institutions, and private individuals in Connecticut and throughout the United States.

24.     Aetna receives federal financial assistance via credits, subsidies, and/or contracts of insurance. For example, Aetna provides coverage of medical services in exchange for payments through Medicaid.

25.     At all relevant times, Aetna has issued and administered the Wellstar Employee Medical Plan for Plan Holder employees of Wellstar Health System, as well as numerous other medical plans also designed by Aetna, and containing the same pertinent provisions, for employers throughout the nation.

**FACTUAL ALLEGATIONS**

**Aetna's discriminatory Medical Plan**

26.     In February 2019, Plaintiff began working for Wellstar Health System, and enrolled in the Medical Plan, designed and administered by Defendant.

27.     Under the Medical Plan, coverage is provided for costs to "diagnose and to surgically treat the underlying medical cause of infertility."

28.     "Infertility" is defined under the Medical Plan as:

>   For a woman who is under 35 years of age: 1 year or more of timed, unprotected coitus, or 12 cycles of artificial insemination; or [f]or a woman who is 35 years of age or older: 6 months or more of timed, unprotected coitus, or 6 cycles of artificial insemination.

29.     Those enrolled in the Medical Plan who qualify for infertility treatment benefits may have the costs of Comprehensive Infertility Services ("CIS") covered under the Medical Plan. CIS includes "ovulation induction with menotropins," and IUI.

30.     Under the Medical Plan, if CIS treatments do not result in pregnancy, Plan Holders may receive authorization for Advanced Reproductive Technology ("ART") such as IVF.

31.     For the costs of CIS, and thus ART, to be covered under the Medical Plan, a Plan Holder would need to show that they meet the Defendant's definition of "infertile."

32.     Under the Medical Plan, Defendant offers individuals over the age of 35, two ways to establish that the Plan Holder is "infertile" and eligible to receive infertility treatment benefits. The Plan Holders may: 1) engage in unprotected coitus[2] at least once a month for a period of six months, without successful pregnancy, or 2) receive six monthly cycles of IUI, without successful pregnancy.

33.     Under this framework, Plan Holders who were assigned female sex at birth and have the capacity to engage in coitus are given a choice as to how they can establish that they are "infertile," as defined by the Medical Plan.

34.     If a Plan Holder assigned female sex at birth does not wish to or is unable to pay out-of-pocket costs for six cycles of IUI (or twelve cycles if under age 35), they need only represent

---

[2] Merriam Webster defines coitus as the "physical union of male and female genitalia accompanied by rhythmic movements. https://www.merriam-webster.com/dictionary/coitus (last accessed January 18, 2022).

to Defendant that they 1) are over the age of 35, and 2) have engaged in unprotected coitus for six months without successful pregnancy.

35.     However, Plaintiff and other similarly situated non-heterosexual individuals who were assigned female sex at birth do not have the capacity to become pregnant through "unprotected coitus" with their sexual partners.

36.     Under Defendant's Medical Plan, Plaintiff and other similarly situated non-heterosexual individuals assigned female sex at birth can only show that they are "infertile" by *paying the out-of-pocket costs* of six cycles of IUI. In other words, Plaintiff and other non-heterosexual individuals assigned female sex at birth can only qualify for CIS benefits by first paying for CIS for the requisite number of months (based upon their age).

37.     Plaintiff and other similarly situated non-heterosexual individuals assigned female sex at birth are thus deprived of the same benefits under the Medical Plan as heterosexual Plan Holders.

38.     Plaintiff and other similarly situated individuals are forced to pay thousands of dollars in out-of-pocket costs for IUI in order to qualify as "infertile," under the Medical Plan.

39.     The Medical Plan, by its very terms, limits non-heterosexual individuals assigned female sex at birth to the sole option of having to pay for IUI, compared to heterosexuals who have the choice between engaging in unprotected coitus or paying for IUI.

40.     Solely by virtue of their sexual orientation, therefore, Plaintiff and similarly situated non-heterosexual individuals assigned female sex at birth have suffered, and will continue to suffer discrimination by being denied the same benefits under the Medical Plan as those provided to heterosexual individuals.

41.     Plaintiff and other similarly situated individuals have suffered financial and emotional harm as a result of the discriminatory provisions in the Medical Plan.

