**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TARA KULWICKI, on behalf of herself and all others similarly situated, | Case No. 3:22-CV-00229 (RNC) |
| Plaintiff, | |
| v. | |
| AETNA LIFE INSURANCE COMPANY, | |
| Defendant | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Oral Argument Requested

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 2

III. STANDARD OF REVIEW ................................................................................ 6

IV.  ARGUMENT ..................................................................................................... 7

    A.  Plaintiff Sufficiently Alleged Stand-Alone Discrimination
    and Declaratory Judgment Claims Against Aetna, Which Do Not
    Require the Joinder of Any Other, Unnecessary Parties................................. 7

        1.  Wellstar Health and the Wellstar Plan Are Not Necessary Under
        Rule 19(a) Because Aetna's Violation of Section 1557 of the ACA S
        tands Alone, and Aetna Can Remedy the Discrimination Suffered by
        Plaintiff by Paying Damages ....................................................................... 9

        2.  Even If the Wellstar Plan or Wellstar Health Are Necessary Parties,
        They Are Not Indispensable Under 19(b)................................................. 15

    B.  Plaintiff Has Standing for Her Discrimination Claim and for
    Her Declaratory Judgment Claim Against Defendant. .................................. 17

        1.  Injury-in-Fact ............................................................................................ 18

        2.  Traceability ............................................................................................... 19

        3.  Redressability............................................................................................ 20

V.   CONCLUSION ................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                  <u>Page(s)</u>

*Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*,
    795 F.3d 351 (2d Cir. 2015)...................................................................................... 6

*APWU v. Potter*,
    343 F.3d 619 (2d Cir. 2003)...................................................................................... 7

*Associated Dry Goods Corp. v. Towers Fin.*,
    *Grp.*, 920 F.2d 1121 (2nd Cir. 1990) ...................................................................... 8

*Barrows v. Becerra*,
    24 F.4th 116 (2d Cir. 2022) .................................................................................... 17

*Baur v. Veneman*,
    352 F.3d 625 (2d Cir. 2003)............................................................................... 17, 18

*Bennet v. State Farm Mut. Auto. Ins. Co.*,
    943 F. Supp. 821 (N.D. Ohio 1996)........................................................................ 21

*California v. Texas*,
    141 S. Ct. 2104 (2021)............................................................................................ 20

*Carr v. United Healthcare Servs. Inc*,
    2016 WL 7716060 (W.D. Wash. May 31, 2016)..................................................... 11

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983).................................................................................................. 17

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*,
    945 F.3d 83 (2d Cir. 2019)...................................................................................... 17

*ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*,
    102 F.3d 677 (2d Cir. 1996)...................................................................................... 9

*CP Solutions PTE, Ltd. v. General Elec. Co.*,
    553 F.3d 156 (2d Cir. 2009).................................................................................... 15

*Czyzewski v. Jevic Holding Corp.*,
    137 S. Ct. 973 (2017).............................................................................................. 18

*Des Roches v. California Physicians' Svc.*,
    320 F.R.D. 486 (N.D. Cal. 2017)............................................................................ 12

*Direct Energy Mktg. Ltd. v. Duke/Louis Dreyfus, LLC*,
    50 F. App'x 469 (2d Cir. 2002) .............................................................................. 14

*Errico v. Stryker Corp.*,
    2010 WL 5174361 (S.D.N.Y. Dec. 14, 2010) ........................................... 13

*Franklin v. Gwinnett Cnty. Pub. Sch.*,
    503 U.S. 60 (1992) ...................................................................................... 13

*Griffin v. Gen. Elec. Co.*,
    2017 WL 8785572 (N.D. Ga. Dec. 6, 2017) ............................................... 15

*Harty v. W. Point Realty, Inc.*,
    28 F.4th 435 (2d Cir. 2022) .......................................................................... 7

*Heckler v. Mathews*,
    465 U.S. 728 (1984) .................................................................................... 18

*Heldman v. Sobol*,
    962 F.2d 148 (2d Cir. 1992) ........................................................................ 19

*Jonesfilm v. Lion Gate Int'l*,
    299 F.3d 134 (2d Cir. 2002) ...................................................................... 8–9

*Kadel v. N. Carolina State Health Plan for Tchrs. & State Emps.*,
    12 F.4th 422 (4th Cir. 2021) ....................................................................... 15

*Kraebel v. New York City Dep't of Hous. Pres. & Dev.*,
    1994 WL 132239 (S.D.N.Y. Apr. 14, 1994) ............................................... 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) .................................................................................... 19

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................... 18, 20

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) .................................................................... 7, 17

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013) ......................................................................... 8

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
    471 F.3d 377 (2d Cir. 2006) ......................................................................... 8

*McNeil v. Yale Chapter of Alpha Delta Phi Int'l, Inc.*,
    2021 WL 5286647 (2d Cir. Nov. 15, 2021) .................................................. 7

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) .................................................................................... 20

*Meidl v. Aetna, Inc.*,
  2017 WL 1831916 (D. Conn. May 4, 2017)................................................ 20–21

*Moore v. PaineWebber, Inc.*,
  189 F.3d 165 (2d Cir. 1999)...................................................................... 7

*Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*,
  2006 WL 2337186 (S.D.N.Y. Aug. 11, 2006).......................................... 6

*Prescription Plan Serv. Corp. v. Franco*,
  552 F.2d 493 (2d Cir. 1977)...................................................................... 15

*Quinn v. Fishkin*,
  117 F. Supp. 3d 134 (D. Conn. 2015)...................................................... 6

*Raines v. Byrd*,
  521 U.S. 811 (1997)................................................................................... 17

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013)........................................................................ 19

