# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TARA KULWICKI, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. 3:22-cv-00229 (RNC) |

**[PROPOSED] ORDER GOVERNING THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ("ESI")**

The Court hereby orders the following regarding the forms of production of documents and Electronically Stored Information ("ESI") in discovery:

**GENERAL PROVISIONS**

1. This ESI Protocol is designed to streamline review and production of ESI and hard copy information by the parties to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. If the parties, notwithstanding good faith efforts, cannot comply with any material aspect of this ESI Protocol, or if compliance with such material aspect would be unreasonable or unduly burdensome, or if additional time is needed to comply, the parties shall raise the issue within a reasonable time, as to why compliance with the ESI Protocol is impossible, unreasonable, or unduly burdensome or will be delayed and the reasons why that is so.  No party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with other affected parties.

3. Nothing in this ESI Protocol shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, work product doctrine, or any other

1

applicable privilege or immunity.  The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents.  All productions are subject to the Protective Order entered by the Court in this Action.

4. The parties shall make good faith efforts to comply with and resolve any differences or concerns that may arise with respect to this ESI Protocol.  The parties understand and agree that modifications to the ESI Protocol may prove necessary as the facts and circumstances of the collection, review, and production effort evolve over time.

5. Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of documents or ESI.

6. Aetna will make reasonable queries of the databases and structured data sources to identify documents responsive to Plaintiff's document requests.  If a dispute arises as to the sufficiency of Aetna's production, the parties shall meet and confer.  In the course of such discussions, the producing party will provide disclosures necessary for the receiving party to understand and assess the sufficiency of the proposed search or filtering methodology.

7. With respect to the review and production of custodial files,[1] the parties agree to confer in good faith regarding the identification and selection of custodians.  To the extent the parties produce custodial data, the parties agree that search terms may be used to cull ESI from custodial files.  If a producing party chooses to utilize search terms, it must share with the receiving party the search terms it intends to apply and meet and confer about additional custodians and/or terms requested by the receiving party as necessary.  The parties shall participate in an iterative

---

[1] A custodial file includes emails and documents within a relevant custodian's possession.

2

and cooperative approach about application and use of search terms intended to increase the precision and percentage of responsive documents within the culled set.

8. **Technology Assisted Review**. No Party shall use predictive coding/technology-assisted review for the purpose of culling the documents to be reviewed or produced without notifying the opposing Party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies, if any.

9. Where a discovery request requires production of structured data, in lieu of producing structured data systems or applications, the Parties shall meet and confer on the content and format of the data to be produced. The Producing Party shall make disclosures sufficient for the Requesting Party to understand and evaluate whether the content and format of the data satisfies the Requesting Party's production request, such as the data fields available, the meaning of data fields, as well as codes and abbreviations used in the data source and whether a data dictionary exists, the time period over which data exists.

10. **Collected ESI Data that Is Not from Databases or Structured Data Sources**. Collected ESI shall be de-duplicated according to MD5 hash value at the family level provided that the Producing Party identifies all custodians of the duplicate ESI in the main Custodian metadata field. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and email thread suppression is not acceptable.

11. **TIFFs.** With the exception of ESI contained within databases and other structured data, documents will be produced in the form of single-page, Group IV Tiffs at 300 dpi. Each

TIFF image should be named as its corresponding Bates number.  Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files.  TIFF image files should be provided in a "self-identified Images" folder.  TIFFs will show any and all text and images which would be visible to the reader using the native software that created the document as reasonably processed using common litigation support tools.  For example, TIFFs of email messages should include the BCC line.

12. **System Files**.  Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced.

13. **Database Load Files/Cross-Reference Files**.  Documents will be provided with Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files) using standard Concordance delimiters.  Concordance-compatible image, text, and data load files (*i.e.*, .OPT and DAT files) will be provided in a self-identified "Data" folder.

14. **Native Files**.  PowerPoint presentations, Excel files, and CSV files shall be produced in native format ("Native Files") instead of in TIFF.  Such Native Files (if any) will be provided in a self-identified "Natives" directory.  Each Native File will be produced with a corresponding single-page TIFF placeholder image, which will contain the bates number and language indicating that the document is being produced as a Native File.  Native Files should be named with the beginning Bates number that is assigned to that specific record in the production.  A Native "Link" entry for each spreadsheet will be included in the .DAT load file indicating the relative file path to each native file on the production media.  Native Files will be produced with extracted text and applicable metadata fields.  If Native spreadsheet files require redactions, the parties will meet and confer regarding how to implement redactions while ensuring that proper

formatting and usability are maintained. For presentation files that contain redacted text, the Producing Party may either redact in the native form or produce TIFF image files with burned in redactions in lieu of a Native File and TIFF placeholder image. Presentation files produced as TIFFs shall be processed with hidden slides and all speaker notes unhidden and shall be processed to show both the slide and the speaker's notes on the TIFF image. No party shall modify documents produced in native version for use in this litigation without prior agreement from the Producing Party.

