**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

TARA KULWICKI, on behalf of herself and
all others similarly situated,

        Plaintiff,

-v-

AETNA LIFE INSURANCE COMPANY,

        Defendant.

Case No. 3:22-cv-00229 (RNC)

July 14, 2023

**SUPPLEMENTAL BRIEF IN SUPPORT OF AETNA'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

ARGUMENT AND AUTHORITIES ................................................................................. 1

    A.   Wellstar is an indispensable party under Rule 19 and it would be prejudicial to
        proceed in their absence. ................................................................................. 1

        1.   Any judgment affecting the operation or funding of the Wellstar Plan entered in
               Wellstar's absence would be prejudicial to Wellstar. ................................... 2

        2.   Any judgment rendered as to the Wellstar Plan in the absence of Wellstar will be
               inadequate. .................................................................................................... 7

        3.   Plaintiff's desire to proceed against Aetna alone in order to promote a class action
               does not outweigh the important substantive protections embodied in Rule 19......... 10

        4.   Courts have held that Plan sponsors, like Wellstar here, are indispensable parties
               in actions challenging the operation of the Plan. ......................................... 12

    B.   Section 1557 implementing regulations and relevant guidance from the Office of Civil
        Rights further demonstrate that Wellstar is a necessary party to this action.................. 15

CONCLUSION................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*2 Montauk Highway LLC v. Global Partners LP*,
  296 F.R.D. 94 (E.D.N.Y. 2013) ..................................................................................9

*Associated Dry Goods Corp. v. Towers Fin. Corp.*,
  920 F.2d 1121 (2d Cir.1990).......................................................................................2

*Baird v. Blackrock Inst. Trust Co., N.A.*,
  No. 17-cv-01892-HSG, 2020 WL 7389772 (N.D. Cal. February 11, 2020) ....................10, 16

*Carr v. United Healthcare Servs. Inc.*,
  No. C15-1105 (MJP), 2016 WL 7716060 (W.D. Wash. May 31, 2016)................................14

*Crouse-Hinds Co. v. Internorth, Inc.*,
  634 F.2d 690 (2d Cir. 1980)........................................................................................6

*Cuevas v. Joint Benefit Tr.*,
  No. 13–cv–00045-JST, 2013 WL 3578496 (N.D. Cal. July 12, 2013)................................13

*Curley v. Brignoli, Curley & Roberts Assocs.*,
  915 F.2d 81 (2d Cir. 1990).........................................................................................2

*Curtiss-Wright Corp. v. Schoonejongen*,
  514 U.S. 73 (1995).....................................................................................................13

*Errico v. Stryker*,
  281 F.R.D. 182 (S.D.N.Y. 2012) ...........................................................................2, 4, 7

*Fay v. Oxford Health Plan*,
  287 F.3d 96 (2d Cir. 2002)..........................................................................................6

*FMC Corp. v. Holliday*,
  498 U.S. 52 (1990).....................................................................................................12

*Greer v. Carlson*,
  No. 1:20-cv-05484 (LTS) (SDA), 2020 WL 8340068 (S.D.N.Y. Dec. 24, 2020) ..................9

*Hall v. LHACO, Inc.*,
  140 F.3d 1190 (8th Cir. 1998) ....................................................................................14

*Humble v. Harrah's NC Casino Co., LLC*,
  No. 1:17-cv-262, 2018 WL 4576784 (W.D.N.C. June 1, 2018)....................................10, 11

*In re Lowenschuss*,
   171 F.3d 673 (9th Cir. 1999) ................................................................16

*Ing. Hoschek Autoverleich GSE.M.B.H. v. Balag, Ltd.*,
   No. 93 CIV. 8513 (PKL), 1994 WL 701989 (S.D.N.Y. Dec. 14, 1994) ..............................8, 9

*Kermanshah v. Kermanshah*,
   No. 08–CV–409 (BSJ) (AJP), 2010 WL 1904135 (S.D.N.Y. May 11, 2010) .........................3

*LeCroy Research Sys. Corp. v. C.I.R.*,
   751 F.2d 123 (2d Cir. 1984) ................................................................17

*Liberty Mut. Ins. Co. v. Donegan*,
   746 F.3d 497 (2d Cir. 2014) ................................................................12

*Lifson v. INA Ins. Co. of N.Y.*,
   333 F.3d 349 (2d Cir. 2003) ................................................................6

*Lomayaktewa v. Hathaway*,
   520 F.2d 1324 (9th Cir.1975) ................................................................6

*Negron v. Cigna Health and Life Ins. Co.*,
   No 3:16-CV-01702 (JAM), 2021 WL 2010788 (D. Conn, May 20, 2021) .........................6

*Prasai v. International Nepali Literary Society*,
   No. 14-cv-4440 (ENV) (LB), 2014 WL 4207628 (E.D.N.Y. Aug. 5, 2014) .........................3

*Provident Tradesmens Bank & Tr. Co. v. Patterson*,
   390 U.S. 102 (1968) ................................................................3, 6, 18

*Republic of Philippines v. Pimentel*,
   553 U.S. 851 (2008) ................................................................7, 9, 10

*Rubler v. Unum Provident Corp.*,
   No. 04 Civ. 7102 (DC), 2007 WL 188024 (S.D.N.Y. Jan. 25, 2007) ...............................6

*Santomenno v. Transamerica Life Ins. Co.*,
   883 F.3d 833 (9th Cir. 2018) ................................................................16

