**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

TARA KULWICKI, on behalf of herself and all
others similarly situated,

                Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY,

        Defendant

Case No. 3:22-CV-00229 (RNC)

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

I.   No Absent Parties Are Required Under Rule 19(a). ............................................. 3

   A.   Plaintiff May Obtain Complete Relief Against Aetna Under Section 1557. ................... 4

   B.   Aetna's Independent Liability Is Confirmed Directly by Section 1557 and
       Multiple Iterations of Relevant HHS Guidance. ............................................. 10

   C.   No Absent Party Has Claimed or Could Claim an Interest in This Litigation
       That Would Be Impaired By Their Absence. ................................................. 13

II.  Dismissal Is Inappropriate, Even Assuming Absent Parties Were Required, Given
    the Prejudice to Plaintiff and the Harmful Precedent It Would Set. .................................... 18

   A.   Dismissal Will Prejudice Plaintiff's Individual Claims. ................................................. 19

   B.   Dismissal Will Prejudice Plaintiff's Class Claims. ....................................................... 20

   C.   Compulsory Joinder of Self-Funded Plans and Plan Sponsor Administrators
       Would Set a Dangerous Precedent Thwarting Congressional Intent. ........................... 22

CONCLUSION.................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page(s)**

*Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*,
    795 F.3d 351 (2d Cir. 2015) ................................................................................. 1, 18, 19

*Anderson v. Am. Fam. Ins. Co.*,
    No. 5:15-CV-475 (MTT), 2016 WL 3633349 (M.D. Ga. June 29, 2016) .............................. 21

*Bassett v. Mashantucket Pequot Tribe*,
    204 F.3d 343 (2d Cir. 2000) ............................................................................................... 5

*Boston All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Human Servs.*,
    Case No. 1:20-cv-11297, 2020 WL 3891426 (D. Mass. July 9, 2020)......................................11

*C. P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*,
    No. 3:20-CV-06145-RJB, 2022 WL 17788148 (W.D. Wash. Dec. 19, 2022) .................. passim

*Calagaz v. Calhoon*,
    309 F.2d 248 (5th Cir. 1962).............................................................................................. 21

*Carr v. United Healthcare Servs. Inc.*,
    No. C15-1105 (MJP), 2016 WL 7716060 (W.D. Wash. May 31, 2016)............................... 6, 7

*Chang Young Bak v. Metro-N. R. Co.*, No.,
    12 CV 3220, 2013 WL 1248581 (S.D.N.Y. Mar. 26, 2013)..................................................... 15

*Couloute v. Hunt, Leibert, Chester & Jacobson, LLC*,
    295 B.R. 689 (D. Conn. 2003) ........................................................................................... 19

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
    142 S.Ct. 1562 (2022).......................................................................................................... 9

*Doe v. City of Pawtucket*,
    No. CV 17-365-JJM-LDA, 2022 WL 4551953 (D.R.I. Sept. 29, 2022)................................... 9

*Doe v. Fairfax Cnty. Sch. Bd.*,
    No. 118-CV-00614-MSN-IDD, 2023 WL 424265 (E.D. Va. Jan. 25, 2023) ............................ 9

*Domnister v. Exclusive Ambulette, Inc.*,
    607 F.3d 84 (2d Cir. 2010) ................................................................................................ 19

*Faulkner v. Nat'l Geographic Enterprises Inc.*,
    409 F.3d 26 (2d Cir. 2005) ................................................................................................ 16

*Fox v. Saginaw Cnty., Mich.*,
    67 F.4th 284 (6th Cir. 2023) ................................................................................... 21

*Friends of Animals, Inc. v. City of Bridgeport Police Dep't*,
    No. 3:06-CV-1708 JCH, 2007 WL 201245 (D. Conn. Jan. 23, 2007) ..................................... 14

*In re Initial Pub. Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) ..................................................................... 4

*Inland Nw. Renal Care Grp., LLC v. WebTPA Emp. Servs., LLC*,
    No. C19-1758-JCC-SKV, 2022 WL 18999836 (W.D. Wash. Dec. 29, 2022) ........................... 8

*Jonesfilm v. Lion Gate Int'l*,
    299 F.3d 134 (2d Cir. 2002) .................................................................... 2, 5, 14, 18

*La Mar v. H & B Novelty & Loan Co.*,
    489 F.2d 461 (9th Cir. 1973) ................................................................................. 21

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012) .................................................................................. 21

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
    471 F.3d 377 (2d Cir. 2006) .......................................................................... 5, 15, 18

*Mattera v. Clear Channel Commc'n, Inc.*,
    239 F.R.D. 70 (S.D.N.Y. 2006) ............................................................................. 17

*McKithen v. Brown*,
    481 F.3d 89 (2d Cir. 2007) .................................................................................. 19

*Moore v. Comfed Sav. Bank*,
    908 F.2d 834 (11th Cir. 1990) ............................................................................... 21

*Morris v. Viking Pools Ne., Inc.*,
    No. 3:05-CV-305(JCH), 2005 WL 8165631 (D. Conn. Dec. 5, 2005) ................................... 5

*North Haven Bd. of Educ. v. Bell*,
    456 U.S. 512 (1982) ........................................................................................... 23

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ........................................................................................... 16

*Parmlee v. Officer of Att'y Gen.*,
    No. 3:21-CV-01292 (MPS), 2022 WL 1462247 (D. Conn. May 9, 2022) ............................... 19

*Payton v. Cnty. of Kane*,
    308 F.3d 673 (7th Cir. 2002) ................................................................................ 21

*Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*,
    No. 3:20-CV-11-MAB, 2023 WL 348320 (S.D. Ill. Jan. 20, 2023)............................................ 9

*Peregrine Myanmar Ltd. v. Segal*,
    89 F.3d 41 (2d Cir. 1996) .................................................................................... 6, 14, 15

*Quinn v. Fishkin*,
    117 F. Supp. 3d 134 (D. Conn. 2015) ............................................................................... 7

*Rexam Inc. v. United Steel Workers of Am., AFL-CIO-CLC*,
    No. 03-2998 ADM/AJB, 2005 WL 1260914 (D. Minn. May 25, 2005) .................................. 21

*Sacerdote v. Cammack Larhette Advisors, LLC*,
    939 F.3d 498 (2d Cir. 2019) .......................................................................................... 16

*Scott v. St. Louis Univ. Hosp.*,
    4:21-cv-01270-AGF, 2022 WL 1211092 (E.D. Mo. Apr. 25, 2022)................................... 24, 25

*T.S. v. Heart of Cardon, LLC*,
    43 F.4th 737 (7th Cir. 2022) ......................................................................................... 10

*Takeda v. Nw. Nat. Life Ins. Co.*,
    765 F.2d 815 (2d Cir. 1985) ..................................................................................... 8, 15, 17

*Taylor v. Sturgell*,
    553 U.S. 880 (2008).................................................................................................... 16

*Temple v. Synthes Corp., Ltd.*,
    498 U.S. 5 (1990)......................................................................................................... 5

*The Fair v. Kohler Die & Specialty Co.*,
    228 U.S. 22 (1913)...................................................................................................... 19

*Tovar v. Essentia Health*,
    342 F. Supp. 3d 947 (D. Minn. 2018) ....................................................................... 6, 8, 9, 10

*Tovar v. Essentia Health*,
    857 F.3d 771 (8th Cir. 2017)................................................................................... passim

*Tross v. Ritz Carlton Hotel Co., LLC*,
    928 F. Supp. 2d 498 (D. Conn. 2013) ...................................................................... 4, 5, 13, 14

*Viacom Int'l, Inc. v. Kearney*,
    212 F.3d 721 (2d Cir. 2000) ........................................................................................... 5

