# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TARA KULWICKI, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 3:22-cv-00229 (VDO) |
| -v- | |
| AETNA LIFE INSURANCE COMPANY, | December 22, 2023 |
| Defendant. | |

## AETNA'S OPPOSITION TO
## BRIEF OF AMICI CURIAE

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT AND AUTHORITES ..................................................................................... 2
   A.   *Amici* ignore the undisputed facts that are dispositive of Aetna's motion. ........................ 2

   B.   *Amici* ignore the law of Rule 19 that compels the joinder of Wellstar. .............................. 6

   C.   The Court cannot accord complete relief in the absence of Wellstar. ............................... 9

CONCLUSION ..................................................................................................................... 12

**INTRODUCTION**................................................................................................................. 1

ARGUMENT AND AUTHORITES ..................................................................................... 2
   A.   *Amici* ignore the undisputed facts that are dispositive of Aetna's motion. ........................ 2

   B.   *Amici* ignore the law of Rule 19 that compels the joinder of Wellstar. .............................. 6

   C.   The Court cannot accord complete relief in the absence of Wellstar. ............................... 9

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*2 Montauk Highway LLC v. Global Partners LP*,
   296 F.R.D. 94 (E.D.N.Y. 2013) ................................................................................................8

*Baur v. Veneman*,
   352 F.3d 625 (2d Cir. 2003) ..................................................................................................10

*Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d Cir. 2020) ....................................................................................................9

*C.P. by & through Pritchard v. Blue Cross Blue Shield of Ill.*,
   2022 WL 17788148 (W.D. Wash. Dec. 19, 2022) ..................................................................9

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ..................................................................................................................9

*Crouse-Hinds Co. v. Internorth, Inc.*,
   634 F.2d 690 (2d Cir. 1980) ....................................................................................................7

*Cuevas v. Joint Benefit Tr.*,
   No. 13–cv–00045–JST, 2013 WL 3578496 (N.D. Cal. July 12, 2013) ...................................7

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
   142 S.Ct. 1562 (2022) ...........................................................................................................11

*Curtiss-Wright Corp. v. Schoonejongen*,
   514 U.S. 73 (1995) ..................................................................................................................3

*Dickerson v. Feldman*,
   426 F. Supp. 2d 130 (S.D.N.Y. 2006) ...................................................................................10

*Doe v. United Behav. Health*,
   523 F.Supp. 3d 1119 (N.D. Cal. 2021) ....................................................................................9

*Dorce v. City of New York*,
   2 F.4th 82 (2d Cir. 2021) .........................................................................................................9

*Egelhoff v. Egelhoff ex rel. Breiner*,
   532 U.S. 141 (2001) ................................................................................................................3

*FMC Corp. v. Holliday*,
   498 U.S. 52 (1990) ..................................................................................................................3

*Greer v. Carlson*,
  No. 1:20-cv-05484 (LTS) (SDA), 2020 WL 8340068 (S.D.N.Y. Dec. 24, 2020) ....................8

*Hall v. LHACO, Inc.*,
  140 F.3d 1190 (8th Cir. 1998) ........................................................................................7

*Ing. Hoschek Autoverleich GSE.M.B.H. v. Balag, Ltd.*,
  No. 93 CIV. 8513 (PKL), 1994 WL 701989 (S.D.N.Y. Dec. 14, 1994) ..................................8

*John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*,
  No. 11–CV–5453, 2011 WL 5245192 (S.D.N.Y. Nov. 2, 2011) .............................................9

*Kassman v. KPMG LLP*,
  No. 11 Civ. 3743(JMF), 2013 WL 452913 (S.D.N.Y. Feb. 7, 2013) ........................................9

*Liberty Mut. Ins. Co. v. Donegan*,
  746 F.3d 497 (2d Cir. 2014)................................................................................................3

*Lifson v. INA Ins. Co. of N.Y.*,
  333 F.3d 349 (2d Cir. 2003)................................................................................................6

*Lomayaktewa v. Hathaway*,
  520 F.2d 1324 (9th Cir.1975) ............................................................................................7

