IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TARA KULWICKI, on behalf of herself and all others similarly situated,<br><br>    P<small>LAINTIFF</small>,<br><br>V.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>    D<small>EFENDANT</small>. | Case No. 3:22-cv-229-VDO |

**AMENDED REPORT OF PARTIES' RULE 26(F) PLANNING MEETING**

Date Complaint Filed: February 9, 2022; Amended Complaint filed May 13, 2022.

Date Complaint Served: February 10, 2022

Date of Defendant's Appearance: February 24, 2022

  Pursuant to Fed. R. Civ. P. 16(b) and D. Conn. L. Civ. R. 16, a conference to discuss this amended report was held on April 24, 2024. The participants were:

  <u>For Plaintiff</u>: Jamisen Etzel – Lynch Carpenter, LLP; Amanda Rolon – Scott+Scott Attorneys at Law LLP

  <u>For Defendant(s)</u>: Michael Thompson – Gordon Rees Scully Mansukhani LLP; Earl B. Austin & Sarah Reeves – Baker Botts L.L.P.; Mariellen Dugan – Calcagni Kanefsky LLP.

  **I.  Certification**

  Undersigned counsel (after consultation with their clients) certify that: (a) they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case; and (b) they have developed the

1

following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II. Jurisdiction

### A. Subject Matter Jurisdiction

The court has federal question subject matter jurisdiction (28 U.S.C. § 1331) because Plaintiff alleges discrimination in violation of the Patient Protection and Affordable Care Act, 42 U.S.C. §18116(a).

### B. Personal Jurisdiction

The Court has personal jurisdiction over Defendant Aetna Life Insurance Company because it has its principal place of business in Hartford, Connecticut, and is a citizen of the State of Connecticut.

## III. Brief Description of the Case

### A. Claims of Plaintiff

Plaintiff Tara Kulwicki ("Plaintiff") brings this class action on behalf of herself and all similarly situated non-heterosexual individuals assigned female sex at birth, alleging that Defendant Aetna Life Insurance Company ("Defendant") violated Section 1557 of the Affordable Care Act. In 2021, Plaintiff—desiring to become pregnant, and enrolled in a plan issued and administered by Defendant (the "Plan")—submitted a request to Defendant for precertification to receive benefits for intrauterine insemination ("IUI"). Defendant denied Plaintiff's request and subsequent appeal, stating that Plaintiff had not evidenced that she was "infertile," as defined under Defendant's Plan documents (the Plan and the Clinical Policy Bulletin 0327).

Under the Plan, heterosexual individuals assigned female sex at birth have the option of showing that they meet the definition of "infertility" without paying out of pocket costs, whereas non-heterosexual individuals assigned female sex at birth are not given that option. Heterosexual policyholders can represent to Defendant that they have engaged in unprotected heterosexual coitus without becoming pregnant for a defined period of time. Non-heterosexual individuals assigned female sex at birth are incapable of engaging in coitus by reason of their sexual orientation and may only qualify for infertility benefits under the Plan by showing they are "infertile" with evidence that they attempted a series of intrauterine insemination treatments (paying the out-of-pocket costs themselves) and did not become pregnant.

### B. Defenses and Claims (Affirmative Defenses, Counterclaims, Third Party Claims, Cross Claims) (either pled or anticipated) of Defendant:

Based on the facts known to Defendant at this time, Defendant asserts that Plaintiff has failed to join several necessary and indispensable parties, including the Wellstar Employee Medical Plan ("Wellstar Plan"), the health benefit plan at issue in this case, and its sponsor and administrator, Wellstar Health System, Inc. ("Wellstar Health"). The employer-sponsor was the Plan fiduciary, meaning it funded and administered the plan, had final authority over the terms of the plan, and was responsible for payment of all benefits under the plan. Aetna, the only defendant in this action, simply acted as the claims administrator, administering the plan at the sponsor's direction, and cannot be liable as a surrogate for the plan or plan sponsor for administering the plan as written. Similarly, Plaintiff also has failed to join the many plans and plan sponsors and administrators of the many other health benefit plans within the scope of her broad putative class. Without either the plans or the plan sponsors and administrators, the Court is unable to afford Plaintiff the relief she seeks, making the missing parties necessary and indispensable under Rule 19.