**Defendant denies Plaintiff benefits under the Medical Plan due to her Sexual Orientation**

42.     Plaintiff, by reason of her sexual orientation does not have the capacity to become pregnant through coitus.

43.     In 2021, Plaintiff, desiring to become pregnant and start a family, submitted a request to Defendant for precertification to receive benefits for intrauterine insemination.

44.     However, Defendant denied Plaintiff's request, claiming that Plaintiff did not meet the definition of "infertile" under the Medical Plan.

45.     On July 15, 2021, Plaintiff sent Defendant a petition to reconsider its denial of her request for infertility treatment benefits on the basis that she did not wish to pay for the six cycles of IUI, and that the Medical Plan discriminated against her and other similarly situated individuals who, because of their sexual orientation, are unable to engage in coitus for the required number of months.

46.     In a letter to Plaintiff dated July 27, 2021, Defendant again denied Plaintiff's petition for infertility treatment benefits, stating that, "criteria has not been met," since Plaintiff has not shown that she is "infertile" by having, "[f]or a woman who is 35 years of age or older: six months or more of timed, unprotected coitus, or six cycles of artificial insemination, single female desiring for a donor insemination cycle."

47.     Defendant's denial letter stated that, in making its decision to uphold the denial, Defendant used its Clinical Policy Bulletin on Infertility ("Infertility CPB").

48.     The Infertility CPB states that:

For purposes of this policy, a member is considered infertile if he or she is unable to conceive or produce conception after 1 year of frequent, unprotected

8

heterosexual sexual intercourse, or **6 months of frequent, unprotected heterosexual sexual intercourse** if the female partner is 35 years of age or older. **Alternately, a woman without a male partner** may be considered infertile if she is unable to conceive or produce conception after at least 12 cycles of donor insemination (6 cycles for women 35 years of age or older).[3]

49.    Defendant responded to Plaintiff's July 15, 2021 complaint in a letter dated September 8, 2021.

50.    In the letter, Defendant stated that its "actions are in no way to discriminate against [Plaintiff], but to [apply benefits and] process claims equitably to all plan participants, in accordance with our claims policies and procedures." Further, Defendant also stated that it "is not discriminating against its members but [is] following the guidelines of [its] medical plan provision."

51.    Defendant's claim that it is not discriminating, but rather, simply following its "policies and procedures," overlooks the fact that Defendant's "policies and procedures"—which it drafted and designed—are facially discriminatory. The Medical Plan and the Infertility CPB expressly provide that individuals who have the capacity to engage in coitus need not pay out-of-pocket costs in order to obtain infertility treatment, but individuals who, because of their sexual orientation, are unable to engage in coitus, must first incur the costs of IUI before becoming eligible for such treatment.

52.    Plaintiff has been injured by Defendant's discriminatory Medical Plan that requires her and other similarly situated non-heterosexual individuals assigned female sex at birth, based on their sexual orientation, to pay out-of-pocket for infertility treatments as a prerequisite to receiving coverage for such services.

---

[3] Aetna, Infertility, Clinical Policy Bulletin No. 0237 (last reviewed November 12, 2021), available at: https://www.aetna.com/cpb/medical/data/300_399/0327.html (emphasis added).

53.     After being denied coverage, Plaintiff in fact incurred the costs of IUI treatments directly.

54.     Plaintiff has endured great emotional distress as of result of being denied the benefits of the Medical Plan and thereby having to choose a course of treatment based on cost, rather than based on her personal and medical circumstances in consultation with her doctor. Had Defendant covered the costs for IUI and IVF for Plaintiff as she initially requested, she would not have been forced to delay her personal decision to have a child.

55.     Since it becomes increasingly difficult to become pregnant with age, the delays caused by Defendant's discriminatory Medical Plan threatened the health of Plaintiff and her potential future child, and her ability to get pregnant. Pregnancy also becomes increasingly dangerous to a pregnant person's health, as well as to the health of the fetus, with age.

## CLASS ALLEGATIONS

56.     **Class Definition:** Plaintiff brings this action as a class action under Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, seeking declaratory relief and damages on behalf of the following Class of individuals:

> All non-heterosexual individuals who: 1) were assigned "female" at birth; 2) are covered by an Aetna medical or health insurance plan that includes or is governed by the definition of "infertility" appearing in Aetna's Clinical Policy Bulletin No. 0237 or a substantively similar definition; 3) because of their sexual orientation, cannot engage in coitus; and 4) either (a) submitted a claim for infertility treatment benefits and were denied; (b) paid out-of-pocket for infertility treatment; or (c) will submit and be denied benefits, or pay out-of-pocket, for infertility treatment.