*Rumble v. Fairview Health Svcs.*,
  2015 WL 1197415 (D. Minn. March 16, 2015)......................................... 15

*Shanshan Shao v. Beta Pharma, Inc.*,
  2017 WL 4955506 (D. Conn. Nov. 1, 2017) ............................................ 8, 15

*Snow v. Nevada Dept. of Prisons*,
  582 F. Supp. 53 (D. Nev. 1984)............................................................... 21

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)................................................................................... 18

*Takeda v. Nw. Nat. Life Ins. Co.*,
  765 F.2d 815 (9th Cir. 1985) .................................................................... 11, 12, 16

*Tovar v. Essentia Health*,
  342 F. Supp. 3d 947 (D. Minn. 2018)...................................................... 10, 11

*Tovar v. Essentia Health*,
  857 F.3d 771 (8th Cir. 2017) .................................................................... 16

*Tross v. Ritz Carlton Hotel Co., LLC*,
  928 F. Supp. 2d 498 ................................................................................. 6

*Uzuegbunam v. Preczewski*,
  141 S. Ct. 792 (2021)................................................................................ 18

*Viacom Int'l, Inc. v. Kearney*,
   212 F.3d 721 (2d Cir. 2000)................................................................................. 8

*Walker v. Azar*,
   2020 WL 4749859 (E.D.N.Y. Aug. 17, 2020) ...................................................... 18

*Watt v. Energy Action Educ. Found.*,
   454 U.S. 151 (1981)...................................................................................... 18–19

## **Statutes**

Affordable Care Act, Section 1557 (42 U.S.C. § 18116) ..................................... passim

20 U.S.C. § 1681 ............................................................................................. 9

29 U.S.C. § 1144 .......................................................................................... 10

42 U.S.C. § 2000d.......................................................................................... 9

42 U.S.C. § 6101............................................................................................ 9

## **Rules**

Fed. R. Civ. P. 12........................................................................................ passim

Fed. R. Civ. P. 19........................................................................................ passim

## **Other Authorities**

5C Charles Alan Wright & Arthur R. Miller,
   Federal Practice and Procedure § 1359 (3d ed.) ...................................................... 6

## I.  __INTRODUCTION__

Plaintiff Tara Kulwicki, a lesbian woman, suffered sexual orientation discrimination and financial harm when she was denied coverage for infertility treatment because she had not paid out of pocket for six cycles of artificial insemination—a requirement that women with male sexual partners do not need to satisfy. The healthcare plan model creating this discriminatory requirement originated with Defendant Aetna Life Insurance Company, which sold the plan design to Plaintiff's employer (at the relevant times), and further participated in the discrimination by assisting Plaintiff's employer in administering the plan, including by recommending denial of the benefits Plaintiff requested and communicating that denial to Plaintiff. For these reasons, Aetna is liable in its own capacity for unlawful discrimination under the Affordable Care Act ("ACA") and owes damages to Plaintiff and similarly situated class members.

In its motion to dismiss, Aetna misconstrues the nature of Plaintiff's claim as stated in her amended complaint, arguing she "seeks to rewrite" the plan language or recover plan benefits, and that therefore Plaintiff's former employer is a necessary party. None of that is factually or legally correct. Plaintiff's case is only about whether Aetna's own actions were unlawfully discriminatory under the ACA. If they were, Aetna owes damages, and the Court may award that relief without the involvement of any other defendants.

Plaintiff meets all of Article III's standing requirements because she alleged that she suffered discrimination which resulted in out-of-pocket financial losses. These are directly traceable to Aetna's conduct and redressable through an award of damages payable by Aetna.

For these reasons, and as explained in more detail below, the Court should deny Aetna's motion.

1

## II.    **BACKGROUND**

Plaintiff Tara Kulwicki ("Plaintiff" or "Kulwicki") wishes to start a family. As a lesbian, she cannot engage in heterosexual sexual intercourse. Rather, because of her sexual orientation, Plaintiff requires infertility treatments to become pregnant, such as intrauterine insemination ("IUI"), in vitro fertilization ("IVF"), or other Advanced Reproduction Technology ("ART"). (Compl. ¶ 4).[1] She can however become pregnant with alternative infertility treatments *Id.* In 2021, Plaintiff was employed as a Registered Labor and Delivery Nurse for Wellstar Health System at Wellstar Cobb Hospital in Atlanta, GA. While employed there, Plaintiff was enrolled in the Wellstar Employee Medical Plan (the "Medical Plan"). Notably, the pertinent terms of the Medical Plan were designed by Aetna. (Compl. ¶ 6). The Medical Plan provides full health benefits to females to diagnose and surgically treat the causes of infertility. (*See* Summary Plan Description, attached as Exhibit A to Declaration of Teresa DiBartola (hereinafter, "SPD"), ECF 50-2 at 80). Members of the Medical Plan who qualify for infertility treatment benefits may have the costs of Comprehensive Infertility Services ("CIS"), including "ovulation induction with menotropins," and IUI, covered. (Compl. ¶ 29; SPD, ECF 50-2 at 81). Should CIS treatments not result in successful pregnancy, members may receive authorization for Advanced Reproductive Technology ("ART") such as IVF. (Compl. ¶ 30). Under the Medical Plan that Defendant designed, members of the Medical Plan must show they are "infertile," defined as:

> For a woman who is under 35 years of age: 1 year or more of timed, unprotected coitus, or 12 cycles of artificial insemination; or [f]or a woman who is 35 years of age or older: 6 months or more of timed, unprotected coitus, or 6 cycles of artificial insemination.

---

[1] All citations to "Compl." refer to Plaintiff's Amended Complaint at ECF 42.