15. **Metadata Fields and Processing**. ESI production shall include a delimited, database load file that contains the metadata fields listed in Table 1 below. The metadata produced should have the correct encoding to enable preservation of the documents' original language. No Party will have the obligation to manually generate information to populate these fields if such fields cannot be reasonably extracted or generated from the document using an automated process. The Producing Party may redact or remove from production protected or privileged metadata. If Metadata is redacted or withheld, the Producing Party will so inform the Requesting Party and record the redaction on any privilege log prepared by the Producing Party; redacted Metadata shall be preserved.

16. **Parent-Child Relationships**. The Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except any portions of the Email or attachments that must be withheld or redacted on the basis of privilege or work-product protection, or as set forth in Magistrate Judge Vatti's order (ECF No. 78). Further, "[t]o the extent that any responsive document-attachment grouping is withheld or redacted based on a privilege or work product objection, the privilege log requirements apply." *Id*. (citing Fed. R. Civ. P. 26(b)(5); D. Conn. L. Civ. R. 26(e)). Additionally, to the extent that any responsive document-

attachment grouping is partially withheld or redacted based on an objection that the information is **both** (i) not relevant within the meaning of Rule 26(b), **and** (ii) would cause annoyance, embarrassment, oppression, or undue burden or expense to a party or person as described in Rule 26(c), or otherwise implicates commercially sensitive/proprietary or privacy interests, a similar log shall be provided to the discovering party with sufficient identification and description to permit meaningful assessment of each item." *Id.* (emphasis in original).  The relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved.  The child-document should be consecutively produced immediately after the parent-document.  Embedded files and embedded links within responsive documents shall be extracted during processing and produced as separate but related documents (parent-child relationship maintained), to the extent appropriate based on the size of the embedded file.

17. **Track Changes and Comments**.  To the extent that a Document or ESI contains tracked changes or comments, the Document or ESI should be imaged showing tracked changes and comments.

18. **Color**.  Except for PowerPoint and other Documents produced natively, Documents containing color need not be produced in color in the first instance.  However, if good cause exists for the Requesting Party to request production of certain documents in color, the Requesting Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format.  The Producing Party shall not unreasonably deny such requests.

19. **Zero-byte Files**.  The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names.  If the Requesting Party in good faith believes that a zero-byte file was withheld from production and

contains information responsive to a request for production, the Requesting Party may request that the Producing Party produce the zero-byte file. The Requesting Party may provide a Bates number to the Producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

**TABLE 1**

| Image Bates number | Email To | Email From |
|---|---|---|
| Email CC | Email BCC | Email Subject |
| Page Count | Folder ID | Folder Name |
| Read | Date Created | Date Saved |
| Date Received | Source | Date Sent |
| Redacted | Application | Attachment range |
| Attachment Title | Attachment Count | Custodian(s) of collection |
| Edoc, Email, Attachment | Attachment Bates ID | Parent Bates ID |
| Folder path | File Name | File Author |
| File Extension | MD5 Hash | DateLastModified |
| Bates Number Begin | Bates Number End | Time Received |
| Time Sent | Importance | LastEditedBy |
| Redacted | NativeFile | Attachment Begin |
| Attachment End | | |

20. **Hard Copies**. Hard copy documents are to be produced in Single page tiff images. The Producing Party will run hard copy documents through OCR software and will deliver document-level full text and corresponding load files. Load files shall include document source/custodian.

7

## **THIRD PARTY DOCUMENTS**

21. Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the Action have requested that third parties produce Documents in accordance with the specifications set forth herein. The Issuing Party shall timely notify other Parties when it receives non-party productions, and shall, upon request by other Parties ("Requesting Parties" for purposes of this paragraph), provide copies of such productions to Requesting Parties in the format in which they were received from the third party. Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

**IT IS SO ORDERED**.

Dated: _____

The Hon. Robert N. Chatigny
Senior United States District Judge