*Silverio v. LQ 511 Corp.*,
   No. 13 Civ. 5002 (AT), 2014 WL 1413640 (S.D.N.Y. Apr. 9, 2014) .............................11, 16

*Smith v. Kessner*,
   183 F.R.D. 373 (S.D.N.Y.1998) ................................................................2

*Sty-Lite Co. v. Eminent Sportswear Inc.*,
   115 F. Supp. 2d 394 (S.D.N.Y. 2000) ................................................................7, 8

*Sutherland v. Disability RMS*,
    No. 3:16-CV-00683-JHM, 2017 WL 403574 (W.D. Ky. Jan. 30, 2017) ...............................14

*Sypher v Aetna Ins. Co.*,
    No. 13-10007, 2014 WL 1230028 (E.D. Mich. Mar. 25, 2014) ........................................13, 14

*Takeda v. Nw. Nat'l Life Ins. Co.*,
    765 F.2d 815 (9th Cir. 1985) ...........................................................................................13

*Thompson v. Jiffy Lube Int'l, Inc.*,
    505 F. Supp. 2d 907 (D. Kan. 2007) ................................................................................10

*Tovar v. Essentia Health*,
    342 F.Supp.3d 947 (D. Minn. 2018) ................................................................................14

*Tovar v. Essentia Health*,
    857 F.3d 771 (8th Cir. 2017) ......................................................................................15, 18

*Uni Storebrand Co, UK Ltd. v. Star Terminal Corp.*,
    No. 96 CIV. 9556 (DLC), 1997 WL 391125 (S.D.N.Y. July 11, 1997)..................................8

*Viacom Int'l, Inc. v. Kearney*,
    212 F.3d 721 (2d Cir. 2000)...............................................................................................2

*Williby v. Aetna Life Ins. Co.*,
    867 F.3d 1129 (9th Cir. 2017) .........................................................................................12

## STATUTES AND REGULATIONS

45 C.F.R. § 92.3 (2020) .............................................................................................16, 17

81 Fed. Reg. 31,375, 31,432 (May 18, 2016) ...................................................................15

85 Fed. Reg. 37,160, 37,171 (June 19, 2020) ...........................................................16, 17

87 Fed. Reg. 47824 (Aug. 4, 2022).................................................................................17

29 U.S.C. § 1002(16)(a) ..................................................................................................13

29 U.S.C. § 1132(d)(1) ....................................................................................................13

## OTHER AUTHORITIES

Fed. R. Civ. P. 12.......................................................................................................14, 18

Fed. R. Civ. P. 19.................................................................................................... *passim*

Defendant Aetna Life Insurance Company ("Aetna") respectfully submits this supplemental brief in support of its motion to dismiss Plaintiff's Amended Complaint (the "Amended Complaint" or "Am. Compl.") as requested by the Court at the June 22, 2023 hearing in this matter.

## INTRODUCTION

Aetna submits this supplemental briefing to address two questions raised by the Court at the hearing on June 22, 2023. *First,* Aetna will address the prejudice that will accrue to Wellstar Health and the Wellstar Plan, as well as to this Court and the judicial process in general, if Plaintiff is allowed to proceed with this action against Aetna alone and in the absence of Wellstar Health and the Wellstar Plan. *Second,* Aetna will address the Section 1557 implementing regulations and relevant guidance from the Office of Civil Rights as they bear on the necessity of Wellstar's joinder in this case.

## ARGUMENT AND AUTHORITIES

Plaintiff brings this litigation to void a portion of the health benefit plan Wellstar Health offers its employees, and to obtain a ruling that the Wellstar Plan is discriminatory. But Plaintiff demands that Wellstar be denied the opportunity to participate in the resolution of these questions. Plaintiff concedes that Wellstar played a central role in creating the plan, but insists that Wellstar has no right to be here to defend it. This is an inherently unjust process that, if allowed, would prejudice Wellstar Health in contravention of Rule 19 and controlling case law.

**A.  Wellstar is an indispensable party under Rule 19 and it would be prejudicial to proceed in their absence.**

In deciding to dismiss a claim pursuant to Federal Rule of Civil Procedure 19, a court must: (i) determine whether the absent party is "necessary" to the action under Rule 19(a) and

(ii) assess whether joinder of the party is feasible, and if not, whether the party is indispensable under Rule 19(b).  *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724-25 (2d Cir. 2000).[1]

To determine whether "in equity and good conscience" actions should proceed without joinder of an absent party, i.e., whether that party is indispensable, Rule 19(b) lists four relevant factors:

> [1] to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; [2] the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; [3] whether a judgment rendered in the person's absence will be adequate, [4] whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b); *see also Associated Dry Goods Corp. v. Towers Fin. Corp.,* 920 F.2d 1121, 1124 (2d Cir.1990); *Smith v. Kessner*, 183 F.R.D. 373, 375-76 (S.D.N.Y.1998).

The Second Circuit has instructed that a district court, when considering these factors under Rule 19(b), should make a fact-specific assessment of a party's importance to an action "in the context of a particular litigation." *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 90 (2d Cir. 1990).

**1.      Any judgment affecting the operation or funding of the Wellstar Plan entered in Wellstar's absence would be prejudicial to Wellstar.**

The analysis for the first Rule 19(b) factor, requiring the court to determine the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties, "overlaps considerably with the Rule 19(a) analysis, as both require the Court to determine the potential for prejudice to existing and absent parties." *Errico v. Stryker*, 281 F.R.D. 182, 187 (S.D.N.Y. 2012) (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1608, at 92 (3d ed. 2001, rev. 2010)).