*Voronina v. Scores Holding Co., Inc.*,
    No. 16-CV-2477 (LAK), 2017 WL 74731 (S.D.N.Y. Jan. 5, 2017)...................................... 14

*Walker v. Azar*,
   480 F. Supp. 3d 417 (E.D.N.Y. June 26, 2020) ........................................................11

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*,
   485 F. Supp. 3d 1 (D.D.C. 2020) ..........................................................................11

## Statutes

29 U.S.C. § 1132(a)(1)(B) ........................................................................... 4, 24

29 U.S.C. § 1132(a)(3) ................................................................................ 4, 25

29 U.S.C. § 1144(d) .......................................................................................... 8

42 U.S.C. § 2000e–2(a) ................................................................................... 24

42 U.S.C. § 2000e–5 ........................................................................................ 24

42 U.S.C. § 2000e(b) ....................................................................................... 24

42 U.S.C. § 18116(a) ................................................................................ 23, 24

## Rules

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 6

Fed. R. Civ. P. 12(b)(7) .............................................................................. 4, 5, 7

Fed. R. Civ. P. 19(a) .................................................................................. passim

Fed. R. Civ. P. 19(b) ...................................................................... 2, 5, 14, 18

## Regulations

45 C.F.R. § 92.207(b) .......................................................................................11

*Nondiscrimination in Health and Health Education Programs or Activities*,
   85 Fed. Reg. 37,160 (June 19, 2020) .................................................................11

*Nondiscrimination in Health Programs and Activities*,
   81 Fed. Reg. 31,375 (May 18, 2016) ..............................................................11, 12

*Nondiscrimination in Health Programs and Activities*,
   87 Fed. Reg. 47,824 (Aug. 4, 2022) ...............................................11, 13, 22, 23

## Other Authorities

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1359 (3d ed.) ...... 7

156 Cong. Rec. S1842 ................................................................................................ 2

Restatement (Second) of Contracts § 347 (1981) .......................................................... 9

## INTRODUCTION

Aetna frames the instant motion as an innocuous request to expand the entities potentially subject to liability in this action. Oral Arg. Tr. 8:18–24, 9:11–10:8, 29:17–22; Aetna Supp. Br. in Support of Mot. to Dismiss, No. 99 ("Aetna Supp. Br."), at 14–15 n.6. Nonsense. Rather, by this motion, Aetna seeks to substantially limit its own independent liability for class-wide discrimination in the self-funded plans it administers and erect unnecessary barriers to plan participants' ability to obtain relief, in contravention of the plain language and intent of Section 1557 of the Affordable Care Act. While certainly plan participants may elect to sue both Aetna and other entities that they think additionally may be liable for related discriminatory actions, that choice belongs to the plaintiff alone unless joinder of other defendants is absolutely necessary. Indeed, in general, "[f]ederal courts are extremely reluctant to grant motions to dismiss based on nonjoinder." *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 357 (2d Cir. 2015). And here no absent party comes even close to meeting Rule 19(a)'s rigorous standard—a fact Aetna conveniently glosses over in its supplemental brief.

This action seeks damages and declaratory relief from Aetna for its own discriminatory conduct in violation of Section 1557. Specifically, Plaintiff challenges Aetna's use of its facially discriminatory Clinical Policy Bulletin on Infertility, which it incorporates into the health coverage plans that it provides and administers, that requires Plaintiff and other similarly situated non-heterosexual individuals assigned female at birth, based on their sexual orientation, to pay out-of-pocket for infertility treatments as a prerequisite to receiving coverage for such services. Am. Compl. ¶¶ 46–52. Plaintiff repeats—contrary to Aetna's many misrepresentations—that she does not seek money damages or any award of benefits payable by the Wellstar Employee Medical Plan ("Wellstar Plan"). Nor does Plaintiff seek to void or rewrite the Wellstar Plan or any other plan

that Aetna administers. Aetna alone is necessary for Plaintiff to obtain the relief from Aetna that she actually seeks. *See* Fed. R. Civ. P. 19(a)(1)(A).

Moreover, neither Wellstar Health System, Inc. ("Wellstar Health"), nor the Wellstar Plan, nor any other absent plan or plan sponsor has sought intervention or otherwise "claim[ed] an interest" in this case in the nearly one-and-a-half years since it was filed. And even if they had, Aetna has not argued that it is in privity with any absent parties or that Aetna would be subject to a risk of multiple or inconsistent obligations absent joinder. *See id.* Rule 19(a)(1)(B). Because neither provision of Rule 19(a)(1) is satisfied here, Aetna's Rule 12(b)(7) motion *must* be denied— and there is no occasion for this Court to consider potential prejudice to absent parties under Rule 19(b). *See Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 139 (2d Cir. 2002).

But even if it were appropriate for the Court to consider the equities here, denial of Aetna's motion would still be required. No absent party will suffer prejudice from denial of Aetna's motion; indeed, those parties may be more harmed by being forced into these proceedings. Moreover, any possible prejudice to absent parties is far outweighed by the prejudice to Plaintiff—already a party before this Court—and the dangerous precedent that would be set by a holding that third-party administrators (TPAs) of self-funded plans like Aetna can attempt to avoid liability by manipulating the Federal Rules of Civil Procedure.

Congress's intent in enacting Section 1557 was to ensure that all individuals "are able to reap the benefits of health insurance reform equally without discrimination." 156 Cong. Rec. S1842 (daily ed. Mar. 23, 2010) (Stmt. of Sen. Leahy). Particularly given that 65% of workers covered by employer-sponsored health plans in the U.S. are enrolled in self-funded plans, a holding that employers and plans are *necessary* parties in claims for discriminatory benefit design would

contravene legislative intent.[1] The law is clear: Aetna can and should be held independently liable for its own role in designing an unlawful benefit policy; applying that policy across its coverage products, including the self-funded plans it administers; and choosing to administer plans that discriminate against LGBTQ members based on sex. As the master of her complaint, Plaintiff has the right to choose to pursue her claim solely against Aetna, whom she alleges is responsible for discrimination against her and others similarly situated and from whom she and others can obtain complete relief. The motion should be denied.

## I.      No Absent Parties Are Required Under Rule 19(a).

Aetna's argument that the Wellstar Plan, Wellstar Health, and countless other plans, plan sponsors, and plan administrators are necessary parties to this litigation mischaracterizes the nature of Plaintiff's claim and the remedies she seeks. Aetna insists that it cannot be liable for discrimination in the self-funded plans it designs, drafts, and administers because the plan document limits Aetna's subsequent role as TPA to that "merely" of a claims processor with no authority or responsibility over the plan's management, direction, or funds, and because under ERISA it must administer plans according to their terms.[2] Aetna Mot. to Dismiss Mem., No. 50-1

---

[1] KAISER FAMILY FOUND., EMPLOYER HEALTH BENEFITS 2022 ANNUAL SURVEY, SECT. 10 PLAN FUNDING, at 156 (2022), https://files.kff.org/attachment/Report-Employer-Health-Benefits-2022-Annual-Survey.pdf.