*Nechis v. Oxford Health Plans, Inc.*,
  421 F.3d 96 (2d Cir. 2005)................................................................................................10

*Negron v. Cigna Health and Life Ins. Co.*,
  No 3:16-CV-01702 (JAM), 2021 WL 2010788 (D. Conn, May 20, 2021).............................6

*Ray v. Medcost Benefits Services*,
  No. 1:21-cv-00265-MR, 2023 WL 8459852 (W.D. N.C. Dec. 6, 2023) ................................12

*Religious Sisters of Mercy v. Becerra*,
  55 F.4th 583 (8th Cir. 2022) ............................................................................................3

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008)............................................................................................................8

*Rubler v. Unum Provident Corp.*,
  No. 04 Civ. 7102 (DC), 2007 WL 188024 (S.D.N.Y. Jan. 25, 2007).......................................7

*Schmdt v. Kaiser Fund Health Plan of Wash.*,
  965 F.3d 945 (9th Cir. 2020) ............................................................................................8

*Selby v. Principal Mut. Life Ins. Co.*,
  197 F.R.D. 48 (S.D.N.Y. 2000) ........................................................................................10

*Stevens v. Malloy*,
   2016 WL 6440112 (D. Conn. Oct. 28, 2016) ...................................................................9, 10

*Sty-Lite Co. v. Eminent Sportswear Inc.*,
   115 F. Supp. 2d 394 (S.D.N.Y. 2000) .........................................................................................7

*Sutherland v. Disability RMS*,
   No. 3:16-CV-00683-JHM, 2017 WL 403574 (W.D. Ky. Jan. 30, 2017) ..................................7

*Sypher v Aetna Ins. Co.*,
   No. 13-10007, 2014 WL 1230028 (E.D. Mich. Mar. 25, 2014) ...............................................7

*Takeda v. Nw. Nat'l Life Ins. Co.*,
   765 F.2d 815 (9th Cir. 1985) .....................................................................................................7

*Tovar v. Essentia Health*,
   857 F.3d 771 (8th Cir. 2017) .....................................................................................................8

*Uni Storebrand Co, UK Ltd. v. Star Terminal Corp.*,
   No. 96 CIV. 9556 (DLC), 1997 WL 391125 (S.D.N.Y. July 11, 1997) ...................................8

*Williby v. Aetna Life Ins. Co.*,
   867 F.3d 1129 (9th Cir. 2017) ...................................................................................................3

**STATUTES**

29 U.S.C. § 1002(16)(a) ....................................................................................................................3

29 U.S.C. § 1132(d)(1) .....................................................................................................................3

42 U.S.C. § 18022(b)(1)(A)-(J) .......................................................................................................2

42 U.S.C. § 18116 ............................................................................................................................2

**OTHER AUTHORITIES**

45 C.F.R. § 92.3 (2020) ...................................................................................................................5

45 C.F.R. 156.100 ............................................................................................................................2

81 Fed. Reg. 31,375, 31,432 (May 18, 2016) ...............................................................................5, 6

85 Fed. Reg. 37,160, 37,171 (June 19, 2020) ...............................................................................5, 6

Fed. R. Civ. P. 19 ..................................................................................................................... *passim*

Defendant Aetna Life Insurance Company ("Aetna") submits this opposition to the Brief of *Amici Curiae* in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Dkt. 108] filed herein by *amici curiae* ("*Amici*").

## INTRODUCTION

Plaintiff brings this action because she was denied coverage for infertility treatment under her employee health benefit plan. She sues Aetna, the claims administrator of the plan, not because Aetna is alleged to have *violated* her plan; rather, she sues Aetna because Aetna *followed* the plan. She contends, in essence, that Aetna should have awarded her benefits by *not following* the terms of her plan.