Plaintiff's attempt to hold Defendant, in its role as claims administrator, solely responsible for the terms of the Wellstar Plan also violates the statutory scheme of the Employee Retirement Income Security Act of 1974 (ERISA).  The fundamental legal obligation of a third-party administrator under any ERISA self-funded plan is to administer the plan according to its terms.  The Wellstar Plan here was explicit that Aetna had no fiduciary authority for determining whether a member was entitled to benefits.  Aetna's responsibility under both ERISA and the Plan language is undisputed.  Plaintiff does not allege that Aetna violated the terms of the Plan; rather, she sues because Aetna *followed* the terms of the Plan.  Under well-settled federal law, Aetna cannot be liable as a surrogate for the Wellstar Plan or its funding sponsor, Wellstar Health, for administering the Plan according to its terms and in accordance with Aetna's obligations under ERISA.

Plaintiff also cannot establish the requirements for certification of a class pursuant to Rule 23.  Defendant also objects to the putative class definition set forth in Plaintiff's amended complaint as overbroad and inconsistent with the requirements of Rule 23.

Finally, the terms of the infertility benefit that Plaintiff challenges here were adopted, not by Defendant, but rather by the self-funding sponsor of the Wellstar Plan.  Aetna acted solely as the claims administrator under that Plan.  Aetna denies that the provisions of Section 1557 of the Affordable Care Act are applicable to Aetna, in its capacity as third-party claims administrator of the Wellstar Plan, as a health insurer, or in any other capacity as issue in this action. In any event, neither the Plan nor any policy or practice of Aetna is discriminatory or otherwise violative of Section 1557 of the Affordable Care Act or any other applicable law or regulation.

Defendant reserves the right to amend or supplement these defenses as additional facts are developed through discovery.

### C. Defenses and Claims of Third Party Defendants:

Not applicable at this time.

## IV. Statement of Undisputed Facts:

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The following material facts are undisputed:

1. Plaintiff Tara Kulwicki is a citizen of the State of Georgia, and at all relevant times was over the age of 35.

2. Plaintiff is a homosexual woman assigned female sex at birth.

3. Plaintiff was employed by an affiliate of Wellstar Health System, Inc. in Atlanta, GA beginning in February 2019.

4. From February 2019 until November 2021, Plaintiff was enrolled in an ERISA-governed employee health benefit plan sponsored and self-funded by Wellstar Health System, Inc. (the "Wellstar Plan").

## V. Case Management Plan:

### A. Initial Disclosures

The parties exchanged initial disclosures June 17, 2022.

### B. Scheduling Conference

1. The parties do not request to be excused from holding a pretrial with the Court before the entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

2. The parties prefer that a scheduling conference, if held, be conducted by telephone.

### C. Early Settlement Conference

1. The parties certify that they have considered the potential benefits of attempting to settle the case before undertaking significant discovery or motion practice. Settlement is unlikely at this time, but the parties have discussed the possibility of attempting a mediation session with private, third-party neutral, at a later point in time.

2. The parties do not request an early settlement conference.

3. The parties prefer a settlement conference, when such a conference is held, with a qualified private mediator.

4. The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16 at this time, but may request a referral to private nonbinding mediation at some point.

### D. Joinder of Parties, Amendment of Pleadings, and Motions Addressed to the Pleadings

The parties have discussed any perceived defects in the pleadings and have reached the following agreements for resolution of any issues related to the sufficiency of the pleadings.

1. Plaintiff has chosen not to amend her complaint following the Court's resolution of Defendant's motion to dismiss on March 12, 2024. Plaintiff reserves the right to seek to amend the complaint at a future time should the need arise, to the extent permitted by agreement of the parties or with the Court's leave pursuant to Rule 15(a)(2).

2. Defendant answered the complaint on April 16, 2024.

### E. Discovery

a. Recognizing that the precise contours of the case, including the amounts of damages at issue, if any, may not be clear at this point in the case, in making the proposals below concerning discovery, the parties have considered the scope of discovery permitted under

Fed. R. Civ. P. 26(b)(1). At this time, the parties wish to apprise the Court of the following information regarding the "needs of the case":

### Joint Report on Discovery Conducted to Date

The Parties engaged in an initial period of discovery between the Court's entry of the first scheduling order on May 24, 2022 (ECF No. 47) and the Court's issuance of a stay on July 20, 2023 (ECF No. 101) pending resolution of Defendant's motion to dismiss.

On August 9, 2022, Plaintiff served Aetna with initial discovery requests including interrogatories and requests for production.  On September 8, 2022, Aetna provided its Responses and Objections.  Aetna served its First Requests for Production and Interrogatories on September 28, 2022.  On November 8, 2022, Plaintiff served her Responses and Objections, including an additional production of documents.  As of March 2023, Aetna had made four document productions totaling approximately 3,016 pages of documents.