57.     The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliates, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly

execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

58.     **Numerosity:** The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant is a large insurer that administers medical insurance plans, including employee plans, student health insurance plans, and plans for individuals and families. In 2018, Forbes listed Aetna as the third-largest health insurance company in the United States, with 22.2 million "health plan enrollees," and $60.6 billion in revenue.[4]  Upon information and belief, because of Defendant's discriminatory Medical Plan, a sufficient number of these individuals will be within the class definition to meet the numerosity requirement. The alleged Class is therefore sufficiently numerous.

59.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a.      Whether Defendant and/or Defendant's Medical Plan is a health program or activity, any part of which is receiving federal financial assistance, including credits, subsidies, or contracts of insurance, or is administered by an Executive Agency or any entity established under the ACA, 42 U.S.C. § 18001, *et seq.*

---

[4] Forbes, *America's Biggest Health Insurance Companies In 2018* (Feb. 20, 2018), https://www.forbes.com/pictures/5a8c601ca7ea43169013eb91/3-aetna/?sh=4c9d757f13e2.

b.       Whether the Medical Plan and any others containing the same pertinent provisions and that were drafted, designed, or administered by Aetna facially discriminate on the basis of sex, which includes sexual orientation.

c.       Whether Plaintiff and putative Class members were excluded from participation in, denied the benefits of, or subjected to discrimination under Defendant's medical or health insurance plans while seeking infertility treatment benefits.

d.       Whether the Defendant's policies and practices regarding disbursement of infertility treatment benefits under its medical plans constitute disparate treatment of Plaintiff and the putative Class.

e.       Whether Defendant's policies and practices regarding disbursement of infertility treatment benefits under its medical plans has resulted in, or will result in, a disparate impact on Plaintiff and the putative Class.

f.       Whether, as a result of Defendant's policies and practices regarding disbursement of infertility treatment benefits under its Medical Plan, Plaintiff and the putative Class are entitled to equitable, and/or declaratory relief, and if so, the nature of such.

g.       Whether Plaintiff and members of the putative Class are entitled to receive monetary damages as relief for their financial and emotional harm.

60.     **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action

on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

61.    **Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this dispute and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaints. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

62.    **Declaratory Relief: Federal Rule of Civil Procedure 23(b)(2).** The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class members and impair their interests. Defendant has acted and/or refused to act on grounds generally applicable to the Class, making final declaratory relief appropriate.

## COUNT I – DISPARATE TREATMENT DISCRIMINATION

Violation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a)

63.     Plaintiff and the putative Class reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

64.     Defendant receives federal financial assistance and is a "health program or activity" within the meaning of and subject to Section 1557 of the ACA.

65.     Section 1557 of the ACA provides that an individual shall not, on the grounds prohibited under Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. § 2000d, *et seq.* (race, color, national origin), Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.* (sex), the Age Discrimination Act of 1975 (Age Act), 42 U.S.C. § 6101, *et seq.* (age), or Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794 (disability), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving federal financial assistance, or under any program or activity that is administered by an Executive Agency or any entity established under Title I of the Act or its amendments. All of the enforcement mechanisms provided for and available under the foregoing statutes apply for purposes of Section 1557.

66.     Plaintiff and the putative Class members are (or were) otherwise participants in Defendant's health program(s) and are protected by the anti-discrimination provisions of Section 1557 of the ACA.

67.     On June 15, 2020, the Supreme Court of the United States issued its decision in *Bostock v. Clayton County*, holding that Title VII's protection against discrimination on the basis of sex also protects against discrimination based on sexual orientation, as "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against

14

that individual based on sex." *Bostock v. Clayton Cty. Georgia*, 140 S. Ct. 1731, 1741 (2020). The holding in *Bostock,* i.e., that discrimination under Title VII "on the basis of sex" includes discrimination on the basis of sexual orientation, applies analogously to discrimination "on the basis of sex" under Title IX, and, by statutory extension, to Section 1557 of the ACA.

68.     Section 1557 of the ACA, therefore, prohibits discrimination on the basis of sexual orientation in any health program or activity that receives federal financial assistance.