(SPD, ECF 50-2 at 80).[2]   Seeking to become pregnant, in 2021 Plaintiff sent a request for precertification of insurance benefits to Defendant to cover the costs of intrauterine insemination. (Compl. at ¶ 43).

Defendant denied Plaintiff's claim by letter dated June 29, 2021. (*See* Denial Letter, ECD 50-3 at 5-10). In the letter, Aetna stated that it made the coverage decision to deny benefits to Plaintiff based upon, *inter alia*, its internal Clinical Policy Bulletins ("CPB").[3] (*Id.*). Aetna's CPBs are internal policy directives setting out its coverage positions for specific treatments. *See Aetna Clinical Policy Bulletins*, Aetna, https://www.aetna.com/health-care-professionals/clinical-policy-bulletins.html, (last visited June 22, 2022).

Aetna's CPB 0327 ("Infertility CPB") defines whether an individual is "infertile" for the purpose of qualifying for infertility coverage. (Compl. ¶ 48). Aetna's Infertility CPB specifically states:

> For purposes of this policy, a member is considered infertile if he or she is unable to conceive or produce conception after 1 year of frequent, unprotected heterosexual sexual intercourse, or **6 months of frequent, unprotected heterosexual sexual intercourse if the female partner is 35 years of age or older**. Alternately, a woman without a male partner may be considered infertile if she is unable to conceive or produce conception after at least 12 cycles of donor insemination (6 cycles for women 35 years of age or older). However, this definition of infertility may vary due to state mandates and plan customization; please check plan documents.

---

[2] Merriam Webster defines 'coitus' as the "physical union of male and female genitalia accompanied by rhythmic movements." https://www.merriam-webster.com/dictionary/coitus (last accessed June 17, 2022).

[3] Defendant also based the denial on its own interpretation of language defining "infertility," not set forth in the Medical Plan, which it stated is defined as "the inability to get pregnant after egg and sperm contact by either: (1) frequent, unprotected sex or (2) donor insemination if there is no male partner for at least (a) one year at any age, or (b) six months if older than 35." (*Id.* at 6).

(Compl. ¶ 48). The Infertility CPB's coverage for infertility treatment is materially and functionally the same as the Medical Plan's coverage for infertility treatment, but the Medical Plan uses slightly different language. Under the Medical Plan, "Infertility" is defined as:

> For a woman who is under 35 years of age: 1 year or more of timed unprotected coitus, or 12 cycles or artificial insemination; or [f]or a woman who is 35 years of age or older: 6 months or more of timed unprotected coitus, or 6 cycles of artificial insemination.

(Compl. ¶ 28; SPD, ECF 50-2 at 80).

When Aetna denied coverage for Plaintiff's infertility treatment, it did not rely on the Medical Plan's language. (Compl. ¶¶ 46-47). Instead, Aetna reached the decision using its own Infertility CPB. (Denial Letter, ECF 50-3 at 5-6, 11-12, 17-18) (defining infertility to mean "the inability to get pregnant after egg and sperm contact by either: (1) frequent, unprotected sex or (2) donor insemination if there is no male partner for at least (a) one year at any age, or (b) six months if older than 35.").

On July 15, 2021, Plaintiff appealed Defendant's decision and requested that Aetna reconsider its denial of her request for infertility treatment benefits on the basis that she did not wish to pay for the six cycles of IUI, and that the denial of benefits based on her inability to engage in heterosexual sexual intercourse discriminated against her and other similarly situated individuals based on their sexual orientation. (Compl. ¶ 45). By letter dated July 27, 2021, Aetna denied Plaintiff's request to reconsider the denial of benefits, stating that it "was standing by [its] earlier decision." (Compl. ¶ 46; Appeal Denial Letter, ECF 50-3 at 27–36). Defendant again relied upon its internal CPB to make its decision. (Appeal Denial Letter at 28). Aetna further responded to Plaintiff's complaint of discrimination by letter dated September 8, 2021, stating: "Our actions are in no way to discriminate against you, but to apply the benefits of your plan and process claims

equitable to all plan participants, **in accordance with our claims policies and procedures**." (Complaint Response Letter, ECF 50-3 at 39-47) (emphasis added).

In short, Aetna's conduct enforces the facially discriminatory terms of the Medical Plan it designed, through reliance on Aetna's facially discriminatory CPB policies, such that heterosexual individuals assigned female sex at birth may obtain infertility treatment without paying out-of-pocket for IUI treatments, while Plaintiff and other non-heterosexual individuals assigned female sex at birth must first pay for 6 or more IUI treatments before becoming eligible for infertility treatments under the Medical Plan (which, ironically, includes IUI treatments).

Plaintiff initiated this action on February 9, 2022 (ECF 1). Plaintiff filed an Amended Complaint on May 13, 2022. (ECF 42). Plaintiff asserts three causes of action against Defendant:

(1)    **Disparate Treatment Discrimination under ACA § 1557:** Defendant intentionally discriminates on the basis of sexual orientation, in violation of Section 1557, by providing, under the Clinical Policy Bulletin and the Medical Plan that it designed and administers, stricter prerequisites to obtaining insurance benefits for infertility treatments for Plaintiff and the putative Class than it does for individuals with a different sexual orientation. (Compl. ¶ 70).

(2)    **Disparate Impact Discrimination under ACA § 1557:** Defendant's Clinical Policy Bulletin and the Medical Plan that it designed and administers, even if facially neutral as to sexual orientation, has (or had) an illegal and discriminatorily disparate impact on Plaintiff and the putative Class, all of whom are non-heterosexual, without any business necessity. (Compl. ¶ 82).