---

[1] Internal citations, quotations and emphasis are omitted from citations unless otherwise noted.

Courts in the Second Circuit have found that the absence of a party may create prejudice in a range of circumstances. These include: (1) when the absent party is not given a full opportunity to contest issues central to the litigation, and, relatedly, (2) when the absent party is best-positioned to develop evidence that is outcome-determinative. Courts have also found absent parties may be prejudiced (3) when their interests are not sufficiently aligned with those of a party to the litigation.

First, an absent party may be prejudiced (or parties in the litigation might be prejudiced by its absence) where it is not given the full opportunity to contest issues central to the litigation.  On this point, the district court must consider "the interest of the outsider whom it would have been desirable to join."  *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 110 (1968).  The Supreme Court has explained the analysis this way:

> Of course, since the outsider is not before the court, he cannot be bound by the judgment rendered. This means, however, only that a judgment is not *res judicata* as to, or legally enforceable against, a nonparty.  It obviously does not mean either (a) that a court may never issue a judgment that, in practice, affects a nonparty or (b) that (to the contrary) a court may always proceed without considering the potential effect on nonparties simply because they are not "bound" in the technical sense.  Instead, as Rule 19(a) expresses it, the court must consider the extent to which the judgment may, "as a practical matter, impair or impede his ability to protect" his interest in the subject matter.

*Id.*

The exclusion of a party is prejudicial where their conduct is central to the litigation.  To determine this, courts generally look to plaintiffs' complaints and relationship among the affected parties.  In *Prasai v. International Nepali Literary Society*, for example, the court dismissed an action against a defendant under 19(b) where plaintiff failed to join a party whose conduct was central to the wrongdoing she alleged in her complaint.  No. 14-cv-4440 (ENV) (LB), 2014 WL 4207628, at *2 (E.D.N.Y. Aug. 25, 2014*).  See also Kermanshah v. Kermanshah*, No. 08–CV–409 (BSJ) (AJP), 2010 WL 1904135, at *4 (S.D.N.Y. May 11, 2010) (absent party prejudiced

where his conduct was central to contract dispute and judgment for plaintiff would likely affect his rights).

An absent party also may be prejudiced under 19(b) where its interests are not sufficiently aligned or represented by a party to the litigation. *See, e.g., Errico*, 281 F.R.D. at 189. Courts are more likely to find prejudice against absent parties exists where there is no evidence that a party to the case has been authorized to speak on behalf of absent parties. In *Errico*, plaintiffs, former common and preferred stockholders of a company, brought a lawsuit against the company, purporting to represent the interests of absent preferred stockholders. The court was unpersuaded, finding that plaintiffs' "self-appointed" role as a representative for absent parties was insufficient under 19(b). *Id.* The court found the distinction between an "authorized versus "self-appointed" representative "a critical one for purposes of determining whether [plaintiffs'] interests were aligned" with those of absent parties. *Id.*

These factors compel the conclusion that Wellstar is an indispensable party here. The crux of Plaintiff's allegations in her Amended Complaint is that the "Medical Plan"—which she specifically defines as the Wellstar Employee Medical Plan—is discriminatory. *See* Amended Complaint [Dkt. 42] ("Am. Compl.") at ¶¶ 5, 13-18, 36-41, 70-71, 82-83. Plaintiff asserts that she has suffered out-of-pocket damages, as well as emotional distress "as a result of being denied the benefits of the Medical Plan." *Id.* at ¶¶ 52-55. In addition to monetary damages, Plaintiff seeks declaratory relief, including a declaration that Aetna "continues to breach its legal duties by denying members of the putative class benefits under the Medical Plan." *Id.* at ¶ 91.c.

But in the documents establishing the Wellstar Plan, Wellstar Health expressly limited Aetna's authority to interpret, apply or act on behalf of the Plan. The Wellstar Plan documents

specifically describe the self-funded nature of the plan and Aetna's limited role as Claims Administrator:

> Medical benefits are self-insured.  Benefits are paid out of a general fund of the Company and are not guaranteed under contract of insurance. The Claim Administrator does *not* have fiduciary authority for determining whether you are entitled to benefits and the authorized payment.

*See* Dkt. 50, Ex. A at 12, 118 (emphasis added).  The Plan documents further provide that the Plan Administrator—i.e., Wellstar Health—is the party "authorized and responsible for managing and directing the operation and administration of the Plan."  *See* Dkt. 50, Ex. B at 8. In that capacity, Wellstar Health has "full discretion with respect to the administration, operation, and interpretation of the Plan," including "full power and discretionary authority" to, among other things:

- "interpret the Plan and decide all matters arising under the Plan, including the right to remedy possible ambiguities, inconsistencies, or omissions;

- determine all questions concerning the eligibility of any individual to participate in, be covered by,  receive benefits under the Plan pursuant to the provisions of the Plan;

- determine whether objective criteria set forth in the Plan have been satisfied respecting any term, condition, limitation, exclusion, and restriction or waiver thereof; [and]

- determine the amount of benefits payable, if any, to any person or entity in accordance with the provisions of the Plan [and] to provide a full and fair review to any individual whose claim for benefits has been denied in whole or in part."

*Id.* at 64-65.  Indeed, the Plan documents expressly provide that "*the Company [Wellstar Health] and the Plan Administrator [Wellstar Health] are the only necessary parties to any*

*action or proceeding that involves the Plan or its administration." Id.* at 69-70 (emphasis added).