[2] Plaintiff notes at the outset that Aetna's motion should be construed as arguing for compulsory joinder of employer sponsors *only* as to self-funded plans, not fully insured plans that Aetna designs, sells, and underwrites. Although the putative class broadly includes individuals in relevant "Aetna medical or health insurance plan[s]," including both self-funded plans and also fully insured employer-sponsored plans and student health insurance, Am. Compl. ¶¶ 56, 58, Aetna incorrectly interprets Plaintiff's class to extend only to those in self-funded plans, and its joinder arguments are directed only at self-funded plans, *see* Aetna Mem. at 20–21 (describing the proposed class as "all participants in Aetna-administered plans who were denied benefits for infertility treatment," and stating that "it is indispensable that those self-funded plan entities participate in this action."); Oral Arg. Tr. at 36:15 ("These are all self-funded plans"). While Aetna's arguments are flat wrong as to Aetna-administered self-funded plans, including because

("Aetna Mem."), at 1; Oral Arg Tr. at 5:19–6:5; 8:3–12; 11:11–23, 15:22–23, 36:15–16; Aetna Supp. Br. at 4–6, 12–14. But this action is neither an ERISA claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), nor for plan reformation or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3). Plaintiff does not seek to "void," "modify," or "rewrite" the Wellstar Plan, seeks no damages from Plan coffers, and does not ask the Plan to pay any claims for coverage of medical services. Aetna Mem. at 1, 12, 15, 18–19; Oral Arg. Tr. at 8:3–12; Aetna Supp. Br. at 1, 6, 11, 13–14. Aetna's attempt to "rewrite[] the Complaint[] in a way that they believe favors dismissal" must fail. *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 332–33 (S.D.N.Y. 2003).

Plaintiff's actual complaint seeks relief from Aetna under Section 1557 of the ACA for its *own role* in designing, drafting, and administering a discriminatory fertility benefit policy that applies to both the self-funded plans Aetna administers and the fully insured plans that it underwrites. Am. Compl. ¶¶ 3, 6, 7, 18, 25–26, 47–48, 51, 56, 59(b). The relief Plaintiff seeks is money damages from Aetna—not the Wellstar Plan or any other plan—and a declaration that Aetna's policy violates the law. *Id.* Prayer for Relief ¶ B. No defendant but Aetna is required to adjudicate this claim.

### A.  Plaintiff May Obtain Complete Relief Against Aetna Under Section 1557.

Courts apply a two-part test to determine whether to dismiss an action for failure to join an indispensable party under Rules 12(b)(7) and 19. *See Tross v. Ritz Carlton Hotel Co., LLC*, 928 F.

---

Plaintiff seeks relief for Aetna's own role in designing, drafting, and administering the discriminatory fertility benefit policy (Aetna's "Clinical Policy Bulletin 0327," Am. Compl. ¶48) that is incorporated into all such plans, they would be downright nonsensical as applied to fully insured plans, as to which there is no dispute that Aetna designs and administers them in full. The Court should thus reject any argument that Aetna can shift liability for discrimination in any of its products onto employers, and especially not as to its fully insured products. Aetna offers no authority for this outcome, which would only further frustrate the express intent of Section 1557 to combat discrimination in health coverage.

Supp. 2d 498, 507 (D. Conn. 2013) (quoting *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000)). First, under Rule 19(a), the Court asks whether an absent party is required. *Tross*, 928 F. Supp. 2d at 507. If the answer to that question is yes *and* "joinder of the absent party is not feasible for jurisdictional or other reasons," the Court proceeds to consider whether dismissal is warranted under Rule 19(b) because the absent party is "indispensable," weighing factors such as prejudice to the absent party and to existing parties. *Viacom Int'l, Inc.*, 212 F.3d at 725; Fed. R. Civ. P. 19(b)(1). "A party cannot be indispensable unless it is a 'necessary party' under Rule 19(a)." *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 139 (2d Cir. 2002). And even if a party is necessary, the Court may in its equitable discretion decline to dismiss the case. *See* Fed. R. Civ. P. 19(b).

At step one, if no absent party has "claimed an interest in the action" pursuant to Rule 19(a)(1)(B), a motion to dismiss pursuant to Rules 12(b)(7) and 19 should be denied where "complete relief is possible between the 'existing parties.'" *Tross*, 928 F. Supp. 2d at 507–08 (quoting Fed. R. Civ. P. 19(a)). The relevant inquiry is whether the Plaintiff can obtain "complete relief *as to the defendant*." *Id.* at 508 (citing *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006) (internal quotation marks omitted)). That an absent party may *also* be liable in subsequent litigation for the plaintiff's injury or exposed to litigation against the defendant does not make that party necessary, even if such litigation is "inevitable." *MasterCard Int'l Inc.*, 471 F.3d at 385. Indeed, even where multiple parties are jointly liable for the same injury, it has "long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Morris v. Viking Pools Ne., Inc.*, No. 3:05-CV-305(JCH), 2005 WL 8165631, at *2 (D. Conn. Dec. 5, 2005) (quoting *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990) (quotation marks omitted)); *see also Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 358 (2d Cir. 2000) (citing cases holding that joint tortfeasors are not indispensable parties). Rather, where

"nothing in the district court's statements or final judgment requires the [absent party] to do anything or change any of its positions," that party is not necessary. *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 48 (2d Cir. 1996).

There is no question that Plaintiff and the putative class may obtain complete relief as to Aetna. Every court to consider the issue has held that the plain language of Section 1557 subjects TPAs to liability for discriminatory benefit design in self-funded plans, irrespective of whether the plan sponsor may also be liable. *See C. P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*, No. 3:20-CV-06145-RJB, 2022 WL 17788148, at *6 (W.D. Wash. Dec. 19, 2022); *Tovar v. Essentia Health*, 857 F.3d 771, 778 (8th Cir. 2017); *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 954 (D. Minn. 2018). In *Tovar*, the Eighth Circuit determined that TPAs may be liable for discriminatory benefit design where the plan terms "originated with" the TPA, even if the plan sponsor "subsequently adopted the plan and maintained control over its terms," *Tovar*, 857 F.3d at 778, as Aetna alleges is the case here. *See* Aetna Supp. Br. at 5 (citing to the plan document). More recently, the district court in *Pritchard* clarified TPAs' liability further, properly recognizing that TPAs cannot deflect responsibility for their own decision to administer and enforce discriminatory benefits, and thus are under liable Section 1557 even where they do not design the plan. *See Pritchard*, 2022 WL 17788148, at *8–9.

Aetna first attempts to distinguish *Tovar* on grounds that the employer was also a defendant in that case and the posture was a motion to dismiss pursuant to Rule 12(b)(6). Oral Arg. Tr. at 14:4–15:4; Aetna Supp. Br. at 14–15 n.6.[3] But while a plaintiff may choose to name an employer

---

[3] Aetna's brief mischaracterizes the motion at issue in *Carr v. United Healthcare Servs. Inc.*, No. C15-1105 (MJP), 2016 WL 7716060, at *4 (W.D. Wash. May 31, 2016); UHC moved to compel joinder of the self-funded group health plan as a necessary party under Rule 19(a), *see* ECF Doc. No. 24 at 1, not to "seek its own *dismissal* and *substitution*," as Aetna asserts. Aetna Supp. Br. at

as a defendant, that does not make the employer's presence necessary. *Pritchard* is instructive. The plaintiffs in *Pritchard* filed suit on behalf of themselves and a class of individuals in self-funded plans administered by Blue Cross Blue Shield of Illinois and subject to a categorical exclusion for gender affirming care. *Pritchard*, 2022 WL 17788148, at *1–2. The plaintiffs did not name their employer or any other plan sponsor as a defendant. *Id.* Nonetheless, the court held that Blue Cross had an independent duty to comply with Section 1557, and that this obligation attached *regardless* of whether Blue Cross designed the offending plan terms. *See id.* at *8 ("[W]hether Blue Cross provided the Exclusionary language or not is immaterial because Blue Cross has an independent duty to comply with Section 1557").