But Aetna had no such ability or authority. The Wellstar Plan was created and funded entirely by Wellstar Health, and its governing documents explicitly limited Aetna's authority to interpret, apply or act on behalf of the Plan. Wellstar Health, as the self-funding employer-sponsor, expressly reserved to itself full and exclusive discretion and authority over the administration, operation and interpretation of the Plan and the payment of benefits thereunder. This is consistent with both ERISA law governing self-funded employee benefit plans and the Office of Civil Rights implementing rules for Section 1557 of the Affordable Care Act.

Aetna submits that the Court cannot adjudicate the claim Plaintiff asserts without the joinder, under FRCP 19, of the Wellstar entities who had the ultimate legal responsibility for the Wellstar Plan. Aetna does not seek its own *dismissal* and *substitution* of Wellstar; rather, Aetna submits that the Court cannot adjudicate the claims Plaintiff asserts without the *joinder* of these missing parties. The principles and policies underlying Rule 19 apply with particular force in litigation affecting self-funded ERISA health benefit plans, and courts have consistently held that an action challenging or affecting the terms of a self-funded ERISA plan may proceed only with the presence and participation of the plan sponsor or plan administrator.

The Brief of *Amici Curiae* is long on arguments about what *Amici* wish the law might be but notably short on any discussion of what the law actually is. And while they discuss myriad factual scenarios having nothing whatsoever to do with the present case, *Amici* conspicuously ignore the undisputed facts bearing on the claim here—the only facts that must guide the Court's resolution of the present motion. In short, *Amici* add nothing of substance on the issues before the Court.

## ARGUMENT AND AUTHORITES

**A.     *Amici* ignore the undisputed facts that are dispositive of Aetna's motion.**

The Affordable Care Act ("ACA") does not require employee health benefit plans to cover infertility services. While the ACA does set forth a minimum package of general categories of benefits that each state benchmark plan must offer, these so-called "essential health benefits" ("EHBs") do not include coverage for infertility services. 42 U.S.C. § 18022(b)(1)(A)-(J) (addressing EHBs under the ACA); *see also* 45 CFR 156.100 (addressing state selection of benchmark plans); Patient Protection and Affordable Care Act § 1557, codified at 42 U.S.C. § 18116. As far as the ACA itself is concerned, in sum, infertility coverage is an entirely optional benefit and is left to the discretion of each individual plan sponsor.[1]

This is especially so in the case of self-funded ERISA-governed health benefit plans—like the Wellstar Plan here—which are not "insurance" in the conventional sense. When a health plan is self-funded, the sponsoring employer does not purchase a commercial insurance policy to cover its plan obligations; instead, the employer designs its own coverage plan, with benefit claims paid

---

[1] The ACA does permit individual states to adopt benchmark plans that include additional categories of benefits—and some states do include infertility benefits in their benchmark plans. Those individual state-law mandates are not at issue here, however; Plaintiff bases her claim solely on the ACA.

from its own coffers, and retains a third-party administrator solely to process claims. *Liberty Mut. Ins. Co. v. Donegan,* 746 F.3d 497, 501 (2d Cir. 2014); *Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129, 1131 (9th Cir. 2017); *see also FMC Corp. v. Holliday*, 498 U.S. 52, 54 (1990) (describing self-funded plans). For self-funded plans, the decision whether to include infertility coverage at all, and under what terms, is left entirely to the discretion of the sponsoring employer.

Congress made clear in the ERISA statute that the funding plan sponsor or its designated plan administrator—Wellstar Health assumed both roles here—bears the ultimate legal responsibility for the plan it creates. Self-funded ERISA plans are, by statute, separate entities that can sue and be sued. 29 U.S.C. § 1132(d)(1). The plan "sponsor," which ERISA generally defines as "the employer," *see id.* § 1002(16)(b), is the party that establishes or maintains the ERISA plan and its terms. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78-79 (1995) ) ("[P]lan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.").[2] Finally, the self-funded "plan administrator" (distinct from a "claims administrator") is the entity so designated by the ERISA plan; and if the plan fails to designate one, it is the plan sponsor by default. 29 U.S.C. § 1002(16)(a).