The parties' ability to make progress during this initial period of discovery was partially hampered by several disputes and impasses. Aetna objected to the scope of many of Plaintiff's discovery requests for a variety of reasons, and the parties reached an impasse during the negotiation of an ESI Protocol. The impasse regarding the ESI Protocol was ultimately resolved with the assistance of Magistrate Judge Vatti, and the parties submitted a protocol on April 5, 2023 which was subsequently approved by the Court.

As to Aetna's objections to Plaintiff's first discovery requests, the parties worked diligently over the first few months of 2023 to resolve as many as possible, and were on the path towards continuing their progress at the time the Court issued a stay of discovery. However, some disputes remained unresolved and had not yet been presented to the Court for resolution.

The parties anticipate resuming their discussions on these issues in accordance with the schedule approved by the Court.

**Statements Regarding Discovery Remaining to Be Conducted:**

  **Plaintiff's Position:**

  Discovery regarding Plaintiff's claim in her individual capacity should be relatively simple and straightforward, as most of the pertinent facts will be undisputed, and a significant number of key facts and events are already well-documented in the discovery exchanged to date. Some third-party discovery regarding Plaintiff's former employer Wellstar may be required in order to resolve defenses raised by Defendant.[1]

  The majority of the parties' focus during the remaining discovery will likely relate to evidence bearing on class certification and damages issues. The scope of Plaintiff's proposed class action will include individuals subjected to the same discrimination stemming from participation in the Wellstar plan as well as other plans administered by Aetna. The parties will need to ascertain the number of such plans and individuals subject to them during the class period. Plaintiff also anticipates that the parties will need to determine the number of individuals within the class who sought infertility treatments and were denied, along with their resulting damages.

  Counsel for the parties discussed during the planning meeting that such discovery may be complex and involve significant production requirements from both Defendant and a number of third parties. The case will also likely require involvement of expert witnesses. Picking up from where the parties left off in June 2023, Plaintiff's counsel will endeavor to work cooperatively

---

[1]   The parties discussed how the schedule proposed herein may need to be modified to the extent additional third-party discovery from absent plans, plan sponsors, or administrators is sought.

with Defendant to develop strategies to conduct this discovery as reasonably and efficiently as possible in light of the nature of the case.

**Defendant's Position (if different):**

Plaintiff's Amended Complaint makes clear that she seeks to hold the claims administrator, Aetna, responsible for the benefit design of the self-funded Wellstar Plan. *See, e.g.,* Plaintiff's Amended Complaint ("Am. Compl.") [Dkt. 42] at ¶¶ 6, 10, 23, 25, 26, 51, 59.b., 90, 91.a. Indeed, Plaintiff's assertion that Aetna—and Aetna alone—designed the infertility benefit of the Wellstar Plan was the linchpin of her opposition to Aetna's motion to join Wellstar in this action. Aetna proposes that the parties should focus their discovery efforts first toward the resolution of this threshold issue that Plaintiff has made central to her case—specifically, Aetna's role in the design of the infertility benefit in the Wellstar Plan—before embarking on broad, class-wide discovery.

The putative class Plaintiff proposes potentially could encompass thousands of health benefit plans administered by Aetna, including thousands of plans, like the Wellstar Plan, that are self-funded by the employer-sponsor and for which Aetna has no substantive control and which have varying provisions with regard the eligibility for and scope of infertility coverage. Defendant objects to wide-ranging discovery concerning these many plans unless and until Plaintiff establishes that Aetna was legally and factually responsible for the design of the infertility benefit in the Wellstar Plan.

**Subject Matter of Remaining Discovery:**

The parties anticipate that discovery will be needed on the following subjects. (Some of the discovery conducted to date has yielded evidence pertinent to some of these issues).

**Plaintiff's Position:**

i) Plaintiff's dates of employment with Wellstar Health System, her enrollment in the Plan, her status as member of a protected class, and her unsuccessful efforts to obtain infertility benefits under the plan, including her correspondences with Defendant regarding same, and her resulting damages.

ii) The relationship between Defendant and Plaintiff's former employer, Wellstar Health, and its related entities, to the extent development of such facts is necessary to resolve any of Defendant's asserted defenses relating to that issue;

iii) Facts regarding the history of the benefit design of the Plan, including the origins of the pertinent terms that Plaintiff alleges are discriminatory, Defendant's role in drafting the terms, the same with respect to Defendant's "Infertility" Clinical Policy Bulletin;

iv) Defendant's rationales/justifications for adopting such terms, to the extent Defendant intends to rely on such facts to support any defense;

v) Other plans administered by Defendant that result in the same form of discrimination alleged by Plaintiff, including information regarding Defendant's role with respect to other plans and plan sponsors, so as to permit determination of the proper scope of the class.

vi) Information regarding membership of the proposed class, including the number of eligible individuals subjected to Defendant's allegedly discriminatory health insurance plans during the class period;

vii) Additional information pertinent to potential class damages, including, e.g., the number of claims for infertility treatments made by those similarly situated to Plaintiff, out of pocket costs paid by such persons for infertility treatments after being denied coverage, and expert opinions that may assist in estimating class damages.

viii) Defendant's receipt of federal funds to the extent necessary to be subject to compliance with the Affordable Care Act.