69.     Defendant has intentionally discriminated against Plaintiff and the putative Class on the basis of their sexual orientation, in violation of Section 1557 of ACA, as a matter of policy or practice.

70.     Specifically, Defendant intentionally discriminates on the basis of sexual orientation under Section 1557 by providing, under the express terms of its Medical Plan, stricter prerequisites to obtaining insurance benefits for infertility treatments for Plaintiff and the putative Class than it does for individuals with a different sexual orientation. Defendant's Medical Plan, for purposes of determining "infertility," treats non-heterosexual individuals differently than heterosexual individuals, by providing that "infertility" may be established by engaging in unprotected coitus, or, alternatively, by paying out-of-pocket for a requisite number of IUI treatments. Defendant's policy therefore constitutes facial disparate treatment discrimination in violation of Section 1557 or, at a minimum, evidence of Defendant's policy or practice of intentional disparate treatment discrimination, on the basis of sexual orientation.

71.     Just as the Supreme Court held in *Bostock,* that "[b]y discriminating against homosexuals, the [defendant] intentionally penalizes men for being attracted to men and women for being attracted to women," so too does Defendant's Medical Plan penalize Plaintiff and the putative Class, because of their sexual orientation. *Bostock*, 140 S. Ct. at 1746.

72.     As a direct result of Defendant's violation of Plaintiff's and putative Class members' rights under Section 1557 of the ACA, Plaintiff and the Class have suffered emotional distress and physical and financial injury.

73.     All acts and omissions committed by Defendant described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently, and/or with bad faith and said acts meet all of the standards for imposition of punitive damages.

74.     Accordingly, Plaintiff and the putative Class under Rule 23(b)(3) are entitled to compensatory and punitive damages, as well as reasonable attorneys' fees, costs, and disbursements.

75.     Plaintiff and members of the putative Class under Rule 23(b)(2) are entitled to declaratory relief; as well as reasonable attorneys' fees, costs, and disbursements.

## COUNT II – DISPARATE IMPACT DISCRIMINATION

Violation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a)

76.     Plaintiff and the putative Class reallege the allegations contained in the preceding paragraphs (other than in Count I) as if fully set forth herein.

77.     Defendant receives federal financial assistance and is a "health program or activity" within the meaning of and subject to Section 1557 of the ACA.

78.     Section 1557 of the ACA provides that an individual shall not, on the grounds prohibited under Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, *et seq.* (race, color, national origin), Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, *et seq.* (sex), the Age Discrimination Act of 1975 ("Age Act"), 42 U.S.C. § 6101, *et seq.* (age), or Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 (disability), be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under, any health program or activity, any part of which is receiving federal financial assistance, or under any program or activity that is administered by an Executive Agency or any entity established under Title I of the Act or its amendments. All of the enforcement mechanisms provided for and available under the foregoing statutes apply for purposes of Section 1557.

79.     Plaintiff and the putative Class members are or were otherwise participants in Defendant's health program(s) and are protected by the anti-discrimination provisions of Section 1557 of the ACA.

80.     On June 15, 2020, the Supreme Court of the United States issued its decision in *Bostock v. Clayton County*, holding that Title VII's protection against discrimination on the basis of sex also protects against discrimination based on sexual orientation, as "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Bostock v. Clayton Cty. Georgia*, 140 S. Ct. 1731, 1741 (2020). The holding in *Bostock,* i.e., that discrimination under Title VII "on the basis of sex" includes discrimination on the basis of sexual orientation, applies analogously to discrimination "on the basis of sex" under Title IX.

81.     Section 1557 of the ACA, therefore, prohibits discrimination on the basis of sexual orientation in any health program or activity that receives federal financial assistance.

82.     In the alternative to Count I, and to the extent that Defendant denies the existence of a facially discriminatory policy on the basis of sexual orientation against Plaintiff and the putative Class,  Plaintiff and the Class allege that Defendant's policy, even if facially neutral as to their sexual orientation, has (or had) an illegal and discriminatorily disparate impact on Plaintiff and the putative Class, all of whom are non-heterosexual, without any business necessity.

Defendant's Medical Plan's adverse impact against non-heterosexual individuals stems from the Medical Plan's provision that "infertility" may be established by engaging in unprotected coitus, or, alternatively, by paying out-of-pocket for a requisite number of IUI treatments. The application of the Medical Plan, to the extent it is not facially and intentionally discriminatory against non-heterosexual individuals, adversely and disparately impacts non-heterosexual individuals.