(3)    **Declaratory Judgment**: Pursuant to its authority under the Declaratory Judgment Act, Plaintiff requests that this Court enter a judgment declaring the following:

a.  Defendant owes a legal duty to comply with Section 1557 of the ACA to not deny benefits for infertility treatment on the basis of sexual orientation in any of the healthcare plans it designs, drafts, issues, sells, or administers;

b.  Reasonable consumers would expect Defendant to comply with Section 1557 of the ACA and to provide benefits for infertility treatment to Plaintiff and the putative Class; and

c.  Defendant continues to breach its legal duties by denying members of the putative Class benefits under the Medical Plan, and other healthcare plans with the same Plan language throughout the country, for infertility treatment on the basis of sexual orientation.

## III.    **STANDARD OF REVIEW**

Upon review of a Rule 12(b)(7) motion to dismiss for failure to join a party under Rule 19, "a court must accept all factual allegations...as true and draw inferences in favor of the non-moving party." *Quinn v. Fishkin*, 117 F. Supp. 3d 134, 139 (D. Conn. 2015) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1359 (3d ed.)); *see also Tross v. Ritz Carlton Hotel Co., LLC*, 928 F. Supp. 2d 498, 507, n. 2 (D. Conn. 2013). Courts are "extremely reluctant" to dismiss actions based on nonjoinder, and generally will only dismiss such actions where "the defect cannot be cured, and serious prejudice or inefficiency will result." *Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 357 (2d Cir. 2015) (quoting 7 Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1609 (3d ed. 2015). Further, a Rule 12(b)(7) motion should be denied where a court finds "insufficient or contradictory evidence concerning whether a party is a 'necessary party'" under Rule 19(a). *Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186, at *8 (S.D.N.Y. Aug. 11, 2006).

An action should not be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1), unless "the district court lacks the statutory or constitutional power to adjudicate" the claim, such as when Article III standing is not met. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The Second Circuit Court has held that district courts enjoy considerable latitude in devising the procedures to follow for determining facts pertinent to jurisdiction. *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003). A court may consider two types of challenges under Rule 12(b)(1) motion: (1) a facial attack, which challenges the plaintiff's allegations within the complaint, and (2) a factual attack, which looks beyond the pleadings to resolve facts and determine jurisdiction. *McNeil v. Yale Chapter of Alpha Delta Phi Int'l, Inc.*, 2021 WL 5286647, at *1 (2d Cir. Nov. 15, 2021) (*citing Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999)). When the extrinsic evidence submitted by the moving party does not controvert the material allegations of the complaint, it is not error for the district court to base its ruling solely on the allegations of the complaint. *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).

As explained in detail below, Plaintiff did not fail to join indispensable parties and satisfies the requirements of Article III standing. Therefore, Defendant's Motion should be denied.

## IV.    ARGUMENT

### A.    Plaintiff Sufficiently Alleged Stand-Alone Discrimination and Declaratory Judgment Claims Against Aetna, Which Do Not Require the Joinder of Any Other, Unnecessary Parties.

Aetna misstates the nature of Plaintiff's claim when it alleges that it cannot be sued for a violation of the ACA's anti-discrimination provision without the inclusion of WellStar Health, which it maintains is the plan administrator and plan sponsor, and without naming the WellStar Plan itself. Contrary to Aetna's assertion, Plaintiff's Amended Complaint does *not* seek to recover benefits under the Medical Plan. Plaintiff's action is not an ERISA claim. Rather, Plaintiff's action

is based on Defendant's discrimination against her in its design and administration of the Medical Plan, which resulted in denial of benefits to Plaintiff. Defendant, Aetna Life Insurance Company, is a proper and direct defendant for Plaintiff's discrimination claim under the ACA, and no other parties are necessary to adjudicate that claim and to award damages and declaratory relief to Plaintiff.

Rule 19 establishes a two-prong test for determining whether an action is properly dismissed for failure to join an indispensable party under Rule 12(b)(7). *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). First, under Rule 19(a), a party is considered "necessary" if, in their absence, "the court cannot accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A), or if the absent party claims an interest "relating to the subject of the action and is so situated that disposing of the action in the person's absence may " either "as a practical matter impair or impede the person's ability to protect the interest," or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Id.* (a)(1)(B); *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 131 (2d Cir. 2013); *see also MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006).

If the court determines that the absent party is necessary, it proceeds to the second prong, pursuant to Rule 19(b), and analyzes whether the party is "indispensable," meaning that "in equity and good conscience," the action should not proceed in the necessary party's absence." *Associated Dry Goods Corp. v. Towers Fin. Grp.*, 920 F.2d 1121, 1124 (2nd Cir. 1990); *see also Shanshan Shao v. Beta Pharma, Inc.*, 2017 WL 4955506, at *3 (D. Conn. Nov. 1, 2017). A party is only "indispensable" if it is also "necessary" under Rule 19(a). *Jonesfilm v. Lion Gate Int'l*, 299 F.3d

134, 139 (2d Cir. 2002) (citing *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 681 (2d Cir. 1996)).

> 1. **Wellstar Health and the Wellstar Plan Are Not Necessary Under Rule 19(a) Because Aetna's Violation of Section 1557 of the ACA Stands Alone, and Aetna Can Remedy the Discrimination Suffered by Plaintiff by Paying Damages**

Aetna argues that the Court cannot afford Plaintiff complete relief without joining Wellstar Health and the Wellstar Plan because Aetna claims that it maintains little control over the healthcare plans it administers, including the Medical Plan. However, Aetna glosses over the Amended Complaint's allegation that Defendant designed the healthcare plans specifically for adoption by the plan sponsors and that, in administering the Medical Plan and denying Plaintiff's benefits, Aetna relied on its own "Clinical Policy Bulletin" that sets forth a facially discriminatory definition of "infertility." (Compl. ¶¶ 3, 6–7, 11, 26, 45–52).