"ERISA plans are essentially contracts, and courts use 'familiar rules of contract interpretation' when addressing an ERISA plan. *Negron v. Cigna Health and Life Ins. Co.*, No 3:16-CV-01702 (JAM), 2021 WL 2010788, at *14 (D. Conn, May 20, 2021) (quoting *Lifson v. INA Ins. Co. of N.Y.*, 333 F.3d 349, 353 (2d Cir. 2003)).  "One such well-established rule is that [the court] must read the plan 'as a whole, [and] giv[e] terms their plain meanings.'" *Negron*, 2021 WL 2010788, at *14 (quoting *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)). And "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may affected by the determination of the action are indispensable." *Crouse-Hinds Co. v. Internorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980) (quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir.1975)).

In sum, Plaintiff seeks to proceed against Aetna alone as the *surrogate* of the Wellstar Plan when the Plan documents expressly provide that Aetna has no such legal authority on its own.  Worse, Plaintiff seeks both a declaration that the Wellstar Plan is discriminatory and money damages payable by the Wellstar Plan—but seeks to deny Wellstar to ability to appear and defend either its plan or its purse.  The Supreme Court has made clear that, in these circumstances, courts "should. . . take steps to protect the absent party, who of course had no opportunity to plead and prove his interest." *Provident*, 390 U.S. at 111.  *See also Rubler v. Unum Provident Corp.*, No. 04 Civ. 7102 (DC), 2007 WL 188024, at *2 (S.D.N.Y. Jan. 25, 2007) (finding that adjudication of case in absence of party would be prejudicial when it is "difficult to imagine how the issue of whether [the absent party] breached [its] obligation under the [contract] would be resolved without [its] participation in the litigation.").

2.      **Any judgment rendered as to the Wellstar Plan in the absence of Wellstar will be inadequate.**

The determination of potential prejudice under Rule 19(b) also must consider prejudice to the parties and judicial process generally that results from excluding an important party to the litigation, which implicates the third factor in the 19(b) test for the indispensability of parties—namely, the adequacy of the judgment rendered.  *See* Fed. R. Civ. P. 19(b).   The Supreme Court has made clear that "adequacy" in this context refers not "to satisfaction of the [plaintiff's] class claims", but rather "to the public stake in settling disputes by wholes, whenever possible." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008).   "This social interest in the efficient administration of justice and the avoidance of multiple litigation is an interest that has traditionally been thought to support compulsory joinder of absent and potentially adverse claimants."  *Id*.  A judgment is not adequate under 19(b) where the absent party "would not be bound by the judgment in an action where they were not parties," *id.* at 871, or where the absent party would face the risk of multiple litigation. *Errico*, 281 F.R.D. at 191.

Plaintiff's attempt here to litigate the legality of the Wellstar Plan without Wellstar's participation creates a legal Catch-22 for Wellstar.  On the one hand, a finding in this action that Aetna's application of the Wellstar Plan was not discriminatory would not preclude, or protect Wellstar from, a second suit by Plaintiff making the very same allegations against Wellstar directly.  Indeed, other courts in this Circuit dismissed actions under Rule 19 for this very reason. In *Sty-Lite Co. v. Eminent Sportswear Inc.*, 115 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2000), for example, the plaintiff sued two groups of defendants, one of which was non-diverse, and the district court faced the decision whether to allow the suit to proceed solely as to the diverse defendants or to dismiss the entire action under Rule 19.  The court concluded that a judgment against the diverse defendants alone, in the absence of the non-diverse defendants, would not

satisfy the adequacy requirement of Rule 19.  *Id.*  "The court feels confident, that should plaintiffs not secure a judgment against [the diverse defendants] in a proceeding in federal court, plaintiffs would find that result to be 'inadequate' and would then file suit against [the absent non-diverse defendants] in state court.  It is therefore doubtful that the court can render an efficient and complete resolution of this matter."  *Id.* at 400.  *See also Uni Storebrand Co, UK Ltd. v. Star Terminal Corp.*, No. 96 CIV. 9556 (DLC), 1997 WL 391125, at *6 (S.D.N.Y. July 11, 1997) (dismissing action under Rule 19 where any judgment would be adequate only as between the parties present but would leave the absent party subject to separate litigation, "which would waste the resources of both parties and the courts.").

Conversely, a judgment in this action that the Wellstar Plan is discriminatory—but without Wellstar being allowed to defend its own Plan—clearly would subject Wellstar to the risk of subsequent suits by other Plan participants.  Courts in this Circuit also have dismissed cases under Rule 19 for this reason.  In *Ing. Hoschek Autoverleich GSE.M.B.H. v. Balag, Ltd.*, No. 93 CIV. 8513 (PKL), 1994 WL 701989 (S.D.N.Y. Dec. 14, 1994), for example, the court dismissed an action under Rule 19 where one defendant was non-diverse because any judgment rendered would be prejudicial to the absent party and inadequate.

> Disposition of the present action in Car–Pol's absence could, as a practical matter, impair Car–Pol's interest. While this Court's decision is not binding on foreign courts, an unsuccessful defense with adverse findings of fact could establish a negative precedent that prejudices Car–Pol in any subsequent proceeding abroad. The same is true for any possible second action brought against Car–Pol in state court. Car–Pol is especially at risk of a determination by this Court, even if there is no corresponding judgment against Car–Pol, that it has substantial liability.

*Id.* at *4.  The court also found that proceeding without the absent party could also prejudice the named defendants, who might be subjected to multiple or inconsistent obligations depending on the outcome of future lawsuits.