Aetna next attempts to distinguish *Tovar* by insisting that absent parties are "solely responsible" for the discriminatory benefit design, notwithstanding Plaintiff's allegations to the contrary. Aetna Mem. at 1, *see also id.* at 9. Oral Arg. Tr. at 15:18–19, 29:6, 36:16–17; Aetna Supp. Br. at 16 n.7. Again, even if Aetna did not design the discriminatory plan terms, it is still liable under Section 1557 for agreeing to administer and enforce them. *Pritchard*, 2022 WL 17788148, at *8. But in any event, "[u]pon review of a Rule 12(b)(7) motion, like any motion under Rules 12(b) or 12(c), 'a court must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party.'" *Quinn v. Fishkin*, 117 F. Supp. 3d 134, 139 (D. Conn. 2015) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure

---

14 n.6. And, as the court should do here, the *Carr* court ruled that the health plan was not a necessary party because the plaintiff crafted her complaint to obtain complete relief from UHC in the health plan's absence. *See Carr*, 2016 WL 7716060, at *4.

§ 1359 (3d ed.)). Aetna's contention that this Court may disregard Plaintiff's well-pled allegations in favor of Aetna's preferred version of the facts is wrong. *See* Oral Arg. Tr. at 18:16–24.

Aetna greatly wishes to distinguish *Tovar* because that case, along with *Pritchard*, makes clear that Aetna may be held liable for the discriminatory benefit terms here, notwithstanding the ERISA cases it cites or the plan language it quotes. Aetna Supp. Br. at 4–6; 12–14. In both *Tovar* and *Pritchard*, as here, the defendant TPA argued that it could not be held liable under Section 1557 because ERISA requires TPAs to administer plans according to their terms. *Id.*; *Tovar*, 342 F. Supp. 3d at 954. And in both cases, the courts squarely rejected this argument. *Pritchard*, 2022 WL 17788148, at *8; *Tovar*, 342 F. Supp. 3d at 954. Both courts noted ERISA's express language that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States," 29 U.S.C. § 1144(d). Based on this language, the courts concluded that any obligation under ERISA to "administer the exclusions as written is subservient to Section 1557, outlawing discrimination, which is dominate [*sic*]." *Pritchard*, 2022 WL 17788148, at *10; *see also Tovar*, 342 F. Supp. 3d at 954 ("The Court will not construe ERISA to impair Section 1557.").[4]

---

[4] For this reason, Aetna's reliance on *Takeda v. Nw. Nat. Life Ins. Co.*, a nearly 40-year-old, out-of-circuit decision, and other similar ERISA cases is misplaced. *See* Aetna Mem. at 19–20; Aetna Mot. to Dismiss Reply, No. 56 ("Aetna Reply"), at 4–7; Aetna Supp. Br. at 13–14. *Takeda* involved whether ERISA preempted the plaintiffs' state law claims for underpayment of benefits, and whether, under ERISA, the TPA and plan sponsor properly discharged their duties under the plan. 765 F.2d 815, 817 (2d Cir. 1985). Because under ERISA the "ultimate responsibility for the medical plan and for decisions allowing or disallowing claims rest[ed] with [the plan sponsor]," the Ninth Circuit doubted whether complete relief was available against the TPA without joining the plan sponsor. *Id.* at 819–20. But *Takeda* and the other ERISA cases cited by Aetna do not "even speak to the issue here, where the suit is *not* for plan benefits." *Inland Nw. Renal Care Grp., LLC v. WebTPA Emp. Servs., LLC*, No. C19-1758-JCC-SKV, 2022 WL 18999836, at *7 (W.D. Wash. Dec. 29, 2022), report and recommendation adopted, No. C19-1758-JCC-SKV, 2023 WL 2042174 (W.D. Wash. Feb. 16, 2023). As recognized in *Pritchard* and *Tovar*, any ERISA constraints are

Here, Plaintiff seeks damages from Aetna for its own discrimination against LGBTQ people based on sex and a declaration that Aetna is violating Section 1557. Am. Compl. ¶¶ 91, Prayer for Relief B. Aetna can fully supply the relief Plaintiff seeks: Plaintiff and the putative class may recover economic damages from Aetna for violations of Section 1557, including but not limited to compensation for out-of-pocket medical expenses, physical injury from unnecessary medical treatment or otherwise, or loss of opportunity to become pregnant or parent. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562, 1568, 1571 (2022) (observing that "private plaintiffs may secure injunctive or monetary relief" under spending clause statutes that prohibit discrimination, including Section 1557, and that the measure of such damages are the "usual contract remedies in private suits" (emphasis omitted)); Restatement (Second) of Contracts § 347 (1981) ("[T]he injured party is entitled to recover for all loss actually suffered."); *see also, e.g.*, *Tovar*, 857 F.3d at 778 (out-of-pocket medical expenses are "traceable to and redressable through damages" from TPA defendants); *Tovar*, 342 F. Supp. 3d at 953–54, 956 (TPA liable for damages to plaintiff for being "denied access and receiving delayed access to medically necessary care"); *see also Doe v. Fairfax Cnty. Sch. Bd.*, No. 118-CV-00614-MSN-IDD, 2023 WL 424265, at *5 (E.D. Va. Jan. 25, 2023) (collecting cases holding that damages compensating for lost opportunity are available in private spending clause discrimination actions); *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 3:20-CV-11-MAB, 2023 WL 348320, at *2 (S.D. Ill. Jan. 20, 2023) (medical expenses are recoverable); *Doe v. City of Pawtucket*, No. CV 17-365-JJM-LDA, 2022 WL 4551953, at *4 (D.R.I. Sept. 29, 2022) (damages for physical injury are recoverable).

---

irrelevant to whether Plaintiff can obtain complete relief from Aetna for its own discrimination under Section 1557.

Plaintiff here may obtain complete relief from Aetna without the involvement of Wellstar Health or the Wellstar Plan. Aetna's attempt to rewrite the remedies Plaintiff seeks must fail.

**B. Aetna's Independent Liability Is Confirmed Directly by Section 1557 and Multiple Iterations of Relevant HHS Guidance.**

At argument, the Court questioned whether language in a now-rescinded regulatory preamble issued by the U.S. Department of Health and Human Services Office for Civil Rights and referenced by the opinion dissenting in part in *Tovar* supports dismissal. Oral Arg. Tr. at 24:15–25 (citing *Tovar*, 857 F.3d at 780–81 (Benton, J.)). It does not. Rather, the statutory text and regulatory guidance support Plaintiff's ability to proceed solely against Aetna here.

Section 1557's statutory text unambiguously permits Plaintiff to obtain complete relief against Aetna for its discriminatory actions as a TPA. The plain language of Section 1557 provides that if an entity is a "health program or activity, any part of which" receives federal financial assistance, then "all of [its] operations" are subject to Section 1557. *T.S. v. Heart of Cardon, LLC*, 43 F.4th 737, 743 (7th Cir. 2022). This includes its TPA activities, irrespective of whether those activities independently receive federal funding. *Tovar*, 857 F.3d at 778; *Pritchard*, 2022 WL 17788148, at *5–6. Accordingly, HHS rules and guidance are not controlling. *See Pritchard*, 2022 WL 17788148 at *7 (holding that under *Chevron* Step 1, "the plain language of the text" of Section 1557, as well as the "statute's history and purpose," permitted suit against TPA irrespective of HHS regulations). But in any event, current and former HHS guidance on this issue only supports denial of Aetna's motion.