The claims administrator—Aetna here—is obligated under ERISA to administer a self-funded plan according to its terms. "ERISA . . . requires plans to be administered consistent with their terms," *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 591 (8th Cir. 2022), and a third-party claims administrator has no right to unilaterally alter the benefits offered under the plan. *See, e.g., Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 150 (2001) (recognizing that plans must "be administered, and benefits be paid, in accordance with plan documents").

---

[2] Internal citations, quotations and emphasis are omitted from citations unless otherwise noted.

The Wellstar Plan documents here were explicit and unambiguous on this point. Wellstar Health expressly limited Aetna's authority to interpret, apply or act on behalf of the Plan. The Wellstar Plan documents specifically described the self-funded nature of the plan and Aetna's limited role as Claims Administrator:

> Medical benefits are self-insured. Benefits are paid out of a general fund of the Company and are not guaranteed under contract of insurance. *The Claim Administrator does not have fiduciary authority for determining whether you are entitled to benefits and the authorized payment.*

*See* Dkt. 50, Ex. A at 12, 118 (emphasis added). The Plan documents further provide that the Plan Administrator—i.e., Wellstar Health—is the party "authorized and responsible for managing and directing the operation and administration of the Plan." *See* Dkt. 50, Ex. B at 8. In that capacity, Wellstar Health has "full discretion with respect to the administration, operation, and interpretation of the Plan," including "full power and discretionary authority" to, among other things:

- "interpret the Plan and decide all matters arising under the Plan, including the right to remedy possible ambiguities, inconsistencies, or omissions;
- determine all questions concerning the eligibility of any individual to participate in, be covered by, and receive benefits under the Plan pursuant to the provisions of the Plan;
- determine whether objective criteria set forth in the Plan have been satisfied respecting any term, condition, limitation, exclusion, and restriction or waiver thereof; [and]
- determine the amount of benefits payable, if any, to any person or entity in accordance with the provisions of the Plan [and] to provide a full and fair review to any individual whose claim for benefits has been denied in whole or in part."

*Id.* at 64-65. Indeed, the Plan documents expressly provide that *"the Company [Wellstar Health] and the Plan Administrator [Wellstar Health] are the only necessary parties to any action or proceeding that involves the Plan or its administration." Id.* at 69-70 (emphasis added).

4

The Office of Civil Rights ("OCR") confirmed this very point in its 2016 implementing regulations for Section 1557 of the ACA. The OCR recognized that self-funded plans are unique in that "third party administrators are generally not responsible for the benefit design of the self-insured plans they administer and that ERISA (and likely the contracts into which third party administrators enter with the plan sponsors) requires plans to be administered consistent with their terms." 81 Fed. Reg. 31,375, 31,432 (May 18, 2016) (the "2016 Regulations"). Accordingly, in instances where the alleged discrimination "relates to the *benefit design* of a self-insured plan," as opposed to the administration of that plan, OCR will address the complaint against that employer. *Id.* (emphasis added).

In 2020, the OCR implemented new regulations, which even more explicitly limited the applicability of ACA Section 1557 to health insurers. 85 Fed. Reg. 37,160, 37,171 (June 19, 2020) (the "2020 Regulations"). Under the 2020 Regulations—which were the regulations in effect at the time of the conduct alleged in Plaintiff's Amended Complaint—Section 1557 is applicable to "any health program or activity, any part of which is receiving Federal financial assistance." 45 C.F.R. § 92.3 (2020). The regulations explicitly provide, however, that "[f[or the purposes of this part, any entity principally or otherwise engaged in the business of providing health insurance shall not, by virtue of such provision, be considered to be principally engaged in the business of providing healthcare." *Id.* at § 92.3(c). Indeed, the preamble to the 2020 Regulations specifically explained that the intent of the new rule was to narrow the scope of applicability to health insurance products. 85 Fed. Reg. 37,173. Addressing comments that the language of 45 C.F.R. § 92.3(c) would "exempt[] many of the plans, products, and operations of most health insurance issuers," including third-party administrator services, the Department of Health and Human Services responded that it "agrees with commenters who stated that the overly broad reach of the 2016 Rule