**Defendant's Position:**

i) Facts regarding Aetna's role, if any, in the design of the infertility benefit in the Wellstar Plan, which Aetna submits should be explored prior to other, class-wide discovery.

ii) Plaintiff's dates of employment with Wellstar Health System, her enrollment in the Plan, and her claim for infertility benefits under the plan.

iii) The relationship between Defendant and Plaintiff's former employer, Wellstar Health, and its related entities, to the extent development of such facts is necessary to resolve any of Defendant's asserted defenses relating to that issue.

iv) Facts establishing that neither the infertility policy about which Plaintiff complains nor any other Aetna policy relevant to the claims in this matter is discriminatory or otherwise violative of Section 1557 of the Affordable Care Act or any other applicable law or regulation.

iv) Facts pertaining to Plaintiff's and the class's alleged damages.

**Joint Statement Regarding Anticipated Discovery Methods[2]**

    **a.**    The parties anticipate that Plaintiff will require a total of 10 depositions of Defendants' fact witnesses. Plaintiff anticipates that some depositions of third-party witnesses may be necessary, but at this time Plaintiff does not have a precise estimate of the number. Defendant anticipates that it will require a total of 5 depositions of fact witnesses.

    **b.**    The parties will not request permission to serve more than 25 interrogatories, unless an unforeseen need arises.

    **c.**    Plaintiff intends to call expert witnesses at trial. Defendants intend to call expert witnesses at trial.

    **d.**    The parties submitted an ESI protocol on April 5, 2023 which was subsequently approved by the Court on April 6, 2023 (ECF Nos. 84–85).

    **e.**    Undersigned counsel (after consultation with their clients) have also discussed the location(s), volume, organization, and costs of retrieval of information stored in paper or other non-electronic forms. The parties agree to the following procedures for the preservation, disclosure, and management of such information: **The parties discussed during their conference that non-electronic discovery will likely be minimal or nonexistent in this case, and do not believe any specific procedures need to be negotiated beyond the governing provisions of the Federal Rules of Civil Procedure.**

    **f.**    Undersigned counsel and self-represented parties have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties submitted a Protective

---

[2] Defendant agrees with this Joint Statement of Discovery Methods, subject to its proposal that initial discovery should be limited to the question of Aetna's role in the design of the infertility benefit in the Wellstar Plan.

Order on February 21, 2023, which was approved by the Court on February 22, 2023 (ECF Nos. 72–73).

**Proposed Schedule**

    **Plaintiff's Position:**

    a.    All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced by April 11, 2024, and completed (not propounded) by September 12, 2025.

        i.    Discovery will not be conducted in phases.

    b.    Plaintiff will designate and disclose experts and reports pertinent to class certification by January 17, 2025.

    c.    Defendant will designate and disclose reports pertinent to class certification by March 21, 2025, or no later than sixty days from the date of Plaintiff's disclosure if Plaintiff discloses before January 17, 2025.

    d.    Plaintiff will disclose any rebuttal reports pertinent to class certification by May 9, 2025, or no later than 45 days from Defendant's disclosure if Defendant discloses before March 21, 2025.

    e.    The parties shall designate and disclose any other trial experts and reports on any other issues on which they bear the burden of proof, including but not limited to damages, by June 27, 2025.  Depositions of such experts will be completed by July 31, 2025.

    f.    Parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any other issues (not related to class certification) on which they do not bear the burden of proof by August 15, 2025.  Depositions of such experts will be completed by September 12, 2025.

  **g.**  Plaintiff shall move for class certification no later than January 17, 2025.

  **h.**  Defendant shall file its response in opposition no later than March 21, 2025, or no later than sixty days from the date of Plaintiff's motion if Plaintiff files before January 17, 2025.

  **i.**  Plaintiff shall file a reply in support no later than May 9, 2025, or no later than forty-five days from the date of Defendant's response if Defendant files its response before March 21, 2025.