83.     Just as the Supreme Court held in *Bostock,* that "[b]y discriminating against homosexuals, the [defendant] intentionally penalizes men for being attracted to men and women for being attracted to women," so too does Defendant's Medical Plan penalize Plaintiff and the putative Class, simply because of their sexual orientation. *Bostock*, 140 S. Ct. at 1746.

84.     As a direct result of Defendant's violation of Plaintiff's and putative Class members' rights under Section 1557 of the ACA, Plaintiff and the Class have suffered emotional distress and physical and financial injury.

85.     All acts and omissions committed by Defendant described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently, and/or with bad faith and said acts meet all of the standards for imposition of punitive damages.

86.     Accordingly, Plaintiff and the putative Class under Rule 23(b)(3) are entitled to compensatory and punitive damages, as well as reasonable attorneys' fees, costs, and disbursements.

87.     Plaintiff and members of the putative Class under Rule 23(b)(2) are entitled to declaratory relief, as well as reasonable attorneys' fees, costs, and disbursements.

## COUNT III – DECLARATORY JUDGMENT

Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

88.     Plaintiff and the putative Class reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

89.     Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

90.     An actual controversy has arisen in light of Defendant's discrimination on the basis of sexual orientation in violation of Section 1557 of the ACA, by designing, drafting, and administering medical benefit plans that require non-heterosexual individuals assigned female sex at birth to pay large out-of-pocket costs as a prerequisite to receiving benefits for infertility treatment services. Section 1557 of the ACA prohibits discrimination on the basis of sex, including discrimination on the basis of sexual orientation and gender identity, in any health program or activity that receives federal financial assistance. By Defendant receiving federal financial assistance via credits, subsidies, and/or contracts of insurance and by providing coverage of medical services in exchange for payments through Medicaid, Defendant was required to comply with the ACA, 42 U.S.C. § 18001, *et seq*. Defendant denies these allegations.

91.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    Defendant owes a legal duty to comply with Section 1557 of the ACA to not deny benefits for infertility treatment on the basis of sexual orientation in any of the medical plans it designs, drafts, issues, sells, or administers;

b.      Reasonable consumers would expect Defendant to comply with Section 1557 of the ACA and to provide benefits for infertility treatment to Plaintiff and the putative Class; and

c.      Defendant continues to breach its legal duties by denying members of the putative Class benefits under the Medical Plan, and other medical plans throughout the country, for infertility treatment on the basis of sexual orientation.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully request that this Court enter judgment against Defendant and in favor of Plaintiff and the Class, and award the following relief:

A.      An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as representative of the Class and Plaintiff's counsel as counsel for the Class;

B.      An order awarding declaratory relief and all related damages, including, at the least, nominal damages in recognition of Plaintiff's vindication of important statutory and constitutional rights;

C.      An order awarding costs, restitution, disgorgement, compensatory damages, and out-of-pocket expenses in an amount to be determined at trial;

D.      An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

E.      An award of costs, expenses, and attorneys' fees as permitted by law; and

F.      Such other or further relief as the Court may deem appropriate, just, and equitable.

20

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of any and all issues in this action so triable.


Dated: May 13, 2022

*/s/  Gary F. Lynch*
Gary F. Lynch (p.h.v.)
Kelly K. Iverson
Jamisen Etzel (p.h.v.)
**LYNCH CARPENTER, LLP**
1133 Penn Ave
Pittsburgh, PA 15232
Tel:      (412) 322-9243
Fax:      (412) 231-0246
gary@lcllp.com
kelly@lcllp.com
jamisen@lcllp.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Joseph P. Guglielmo
Carey Alexander
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Tel:      (212) 223-6444
Fax:      (212) 223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

**THE FINLEY FIRM**
MaryBeth V. Gibson (p.h.v.)
Piedmont Center
3535 Piedmont Center
Building 14, Suite 230
Atlanta, GA 30305
Tel:      (404) 978-6971
Fax:      (404) 320-9978
MGibson@thefinleyfirm.com

**JOHNSTON LYKOS, LLC**
Colleen Ramage Johnston
525 William Penn Place, 28th Floor
Pittsburgh, PA 15232
Tel:      (412) 325-7701

21

Fax:        (412) 325-7755
cjohnston@johnstonlykos.law

***Counsel for Plaintiff and the putative
Class***