Section 1557 of the ACA provides:

> "[An] individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of title 29, be excluded from participation in, **be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance**, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title [1] (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a) (emphasis added).

In its Motion to Dismiss, Defendant does not challenge Plaintiff's allegations that Defendant is covered under Section 1557 of the ACA as the designer of the Medical Plan and as

its claim administrator.[4] Instead, Defendant argues that the language of the Medical Plan absolves it of any independent duty or obligation under the ACA without the inclusion of other parties. This contention is without merit and has already been rejected by other federal courts. While Defendant claims that its responsibility is solely to administer the Medical Plan according to its terms, under the ACA, it cannot do so where such administration causes an individual who is a member of a protected class to "be subjected to discrimination." Indeed, ERISA does not nullify or preempt Defendant's non-discrimination obligations under other *federal* laws, like the ACA. *See* 29 U.S.C. § 1144 ("Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States. . ."). Under the ACA, Defendant has an independent, affirmative obligation to design the Medical Plan and administer claims in a nondiscriminatory way. Defendant cannot skirt its responsibility to comply with the nation's anti-discrimination laws by purporting to assign all of those responsibilities to its contractual partners.

Aetna's role here is directly analogous to the third-party claim administrator in *Tovar v. Essentia Health*, 342 F. Supp. 3d 947 (D. Minn. 2018). In *Tovar*, plaintiffs who were denied benefits for all health services related to gender transition sued the employer-sponsor and third-party claim administrator of the healthcare plan, alleging sex-based discrimination under ACA § 1557. *Id.* at 950–51. Like Aetna, the third-party claim administrator argued that the plan's terms were under the sole discretion and control of the employer. *Id.* at 954. Further like Aetna, the claim administrator in *Tovar* asserted that, under ERISA, it was only able to administer the plan according to its terms. *Id.* The court disagreed, holding that "[n]othing in Section 1557, explicitly or implicitly, suggests that [third-party administrators of healthcare plans] are exempt from the

---

[4] Because Defendant is a "health program or activity" that receives federal financial assistance, it is a proper party under ACA § 1557. *See* 42 U.S.C. § 18116.

[ACA's] nondiscrimination requirements," and that ERISA "carves out room for [third-party administrators] to comply with other federal laws." *Id.*

While *Tovar* addressed only a third-party claim administrator's potential direct liability under the ACA and not joinder, courts have recognized in the ERISA context that the question of whether a self-funded plan employer-sponsor is a necessary party to litigation against the plan's claim administrator turns on the specific claims and associated relief sought by the plaintiff. *See Carr v. United Healthcare Servs. Inc*, 2016 WL 7716060, at *4 (W.D. Wash. May 31, 2016). The court's decision in *Carr* is particularly instructive. In *Carr*, the plaintiff was a beneficiary of its employer's self-funded health insurance plan and alleged that the claim administrator enforced a plan that violated the Mental Health Parity and Addiction Act. *Id.* at * 1. As here, Plaintiff sought both damages and declaratory relief. *Id.* The claim administrator moved to compel the joinder of the plan administrator (*i.e.*, the employer) under Rule 19. *Id.* at *3. The court denied the motion because the plaintiff could obtain complete relief without the plan administrator as a party. *Id.* at *3–4. In so ruling, the court specifically rejected the argument that the plan administrator was a necessary party because it was in a better position to defend against the plaintiff's accusations. *Id.* Further, the court noted that, although the plaintiff's complaint did not name the plan administrator, the plaintiff had "crafted her relief request such that she may obtain the relief she requests without [plan administrator] as a party." *Id.* The same is true here because Aetna can pay Plaintiff the damages she seeks.

Defendant's reliance on *Takeda v. Nw. Nat. Life Ins. Co.*, 765 F.2d 815 (9th Cir. 1985), misses the mark. In *Takeda*, the plan administrator of a self-funded plan was held to be a necessary party because the plaintiffs sought the payment of benefits under the plan, which the self-funded plan would have to pay. *Id.* at 820. Thus, without the plan administrator, a judgment could not

11

afford complete relief to the plaintiffs. *Id.* That is not the case here. First, Plaintiff does not seek plan benefits in her complaint. Instead she seeks, *inter alia*, compensatory money damages for her out-of-pocket financial costs caused by the discrimination, Compl. ¶¶ 14, 72, 74, 84, 86, which she can receive directly from Aetna itself through this action. Second, as Aetna correctly points out, Plaintiff is no longer a participant in the Wellstar Plan (Aetna Brief at 8), so she cannot force Wellstar to "pay benefits" under that plan anyway.

Defendant's argument that Plaintiff's former employer or the plan sponsor are necessary parties relies entirely on repeated and inaccurate characterizations of the action as seeking "to rewrite a health plan." (Aetna Brief, ECF 50-1 at 1, 2, 15, 19, 25). But that is not what the amended complaint says. Instead, Plaintiff seeks money damages for discrimination on the basis of sexual orientation under Section 1557 of the ACA and additionally seeks a declaration that Defendant's actions in designing facially discriminatory plan terms and facilitating denial of benefits under those terms and its Clinical Policy Bulletin violates Section 1557 of the ACA. (Compl. ¶¶ 74–75, 86–87, 91 & p. 20 (Prayer for Relief) at ¶¶ B–C). Thus, Plaintiff's requested relief does not require the presence of the WellStar Plan or Wellstar Health, and Plaintiff does not ask the Court to enjoin Aetna or force it to rewrite the plan language. *See Des Roches v. California Physicians' Svc.*, 320 F.R.D. 486, 501-02 (N.D. Cal. 2017) (rejecting Defendant's reliance on *Takeda* where the plaintiffs did not seek a monetary award for the denial of benefits).