> A judgment rendered in Car–Pol's absence may or may not be adequate for plaintiff and named defendants. For example, if no liability is found, the accompanying judgment would certainly be adequate. If, on the other hand, the Court finds liability but determines that Car–Pol alone is at fault, the judgment will not be adequate. In addition… even if a judgment rendered in Car–Pol's absence is adequate as between [named defendants] it may substantially prejudice Car–Pol or one of the other parties in subsequent actions.

*Id.* at *5. *See also 2 Montauk Highway LLC v. Global Partners LP*, 296 F.R.D. 94, 101-2 (E.D.N.Y. 2013) (finding dismissal warranted where no judgment—either in favor of plaintiff or defendant—would be adequate in absence of indispensable party and future litigation was likely); *Greer v. Carlson*, No. 1:20-cv-05484 (LTS) (SDA), 2020 WL 8340068, at *5 (S.D.N.Y. Dec. 24, 2020) (granting motion to dismiss where proceeding without party increased the likelihood of parallel federal and state court litigations, which would inevitably involve substantial overlap with present litigation and run the risk of inconsistent rulings, to the detriment of all parties).[2]

Allowing Plaintiff to challenge the Wellstar Plan as discriminatory, without allowing Wellstar to be present and defend its own plan, would prejudice Wellstar for the simple reason that any judgment entered in Wellstar's absence would subject Wellstar to the risk of additional litigation. An Aetna victory would not protect Wellstar from a direct action by Plaintiff. And a finding that Wellstar's plan is discriminatory would expose Wellstar to the claims of other members of the Plan. Rule 19 is designed to prevent this sort of prejudice.

---

[2] Plaintiff's counsel acknowledged at the June 22 hearing that a verdict in this action finding that the Wellstar Plan is discriminatory might well generate additional litigation by other Plan participants against Wellstar directly; indeed, counsel conceded that such copycat litigation is common. Counsel then argued that Wellstar would nonetheless not be prejudiced by an adverse verdict rendered in *this* litigation, because Wellstar could still present its own defenses in any *subsequent* litigation this case might generate. Counsel insists, in effect, that Wellstar need not be allowed to defend itself here because it can always attempt to pick up the pieces elsewhere later. But that is precisely the circumstance—the very prejudice and waste of judicial resources—that Rule 19 prohibits. *See, e.g., Pimentel*, 553 U.S. at 870; *2 Montauk Highway*, 296 F.R.D. at 101-2; *Greer*, 2020 WL 8340068, at *5.

**3.** **Plaintiff's desire to proceed against Aetna alone in order to promote a class action does not outweigh the important substantive protections embodied in Rule 19.**

At the hearing on June 22, 2023, Plaintiff's counsel argued that Plaintiff should be allowed to proceed against Aetna alone because counsel wishes to plead the case in that manner to promote their ability to pursue a nationwide class action—again using Aetna as the lone surrogate for all self-funded plans.

But the purpose of Rule 19 is to protect the rights of absent parties whose interests may be materially affected by a litigation.  Nothing in Rule 19, or in factors the Second Circuit has adopted for its application, provides that a plaintiff may use the purely procedural device of a class action to proceed against some indispensable parties but not others.  Indeed, "it would be extraordinary to use the class device to overturn individually negotiated … agreements, particularly when the negotiating fiduciaries are absent."  *Baird v. Blackrock Inst. Trust Co., N.A.*, No. 17-cv-01892-HSG, 2020 WL 7389772, at *11 (N.D. Cal. February 11, 2020).

The Supreme Court has made clear that the question whether a judgment is "adequate" in the context of Rule 19 looks, not "to satisfaction of the [plaintiff's] class claims", but rather "to the public stake in settling disputes by wholes, whenever possible."  *Pimentel*, 553 U.S. at 870. In *Humble v. Harrah's NC Casino Co., LLC*, No. 1:17-cv-262, 2018 WL 4576784 (W.D.N.C. June 1, 2018), for example, a putative class of former employees sought redress from the defendant, their employer, for the latter's abuse of federal and state wage and hour laws.  The defendant sought dismissal on the basis that plaintiffs had failed to join a necessary and indispensable party, the tribal enterprise that supervised the defendant, to wit the "real" employer of plaintiffs.  *Id.* at *8-9.  The court dismissed the class action because the tribal entity was an indispensable party to the litigation, and the action could not proceed without the tribal entity's participation.  *Id.* at *9-10.  *See also Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 922

10

(D. Kan. 2007) (holding that where the Rule 19 factors established that an absent party was indispensable, plaintiffs' desire to pursue a class action did not justify continuing the litigation in that party's absence).

Nor does Rule 19 permit Plaintiff to pick and choose among indispensable parties in composing her lawsuit.  In *Silverio v. LQ 511 Corp.*, No. 13 Civ. 5002 (AT), 2014 WL 1413640 (S.D.N.Y. Apr. 9, 2014), for example, the court addressed a discrimination complaint filed by a plaintiff against two defendants, one of which was non-diverse.  The parties disputed whether the plaintiff was exclusively an employee of the diverse defendant or employed simultaneously by both defendants, and the court held that "[t]he very existence this factual dispute, which need not be involved at this stage, underscores why [the non-diverse defendant] is indispensable to this action.  Any resolution of that dispute rendered in [the non-diverse defendant's] absence would be highly prejudicial to [the non-diverse defendant], which could not be alleviated.  [The non-diverse defendant] might be subject to a subsequent, separate lawsuit on similar facts. . . .  At the very least, [the non-diverse defendant] should have the opportunity to weigh in on these disputed facts, which directly implicate his potential liability."  *Id.* at *2.[3]  *See also Humble.,* 2018 WL 4576784 at *8-9 (dismissing class action alleging workplace violations where plaintiffs sued their immediate employer but not the entity ultimately responsible for the workplace; under Rule 19, plaintiffs' "real" employer was an indispensable party).