HHS's latest statement on the issue explains that TPAs may be liable for their role in designing, marketing, and administering discriminatory self-funded plans. In 2022, HHS issued a proposed regulation recognizing that "third party administrators . . . [may be] responsible for the development of the group health plan document or other policy documents that are ultimately

adopted by the self-insured plan," and could thereby "be liable for the discriminatory design feature under Section 1557." *See Nondiscrimination in Health Programs and Activities*, 87 Fed. Reg. 47,824, 47,876 (Aug. 4, 2022). HHS accordingly proposed regulatory language explicitly prohibiting covered entities that "provid[e] or administer[] health-related insurance or other health-related coverage" from engaging in discrimination related to design, marketing, or administration. *Id.* (to be codified at 45 C.F.R. § 92.207(b)). HHS proposed to adopt an enforcement approach that "take[s] into account the party responsible for the alleged discriminatory conduct." *Id.*

The guidance referenced by the Court at argument was from the preamble to HHS's 2016 regulation implementing Section 1557 (the 2016 Rule).[5] *Nondiscrimination in Health Programs and Activities*, 81 Fed. Reg. 31,375 (May 18, 2016). In the preamble to this rule, which also included § 92.207(b), HHS specified that TPAs of self-funded plans could be liable under this provision for all such forms of discrimination in the plans they administer. *Id.* at 31,432. Indeed, HHS explicitly rejected some commentors' requests to exclude TPAs from liability for both discriminatory benefit design and administration. *Id.* at 31,431–32. As this Court correctly noted at argument, HHS did state that it believed TPAs as a factual matter are "generally not responsible

---

[5] In 2020, HHS issued a new rule that rescinded significant portions of the 2016 Rule and purported to narrow the liability of insurers under Section 1557, including with respect to their TPA activities. *See Nondiscrimination in Health and Health Education Programs or Activities*, 85 Fed. Reg. 37,160 (June 19, 2020) (the "2020 Rule"). Nonetheless, the preamble to the 2020 Rule clarified that HHS still would "vigorously enforce" any "allegations of discrimination by health insurance issuers, including through benefit design." 85 Fed. Reg. at 37,201. The 2020 Rule was subject to multiple legal challenges. *See, e.g.*, *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, 485 F. Supp. 3d 1, 64 (D.D.C. 2020); *Walker v. Azar*, 480 F. Supp. 3d 417, 430 (E.D.N.Y. June 26, 2020); *see also Boston All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Human Servs.*, Case No. 1:20-cv-11297, 2020 WL 3891426 (D. Mass. July 9, 2020). Recognizing that Section 1557 is unambiguous as to TPA liability for administering self-funded plans with discriminatory benefit design, the court in *Pritchard* declined to accord the 2020 Rule deference, concluding that the 2020 Rule "would thwart Congress's intent" and "appears to be arbitrary, capricious and contrary to law." *Pritchard*, 2022 WL 17788148, at *7.

for the benefit design of the self-insured plans they administer," *id.*, and HHS anticipated it would "typically" address such complaints against the plan sponsor where it had authority to do so. *Id.* at 31,432. But at no point did HHS say that TPAs could not as a legal matter be liable for both discriminatory benefit design and administration, or that the plan sponsor is a necessary party to any such action. To the contrary, HHS explained that for each complaint received, it would "determine whether responsibility for the decision or other action alleged to be discriminatory rests with the employer or with the third party administrator." *Id.*

The opinion dissenting in part in *Tovar*—which was not joined by the other panel judges and which has no persuasive authority—misunderstood the 2016 Rule preamble language: it mistakenly conflated the test for whether a TPA is a covered entity under Section 1557 with the test for when a covered TPA may be liable for discriminatory benefit design. *Tovar*, 857 F.3d at 780–81 (Benton, J., concurring in part and dissenting in part). In the 2016 preamble, HHS explained that in cases where an insurance issuer (*i.e.*, an insurance company) that accepts federal financial assistance establishes a separate corporate entity for its TPA activities that does not receive federal funds, HHS will engage in a "case-by-case inquiry" into the relationship between the corporate entities to determine whether the TPA activities are covered by Section 1557. 81 Fed. Reg. at 31,433. The *Tovar* dissent misread this test as inquiring into the relationship between the TPA and the *employer/plan sponsor* to determine liability for discriminatory benefit design. *See Tovar*, 857 F.3d at 780–81. Applying that erroneous test, the *Tovar* dissent reasoned that because there were no allegations of common ownership between the TPA (HPAI/Health Partners) and employer (Essentia Health) or of subterfuge to allow the employer to discriminate, the claims against the TPA should have been dismissed. *Id.* But as set forth *supra*, the correct test asked only whether "responsibility" for the discrimination "rest[ed] with" the TPA, 81 Fed. Red. 31,432, and

(as is the case here) a TPA may be responsible for the discrimination even if it shares no common ownership or scheme of subterfuge with the employer/plan sponsor. The analysis in the *Tovar* dissent thus includes a clear error of law.

Ultimately, the plain terms of Section 1557 control, and under those unambiguous terms Aetna is liable both for designing and drafting the facially discriminatory CPB 0327 and similar discriminatory terms in the self-funded plans it administers, and agreeing to administer and enforce the discriminatory plan it designed. *Pritchard*, 2022 WL 17788148 at *7; *Tovar*, 857 F.3d at 778. Nonetheless, multiple rounds of HHS guidance affirm that Plaintiff may obtain complete relief from Aetna as the party "responsible for" the discrimination she suffered. 87 Fed. Reg. 47,876.

### C. No Absent Party Has Claimed or Could Claim an Interest in This Litigation That Would Be Impaired By Their Absence.

At argument, the Court expressed concern about possible prejudice to Wellstar Health from not being joined in this action. Oral Arg. Tr. at 30:25–32:1. However, inquiry into possible prejudice to Wellstar Health or any other absent party is inappropriate here because no party has moved to intervene or claimed an interest in this action pursuant to Rule 19(a)(1)(B), and because the Court can accord Plaintiff complete relief from Aetna under Rule 19(a)(1)(A).

Under the Rule 19(a) test for compulsory joinder, a court may find that joinder of an absent party is required if either (1) the Court cannot accord complete relief to the parties in their absence, Fed. R. Civ. P. 19(a)(1)(A), or (2) an absent party has claimed an interest in the litigation and can establish that their absence (i) will "impair or impede" their ability to protect that interest, or (ii) would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B); *Tross*, 928 F. Supp. 2d at 507–08. Rule 19(a)(1)(B) is the *only* part of the Rule 19(a) test that inquires into prejudice to the absent party, and this section applies only if the absent party has claimed an interest

in the litigation. *Peregrine Myanmar Ltd.*, 89 F.3d at 49 ("It is the absent party that must 'claim an interest.'"). Neither the Court nor defendants in a case may claim an interest on an absent party's behalf. *Tross*, 928 F. Supp. 2d at 508 (refusing to hold absent party necessary that failed to move to intervene or otherwise claim an interest); *Friends of Animals, Inc. v. City of Bridgeport Police Dep't*, No. 3:06-CV-1708 JCH, 2007 WL 201245, at *4 (D. Conn. Jan. 23, 2007) (same); *see also Voronina v. Scores Holding Co., Inc.*, No. 16-CV-2477 (LAK), 2017 WL 74731, at *2 (S.D.N.Y. Jan. 5, 2017) (refusing to dismiss action based on presumed interest of absent parties that declined to intervene). And where absent parties are not "required" under Rule 19(a), there is no occasion to consider whether there is prejudice to an absent party at step two of the test under Rule 19(b). *See Jonesfilm*, 299 F.3d at 139.

Here, neither Wellstar Health nor any other absent party has sought intervention in this case or otherwise appeared to claim an interest. Accordingly, the *only* question before this Court is whether Plaintiff can obtain complete relief from Aetna—which, as set forth *supra*, she can.