5

subjected many insurance products that were not intended to be covered by the ACA to burdensome regulation, inconsistent with Congressional intent." *Id.*

Plaintiff and *Amici* both make clear that they seek to hold the claims administrator, Aetna—and Aetna alone—responsible for the *benefit design* of the self-funded Wellstar Plan. *See, e.g.,* Plaintiff's Amended Complaint ("Am. Compl.") [Dkt. 42] at ¶¶ 6, 10, 23, 25, 26, 51, 59.b., 90, 91.a.; Brief of *Amici Curiae* ("*Amici* Br.") [Dkt. 108] at 1, 6-7, 11, 12-13.  Under the original 2016 Regulations, as well as the 2020 Regulations in effect at the time of Plaintiff's benefit claim, however, these complaints about the design of the Wellstar Plan necessarily and unavoidably involve Wellstar Health, as the plan sponsor.

*Amici* urge the Court to ignore this record—the plain terms of the Wellstar Plan documents, well-established principles of ERISA law, and the OCR regulations implementing the ACA—and to hold that Aetna alone bears full legal authority over, and sole responsibility for defending, the Wellstar Plan's terms.  But that authority, as a matter of both law and fact, undeniably rested solely with Wellstar Health.  And Rule 19 and its attendant case law—which *Amici* also conspicuously ignore—requires the joinder of Wellstar to allow the Court to adjudicate matters arising under and affecting the Wellstar Plan.

**B.**     ***Amici* ignore the law of Rule 19 that compels the joinder of Wellstar.**

The ERISA provisions governing self-funded plans, as well as the OCR regulations implementing ACA Section 1557, are all premised on the fundamental principle that the plan documents are the cornerstone on which the respective rights and obligations among the plan sponsor, claims administrator and covered members and beneficiaries are based.  And courts in this circuit have made clear that "ERISA plans are essentially contracts," *Negron v. Cigna Health and Life Ins. Co.*, No 3:16-CV-01702 (JAM), 2021 WL 2010788, at *14 (D. Conn, May 20, 2021) (quoting *Lifson v. INA Ins. Co. of N.Y.*, 333 F.3d 349, 353 (2d Cir. 2003)), and that "[n]o procedural

6

principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may affected by the determination of the action are indispensable." *Crouse-Hinds Co. v. Internorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980) (quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir.1975)).  *See also Rubler v. Unum Provident Corp*., No. 04 Civ. 7102 (DC), 2007 WL 188024, at *2 (S.D.N.Y. Jan. 25, 2007) (finding that adjudication of case in absence of party would be prejudicial when it is "difficult to imagine how the issue of whether [the absent party] breached [its] obligation under the [contract] would be resolved without [its] participation in the litigation.").

In circumstances like those that are undisputed here—where the employer-sponsor explicitly and unambiguously reserved to itself full authority over the terms and benefits of its self-funded plan and expressly denied such authority to the third-party claims administrator and, indeed, where the employer-sponsor designated itself as the *"only"* necessary party to any action or proceeding involving the Plan—courts have consistently held that the employer–sponsor of a self-funded health plan is a necessary and indispensable party under Rule 19. *See, e.g., Sypher v Aetna Ins. Co.*, No. 13-10007, 2014 WL 1230028 (E.D. Mich. Mar. 25, 2014); *Sutherland v. Disability RMS*, No. 3:16-CV-00683-JHM, 2017 WL 403574  (W.D. Ky. Jan. 30, 2017); *Hall v. LHACO, Inc.*, 140 F.3d 1190, 1196 (8th Cir. 1998); *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815 (9th Cir. 1985); *Cuevas v. Joint Benefit Tr.*, No. 13–cv–00045–JST, 2013 WL 3578496, at *3 (N.D. Cal. July 12, 2013)).  As the Eighth Circuit succinctly put it:  "Only the Plan and the current plan administrator can pay out benefits…." *Hall*, 140 F.3d at 1196.