  **j.**  Summary judgment motions, which must comply with Local Rule 56, will be filed on or before September 26, 2025.

  **k.**  The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed by November 21, 2025.

  **l.**  The case will be ready for trial by January 12, 2026.

  **m.**  The parties estimate a trial will require 8 days.

**Defendant's Position:**

Defendant generally agrees with the structure and spacing of the schedule proposed by Plaintiff, with the exception that Defendant proposes that discovery initially focus upon and be limited to the question of Aetna's role in designing the infertility benefit in the Wellstar Plan and that Aetna be permitted to present that threshold issue to the Court for resolution prior to the parties' embarking on broad, class-wide discovery.  To that end, Defendant proposes that the dates set forth in Plaintiff's proposed schedule be extended approximately 120 days to accommodate discovery relating to plain design, as follows:

  **a.** All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced by April 11, 2024, and completed (not propounded) by January 17, 2026.

      i. The initial discovery phase will be limited to discovery relating to the question of Aetna's role in designing the infertility benefit in the Wellstar Plan, which discovery will be completed by August 30, 2024.

      ii. Summary judgment motions relating to the question of Aetna's role in designing the infertility benefit in the Wellstar Plan, which must comply with Local Rule 56, will be filed on or before October 4, 2024.

**b.** Plaintiff will designate and disclose experts and reports pertinent to class certification by May 16, 2025.

**c.** Defendant will designate and disclose reports pertinent to class certification by July 18, 2025, or no later than sixty days from the date of Plaintiff's disclosure if Plaintiff discloses before January 17, 2025.

**d.** Plaintiff will disclose any rebuttal reports pertinent to class certification by September 5, 2025, or no later than 45 days from Defendant's disclosure if Defendant discloses before July 18, 2025.

**e.** The parties shall designate and disclose any other trial experts and reports on any other issues on which they bear the burden of proof, including but not limited to damages, by October 24, 2025. Depositions of such experts will be completed by November 21, 2025.

**f.** Parties will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) on any other issues (not related to class certification) on which they do not bear the burden of proof by December 19, 2025. Depositions of such experts will be completed by January 16, 2026.

**g.** Plaintiff shall move for class certification no later than May 16, 2025.

**h.** Defendant shall file its response in opposition no later than July 18, 2025, or no later than sixty days from the date of Plaintiff's motion if Plaintiff files before May 16, 2025.

**i.** Plaintiff shall file a reply in support no later than September 5, 2025, or no later than forty-five days from the date of Defendant's response if Defendant files its response before July 18, 2025.

**j.** Summary judgment motions, which must comply with Local Rule 56, will be filed on or before January 30, 2026.

**k.** The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed by March 20, 2026.

**l.** The case will be ready for trial by May 15, 2026.

**m.** The parties estimate a trial will require 8 days.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Dated: April 26, 2024                                    Submitted by:

| | |
|---|---|
| */s/ Jamisen A. Etzel* | */s/ Michael P. Thompson (w/consent)* |
| Gary F. Lynch | Michael P. Thompson (ct404749) |
| Jamisen Etzel | **Gordon Rees Scully Mansukhani LLP** |
| **LYNCH CARPENTER, LLP** | 95 Glastonbury Blvd, Suite 206 |
| 1133 Penn Ave | Glastonbury, Connecticut 06033 |
| Pittsburgh, PA 15232 | Tel.: (860) 278-7504 |
| Tel:   (412) 322-9243 | Fax: (860) 560-0185 |
| Fax:   (412) 231-0246 | mpthompson@grsm.com |
| gary@lcllp.com | |
| jamisen@lcllp.com | Earl B. Austin |
| | **BAKER BOTTS L.L.P.** |
| Joseph P. Guglielmo | 30 Rockefeller Plaza |
| Erin Green Comite | New York, New York 10112 |
| Carey Alexander | Tel.: (212) 408-2500 |
| Amanda Rolon | |
| **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | Mariellen Dugan |
| | **CALCAGNI & KANEFSKY LLP** |
| The Helmsley Building | One Newark Center |

230 Park Ave., 17th Floor
New York, NY 10169
Tel.: (212) 223-6444
Fax: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com
calexander@scott-scott.com
arolon@scott-scott.com

**GIBSON CONSUMER LAW GROUP, LLC**
MaryBeth V. Gibson
4729 Roswell Road
Suite 208-108
Atlanta, GA 30342
Tel:    (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

Colleen E. Ramage
**RAMAGE LYKOS, LLC**
525 William Penn Place, 28th Floor
Pittsburgh, PA 15219
Tel: (412) 325-7700
Fax: (412) 325-7755
cramage@ramagelykos.law

*Counsel for Plaintiff and the putative Class*

1085 Raymond Boulevard, 14th Floor
Newark, New Jersey 07102
Tel.: 862-397-1796
mdugan@ck-litigation.com

*Attorneys for Defendant*
*Aetna Life Insurance Company*