Like the plaintiff in *Carr*, Plaintiff here can obtain complete relief from Defendant without the need to add any other party. First, in her Counts I and II, Plaintiff has requested nominal, compensatory, and punitive damages arising from Defendant's discrimination against Plaintiff

under Section 1557 of the ACA[5] (Compl. ¶¶ 27, 84). As Defendant wholly concedes, under Rule 19, in a "claim for monetary damages, . . . complete relief can be afforded without an absent party." (Aetna Brief, ECF 50-1, at 27) (citing *Errico v. Stryker Corp.*, 2010 WL 5174361, at *2 (S.D.N.Y. Dec. 14, 2010); *Kraebel v. New York City Dep't of Hous. Pres. & Dev.*, 1994 WL 132239, at *4 (S.D.N.Y. Apr. 14, 1994)).

Second, Plaintiff seeks a declaratory judgment that Aetna must comply with Section 1557 of the ACA, declaring that Aetna's conduct (not the employer's conduct) in denying claims for benefits for infertility treatment on the basis of sexual orientation under a facially discriminatory policy and Medical Plan that it designed does not comply with Section 1557 of the ACA (Compl. ¶ 91). Either the Court will find that Aetna has an obligation under the ACA to design plans and administer claims in a non-discriminatory manner and that Defendant's policy of denying claims based on its designed policy and plan violates the ACA, or it will not. Contrary to Defendant's assertion, Plaintiff does not seek reformation of specific plan language in this action; she requests a declaration solely to determine the rights and obligations of Defendant, Plaintiff, and the putative class, in the administration of claims under the ACA.[6]

Plaintiff alleges that by designing and administering facially unlawful plans, Defendant discriminated against Plaintiff and members of the putative Class on the basis of their sexual orientation, by subjecting them to stricter prerequisites to obtain insurance benefits for infertility treatments. Compl. ¶ 70. Defendant, on its own, has enough authority to control what plan designs

---

[5] The United States Supreme Court has held that "a damages remedy is available for an action brought to enforce Title IX." *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992) (reversing and remanding the dismissal of Plaintiff's claim, seeking monetary damages for intentional gender-based discrimination under Title IX.").

[6] Plaintiff believes the declaratory relief sought is clear in her claim; however, to the extent there is any ambiguity in Plaintiff's request for declaratory relief, Plaintiff does not seek any relief beyond that asserted herein and would request leave to amend her Complaint to clarify Count III.

it originates and what is set forth in its internal interpretive bulletins. Perhaps Aetna may deem it prudent to revise its plan designs and interpretive bulletins so as to forestall more claims against it in the future, but this lawsuit will not literally compel it do so.

Defendant's reliance on the Summary Plan Description and the Wrap Document to make the conclusory assertion that, as claim administrator, it has no authority to dictate or direct what benefits are covered under the Medical Plan, is without merit. (Aetna Brief, ECF 50-1, pp. 3–5).[7]

Plaintiff's claim is based upon the assertion that, under the ACA, Defendant must perform its responsibilities in a non-discriminatory manner, and may not deny benefits in a manner that is discriminatory, regardless of the plan. It will be for this Court to determine whether Defendant is covered by the ACA and whether it has an obligation under the ACA to perform its responsibilities as a plan designer and claim administrator in a non-discriminatory way, particularly here where it designed the Medical Plan in a facially discriminatory manner and applied its own facially discriminatory clinical bulletin to determine whether to cover Plaintiff's claim under that facially discriminatory policy. As set forth above, the ACA itself, as well as relevant case law, demonstrate that no other parties are necessary to grant the relief sought.  Thus, Defendant's motion to dismiss should be denied.

---

[7] To the extent that the Court deems it necessary to make a factual determination related to the exact apportionment of responsibilities between Aetna and employers or plan sponsors like Wellstar, Plaintiff requests discovery into, at minimum, the relationship between Defendant and the Medical Plan and its policies and training related to claim administration, all of which are in the exclusive possession, custody, and control of Defendant. *See Direct Energy Mktg. Ltd. v. Duke/Louis Dreyfus, LLC*, 50 F. App'x 469, 472 (2d Cir. 2002) ("Because the court found the record insufficiently developed to establish whether [absent party was indispensable], it denied the motion without prejudice and authorized further discovery."). But, as Plaintiff explains throughout this response, this inquiry is unnecessary. The amended complaint alleges Aetna designed and administered the plan, and Aetna has an independent obligation under the ACA to perform those functions in a non-discriminatory manner.

     **2.**      **Even if the Wellstar Plan or Wellstar Health Are Necessary Parties, They Are Not Indispensable Under 19(b)**

"[I]n general ... a flexible approach [must] be taken to issues relating to indispensable parties...a mechanical determination of who is an indispensable party is clearly inappropriate." *Shanshan Shao*, 2017 WL 4955506, at *3 (citing *Prescription Plan Serv. Corp. v. Franco*, 552 F.2d 493, 496 (2d Cir. 1977)). The Second Circuit has rejected a bright-line rule as to whether each party to a contract is an indispensable party to an action concerning that contract. *See CP Solutions PTE, Ltd. v. General Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009).