---

[3] Plaintiff's amended complaint fails here for the same reasons.  Plaintiff asks the Court to presume that Aetna alone is responsible for the terms and operation of the Wellstar Plan and to ignore the Plan documents that expressly deny Aetna any such authority.  And Plaintiff asks the Court to presume that Aetna is the only necessary party and to ignore the Plan documents which expressly provide that "the Company [Wellstar Health] and the Plan Administrator [Wellstar Health] are the only necessary parties to any action or proceeding that involves the Plan or its administration."  Dkt. 50, Ex. B at 69-70.  But if Plaintiff is to litigate that dispute, Wellstar Health and the Wellstar Plan must be party to it.  It would be highly prejudicial to Wellstar Health to adjudicate its role with respect to the Plan, or to assess or modify the Wellstar Plan, in their absence.

In sum, Plaintiff's desire to simplify her lawsuit cannot come at the cost of clear prejudice to Wellstar, which would be denied the ability to participate in the defense of its own employee health benefit plan against charges of discrimination. Nor can Plaintiff's wish to lighten her own burden justify asking this Court to waste the judicial resources necessary to adjudicate a complaint that Plaintiff has intentionally composed such that any judgment rendered would be legally inadequate either to resolve the rights and obligations of all the interested parties or even to afford the full relief Plaintiff seeks. Plaintiff has created here precisely the scenario Rule 19 is designed to prevent.[4]

**4.     Courts have held that Plan sponsors, like Wellstar here, are indispensable parties in actions challenging the operation of the Plan.**

The principles and policies underlying Rule 19 apply with particular force in litigation affecting self-funded ERISA health benefit plans, and courts have consistently held that an action challenging or affecting the terms of a self-funded ERISA plan may proceed only with the presence and participation of the plan sponsor or plan administrator. Indeed, it bears repeating that self-funded ERISA plans are not "insurance" in the conventional sense; rather, when a health plan is self-funded, the employer does not purchase an insurance policy to cover its plan obligations but instead pays benefits from its own coffers and retains a third-party administrator to process and pay claims. *Liberty Mut. Ins. Co. v. Donegan,* 746 F.3d 497, 501 (2d Cir. 2014); *Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129, 1131 (9th Cir. 2017); *see also FMC Corp. v. Holliday*, 498 U.S. 52, 54 (1990) (describing self-funded plans). And the ERISA statute makes clear that the funding plan sponsor or its designated plan administrator—Wellstar Health

---

[4] Plaintiff's counsel argued at the June 22 hearing that it would be sufficient simply to engage Wellstar in third-party fact discovery. But discovery alone, without Wellstar being allowed to actively defend the litigation, falls far short of the "full opportunity to contest" Plaintiff's challenges to Wellstar's plan and conduct that Rule 19 is designed to protect.

assumed both roles here—bears the ultimate legal responsibility for the plan.[5]  Which is why the Wellstar Plan documents expressly provided that Aetna, as claims administrator, had no fiduciary authority to determine eligibility for benefits under the Wellstar Plan or to alter the terms of the Plan.

Aetna has previously directed this Court to case law squarely holding, in circumstances substantially similar to those here, that the employer–administrator of a self-funded health plan was a necessary and indispensable party under Rule 19.  *See* Dkt. 50-1 at 19-20; Dkt. 56 at 4-7 (discussing *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815 (9th Cir. 1985) and *Cuevas v. Joint Benefit Tr.*, No. 13–cv–00045–JST, 2013 WL 3578496, at *3 (N.D. Cal. July 12, 2013)).  Other courts have reached the same conclusion.

For example, in *Sypher v Aetna Ins. Co.*, No. 13-10007, 2014 WL 1230028 (E.D. Mich. Mar. 25, 2014), the plaintiff (like Plaintiff here) sued only the claims administrator, but not the plan sponsor or plan administrator, under her ERISA-governed plan.  The court held that the plan sponsor/administrator was an indispensable party under Rule 19:  "Aetna [as claims administrator] … is not the Plan Administrator, and it does not pay the claims.  Rather, Federal Express is self-insured, and it, not Aetna, both funds the Plan and pays benefits.  Federal Express is designated as the Plan Administrator under the explicit terms of the Plan."  *Id.* at *4.  The plaintiff's failure to join the plan administrator necessitated dismissal of the suit:  "Plaintiff has not joined Federal Express, the Plan Administrator, as a party.  Because Plaintiff seeks benefits, and because those benefits would be

---

[5] Self-funded ERISA plans are, by statute, separate entities that can sue and be sued.  29 U.S.C. § 1132(d)(1).  The plan "sponsor," which ERISA generally defines as "the employer," *see id.* § 1002(16)(b), is the party that establishes or maintains the ERISA plan and its terms.  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78-79 (1995).  Finally, the self-funded "plan administrator" (distinct from a claims administrator—i.e., Aetna here) is the entity so designated by the ERISA plan; and if the plan fails to designate one, it is the plan sponsor by default. 29 U.S.C. § 1002(16)(a).

paid by Federal Express, (1) the Court cannot grant complete relief in the absence of Federal Express, and (2) Federal Express cannot protect its interests in the absence of joinder. Thus, Federal Express is a necessary party under Rule 19, and Plaintiff's failure to join Federal Express necessitates dismissal under Rule 12(b)(7)." *Id.* at *5.