But even if Wellstar Health or another party were to claim an interest, they still could not establish that they are necessary parties pursuant to Rule 19(a)(1)(B). Aetna makes no argument that it, as an existing party under Rule 19(a)(1)(B)(ii), would be subject to multiple or inconsistent obligations if absent parties were not joined. Rather, Aetna argues only, under Rule 19(a)(1)(B)(i), that absent parties would suffer prejudice without joinder. Relying largely on case law under Rule 19(b), as opposed to Rule 19(a), Aetna appears to suggest that an absent party is necessary to an action whenever the action could result in an unfavorable, but nonbinding, precedent, or where an absent party remains exposed to legal risk they already had. Aetna Sup. Br. at 3, 7–9. But such a standard has been roundly rejected by courts—and rightly so, as it would yield absurd results: all entities sponsoring, administering, issuing, marketing, or selling plans with a similar

14

discriminatory benefit design could claim to be necessary, as could countless individuals enrolled in those plans. That is not the law.

Rather, the Second Circuit has made clear that "[i]t is not enough . . . for a third party to have an interest, even a very strong interest, in the litigation" or even "to be adversely affected by the outcome of the litigation." *MasterCard Int'l Inc.*, 471 F.3d at 387. Instead, to be required, their "ability to protect their interests [must] be impaired *because of* that party's absence from the litigation." *Id.* (emphasis in original).[6] In applying this test, courts routinely consider whether absent parties would be bound by a judgment in determining whether they have an interest that would be impaired. *See, e.g.*, *Peregrine Myanmar Ltd.*, 89 F.3d at 48 (holding absent party not necessary where suit would not require determination of its rights); *Chang Young Bak v. Metro-N. R. Co.*, No. 12 CV 3220, 2013 WL 1248581, at *5 (S.D.N.Y. Mar. 26, 2013) ("[I]f a court will be required to make determinations with respect to the rights and obligations of a non-party that may provide the basis of collateral estoppel in another proceeding, there may be reason to find the party is a necessary one."); *see also Takeda v. Nw. Nat. Life Ins. Co.*, 765 F.2d 815, 821 (9th Cir. 1985) (holding absent party was necessary because of "significant possibility" it would be collaterally estopped in future litigation).

No such impairment exists here. Judgment that the Wellstar Plan is discriminatory does not require any determination of Wellstar Health's rights, nor would it have any preclusive effect

---

[6] Aetna attempts to liken this case to an action seeking to void or set aside a contract in which parties to the contract may be required. Aetna Supp. Br. at 3, 6. Again, Aetna misconstrues the claim Plaintiff brings and the relief she seeks. Plaintiff does not seek to void, set aside, modify, rewrite, or enforce Plaintiff's plan or any class member's plan. She does not seek a judgment that any absent party breached an obligation under the plan or otherwise. She seeks damages *from Aetna* for its own unlawful discrimination and a declaration that *Aetna's* conduct violated the law. The cases Aetna cites regarding compulsory joinder of parties to a contract are inapposite.

against Wellstar Health if it is neither a party nor a privy to a party in this action and thus had no "full and fair" opportunity to litigate the issue. *See Faulkner v. Nat'l Geographic Enterprises Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (explaining that offensive collateral estoppel applies only where the "defendant has previously litigated [the issue] and lost to another plaintiff."); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331–32 (1979) (holding application of offensive nonmutual collateral estoppel inappropriate where it would be unfair to defendant due to lack of "full and fair" opportunity to litigate the issue).

At argument, the Court expressed concern that Aetna and the Wellstar entities are "inextricably intertwined" such that the Wellstar entities nonetheless might be in privity with Aetna and bound by a judgment against Aetna. Oral Arg. Tr. at 38:19–39:7. As a threshold matter, findings against Aetna here regarding its role in benefit design could *decrease*, not increase, the Wellstar entities' exposure to liability. But even if not, Aetna has made no argument suggesting that it is in privity with any Wellstar entity or other absent party that would give rise to a preclusive effect. In *Sacerdote v. Cammack Larhette Advisors, LLC*, the Second Circuit enumerated "narrow circumstances in which applying a preclusion doctrine to a nonparty is appropriate, fair, and does not violate the nonparty's due process rights." 939 F.3d 498, 506 (2d Cir. 2019) (citing *Taylor v. Sturgell*, 553 U.S. 880, 889 (2008)). Those circumstances do not apply here and a judgment against Aetna would not bind Wellstar entities: Aetna does not have the particular sort of "pre-existing substantive legal relationship[] based in property law . . . such as preceding and succeeding owners of property [or] assignee and assignor" with absent plans or plan sponsors that might establish privity, *id.*; nor are any absent parties "adequately represented by a party with the same interests, such as class actions and suits brought by trustees, guardians, and other fiduciaries," *id.* Indeed, there is an adversity of interest between Aetna and the relevant plans and plan sponsors here

16

(evidenced by this very motion).[7] Because no Wellstar entity or any other absent party is in privity with Aetna, no absent party will be prejudiced by a judgment against Aetna here.[8]

It is unfair to Wellstar Health or any other absent party to assume that it would prefer to be dragged into this lawsuit as a defendant via Aetna's Rule 19 motion than have the option to move to intervene at its discretion. Indeed, there are good reasons why it may prefer to stay out of this case, not the least of which is that Plaintiff's central allegation is that Aetna is responsible for a policy applicable to countless employer-sponsored plans nationwide.[9] Any concern about possible prejudice to absent parties from denying Aetna's motion must also consider the possibility of prejudice from *granting* the motion, in addition to the prejudice it would cause to Plaintiff, the putative class, and third parties discussed below. To the extent the Court remains concerned about possible prejudice to Wellstar Health, the proper remedy would be to order that it receive notice of this suit so that it may seek intervention *if it chooses*, not force its joinder as a defendant. Furthermore, Aetna does not need Wellstar Health joined as a defendant in order to argue that it is

---

[7] For this reason, too, Aetna is wrong to rely on *Takeda*. In *Takeda*, the TPA argued *against* joinder, contending that it would adequately represent the interest of the plan sponsor. 765 F.2d at 820. Given this, the court was concerned with the estoppel effect against the plan sponsor. *Id.* at 821 n.7.

[8] This case is also unlike *Mattera v. Clear Channel Commc'n, Inc.*, a state employment class claim. There, the court held that it could not provide complete relief in the absence of an alleged joint employer that employed several members of the putative class. The court was concerned with possible preclusion in the employer's absence, although it did not explain why it thought there was a risk of preclusion. 239 F.R.D. 70, 76 (S.D.N.Y. 2006). Here, Plaintiff can obtain complete relief against Aetna, and Aetna clearly is not in privity with any absent party under the Second Circuit's recent articulation of the bases for privity. There is no risk of preclusion here.

[9] There are currently two other pending class action lawsuits against Aetna by individuals in self-funded health plans with sponsors other than Wellstar Health that challenge the same discriminatory Aetna fertility benefit policy. *See Goidel v. Aetna Life Insurance Co.*, No. 1:21-cv-07619-VSB-VF (S.D.N.Y.); *Berton v. Aetna Inc. et al.*, No. No 4:23-cv-01849-HSG (N.D. Cal.). Neither case names the plaintiffs' plan sponsors as defendants. The existence of these suits only reinforces that Aetna applies its own discriminatory policy to different plans nationwide and undermines any claim that Wellstar Health is a necessary party here.

Wellstar and not Aetna that is liable for discrimination. Aetna is free to subpoena Wellstar if it believes Wellstar has evidence that will support its argument.

In sum, Aetna's motion fails at step one of the Rule 19 analysis. Plaintiff can obtain complete relief from Aetna, and no absent party has claimed or could claim an interest in this litigation that would be impaired by their absence. Nor does Aetna make any claim that it would suffer multiple or inconsistent obligations absent joinder. Thus, no absent party is required under Rule 19(a).

## II.   Dismissal Is Inappropriate, Even Assuming Absent Parties Were Required, Given the Prejudice to Plaintiff and the Harmful Precedent It Would Set.