Moreover, attempting to litigate the legality of the Wellstar Plan without Wellstar's participation would create a legal Catch-22 for Wellstar that courts in this circuit repeatedly have applied Rule 19 to avoid.  On the one hand, a finding in this action that Aetna's application of the

7

Wellstar Plan was not discriminatory would not preclude, or protect Wellstar from, a second suit by Plaintiff making the very same allegations against Wellstar directly.  *See, e.g., Sty-Lite Co. v. Eminent Sportswear Inc.*, 115 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2000); *Uni Storebrand Co, UK Ltd. v. Star Terminal Corp.*, No. 96 CIV. 9556 (DLC), 1997 WL 391125, at *6 (S.D.N.Y. July 11, 1997).  Conversely, a judgment in this action that the Wellstar Plan is discriminatory—but without Wellstar being allowed to defend its own Plan—clearly would subject Wellstar to the risk of subsequent suits by other Plan participants.  *See, e.g., Ing. Hoschek Autoverleich GSE.M.B.H. v. Balag, Ltd.*, No. 93 CIV. 8513 (PKL), 1994 WL 701989 (S.D.N.Y. Dec. 14, 1994); *2 Montauk Highway LLC v. Global Partners LP*, 296 F.R.D. 94, 101-2 (E.D.N.Y. 2013); *Greer v. Carlson*, No. 1:20-cv-05484 (LTS) (SDA), 2020 WL 8340068, at *5 (S.D.N.Y. Dec. 24, 2020).

Indeed, the Supreme Court has made clear that in assessing whether a court can render an adequate judgment in the absence of the missing party, the question of "adequacy" refers not "to satisfaction of the [plaintiff's] class claims", but rather "to the public stake in settling disputes by wholes, whenever possible." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008).  "This social interest in the efficient administration of justice and the avoidance of multiple litigation is an interest that has traditionally been thought to support compulsory joinder of absent and potentially adverse claimants." *Id*.

Neither *Amici* nor Plaintiff makes any serious attempt to distinguish these authorities—indeed, their briefing simply ignores most of them.  Nor do they cite any case law to the contrary.[3]

---

[3] *Amici's* reliance on *Tovar v. Essentia Health*, 857 F.3d 771 (8th Cir. 2017) is misplaced.  That case involved a *fully-insured* plan, where the defendant served, not as a mere third-party claims administrator, but rather as the *insurer* with the responsibility to play benefit claims.  And, in any event, *both* the employer-sponsor and the third-party administrator were joined as defendants in a single action—that is, precisely the result Aetna seeks here.

Similarly, *Amici's* citation to *Schmdt v. Kaiser Fund Health Plan of Wash.*, 965 F.3d 945, 955 (9th Cir. 2020) is wildly misleading in the suggestion that Section 1557 somehow imposes *sole*

8

### C.     The Court cannot accord complete relief in the absence of Wellstar.

The relief available to Plaintiff in this action is limited.

First, Plaintiff has stipulated that she is no longer covered by the Wellstar Plan; she terminated her participation in the Wellstar Plan on November 30, 2021.  Rule 26(f) Statement (ECF No. 45) ¶ 5.  Plaintiff thus lacks standing under Article III to seek any form of prospective equitable relief.  *See, e.g., Berni v. Barilla S.p.A.*, 964 F.3d 141, 146-47 (2d Cir. 2020); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).  Indeed, Plaintiff amended her original complaint to drop her claim for injunctive relief for that very reason.

Her only remaining claim for equitable relief is one for declaratory judgment, but that claim also suffers the same defect as her now-abandoned claim for injunctive relief.  In order to have Article III standing to seek declaratory relief, a plaintiff cannot rely on past injury, but must show a likelihood that they will be wronged again in a similar way in the future.  *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021); *Stevens v. Malloy,* 2016 WL 6440112, at *6 (D. Conn. Oct. 28, 2016) ("[Plaintiff] is not entitled to declaratory relief based on any injuries he has suffered in the past.").  As with injunctive relief, "[t]he reason for this rule is clear: declaratory relief is intended to operate prospectively. There is no basis for declaratory relief where only past acts are involved[.]"  *John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.,* No. 11–CV–5453, 2011 WL

---

liability for a self-funded plan on a third-party claims administrator.  Again, that case, like *Tovar*, involved a *fully-insured* plan.  And that court never even discussed the application of Section 1557 to third-party claims administrators, like Aetna here.