For the purposes of its motion, Defendant does not dispute that it is a "health program or activity" and that it receives federal financial assistance within the meaning of Section 1557 of the ACA. Section 1557 conditions a health program or activity's receipt of federal funds upon its consent to be subject to "the enforcement mechanisms provided for and available under" the statutes listed in Section 1557. *Kadel v. N. Carolina State Health Plan for Tchrs. & State Emps.*, 12 F.4th 422, 430 (4th Cir. 2021), *as amended* (Dec. 2, 2021), *cert. denied*, 142 S. Ct. 861 (2022). As such, Defendant is a proper party on its own under § 1557. *See Griffin v. Gen. Elec. Co.*, 2017 WL 8785572, at *6 (N.D. Ga. Dec. 6, 2017), *aff'd*, 752 F. App'x 947 (11th Cir. 2019) (Section 1557 "prohibits ERISA-covered entities from discriminating on the basis of race, gender, etc." in providing or administering health-related insurance or other health-related coverage); *see also Rumble v. Fairview Health Svcs.*, 2015 WL 1197415, at *12 (D. Minn. March 16, 2015) ("[A]s long as part of an organization or entity receives federal funding or subsidies of some sort, the entire organization is subject to the anti-discrimination requirements of Section 1557.").

Further, as discussed in detail in the previous subsection, Wellstar Health and the Wellstar Plan are not indispensable parties under 19(b), because Defendant alone can provide the remedy (i.e., payment of money damages) Plaintiff seeks in Counts I and II of her Amended Complaint,

and Plaintiff only seeks a declaration under Count III as to the responsibilities of Defendant under the ACA, not any other organizations.

Defendant cites to *Takeda* to argue that for actions involving improper denial of benefits under self-funded plans, the plan administrators of those self-funded plans (i.e., the employers) are necessary parties because they have final authority over whether to allow a claim, and suffer the risk of prejudice by being prevented from relitigating issues decided against them. (Aetna Brief at 19). However, in *Takeda*, the self-funded plan administrator was determined to be a necessary party in part because, unlike here, it was "not clear whether [the employer plan administrator or the third-party insurance provider] made the decisions about which plaintiffs complain." *Takeda*, 765 F.2d at 817, 820. Here, Plaintiff alleges that Aetna designed the Medical Plan, wrote the CPB, and participated in interpreting and administering the plan, including communicating the denial of benefits to Plaintiff. (Compl. ¶¶ 3, 6–7, 11, 26, 45–52). The ACA requires Aetna to perform those functions in a nondiscriminatory manner, and if it fails to do so, it is directly liable to Plaintiff and must pay damages. *Cf. Tovar v. Essentia Health*, 857 F.3d 771, 778 (8th Cir. 2017) (noting that if a plan which includes allegedly discriminatory terms originated with health insurer defendants, the plaintiff's injuries "could well be traceable to and redressable through damages by those defendants, notwithstanding the fact that [the employer] subsequently adopted the plan and maintained control over its terms.").

The Court must reject Aetna's argument that it can dictate who the necessary parties are in a discrimination case through private contractual terms. (*See, e.g.*, Aetna Brief at 15 (suggesting the Court should give weight to plan documents that deem Wellstar Health as the "only" necessary party)). Accepting this argument would mean Aetna could avoid ever facing a direct challenge to the legality of its own actions under the ACA when it performs similar plan design, interpretation,

16

and administration services as a third party administrator, because in all such cases Aetna will insist that it was simply following instructions from its employer or plan clients, who are the "real" defendants. But this case is postured to specifically, and only, challenge whether Aetna itself unlawfully discriminated under the ACA. Because Wellstar Health and the Wellstar Plan are not necessary or indispensable parties for determining that question, and because Aetna can, by itself, provide the relief Plaintiff seeks, Aetna's motion to dismiss pursuant to Rule 12(b)(7) should be denied.

**B.    Plaintiff Has Standing for Her Discrimination Claim and for Her Declaratory Judgment Claim Against Defendant.**

To have standing to bring a claim in federal court, "[p]laintiffs must" have a sufficient "personal stake in the outcome" of a case so as "to assure that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "A plaintiff establishes Article III standing by demonstrating (1) an "injury in fact that is (2) fairly traceable to the challenged action of the defendant and is (3) likely to be redressed by a favorable decision." *Barrows v. Becerra*, 24 F.4th 116, 127 (2d Cir. 2022). Dismissal for lack of subject matter jurisdiction is not proper under Rule 12(b)(1) unless "the district court lacks the statutory or constitutional power to adjudicate" the claim, such as when Article III standing is not met. *Makarova*, 201 F.3d at 113. Because "[t]he standing inquiry focuses on whether the plaintiff is the proper party to bring ... suit," the injury analysis "often turns on the nature and source of the claim asserted." *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (*citing Raines v. Byrd*, 521 U.S. 811, 818 (1997)). A standing analysis is performed on a claim-by-claim basis, *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83, 109 (2d Cir. 2019) (dismissing certain claims for lack of standing and

allowing other claims to proceed), without regard to the likelihood of success on the merits. *Baur*, 352 F.3d at 642–43.

### 1.    Injury-in-Fact

To show injury in fact, the plaintiff must show that "he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The suffering of past discrimination, in and of itself, constitutes an injury in fact. *Walker v. Azar*, 2020 WL 4749859 (E.D.N.Y. Aug. 17, 2020), *appeal withdrawn sub nom. Walker v. Becerra*, 2021 WL 5548357 (2d Cir. Nov. 22, 2021) (addressing claims under the ACA for discrimination in the provision of healthcare).

> [D]iscrimination itself, by perpetuating archaic and stereotypic notions or by stigmatizing members of the disfavored group as innately inferior and therefore as less worthy participants in the political community, can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group.

*Id.* (quoting *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984)); *see also Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 794, 802 (2021) (holding that a past, completed violation of someone's constitutional rights constitutes an injury in fact).