Similarly, in *Sutherland v. Disability RMS*, No. 3:16-CV-00683-JHM, 2017 WL 403574 (W.D. Ky. Jan. 30, 2017), the court granted defendant's motion to dismiss because plaintiff had failed to join the plan administrator, who "control[led] the administration of the plan." *Id.* at *2. "An injunction requiring payment of plan benefits must be directed at an entity capable of providing the relief requested, i.e. the plan administrator. . . . Thus, the necessary party in an ERISA action will be the plan administrator, as complete relief cannot be accorded without the presence of the plan administrator." *Id.* "The Plan Administrator is the party who is shown to control administration of the plan and who pays benefits under the terms of the plan." *Id. See also Hall v. LHACO, Inc.*, 140 F.3d 1190, 1196 (8th Cir. 1998) ("Only the Plan and the current plan administrator can pay out benefits to [the plaintiff"] … The terms of [the plaintiff's] Plan would necessarily have to be enforced against the Plan itself and the present administrator; only from them can [the plaintiff] obtain proper subrogation a payment of benefits pursuant to the terms of his Plan.").

Here, Wellstar Health is both the Plan Sponsor and the Plan Administrator and pays benefits under the Wellstar Plan with its own funds. Under the ERISA statute, Wellstar Health is the party with the ultimate legal authority over and responsibility for the terms and operation of the Wellstar Plan. And under Rule 19, Wellstar Health is an indispensable party in this action.[6]

---

[6] The authorities Plaintiff has cited are inapposite. *See Tovar v. Essentia Health*, 342 F.Supp.3d 947 (D. Minn. 2018); *Carr v. United Healthcare Servs. Inc.*, No. C15-1105 (MJP), 2016 WL 7716060, at *4 (W.D. Wash. May 31, 2016). Unlike those cases, Aetna here does not seek its own *dismissal* and *substitution* of Wellstar Health and the Wellstar Plan; rather, Aetna submits

B.  **Section 1557 implementing regulations and relevant guidance from the Office of Civil Rights further demonstrate that Wellstar is a necessary party to this action.**

The Court also asked the parties to address the Office of Civil Rights ("OCR") guidance cited in Justice Benton's partial dissenting opinion in *Tovar v. Essentia Health*, 857 F.3d 771, 779 (8th Cir. 2017) (Benton, J., concurring in  part and dissenting in part).

The *Tovar* dissent is correct that, in 2016, the OCR issued its final rule implementing Section 1557 of the Affordable Care Act ("ACA"), which recognized that self-funded plans are unique in that "third party administrators are generally not responsible for the benefit design of the self-insured plans they administer and that ERISA (and likely the contracts into which third party administrators enter with the plan sponsors) requires plans to be administered consistent with their terms." 81 Fed. Reg. 31,375, 31,432 (May 18, 2016).  Consequently, "if a plan has a discriminatory benefit design under Section 1557, a third party administrator could be held responsible for plan features over which it has no control." *Id.*  To combat this concern, the OCR stated that in processing claims that involve alleged discrimination in self-insured health plans, OCR would assess "whether responsibility for the decision or other action alleged to be discriminatory rests with the employer or the third party administrator." *Id.* In instances where the alleged discrimination "relates to the *benefit design* of a self-insured plan," as opposed to the administration of that plan, OCR will address the complaint against that employer. *Id.* (emphasis added).

As Plaintiff's Amended Complaint makes abundantly clear, Plaintiff here challenges the *benefit design* of the Wellstar Plan.  *See, e.g.,* Am. Compl. at ¶ 6 ("The pertinent terms of the Medical Plan were drafted and *designed* by Aetna."), ¶ 10 ("The Medical Plan, *designed* by

---

that the Court cannot adjudicate the claims Plaintiff asserts without the *joinder* of these missing parties.

Defendant . . . ."), ¶ 23 ("Aetna *designs* and issues [medical insurance plans] to employers"), ¶

25 ("Aetna has issued and administered the Wellstar Employee Medical Plan for Plan Holder

employees of Wellstar Health System, as well as numerous other medical plans also *designed* by

Aetna, and containing the same pertinent provisions, for employers throughout the nation.")

(emphasis added); *see also id.* at ¶¶ 26, 51, 59.b., 90, 91.a.  Under the 2016 OCR guidance,

therefore, these complaints about the design of the Wellstar Plan implicate Wellstar, as the plan

sponsor, not Aetna.  And, in any event, the plan documents make clear that the operation and

administration of the Wellstar Plan is the responsibility of Wellstar, and there is no allegation

that Aetna acted in any way contrary to the design of the plan.[7]

The 2016 OCR guidance remained in effect until new regulations were implemented in

2020, which even more explicitly limited applicability to health insurers. 85 Fed. Reg. 37,160,

37,171 (June 19, 2020) (the "2020 Regulations").  Under the 2020 Regulations, Section 1557 is

applicable to "any health program or activity, any part of which is receiving Federal financial

assistance." 45 C.F.R. § 92.3 (2020). The 2020 Regulations go on to clarify that:

> '… "health program or activity" encompasses all of the operations of entities
> principally engaged in the business of providing healthcare that receive Federal
> financial assistance... For any entity not principally engaged in the business of