Perhaps recognizing that no absent party meets the rigorous requirements for necessity under Rule 19(a), Aetna's supplemental brief skirts over this prerequisite to compulsory joinder, jumping straight into a consideration of the equities under Rule 19(b). Aetna Supp. Br. at 2. But again, the Court must not proceed to the Rule 19(b) analysis where, as here, no absent party is required. *See Jonesfilm*, 299 F.3d at 139; *MasterCard Int'l Inc.*, 471 F.3d at 389.

Nonetheless, even if the Court were to determine that Wellstar Health or another absent party is necessary, the Court still should deny Aetna's motion. Where joinder of required absent parties is not feasible, Rule 19(b) "requires courts to consider whether, 'in equity and good conscience,' the party is one without whom the action between the remaining parties cannot proceed—or, in the traditional terminology, whether the absent party is indispensable." *Am. Trucking Ass'n, Inc.*, 795 F.3d at 357 (quoting Fed. R. Civ. P. 19(b) (other quotation marks omitted)). In exercising its equitable discretion, the Court may consider prejudice to existing parties as well as to the absent party. Fed. R. Civ. P. 19(b)(1).

As already noted, courts are "extremely reluctant" to dismiss actions based on nonjoinder, and "in general, dismissal will be ordered only when the defect cannot be cured and serious

prejudice or inefficiency will result." *Am. Trucking Ass'n, Inc.*, 795 F.3d at 357. Any minimal prejudice to absent parties here is far outweighed by the prejudice to Plaintiff and the putative class from granting this motion.

### A.  Dismissal Will Prejudice Plaintiff's Individual Claims.

A decision by this Court that the Wellstar entities are necessary parties would hinder and, at minimum, delay Plaintiff's ability to obtain monetary and declaratory relief against Aetna.

Even assuming the Wellstar entities are covered by Section 1557, joinder would only prejudice Plaintiff's ability to obtain relief. If Plaintiff were forced to join the Wellstar entities in a new action, principles of res judicata would require her to raise in that suit any claims she may have against them related to discriminatory fertility benefits. *See Parmlee v. Officer of Att'y Gen.*, No. 3:21-CV-01292 (MPS), 2022 WL 1462247, at *4 (D. Conn. May 9, 2022) ("[R]es judicata bars claims asserted in the subsequent action that were, or *could have been*, raised in the prior action." (emphasis in original) (internal citations omitted)); *see also McKithen v. Brown*, 481 F.3d 89, 104 (2d Cir. 2007). Plaintiff has filed a Title VII complaint against Wellstar Health with the EEOC, but she has not yet received a right to sue letter, nor has she decided whether she will bring suit under Title VII. Plaintiff alleges in this action that Aetna drafted, designed, and administered the discriminatory fertility benefit policy. Am. Compl. ¶¶ 6–7, 51, 59(b). Requiring Plaintiff to add additional parties, including ones that require administrative exhaustion before filing suit and which would force consideration of other legal claims, would unnecessarily burden and delay her ability to recover against Aetna for its own wrongdoing.

Ultimately, unless an absent party is absolutely necessary, "[t]he plaintiff is master of his or her own complaint and is free to plead claims as he or she sees fit." *Couloute v. Hunt, Leibert, Chester & Jacobson, LLC*, 295 B.R. 689, 691 (D. Conn. 2003) (citing *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)); *see also Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d

84, 90 (2d Cir. 2010) ("As masters of the complaint, plaintiffs were entitled to construct their complaint in this fashion" (quotations omitted)). Plaintiff should not be forced to litigate Wellstar Health's liability under Section 1557, Title VII, or otherwise when it is by no means a necessary party and her chosen claim is that Aetna discriminated against her.

### B.  Dismissal Will Prejudice Plaintiff's Class Claims.

Aetna further argues that "the many other similarly situated employee benefit plans and plan sponsors and administrators whose members and plans would be impacted by Plaintiff's putative class" must also be joined. Aetna Mem. at 11. For all the reasons explained, none of these other plans, plan sponsors, or administrators are necessary parties either. If this Court were to hold otherwise, Plaintiff's ability to maintain this suit as a class action on behalf of all individuals harmed by Aetna's fertility policy, including those enrolled in non-Wellstar plans, would be substantially frustrated, potentially insulating Aetna from prosecution for a discriminatory benefits policy that Aetna itself designed, marketed, and administered. This would substantially diminish Plaintiff's ability to deter Aetna's unlawful conduct and benefit thousands of similarly situated individuals nationwide.[10]

Because Plaintiff does not know the identities of these other plans, plan sponsors, and plan administrators, she could proceed with her class action on behalf of all individuals on plans administered by Aetna only by investigating to find and join every plan in the country using the same definition or naming a defendant class of the numerous unidentified parties. Neither would be feasible. Even assuming Plaintiff could satisfy the Rule 23(a) prerequisites for certifying a

---

[10] Aetna mischaracterizes Plaintiff's argument regarding the impact of dismissal on her class claims. Aetna Supp. Br. at 10. Plaintiff does not suggest that she may use Rule 23 to "proceed against some indispensable parties but not others." *Id.* Because no absent parties are necessary under Rule 19(a), none can be indispensable. Rather, it is *Aetna* that seeks to use Rule 19 to eviscerate *Plaintiff's* right under Rule 23 to seek class-wide relief for class-wide discrimination.

defendant class, Aetna has already argued that this Court would lack personal jurisdiction and venue over these absent entities, and presumably will make the same argument as to nonresident plan sponsors once this case is refiled in the Northern District of Georgia. Aetna Mem. at 17. Plaintiff disagrees with Aetna's position on personal jurisdiction . *See Calagaz v. Calhoon*, 309 F.2d 248, 253 (5th Cir. 1962) (requiring only "in personam jurisdiction over the named individual representative of the [defendant] class"); *Rexam Inc. v. United Steel Workers of Am., AFL-CIO-CLC*, No. 03-2998 ADM/AJB, 2005 WL 1260914, at *8 (D. Minn. May 25, 2005) (presuming same). Dismissal will thus force Plaintiff to litigate whether she must establish the court's personal jurisdiction over entities she has not chosen to sue.

Moreover, Plaintiff would have to litigate standing to sue any plan, plan sponsor, or plan administrator that has not caused her own injury. There is currently a split among circuits about whether named class plaintiffs suing multiple defendants must demonstrate that they have suffered harm from each defendant, and the Eleventh Circuit has not yet clarified its position on this issue. *Contrast Payton v. Cnty. of Kane*, 308 F.3d 673, 678–82 (7th Cir. 2002) (adopting so-called "juridical link" doctrine whereby plaintiff class representatives can sue multiple defendants even if not all are responsible for the named plaintiff's injury if "the plaintiffs as a group—named and unnamed—have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise 'juridically related in a manner that suggests a single resolution of the dispute would be expeditious'") (quoting *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973)) *with Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 63–65 (2d Cir. 2012) (rejecting "juridical link" doctrine); *Fox v. Saginaw Cnty., Mich.*, 67 F.4th 284, 293 (6th Cir. 2023) (same); *see also Anderson v. Am. Fam. Ins. Co.*, No. 5:15-CV-475 (MTT), 2016 WL 3633349, at *8 (M.D. Ga. June 29, 2016) (citing *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838 (11th Cir.

1990) (noting that "[t]he Eleventh Circuit has not adopted the juridical link doctrine" but has recognized its application in cases of a common contractual obligation among defendants).

In short, compulsory joinder of each putative class member's employer, plan, and plan administrator will require Plaintiff to litigate multiple complicated issues of justiciability. It would be highly prejudicial to require Plaintiff to litigate these questions where she alleges that Aetna is responsible for her injury.