Finally, *Amici's* reliance on *C.P. by & through Pritchard v. Blue Cross Blue Shield of Ill.*, 2022 WL 17788148 (W.D. Wash. Dec. 19, 2022) and *Doe v. United Behav. Health*, 523 F.Supp. 3d 1119 (N.D. Cal. 2021) is equally unavailing.  Neither case even addresses Rule 19 or the question of joinder of the employer-sponsor.  Moreover, unlike those cases, Aetna here does not seek its own *dismissal* and *substitution* of Wellstar Health and the Wellstar Plan; rather, Aetna submits that the Court cannot adjudicate the claims Plaintiff asserts without the *joinder* of these missing parties.  Neither case addresses the question at issue here.

5245192, *4 (S.D.N.Y. Nov. 2, 2011).  *See also Kassman v. KPMG LLP*, No. 11 Civ. 3743(JMF), 2013 WL 452913, at *9 (S.D.N.Y. Feb. 7, 2013).

Moreover, the injury Plaintiff alleges also must be one that is fairly traceable to the defendant and that is likely to be redressed by the relief she requests.  *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003).  Article III thus requires, not only that Plaintiff allege an injury-in-fact, but also that the injury be traceable to the defendant she has sued and that the relief she requests is likely to redress the injury she alleges.  *Stevens,* 2016 WL 6440112, at *6.  Here, even if Aetna had the power and authority to rewrite the Wellstar Plan or to pay benefits contrary to its terms (which it clearly does not), ordering Aetna to modify plan terms, change claims handling processes, adopt new standards, or perform any act on a going-forward basis for whatever portion of the WellStar benefits plan it administers would not affect *Plaintiff* in any way—because she would not herself be entitled to coverage for the benefits sought even if the Plan were reformed. *See, e.g., Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (plaintiff did not have standing to sue her insurer under ERISA because she was no longer a member of the plan and would not benefit from the equitable relief requested); *Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 64 (S.D.N.Y. 2000) (same); *Dickerson v. Feldman*, 426 F. Supp. 2d 130, 135 (S.D.N.Y. 2006) (same).

In sum, Plaintiff lacks standing to seek declaratory relief as to the Wellstar Plan and, in any event, only Wellstar has the legal power to afford any such relief as to its Plan.  The Court cannot provide declaratory relief actually or effectively reforming a plan's benefit structure without the participation of the self-funded plan sponsor, and the plan sponsor has a compelling interest in participating in that determination precisely because they will be the entity that funds the benefit.

Plaintiff's claim for monetary relief under the ACA is also limited.  Plaintiff asserts in her amended complaint that she has "suffered financial harm and emotional distress as a result of Defendant's discriminatory Medical Plan."  Am. Compl. ¶ 14.  The Supreme Court has made clear, however, that damages for emotional distress are not recoverable in private actions brought to enforce the ACA's anti-discrimination provisions.  *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562, 1576 (2022) ("There is thus no basis in contract law to maintain that emotional distress damages are traditionally available in suits for breach of contract, and correspondingly no ground, under our cases, to conclude that federal funding recipients have clear notice that they would face such a remedy in private actions brought to enforce the statutes at issue [including the ACA].  For the foregoing reasons, we hold that emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes we consider here.").

Plaintiff thus is left only with her claim for financial loss, which she describes in her amended complaint as follows:  "Plaintiff has suffered financial harm. . . as a result of Defendant's discriminatory Medical Plan.  After being denied coverage for IUI treatments under the Medical Plan, Plaintiff incurred the costs of IUI treatments directly."  Am. Compl. ¶ 14.  In other words, she seeks the value of the benefit she was denied—a denial she attributes entirely to the terms of the Wellstar Plan.