Here, all three causes of action Plaintiff alleges are based upon past, completed violations of Plaintiff's rights arising from Defendant's discriminatory conduct. (Compl. ¶¶ 69, 72, 82, 84, 90). That alone constitutes an injury in fact. Further, Plaintiff has also alleged physical and financial injury resulting from Defendant's discrimination, including the out-of-pocket costs of IUI treatments, (Compl. at ¶¶ 14, 72, 84), which independently establish injury-in-fact sufficient to confer standing. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Watt v.*

18

*Energy Action Educ. Found.*, 454 U.S. 151, 161 (1981) (recognizing economic injury as an injury-in-fact).

Plaintiff has clearly alleged Defendant's past discrimination and Plaintiff's economic loss -- which, standing alone, are sufficient to state an injury in fact for Article III purposes for her discrimination claims and for her declaratory judgment claim.

### 2.    Traceability

Article III requires the injury to be fairly "trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court...." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (*citing Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992)). This means that the plaintiff must "demonstrate a causal nexus between the defendant's conduct and the injury." *Id.* A direct relationship between the parties is not required, so long as the asserted injury was the direct or indirect consequence of the defendant's actions. *Rothstein*, 708 F.3d at 91. The Second Circuit has explained that "particularly at the pleading stage, the 'fairly traceable' standard is not equivalent to a requirement of tort causation" and that "for purposes of satisfying Article III's causation requirement, we are concerned with something **less than the concept of proximate cause**." *Id.* at 92 (emphasis added) (internal citations omitted); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134, n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct.").

Here, the ACA provides that Defendant cannot discriminate in providing health benefits. Plaintiff alleges that Defendant discriminated by designing a discriminatory Medical Plan, and in its claim administration by denying benefits under the Medical Plan based upon its own facially discriminatory policies. (Compl. ¶¶ 3, 6–7, 11, 26, 45–52). Plaintiff further alleges that this caused

19

her to suffer out-of-pocket damages. (Compl. at ¶¶ 14, 72, 84). She seeks recovery of all damages to which she is entitled under Counts I and II. Under Count III, she also seeks a declaration that Defendant's conduct, in denying claims for benefits for infertility treatment on the basis of sexual orientation under a facially discriminatory policy and Medical Plan, violates Section 1557.

Plaintiff satisfies the traceability element of Article III for all of her claims.

### 3.    Redressability

To establish standing under Article III, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable [judicial] decision.'" *Lujan,* 504 U.S. at 561. For a declaratory judgment, Article III redressability requires there be "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *California v. Texas*, 141 S. Ct. 2104, 2115–16 (2021) (*citing MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

Here, in support of its argument on redressability, Defendant relies on the same misstatement of Plaintiff's claims it relied upon in moving to dismiss under Rule 12(b)(7). With respect to Plaintiff's Counts I and II, her injuries are wholly redressable through an award of damages resulting from Aetna's discrimination. As set forth previously herein, with respect to Count III, Plaintiff does not seek prospective relief and does not ask this Court to reform the Medical Plan. Plaintiff asks this Court to declare that Aetna's conduct in denying claims for benefits for infertility treatment on the basis of sexual orientation under a facially discriminatory policy and Medical Plan, does not comply with Section 1557. Plaintiff does not ask this Court to grant declaratory judgment on a hypothetical set of facts, but upon an actual, past alleged infringement of her right to be free from discrimination.

> In order to have a personal stake in retrospective relief, there is no reason why a plaintiff must have a likelihood of future harm—because retrospective relief, which

seeks to remedy past harm, would benefit a plaintiff who has suffered past harm regardless of the plaintiff's likelihood of future harm.

*Meidl v. Aetna, Inc.*, 2017 WL 1831916, at *4 (D. Conn. May 4, 2017) (internal citations and quotation omitted). This type of relief has been recognized by courts as important in the battle against discrimination. *See, e.g.*, *Snow v. Nevada Dept. of Prisons*, 582 F. Supp. 53, 64 (D. Nev. 1984) ("Nor is there reasonable assurance that the same or similar conduct will not be repeated against female correctional officers if this Court fails to specifically label those acts as being in violation of Title VII."); *Bennet v. State Farm Mut. Auto. Ins. Co.*, 943 F. Supp. 821, 824 (N.D. Ohio 1996) (finding no support for broad proposition that a former employee could not seek declaratory relief).

Because Plaintiff satisfies each of the elements of standing for both her discrimination claims and her request for declaratory relief, Aetna's motion to dismiss pursuant to Rule 12(b)(1) should be denied.

## V.   **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint should be denied.

Dated:      July 1, 2022            */s/Gary F. Lynch*
Gary F. Lynch
Jamisen Etzel
**LYNCH CARPENTER, LLP**
1133 Penn Ave
Pittsburgh, PA 15232
Tel:    (412) 322-9243
Fax:    (412) 231-0246
gary@lcllp.com
jamisen@lcllp.com

Joseph P. Guglielmo

21

Carey Alexander
**SCOTT+SCOTT ATTORNEYS AT
LAW LLP**
The Helmsley Building
230 Park Ave., 17th Floor
New York, NY 10169
Tel.: (212) 223-6444
Fax: (212) 223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com


**THE FINLEY FIRM**
MaryBeth V. Gibson
MGibson@thefinleyfirm.com
Piedmont Center
3535 Piedmont Center
Building 14, Suite 230
Atlanta, GA 30305
Tel:     (404) 978-6971
Fax:    (404) 320-9978

**RAMAGE LYKOS, LLC**
Colleen Ramage
525 William Penn Place, 28th Floor
Pittsburgh, PA 15232
Tel: (412) 325-7700
Fax: (412) 325-7755
cramage@ramagelykos.law

*Counsel for Plaintiff and the putative
Class*