---

[7] Plaintiff's assertion that Aetna, rather than Wellstar, designed the plan benefit is flatly inconsistent with the language of the plan itself, which expressly provides that Wellstar Health, as plan sponsor and plan administrator, has "full power and discretionary authority" to, among other things, "determine all questions concerning the eligibility of any individual to participate in, be covered by,  receive benefits under the Plan pursuant to the provisions of the Plan."  *See* Dkt. 50, Ex. B at 64-65.  And for purposes of the present motion, in the context of Rule 19, the allegation merely begs a factual question that plainly affects Wellstar's interest and that it would be prejudicial to resolve in Wellstar's absence. *See, e.g., Silverio*, 2014 WL 1413640, at *2; *In re Lowenschuss*, 171 F.3d 673, 677-78 (9th Cir. 1999) (pension plan trustee was an indispensable party because the issues "directly affect the potential obligations and liabilities" of the trustee). Indeed, it is the Wellstar Plan, not Aetna, that ultimately provides and pays the Plan benefits, and assessing the legality of the benefit design of the Wellstar Plan "would necessarily implicate the plan sponsors' conduct and interests as well."  *Baird*, WL 7389772, at *11 n. 15; *see also Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 838-39 (9th Cir. 2018).

> providing healthcare, the requirements applicable to a "health program or activity" under this part shall apply to such entity's operations only to the extent any such operation receives Federal financial assistance….'

*Id.*  While the scope of applicability is quite broad for entities principally engaged in the business of providing healthcare, other entities are covered by Section 1557 only with respect to the operations actually receiving federal assistance. The plain language of the statute makes clear that health insurers fall into the second, more narrow scope of applicability as they are not healthcare providers.  45 C.F.R. § 92.3(c) ("For the purposes of this part, any entity principally or otherwise engaged in the business of providing health insurance shall not, by virtue of such provision, be considered to be principally engaged in the business of providing healthcare.").[8]

The 2020 Regulations are the regulations that were in effect at the time of the conduct alleged in Plaintiff's Amended Complaint, and they are the regulations still in effect today.[9] And these regulations make clear that Aetna, a health insurer not engaged in the business of providing healthcare, is not subject to Section 1557 with respect to its operations that do not receive federal financial assistance (i.e., its business as a third-party claims administrator).[10]

---

[8] The preamble to the 2020 Regulations also explained that the intent of the new rule was to narrow the scope of applicability to health insurance products. 85 Fed. Reg. 37,173. Addressing comments that the language of 45 C.F.R. § 92.3(c) would "exempt[] many of the plans, products, and operations of most health insurance issuers," including third-party administrator services, the Department of Health and Human Services responded that it "agrees with commenters who stated that the overly broad reach of the 2016 Rule subjected many insurance products that were not intended to be covered by the ACA to burdensome regulation, inconsistent with Congressional intent." *Id.*

[9] In 2022, new regulations were proposed, largely mimicking the requirements under the 2016 Regulations. 87 Fed. Reg. 47824 (Aug. 4, 2022). However, the 2022 Regulations are not binding until finalized. See *LeCroy Research Sys. Corp. v. C.I.R.*, 751 F.2d 123, 127 (2d Cir. 1984) ("Proposed regulations are suggestions made for comment; they modify nothing").

[10] Moreover, as discussed previously, Aetna does not act as an "insurer" for ERISA plans that are self-funded.  Rather, as the 2016 OCR guidance recognizes, in the case of a self-funded plan, Aetna acts solely as a third-party claims administrator, and the plan sponsor, not Aetna, is responsible for the benefit design of the plan.

In sum, although the regulations have evolved since the adoption of the ACA, one constant has been that it is the plan sponsor/administrator, not the third-party claims administrator, that bears ultimate responsibility for the benefit design in a self-funded plan. Nothing in any version of the regulations suggests that Wellstar has no legal interest here or that Aetna, acting solely as a claims administrator, can be held responsible for the design of the Wellstar Plan.[11]

## **CONCLUSION**

For the foregoing reasons, Aetna respectfully requests the Court dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(7).


Dated at Glastonbury, Connecticut this 14th day of July, 2023.


*/s/ Greil I. Roberts*
Greil I. Roberts (ct29324)
Gordon Rees Scully Mansukhani LLP
95 Glastonbury Blvd, Suite 206
Glastonbury, Connecticut 06033
Tel.: (860) 278-7448
Fax: (860) 560-0185
groberts@grsm.com

---

[11] As discussed at the June 22 hearing, Aetna acknowledges that the Eighth Circuit held in *Tovar* that a third-party claims administrator (like Aetna here) may be a proper defendant for the purposes of Article III standing in a claim under ACA Section 1557. 857 F.3d at 779. But *Tovar* did not address the Rule 19 question at issue here—namely, whether the self-funding *plan sponsor/administrator* (Wellstar Health here) also has an interest in the litigation such that any judgment entered in its absence may, "as a practical matter, impair or impede [its] ability to protect" its interest. *Patterson*, 390 U.S. at 110 (1968). Like the OCR regulations themselves, nothing in *Tovar* suggests that Wellstar is not a necessary and indispensable party in this action challenging the legality of its own plan. Indeed, as in *Tovar*, the factual circumstances here "fit the typical scenario where OCR will pursue only the employer." *Tovar*, 857 F.3d 781 (Benton, J., concurring in part and dissenting in part).

Earl B. Austin
Sarah Reeves
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Tel.: (212) 408-2500

Mariellen Dugan
CALCAGNI & KANEFSKY LLP
One Newark Center
1085 Raymond Boulevard, 14th Floor
Newark, New Jersey 07102
Tel.: 862-397-1796
mdugan@ck-litigation.com

*Attorneys for Aetna Life Insurance Company*