### C. Compulsory Joinder of Self-Funded Plans and Plan Sponsor Administrators Would Set a Dangerous Precedent Thwarting Congressional Intent.

Aetna's insistence that this motion seeks only to expand the entities subject to liability *in this case* sweeps under the rug the legal sea change that Aetna truly seeks. Congress enacted Section 1557 "to protect individuals from discrimination in health insurance and other health-related coverage." 87 Fed. Reg. 47,829. Nearly two-thirds of workers with employer-sponsored health coverage in the United States are enrolled in self-funded plans. *See* Kaiser Family Found., *supra* note 1. As set forth *supra*, Plaintiff alleges that Aetna designed CPB 0327 and incorporated the same discriminatory fertility benefits policy into the self-funded plans it designs, markets to employers and other plan sponsors, and administers. Every court to consider the issue has held that Aetna, as TPA, is independently liable for this conduct. *Pritchard*, 2022 WL 17788148, at *6; *Tovar*, 857 F.3d at 778. A decision in favor of Aetna here would depart from the plain meaning and intent of Section 1557. Not only is this legally impermissible, it would also have far-reaching consequences: a ruling in favor of Aetna will be wielded as a sword by Aetna and similar national insurance companies to frustrate would-be plaintiffs from obtaining effective judicial relief.

As illustrated above, compulsory joinder of plans and plan sponsors would allow the large insurance companies that very often both design and administer self-funded plans to substantially limit their exposure to liability by making class action litigation across plans impractical—if not

impossible—in an attempt to shift responsibility onto entities that plaintiffs chose not to sue. Compulsory joinder of plan sponsors will also deter both individual and class actions given the particular risks and sensitivities associated with suing one's employer. Individuals may be unwilling to file suit against their employer due to fear of retaliation or concern about disclosing personal health information—particularly information that might reveal one's pregnancy status (or intention to become pregnant), sexual orientation, gender identity, HIV status, or other protected status. Forcing joinder of employers in cases of discriminatory health benefit design would thus have the perverse effect of outing those individuals targeted by discrimination and placing them at increased risk of further discrimination, just because they seek to vindicate their right to be free of discrimination under Section 1557. Such a result would fly in the face of Congressional intent.

Moreover, a Section 1557 claim against the TPA may be the best available avenue for relief under federal law from a discriminatory self-funded health plan because oftentimes there is no cause of action against the employer or plan under Section 1557, Title VII, or ERISA. Section 1557 reaches employment discrimination only if the employer is a covered entity—*i.e.*, a health program or activity that receives federal financial assistance. 42 U.S.C. § 18116(a). Because most employers are neither health programs nor recipients of federal funding, they are not liable under Section 1557 for discrimination in the health plans they sponsor.[11] And if the plan sponsor is not already a covered entity under Section 1557, neither is the plan itself, unless the plan independently

---

[11] By its terms, Section 1557 itself prohibits discrimination in employment. 42 U.S.C. § 18116(a) (prohibiting discrimination "on the ground prohibited under," *inter alia*, Title IX); *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 530 (1982) (holding that "employment discrimination comes within the prohibition of Title IX"). Nonetheless, the 2022 Proposed Rule includes a new § 92.2(b) providing that HHS will not enforce Section 1557 against "any employer with regard to its employment practices, including the provision of employee health benefits." 87 Fed. Reg. at 47,838. This provision should properly be read to apply only to HHS administrative enforcement actions under the statute's plain language.

receives federal financial assistance. 42 U.S.C. § 18116(a). In these circumstances, even where a plaintiff wanted to proceed against the employer, the plan, and the TPA, joinder would be futile.

Likewise, Title VII and Section 1557 are not coextensive. While many individuals subject to discriminatory employer-sponsored health plans may be able to bring a Title VII claim against their employer, some will not. Title VII applies only to employment discrimination, and thus provides no protection for individuals enrolled in student health plans or plans sponsored by other non-employer entities. 42 U.S.C. § 2000e–2(a). Moreover, Title VII applies to employers with fifteen or more employees, a limitation not likewise applicable to Section 1557. 42 U.S.C. § 2000e(b). Title VII's exhaustion requirement that a Plaintiff first file with EEOC and obtain a Notice of Right to Sue also poses an additional hurdle to filing suit that is absent from Section 1557. *See* 42 U.S.C. § 2000e–5. Furthermore, some claims for relief for discrimination in employee health benefits can only be asserted under Section 1557. For example, in *Tovar*, because the employee's son was a dependent on the plan—not an employee— the court concluded that his rights were not in the "zone of interests" protected by Title VII, but that his claims could proceed under Section 1557. *Tovar*, 857 F.3d at 775–77; *see also Scott v. St. Louis Univ. Hosp.*, 4:21-cv-01270-AGF, 2022 WL 1211092, at *3–6 (E.D. Mo. Apr. 25, 2022) (dismissing Title VII claim by employee challenging categorical exclusion of gender affirming care on behalf of her dependent son but permitting her Section 1557 claim against the covered-entity-employer to proceed).

Finally, ERISA does not supply the desired relief against employers or the plans themselves. An ERISA claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) only entitles a plan participant or beneficiary to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Of course, recovering benefits due under plan terms is of no help where the

24

problem is that the plan terms unlawfully exclude those benefits. *See Scott*, 600 F. Supp. 3d at 960 (explaining that plaintiff chose to bring a Section 1557 claim rather than an ERISA claim because "the Plan expressly excludes coverage for sex transition and she has no rights to enforce under the Plan"). Nor is a claim pursuant to 29 U.S.C. § 1132(a)(3) helpful, as this provision only permits claims for equitable relief to enforce or redress violations of ERISA or of the plan itself, and ERISA does not independently prohibit discrimination in the terms of health plans.

Section 1557 claims are critical to holding TPAs accountable for their own discrimination in self-funded plans. Compulsory joinder of plans and plan sponsors will often be futile, is unduly burdensome for plaintiffs, and could serve to let insurance companies serving as TPAs off the hook for their own discriminatory conduct, in direct contravention of congressional intent. Aetna should not be permitted to manipulate the rules of civil procedure to achieve this result.

## CONCLUSION

No absent party is necessary to adjudicate Aetna's liability for its own discriminatory conduct. Forcing Plaintiff to refile this suit in a new venue only to pursue claims against entities that have not claimed an interest here would prejudice Plaintiff and set a dangerous precedent that far outweighs any risk of prejudice to any absent party. The motion should be denied.

Dated: July 28, 2023                                        Respectfully submitted,


                                                           */s/ Jamisen A. Etzel*
                                                           Gary F. Lynch
                                                           Jamisen A. Etzel
                                                           **LYNCH CARPENTER LLP**
                                                           1133 Penn Avenue, 5th Floor
                                                           Pittsburgh, PA 15222
                                                           P:  (412) 322-9243
                                                           F:  (412) 231-0246
                                                           gary@lcllp.com
                                                           jamisen@lcllp.com

Joseph P. Guglielmo
Erin Green Comite
Carey Alexander
Amanda M. Rolon
**SCOTT+SCOTT,    ATTORNEYS    AT LAW, LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
P: (212) 223-4478
jguglielmo@scott-scott.com
ecomite@scott-scott.com
calexander@scott-scott.com
arolon@scott-scott.com

Colleen E. Ramage
**RAMAGE LYKOS, LLC**
525 William Penn Place, 28th Floor
Pittsburgh, PA 15219
Tel:  (412) 325-7700
Fax: (412) 325-7755
cramage@ramagelykos.law

MaryBeth V. Gibson
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road NE
Piedmont Center
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305
P:  (404)-320-9979
mgibson@thefinleyfirm.com

*Attorneys for Plaintiff*