Which returns full circle to the essence of Plaintiff's complaint:  She complains that she was denied a benefit under the Wellstar Plan; had the Plan paid the benefit—or, indeed, by its terms, never offered the benefit at all—she would have no claim.  And she complains not that she was denied benefits *in violation* of the terms of the Wellstar Plan, but rather *because* of the terms of the Plan.  The discrimination she alleges was discrimination by the terms of the Wellstar Plan itself.

11

The documents creating and governing the Wellstar Plan make clear—consistent with both ERISA and the ACA—that Wellstar is the only party with ultimate legal authority over the Wellstar Plan. Wellstar created and funded the Plan; Wellstar has sole responsibility to pay benefits under the Plan; Wellstar is designated as the only necessary party in legal proceedings affecting the Plan. Aetna has no ultimate authority, as a matter of fact or law, for any of these Plan functions.[4]

Wellstar is the real party in interest for the claim Plaintiff asserts. And, under Rule 19, the Court cannot resolve Plaintiff's claim in Wellstar's absence.

## CONCLUSION

*Amici* cannot alter the plain terms of the Wellstar Plan or the established case law under Rule 19 that compels the joinder of Wellstar in this action. Aetna respectfully requests the Court dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(7).

Dated at Glastonbury, Connecticut this 22nd day of December, 2023.

---

[4] Indeed, Plaintiff never could have submitted a benefit claim directly to Aetna for payment independent of the Wellstar Plan. Aetna was not acting as an insurer but solely as a third-party representative of Wellstar, and Aetna had no obligation to anyone—Plaintiff or Wellstar—to pay benefit claims from its own funds. Aetna's only responsibility to Plaintiff was as delineated in the Wellstar Plan documents.

It should be noted, too, that Aetna's role as third-party administrator of the Wellstar Plan will terminate at the end of this year and, effective January 1, 2024, Wellstar Health will self-administer its Plan. This reemphasizes the virtual autonomy that self-funded plan sponsors, like Wellstar Health, exercise over the plans they create, define and fund. Self-funded plan sponsors frequently retain multiple third-party administrators with limited defined authority to administer certain portions of a plan or specific benefit packages. Or, as here, they may choose to dispense with a third-party altogether and simply administer the plan themselves. All of which undermines the essential thrust of Plaintiff's argument that a single third-party administrator can serve as a legal surrogate for a self-funding plan sponsor—much less for all sponsors, all administrators and all plans via one "omnibus" class action. The Wellstar Plan is entirely the creation of Wellstar Health, and the Court cannot reform the Wellstar Plan in particular or award complete relief to Plaintiff without the joinder of Wellstar under Rule 19. *See, e.g., Ray v. Medcost Benefits Services*, No. 1:21-cv-00265-MR, 2023 WL 8459852, at *3 (W.D. N.C. Dec. 6, 2023) (Because a former third-party administrator has no control over the administration of benefits under a plan, a claim against them cannot provide legal redress.)

*/s/ Michael P. Thompson*
Michael P. Thompson (ct09634)
Dennis O. Brown (ct04598)
Gordon Rees Scully Mansukhani LLP
95 Glastonbury Blvd, Suite 206
Glastonbury, Connecticut 06033
Tel.: (860) 278-7448
Fax: (860) 560-0185
mpthompson@grsm.com
dbrown@grsm.com

Earl B. Austin
Sarah Reeves
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, New York 10112
Tel.: (212) 408-2500

Mariellen Dugan
CALCAGNI & KANEFSKY LLP
One Newark Center
1085 Raymond Boulevard, 14th Floor
Newark, New Jersey 07102
Tel.: 862-397-1796
mdugan@ck-litigation.com

*Attorneys for Defendant*
*Aetna Life Insurance Company*

**CERTIFICATION**

I hereby certify that on this 22nd day of December, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.

/s/ Michael P. Thompson
Michael P. Thompson (ct09634)