## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

TARA KULWICKI, on behalf of herself and all
others similarly situated,

                        Plaintiff,

          v.

AETNA LIFE INSURANCE COMPANY,

                        Defendant.

Case No. 3:22-cv-00229 (VDO)


March 19, 2025


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## AETNA'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ................................................................................ 3

    A.  Aetna's role in administering the Wellstar Plan ................................................ 3

    B.  Aetna's discriminatory enforcement of the infertility definition ...................... 4

    C.  Plaintiff's Wellstar lawsuit and its distinction from the instant case .............. 5

    D.  Harm to Plaintiff .............................................................................................. 5

III.  ARGUMENT ....................................................................................................... 6

    A.  Aetna's request for reconsideration of its motion to dismiss must be denied
       because it fails to demonstrate a legal basis for reconsideration, and Wellstar
       is still not a required party under Rule 19(a). ................................................... 6

        1.  The Court was correct that Wellstar is not a party required to be joined under
           Rule 19(a)(1)(A) because the Court can accord complete relief to Plaintiff by
           ordering Aetna to pay money damages. .................................................... 8

        2.  Wellstar does not claim an interest in the action, so the tests of
           Rule 19(a)(1)(B) and Rule 19(b) are not applicable. .............................. 13

           a.  The standard of Rule 19(a)(1)(B) is not met because Wellstar has not
               claimed an interest in the litigation. ................................................ 13

           b.  There is no occasion to evaluate Rule 19(b)'s factors because Wellstar is
               not a necessary party under Rule 19(a), and in any event, the Rule 19(b)
               factors do not support Aetna's position. ......................................... 16

    B.  Aetna's belated motion to transfer venue must be denied because Aetna
       fails to carry its burden to present clear and convincing evidence that transfer
       is justified. ...................................................................................................... 18

        1.  *No* Section 1404(a) factors weigh in favor of transfer. ............................ 20

           a.  The convenience of the witnesses ................................................... 20

           b.  The convenience of the parties ......................................................... 22

           c.  The location of relevant documents and the relative ease of access
               to sources of proof ........................................................................... 22

           d.  The locus of operative facts ............................................................. 23

    e.   The availability of process to compel the attendance of unwilling witnesses ... 23

    f.   The relative means of the parties ........................................................................ 23

    g.   The forum's familiarity with the governing law ................................................ 24

    h.   The weight accorded the plaintiff's choice of forum ........................................ 24

    i.   Trial efficiency and the interests of justice. ..................................................... 24

C.  Aetna's motion for partial summary judgment must be denied, as material facts concerning Aetna's role in designing the Wellstar Plan remain disputed ............ 26

    1.  Plaintiff disputes Aetna's proposed fact because Aetna participated in the drafting and implementation of the Plan and agreed the relevant portions of the Plan were consistent with Aetna's standard. ....................................................... 28

    2.  Aetna's motion is procedurally improper, and in any event, summary judgment should be denied because Aetna is subject to liability under the ACA for its own role in discriminating against Plaintiff. ........................................ 29

IV.  CONCLUSION .................................................................................................................... 34

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*Albright v. Terraform Labs, Pte. Ltd.*,
   641 F. Supp. 3d 48 (S.D.N.Y. 2022) ..................................................................................... 19

*Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*,
   474 F. Supp. 2d 474 (S.D.N.Y. 2007) ........................................................................... passim

*Amos v. Aetna Life Ins. Co.*,
   No. 2:19-CV-202, 2019 WL 3773770 (S.D. Ohio Aug. 12, 2019) ......................................... 24

*Analytical Survs., Inc. v. Tonga Partners, L.P.*,
   684 F.3d 36 (2d Cir. 2012) ...................................................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .............................................................................................................. 26

*Arkwright-Bos. Mfrs. Mut. Ins. Co. v. City of New York*,
   762 F.2d 205 (2d Cir. 1985) .................................................................................................... 8

*Associated Dry Goods Corp. v. Towers Fin. Corp.*,
   920 F.2d 1121 (2d Cir. 1990) ........................................................................................... 7, 10

*Atl. Recording Corp. v. Project Playlist, Inc.*,
   603 F. Supp. 2d 690 (S.D.N.Y. 2009) ................................................................................... 22

*Berton v. Aetna Inc.*,
   No. 23-CV-01849, 2024 WL 869651 (N.D. Cal. Feb. 29, 2024) .......................................... 11

*Bezek v. First Nat'l Bank of Pennsylvania*,
   No. CV SAG-17-2902, 2023 WL 348967 (D. Md. Jan. 20, 2023) ........................................ 29

*Burton v. Freescale Semiconductor, Inc.*,
   798 F.3d 222 (5th Cir. 2015) ................................................................................................. 32

*C. P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*,
   No. 3:20-CV-06145-RJB, 2022 WL 17788148 (W.D. Wash. Dec. 19, 2022) .................. 33, 34

*Carr v. United Healthcare Servs.*,
   No. C15-1105-MJP, 2016 WL 7716060 (W.D. Wash. May 31, 2016) ................................... 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................................................. 26

*Corpes v. Walsh Constr. Co.*,
   130 F.Supp.3d 638 (D. Conn. 2015) ....................................................................................... 8

*Egelhoff v. Egelhoff ex rel. Breiner*,
    532 U.S. 141 (2001) ................................................................................ 32

*Ente Nazionale Idrocarburi v. Prudential Secs. Grp., Inc.*,
    744 F. Supp. 450 (S.D.N.Y. 1990) ................................................. 10, 11

*Errico v. Stryker Corp.*,
    No. 10 CIV. 3960 VM JLC, 2010 WL 5174361 (S.D.N.Y. Dec. 14, 2010) ......................... 12

*F.D.I.C. v. First Am. Title Ins. Co.*,
    611 F. App'x 522 (11th Cir. 2015) ................................................... 15

*Flood v. Carlson Restaurants Inc.*,
    94 F. Supp. 3d 572 (S.D.N.Y. 2015) ................................................ 24

*Fluent v. Salamanca Indian Lease Auth.*,
    928 F.2d 542 (2d Cir. 1991) ................................................................ 9

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
    344 F.3d 1263 (11th Cir. 2003) ......................................................... 10

*Freeplay Music, LLC v. Gibson Brands, Inc.*,
    195 F. Supp. 3d 613 (S.D.N.Y. 2016) ............................................. 22

*Gochenour v. United States*,
    No. 20 CIV. 4607 (NSR), 2024 WL 1020259 (S.D.N.Y. Mar. 8, 2024) .................. 26, 27

*Gondeck v. JPMorgan Chase Bank, N.A.*,
    705 F. Supp. 3d 64 (N.D.N.Y.) ........................................................... 8

*Hickerson v. Enter. Leasing Co. of Georgia, LLC*,
    818 F. App'x 880 (11th Cir. 2020) ................................................... 14

*In re Torcise*,
    116 F.3d 860 (11th Cir. 1997) ............................................................. 9

*Johnson v. Middleton*,
    175 F.2d 535 (7th Cir. 1949) ............................................................. 10

*Joseph S. v. Hogan*,
    561 F. Supp. 2d 280 (E.D.N.Y. 2008) ................................... 7, 13, 14

*Kadel v. Folwell*,
    No. 1:19CV272, 2022 WL 17415050 (M.D.N.C. Dec. 5, 2022) ............ 34

*Knipe v. Skinner*,
    999 F.2d 708 (2d Cir. 1993) ............................................................... 8

*Lynch ex rel. Tr. of Health & Welfare Fund of Patrolmen's Benevolent Ass'n of City of New York & Retiree Health & Welfare Fund of Patrolmen's Benevolent Ass'n of City of New York v. Nat'l Prescripti*on *Adm'rs,*
No. 03 CIV. 1303 (GBD), 2004 WL 385156 (S.D.N.Y. Mar. 1, 2004) ........................... 20, 23

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden,*
11 F.4th 12 (1st Cir. 2021) ............................................................................................ 17

*Monbo v. Nathan,*
623 F. Supp. 3d 56 (E.D.N.Y. 2022) ............................................................................. 17

*Parchmann v. MetLife, Inc.,*
No. 18-CV-780 (SJ), 2018 WL 5115075 (E.D.N.Y. Sept. 28, 2018) ...................................... 25

*Pasco Int'l (London) Ltd. v. Stenograph Corp.,*
637 F.2d 496 (7th Cir. 1980) ......................................................................................... 18

*Person v. Lyft, Inc.,*
542 F. Supp. 3d 1342 (N.D. Ga. 2021) .......................................................................... 15

*Provident Tradesmen Bank & Trust Co. v. Patterson,*
390 U.S. 102 (1968)........................................................................................................ 16

*Religious Sisters of Mercy v. Becerra,*
55 F.4th 583 (8th Cir. 2022) .......................................................................................... 32

*Schmitt v. Kaiser Found. Health Plan of Washington,*
965 F.3d 945 (9th Cir. 2020) ......................................................................................... 31

*Scott v. St. Louis Univ. Hosp.,*
600 F. Supp. 3d 956 (E.D. Mo. 2022).............................................................................. 33

*Sirva Relocation, LLC v. Richie,*
794 F.3d 185 (1st Cir. 2015)............................................................................................ 33

*T.S. by & through T.M.S. v. Heart of CarDon, LLC,*
43 F.4th 737 (7th Cir. 2022) .......................................................................................... 34

*Tamosaitis v. URS Inc.,*
781 F.3d 468 (9th Cir. 2015) .......................................................................................... 31

*Temple v. Synthes Corp., Ltd.,*
498 U.S. 5 (1990)....................................................................................................... 12, 16

*U.S. v. Dawn Properties, Inc.,*
64 F. Supp. 3d 955 (S.D. Miss. 2014).............................................................................. 12

*U.S. v. Sabine Shell, Inc.*,
   674 F.2d 480 (5th Cir. 1982) ............................................................. 15

*U.S. v. San Juan Bay Marina*,
   239 F.3d 400 (1st Cir. 2001) ............................................................. 14

*Ultimate Nutrition, Inc. v. Leprino Foods Co.*,
   707 F. Supp. 3d 199 (D. Conn. 2023) ............................................... 20

*United States v. Kellogg Brown & Root, Inc.*,
   No. 1:04-CV-42, 2015 WL 10937548 (E.D. Tex. June 10, 2015) .......... 30

*Venuti v. Riordan*,
   702 F.2d 6 (1st Cir. 1983) ............................................................... 17

## **Statutes**

28 U.S.C. § 1404(a) ............................................................. 2, 18, 19, 20

29 U.S.C. § 1144(d) ..................................................................... 32

42 U.S.C. § 18116(a) .................................................................... 33

## **Rules**

Fed. R. Civ. P. 19 ................................................................. passim

Fed. R. Civ. P. 45 ......................................................................... 23

Fed. R. Civ. P. 56 ................................................................. passim

Plaintiff Tara Kulwicki ("Plaintiff") respectfully presents this Memorandum of Law in Opposition to Aetna's Motion for Partial Summary Judgment, or alternatively, its Renewed Motion to Dismiss Plaintiff's Amended Complaint, or, in the alternative, its Motion to Transfer ("Motion" or "Mot.") (ECF No. 150-5).

## I.    <u>INTRODUCTION</u>

Plaintiff, a lesbian woman, endured discrimination on the basis of sexual orientation and suffered financial harm when Defendant Aetna Life Insurance Company ("Aetna") denied coverage for infertility treatments based on Aetna's Clinical Policy Bulletin 0327 ("CPB 0327"). Aetna's CPB 0327 defines "infertility" as the inability to conceive after "frequent, unprotected heterosexual sexual intercourse" for a certain number of months (based on age) or, for "a woman without a male partner," after a certain number of "cycles of donor insemination" (based on age) prior to being eligible to receive infertility benefits. In other words, Aetna's policies and practices expressly provide that individuals who have the capacity to engage in "heterosexual sexual intercourse" need not pay out-of-pocket to obtain infertility benefits, but individuals who, because of their sexual orientation, are unable to engage in "heterosexual sexual intercourse" must first incur the costs of donor insemination before becoming eligible for infertility benefits.

Aetna collaborated extensively with Plaintiff's employer, Wellstar Health System ("Wellstar"), to integrate Aetna's CPB 0327 into the Wellstar Medical Plan with only non-material alterations. Aetna then administered the Wellstar Medical Plan and relied on CPB 0327 to deny Plaintiff's claim for fertility benefits. Therefore, Aetna is liable in its own capacity for unlawful discrimination under the Affordable Care Act ("ACA") and is obligated to compensate Plaintiff and other similarly situated class members.

1

Taking Aetna's alternative motions under Rule 12(b)(7) / Rule 19 and 28 U.S.C. § 1404(a) ("Section 1404(a)") first because they represent Aetna's only requests for the Court to issue any meaningful orders, it is clear the Court should deny them. In rehashing the Rule 12(b)(7) motion, Aetna mischaracterizes Plaintiff's amended complaint and the limited discovery taken to date to argue that Wellstar is a necessary party, but it simply is not under Rule 19, as this Court already determined. *See* ECF No. 113. Aetna makes no effort whatsoever in its current motion to explain how Wellstar meets the conditions for a required party under either prong of Rule 19(a). Instead, Aetna focuses exclusively on irrelevant equitable factors of Rule 19(b) that do not come into play because Rule 19(a) is not satisfied.

Plaintiff's claim is only against Aetna and focuses on whether Aetna's actions were unlawfully discriminatory under the ACA. Plaintiff suffered losses that are directly traceable to Aetna's conduct and are therefore redressable through an award of damages payable by Aetna. If Aetna's actions are found to be discriminatory, Aetna is liable for damages it caused Plaintiff, and the Court may award this relief without the involvement of any other defendants. Because the Court can afford full relief to Plaintiff without Wellstar's involvement, Wellstar is not a required party under Rule 19(a)(1)(A). Wellstar, for its part, does not claim to have an interest in the litigation despite being aware of it for at least nine months, and Aetna does not identify any form of actual legal prejudice that would befall either itself or Wellstar if Wellstar is not joined. Wellstar therefore does not qualify as a required party under Rule 19(a)(1)(B). As such, the Court should refuse to reconsider its prior ruling.

Aetna also fails to meet the Section 1404(a) factors for transferring this action to the Northern District of Georgia, where Plaintiff's lawsuit against WellStar for employment discrimination under Title VII is pending (the "Georgia Title VII Lawsuit"). There is minimal

overlap between this case and the Georgia Title VII Lawsuit – which is pending against a different defendant, involves a different proposed class, based on a different legal claim, in a jurisdiction that is not more convenient for either the parties or witnesses in this case, does not serve the interests of justice, and would severely prejudice Plaintiff.

Finally, Aetna argues that it is entitled to partial summary judgment regarding a singular fact, contending that it is undisputed that Wellstar "was responsible for" the infertility benefit in the Wellstar Medical Plan. The evidence demonstrates, however, that Aetna played an integral role in designing the Plan and relied on its own CPB 0327 to deny Plaintiff's claim. In light of the disputed material facts, the Court must deny summary judgment to Aetna. In addition, the partial summary judgment order Aetna requests is not appropriate because Aetna did not file a full Rule 56(a) motion, and the "fact" Aetna identifies would not materially advance this case closer to disposition, even if it were undisputed.

As discussed below, the Court should deny Aetna's Motion in its entirety.

## II.    FACTUAL BACKGROUND

### A.  Aetna's role in administering the Wellstar Plan

Plaintiff Tara Kulwicki, a Georgia resident, was employed at Wellstar Cobb Hospital, a facility within Wellstar Health System, Inc. ("Wellstar"), and was enrolled in the Wellstar Employee Medical Plan ("Wellstar Plan"), an employee health benefit plan self-funded by Wellstar. *See* Plaintiff's Responsive Statement of Material Facts in Opposition to Aetna's Motion for Summary Judgement, filed concurrently herewith, at Pl. RSOF at ¶¶ 1–2.[1] Aetna acted as the claim administrator for the Wellstar Plan from 2016 to 2023. *Id.* at ¶ 3.

---

[1] Hereinafter, "Pl. RSOF ¶ _" refers to the paragraphs in Plaintiff's Statement of Facts that are responsive to corresponding paragraphs in Aetna's Statement of Facts. Citations to "Pl. Add'l SOF ¶ _" refer to Plaintiff's Additional Statement of Facts that follow in a subsequent section.

In June 2021, Plaintiff submitted a request for precertification of artificial intrauterine insemination ("IUI") benefits. *Id.* at ¶ 4. Aetna denied the request, citing the Wellstar Plan's definition of "infertility," which was derived from Aetna's Clinical Policy Bulletin 0327 ("CPB 0327"). *Id.* The Plan required a woman under the age of 35 to demonstrate infertility through either: (1) one year or more of timed, unprotected coitus; or (2) twelve cycles of artificial insemination. For women 35 and older, the plan required six months of timed, unprotected coitus or six cycles of artificial insemination. *Id.* As a lesbian, Plaintiff could not meet the coitus requirement, effectively forcing her to pay out of pocket for at least twelve IUI procedures to satisfy the infertility definition. *See id.*

## B. Aetna's discriminatory enforcement of the infertility definition

The Plan's infertility definition is based on Aetna's CPB 0327 without material alteration. CPB 0327 states "a member is considered infertile if he or she is unable to conceive or produce conception after 1 year of frequent, unprotected heterosexual sexual intercourse, or 6 months of frequent, unprotected heterosexual intercourse if the female partner is 35 years of age or older." *See* ECF No. 151-10 (Clinical Policy Bulletin 0327) ("Exhibit I"). Aetna's denial of Plaintiff's claim for infertility benefits based on CPB 0327 disproportionately burdened lesbian individuals by requiring them to pay for artificial insemination cycles before accessing fertility benefits, whereas heterosexual individuals could satisfy the definition without incurring any financial cost. Pl. RSOF at ¶ 4. Aetna actively participated in finalizing the Wellstar Plan, including the infertility benefit provisions, and applied its internal CPB policies in denying Plaintiff's claim. *Id.* at ¶¶ 9–11.

Contrary to Aetna's assertion that it merely followed Wellstar's plan language, discovery has revealed that Aetna personnel collaborated extensively with Wellstar and its agents in designing and integrating the Plan. *See id.* Aetna's involvement was not merely administrative but

included approving plan terms that were aligned with its own CPB 0327, demonstrating its independent role in the discriminatory denial of infertility benefits. *See id.* In addition, in the Master Services Agreement between Wellstar and Aetna, Aetna represented that it would comply with the ACA, and reserved for itself the right to terminate the contract if it determined that any part of its agreement with Wellstar violated applicable law. Pl. Add'l SOF at ¶18.

### C.  Plaintiff's Wellstar lawsuit and its distinction from the instant case

Aetna attempts to conflate Plaintiff's separate lawsuit against Wellstar with the present case to suggest that Wellstar is an indispensable party. *See* Mot. at 29. However, these actions are legally and factually distinct. *Compare* ECF No. 42 *with* ECF No. 150-2. Plaintiff's case against Wellstar, filed in the Northern District of Georgia, asserts Title VII employment discrimination claims against her former employer due to the Wellstar Plan's exclusionary infertility policies. *See* ECF No. 150-2. In contrast, this case seeks damages under Section 1557 of the Affordable Care Act ("ACA") against Aetna for its independent role in applying and enforcing discriminatory policies in administering the Wellstar Plan. *See* ECF No. 42.

This Court has already determined that Aetna can provide complete relief for its own violations of the ACA without the involvement of Wellstar. *See* ECF No. 113. The Court in this case has ruled that Aetna is subject to liability under Section 1557 for its independent conduct, regardless of whether it was acting on Wellstar's behalf, and that the Court can grant Plaintiff full relief by requiring Aetna to pay money damages. *See id.* Notably, Aetna has settled a materially similar case involving its discriminatory infertility policy without requiring joinder of any plan sponsors. *See* ECF No. 128, Ex. 2.

### D.  Harm to Plaintiff

As a direct result of Aetna's discriminatory enforcement of the Wellstar Plan, Plaintiff was denied timely access to fertility benefits. *See* ECF No. 42. Unlike heterosexual women, who could

establish infertility by engaging in unprotected sexual intercourse without incurring financial burden, Plaintiff was forced to pay thousands of dollars out of pocket for multiple IUI cycles, medications, and doctor visits before she could even be considered for coverage. *Id.* at ¶ 38; Pl. Add'l SOF ¶ 11. The delays and financial strain negatively impacted her efforts to conceive and caused significant emotional distress. ECF No. 42 at ¶ 54.

Aetna's actions not only resulted in financial harm but also violated its duty under Section 1557 to ensure that its administration of the Wellstar Plan complied with federal non-discrimination laws. Despite Aetna's claims to the contrary, the evidence demonstrates that Aetna actively participated in structuring and enforcing a policy that disproportionately harmed Plaintiff and other non-heterosexual women.

## III. <u>ARGUMENT</u>

Aetna makes three requests in its motion. First, Aetna seeks "partial summary judgment … on the limited question that Wellstar Health was responsible for the design of the infertility benefit offered by the Wellstar Plan" Mot. at 1. Styled "in the alternative," Aetna also requests that the Court either dismiss Plaintiff's action under Rules 12(b)(7) and 19 for failure to join Wellstar, or transfer the action under Section 1404(a) to the Northern District of Georgia. *Id.*

Because only the latter two requests would, if granted, substantively alter the status of this litigation, and because the legal standard applicable to those two questions does not require the Court's resolution of Aetna's partial summary judgment request, Plaintiff will respond to these alternative motions first.

### A. **Aetna's request for reconsideration of its motion to dismiss must be denied because it fails to demonstrate a legal basis for reconsideration, and Wellstar is still not a required party under Rule 19(a).**

Aetna seeks reconsideration of the Court's previous finding that Wellstar is not a necessary party. Mot. at 34 ("Aetna submits that the Court may reconsider Aetna's motion to dismiss."). The

standard for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citations and quotation marks omitted); *see also* L.R. 7(c)(1) ("Motions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions. Such motions will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order.").

Aetna does not argue there has been any intervening change in law or that the Court overlooked any controlling authority regarding Rule 19. Instead, Aetna points to what it terms are "new developments," referring only to facts developed in discovery regarding the formation of the Wellstar Plan, and Plaintiff's filing of the separate Georgia Title VII Lawsuit against Wellstar. *See* Mot. at 29–30.

As explained in more detail below, neither the discovery taken to date nor Plaintiff's filing of the Georgia Title VII Lawsuit against Wellstar provides any new facts that alter the Rule 19(a) analysis the Court already correctly conducted. For Aetna to establish that Wellstar is a required party, Aetna bears the burden of proving either that the Court cannot order full relief to Plaintiff for the claims she asserts *in this action*, or Aetna must show that Wellstar claims an interest relating to the subject of this action. *See* Fed. R. Civ. P. 19(a); *see also Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 311 (E.D.N.Y. 2008) ("Defendants, as the moving party, bear the burden of establishing that joinder of necessary parties is required."). Rule 19 sets forth a "two step inquiry for determining whether an action must be dismissed for failure to join an indispensable party," with the first prong, Rule 19(a), focusing "on whether the party should be joined if feasible." *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir. 1990).

*Only when* a party is deemed necessary/required under Rule 19(a) does a court proceed to evaluating whether the inability to join that party requires dismissal under equitable factors listed in Rule 19(b). Further, the Second Circuit has instructed district courts to take a "flexible" approach to Rule 19(b) and cautions that "very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Gondeck v. JPMorgan Chase Bank, N.A.*, 705 F. Supp. 3d 64, 69 (N.D.N.Y.). Aetna does not explain at any point in its motion how Wellstar meets the criteria of Rule 19(a), and its purported "new facts" do not bear in Aetna's favor on Rule 19(a) or the inapplicable equitable factors of Rule 19(b).

      1.   **The Court was correct that Wellstar is not a party required to be joined under Rule 19(a)(1)(A) because the Court can accord complete relief to Plaintiff by ordering Aetna to pay money damages.**

A party is considered "required" under Rule 19(a)(1)(A) if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). "[T]he term complete relief refers only to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought." *Arkwright-Bos. Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985) (citation and quotation marks omitted). In other words, it is irrelevant to the analysis that the plaintiff may have other claims against other potential defendants that would entitle the plaintiff to additional recoveries, so long as the relief sought in the action *in question* can be obtained against the present defendant.

Aetna does not even mention this governing standard, let alone make any arguments to satisfy it. *See* Mot. at 28–34. The Court should deem Aetna's failure to make an argument under Rule 19(a)(1)(A) a waiver. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *see also Corpes v. Walsh Constr. Co.*, 130

F.Supp.3d 638, 644 (D. Conn. 2015) ("Because raising new arguments for the first time in a reply brief is improper, the Court will not consider these issues.") (citations omitted). Although Aetna attempts to "incorporate by reference" its prior briefing on Rule 19 (Mot. at 28), Aetna's prior briefing relied on the purely false premise that Plaintiff in this action was seeking money damages or some kind of prospective relief *from Wellstar*. *E.g.* ECF No. 99 at 1 (falsely claiming that Plaintiff "brings this litigation to void a portion of the health benefit plan Wellstar Health offers its employees"); *id.* at 6 (falsely claiming that "Plaintiff seeks both a declaration that the Wellstar Plan is discriminatory and money damages payable by the Wellstar Plan"); ECF No. 56 at 1–3 (falsely characterizing Plaintiff's request for relief as seeking benefits from the Wellstar Plan).

The Court correctly conducted its Rule 19(a)(1)(A) analysis the last time around by focusing only on the actual claims asserted by Plaintiff and the actual relief she sought in her complaint, which is limited to money damages *against Aetna* as authorized by statute if she prevails on her ACA claim *against Aetna*. ECF No. 113 at 11–12. This analysis remains correct, and Aetna does not identify any relevant facts the Court overlooked.

Under Rule 19(a)(1)(A), the test for whether the court can accord complete relief among existing parties focuses on the relief the plaintiff requests and whether the court can order the present defendants to provide it without prejudicing the rights of an absent party. "[F]indings of indispensability must be based on stated pragmatic considerations, especially the effect on parties and on litigation." *In re Torcise*, 116 F.3d 860, 865 (11th Cir. 1997).

Typical examples of required parties include those who would be compelled by court order to do something if the plaintiff obtained the relief sought, or those with known interests in a particular fund or property that would be impaired or disposed in some way if the plaintiff prevailed against the present defendant(s). *See, e.g.*, *Fluent v. Salamanca Indian Lease Auth.*, 928

F.2d 542, 543–44, 547–48 (2d Cir. 1991) (plaintiff seeking to invalidate lease between the Seneca Nation of Indians and a city, and to compel the Nation to renew leases for up to 99 years instead of 40 could not proceed without the Nation as a party, since the Nation was party to the challenged lease and stood to receive substantial income from it); *Associated Dry Goods Corp.*, 920 F.2d at 1124 (building owner was required party in action between sublessor and subtenant, where subtenant sought an order requiring sublessor to increase electrical capacity to subleased premises, which sublessor could not do without consent of building owner); *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003) (plaintiff sought injunction ordering defendant to allow posting of specific advertisements at bus stations, but the bus station billboards were owned by an absent party, so the court held that complete relief could not be accorded without joinder of the billboard owner); *Johnson v. Middleton*, 175 F.2d 535, 537 (7th Cir. 1949) ("Of course all persons having conflicting claims to a particular fund are indispensable parties to its disposition.").

One of Aetna's primary authorities undermines its argument because it highlights the type of threatened prejudices that are required to satisfy Rule 19(a) but that are obviously lacking here. The case involved a dispute over ownership of shares in an Italian joint venture (Enimont), with one participant company (ENI) claiming that the president of another participant company (Montedison) conspired with several companies and individuals to acquire more shares in Enimont than the parties' agreement allowed. *Ente Nazionale Idrocarburi v. Prudential Secs. Grp., Inc.*, 744 F. Supp. 450, 451–52 (S.D.N.Y. 1990). In addition to the action ENI brought in the United States, in which it did not name Montedison as a defendant, multiple actions were pending in Italy regarding the same facts and claims. *Id.* at 452–55. The defendant in the American litigation, Prudential, successfully sought dismissal for ENI's failure to join Montedison, with the court

finding that Rule 19(a) was satisfied because an order enjoining Prudential from voting its shares in Enimont could impair Montedison's rights because "more than one quarter of the shares [in Enimont] held by the public could not be voted," and both Prudential and Montedison faced a risk of inconsistent obligations if the Italian actions resulted in different orders. *Id.* at 456–57 ("Were this to happen, Prudential would plainly be subjected to inconsistent obligations and would be put in the quandary of which court order, the American or the Italian, it should follow.").

Unlike in *Ente* and the other aforementioned authorities, this case does not threaten a deficit of complete relief without an absent party, or any conceivable threat that either Aetna or Wellstar could face court orders requiring them to take opposite actions. Plaintiff does not seek injunctive relief, Aetna can pay damages with its own funds, and neither Aetna nor Wellstar face a risk of inconsistent obligations (because Plaintiff does not seek prospective injunctive or declaratory relief). For these fundamental reasons, the Court correctly held that Aetna itself can provide complete relief to Plaintiff for its own violations of the ACA without joining any Wellstar entity: "Aetna can provide complete relief for its own violations of the ACA without involvement of any other (absent) party." ECF No. 113 at 11–12.

That means that Wellstar is not a required party under Rule 19(a)(1)(A), which is consistent with the conclusions of other courts facing similar fact patterns. *See id.* (citing *Berton v. Aetna Inc.*, No. 23-CV-01849, 2024 WL 869651, at *5–6 (N.D. Cal. Feb. 29, 2024) (holding, in factually analogous case, that a sponsor of a self-funded plan administered by Aetna was not a necessary party); *Carr v. United Healthcare Servs.*, No. C15-1105-MJP, 2016 WL 7716060, at *1, *3 (W.D. Wash. May 31, 2016) (denying mandatory joinder of employer in part because plaintiff had "crafted her relief request such that she may obtain the relief she requests without [the plan administrator] as a party")).

If a defendant owes the plaintiff a non-delegable duty to comply with a statute, a plaintiff who shows the defendant breached that duty could obtain the relief provided by the statute from the defendant, and that constitutes complete relief, even if the defendant argues that absent parties engaged in similar conduct. *See, e.g.*, *U.S. v. Dawn Properties, Inc.*, 64 F. Supp. 3d 955, 963–64 (S.D. Miss. 2014). The mere fact that an absent party may be a joint tortfeasor with the named defendant does not make the absent party "necessary." "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990). "[A] tortfeasor with the usual joint-and-several liability is merely a permissive party to an action against another with like liability." *Id.* (quoting Advisory Committee Notes to Fed. R. Civ. P. 19(a)) (additional quotation marks omitted).

In this case—as Plaintiff has explained before, and the Court properly credited—Plaintiff seeks only compensatory money damages from Aetna. *See* ECF No. 42 ¶¶ 14, 72, 74, 84, 86; ECF No. 113 at 11 ("Aetna can provide complete relief for its own violations of the ACA without involvement of any other (absent) party … Moreover, Defendant acknowledges that where money damages are the only relief sought … complete relief can be afforded without an absent party.").

If Plaintiff wins her claim in this action, the judgment from the Court will order Aetna to pay Plaintiff some sum of money (even if nominal) and reasonable attorneys' fees and costs. There would be no missing relief. If she wins on the merits, she will receive whatever damages she can prove. These types of claims seeking money damages directly against a defendant that it is able to pay from its own funds generally do not implicate Rule 19(a)(1)(A). *See Errico v. Stryker Corp.*, No. 10 CIV. 3960 VM JLC, 2010 WL 5174361, at *2 (S.D.N.Y. Dec. 14, 2010) (listing cases and noting, "A claim for money damages alone, however, permits the Court to grant complete relief among the parties because it does not require the absent party to do anything.").

Again, Aetna simply makes no argument that Rule 19(a)(1)(A) is satisfied, so the Court should consider the argument waived or forfeited. If the Court nevertheless revisits its prior decision, it should reach the same result because nothing has changed. Plaintiff in this action only seeks money damages against Aetna, which the Court may order. Such an award would provide Plaintiff complete relief.

> **2.  Wellstar does not claim an interest in the action, so the tests of Rule 19(a)(1)(B) and Rule 19(b) are not applicable.**

Rather than explain how any change in the law or facts has rendered the Court's prior decision erroneous under Rule 19(a)(1)(A), Aetna ignores the critical, applicable legal standard of Rule 19(a) and begins arguing equitable factors for dismissal that only come into play after Rule 19(a) is satisfied. As explained below, that is out of order. The Court cannot consider whether Wellstar's absence requires dismissal for equitable reasons since Aetna failed to meet its burden to prove Wellstar is a required party under either prong of Rule 19(a). Aetna, as the moving party, bears the burden of establishing that joinder of necessary parties is required. *See Joseph S.*, 561 F. Supp. 2d at 311. Aetna has not satisfied the standard of Rule 19(a)(1)(B), nor does it satisfy its burden under Rule 19(b).

> *a.  The standard of Rule 19(a)(1)(B) is not met because Wellstar has not claimed an interest in the litigation.*

As an alternative to Rule 19(a)(1)(A), a court can find that a party's presence is required if:

> that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i)    as a practical matter impair or impede the person's ability to protect the interest; or
> (ii)   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed R. Civ. P. 19(a)(1)(B).

Although Aetna relies on cases interpreting and applying subparts (i) and (ii) and the policy considerations under Rule 19(b) for determining whether dismissal is required if a required party cannot be joined, they do not apply *ab initio* because Aetna has not demonstrated that Wellstar "claims an interest relating to the subject of the action." *Id*. Once again, it is Aetna's burden to prove that Wellstar is a required party under either Rule 19(a)(1)(A) or (B). *See Joseph S.*, 561 F. Supp. 2d at 311. It has done neither. As discussed above, Wellstar's presence is not required to afford Plaintiff full relief, so Rule 19(a)(1)(A) is not satisfied, and Wellstar does not claim any interests related to this action.

Wellstar has had formal notice of the pendency of this action since at least June 2024, when both parties served it with Rule 45 subpoenas. *See* Declaration of Jamisen Etzel, at ¶¶ 3–4.  But Wellstar likely learned of this case closer to its inception in February 2022, because the Master Services Agreement ("MSA") between Aetna and Wellstar required Aetna to notify Wellstar of the action within 20 days if Aetna intended to seek indemnification from Wellstar. ECF No. 151-21, p. 7 ¶ 12(C).

Despite Wellstar's knowledge of the case and indirect participation through Rule 45 discovery, it has not come to this Court claiming an interest of any kind and has not sought to intervene. If aware of the litigation, an absent party's decision not to intervene or enter an appearance to claim any interest is typically regarded as a dispositive fact that forecloses the application of Rule 19(a)(1)(B). *See Hickerson v. Enter. Leasing Co. of Georgia, LLC*, 818 F. App'x 880, 884 n.6 (11th Cir. 2020) (holding district court did abuse its discretion in denying joinder of party whose absence did not preclude court's ability to grant full relief and who did not claim an interest in the subject of the action); *U.S. v. San Juan Bay Marina*, 239 F.3d 400, 406–07 (1st Cir. 2001) (holding that when an absent party is aware of litigation, "its decision to forgo

intervention indicates that the [absent party] does not deem its own interests substantially threatened by the litigation, [and] the court should not second-guess this determination, at least absent special circumstances."); *U.S. v. Sabine Shell, Inc.*, 674 F.2d 480, 483 (5th Cir. 1982).

As with Rule 19(a)(1)(A), Aetna simply makes no effort to establish that Wellstar is a required party under Rule 19(a)(1)(B). This failure is fatal to its argument. "If a defendant seeks refuge in Rule 19(a)(1)(B), it must allege in its own pleadings that the non-parties claim an interest in the litigation." *Person v. Lyft, Inc.*, 542 F. Supp. 3d 1342, 1354 (N.D. Ga. 2021) (citing *F.D.I.C. v. First Am. Title Ins. Co.*, 611 F. App'x 522, 530 (11th Cir. 2015)). Aetna has not done so.

Indeed, it would not be possible for Aetna to make this showing even if it tried. Wellstar has no interest in the subject matter of the case because the case is only about Aetna's alleged violations of the ACA. Plaintiff's enrollment in the Wellstar Plan may serve as a factual backdrop to her claim, but that does not make Wellstar a required party under Rule 19(a). If Plaintiff prevails in her action against Aetna, Wellstar would not be ordered to pay anything because it is not a defendant, and it has no legal interest in Aetna's treasury. Neither would a judgement from this Court impose upon Wellstar or impair Wellstar's legal rights going forward.

Wellstar's legal position in an action arising out of the same Plan at tangential issue here will not be prejudiced or impaired. All of Wellstar's procedural and substantive defenses would remain available to it, wholly unaffected by any opinions or judgments in this case. The pendency of Plaintiff's Georgia Title VII Lawsuit illustrates the point. Even if Plaintiff prevails in her action against Aetna by showing, *inter alia*, that the Wellstar Plan included a discriminatory structure or definitions, Wellstar will still be free to argue to the Georgia court that Wellstar is not liable to Plaintiff under Title VII and that the Plan design is not discriminatory. The Georgia court would not be bound to follow decisions made by this Court, so there are no conceivable applications of

*res judicata* or collateral estoppel that would carry from this case to the Georgia Title VII Lawsuit. The mere prospect that an action could result in a nonbinding precedent that is potentially unfavorable to an absent party is an insufficient ground upon which to require joinder. Wellstar would face that exact same risk from any case in the country, against any defendant, that involves the same alleged form of discrimination from a similar infertility benefit design.

Aetna failed to establish that Wellstar is a required party under either prong of Rule 19(a). For that reason, its request to renew its Rule 12(b)(7) motion must be denied.

> b. *There is no occasion to evaluate Rule 19(b)'s factors because Wellstar is not a necessary party under Rule 19(a), and in any event, the Rule 19(b) factors do not support Aetna's position.*

If a party is not a necessary party under the threshold requirements of Rule 19(a), "no inquiry under Rule 19(b) is necessary." *Temple*, 498 U.S. at 8. As explained above, neither Rule 19(a) condition is applicable to Wellstar, so it is not a required party. Nonetheless, Aetna invokes "four interests" discussed by the Supreme Court in *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 108–16 (1968), arguing that these are relevant in deciding whether Wellstar is a required party. *See* Mot. at 30–34. But Aetna has the law backwards and completely skipped the first step under Rule 19(a).

As the Supreme Court later explained in *Temple*, the Court in *Provident Tradesmen Bank* assumed without deciding that the absent party was a necessary party under Rule 19(a), leading it to analyze equitable factors relevant to the question of whether to dismiss an action due to absence of a necessary party. *See Temple*, 498 U.S. at 7–8 (explaining that *Provident Tradesmen Bank* is not controlling because no inquiry under Rule 19(b) is necessary when the threshold requirements of Rule 19(a) are not satisfied).

Even if Wellstar were a required party under Rule 19(a) (and it is not), the Rule 19(b) factors and equitable considerations discussed in *Provident Tradesmen Bank* invoked by Aetna

would not support dismissal of the action. Under Rule 19(b), the movant has the "burden" of proving that joinder "is not feasible" and that "considerations of 'equity and good conscience' weigh in favor of dismissal rather than proceeding in the absence of the necessary parties." *Monbo v. Nathan*, 623 F. Supp. 3d 56, 130 (E.D.N.Y. 2022). Here, Aetna fails to satisfy its burden.

First, Aetna argues that Plaintiff would have an adequate forum in Georgia (Mot. at 30–31), but Aetna fails to prove that. While Plaintiff has accessed the Georgia forum to sue Wellstar, Aetna does not establish that it would be amenable to jurisdiction in Georgia for the full relief Plaintiff seeks against Aetna. For instance, although Plaintiff can attempt to certify a nationwide class against Aetna in Connecticut, where Aetna is headquartered, because it is subject to general jurisdiction there, Aetna provides no assurances that the same would be true in Georgia.

Second, Aetna identifies no prejudice that would result against it or Wellstar if this action continues without Wellstar. The party best able to judge whether an order in this case in Plaintiff's favor would impermissibly prejudice Wellstar is Wellstar itself. But despite knowing of this action for nine months (if not three full years), Wellstar has not sought to intervene or communicate to the Court that it is concerned with the outcome of this action. That silence weighs heavily against dismissal under the equitable factors of Rule 19(b). *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden*, 11 F.4th 12, 18–19 (1st Cir. 2021) (finding that absent party's failure to intervene despite knowledge of the action weighed against application of Rule 19 to vacate a judgment); *Venuti v. Riordan*, 702 F.2d 6, 8–9 (1st Cir. 1983) (absent party's express choice not to intervene supported district court's discretion not to order joinder).

Aetna is also fully incentivized to defend Plaintiff's claim against it without Wellstar present. First, it is only Aetna that is facing the prospect of being ordered to pay Plaintiff money damages, and second because Aetna's own actions are at issue, including its standard infertility

benefit design and collaboration with Wellstar in implementing it, and Aetna's interpretation and application of its internal clinical policy bulletin in deciding to deny Plaintiff's access to benefits.

Aetna refers to the "risk of inconsistent rulings," but does not explain how this action poses that risk. Mot. at 31. The only possible outcomes of this case, short of settlement, are that Plaintiff wins her claim and Aetna is ordered to pay Plaintiff damages, or Plaintiff's claims are defeated and Aetna is not ordered to pay Plaintiff damages. Neither outcome exposes Wellstar to any possible obligation, nor would the outcome of the Georgia Title VII Lawsuit obligate Aetna in any way. Because the case is only for money damages against Aetna, there is no risk of prejudice from Wellstar's absence. *See Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 501–502 (7th Cir. 1980) ("It is difficult to perceive how [the absent party] would be prejudiced by an unfavorable judgment for money damages against [named defendant]. [The absent party] would not be liable for any of those damages and could assert any of his defenses in any indemnity or contribution action brought against him by [the named defendant].").

Similarly, Aetna does not face any plausible risk of double or multiple judgments as result of Wellstar's absence. For the reasons explained above, it does not matter that Plaintiff has a different claim pending against Wellstar. She could win both actions, lose both actions, win one and lose one, or settle one or both, but none of those results would trigger the type of prejudice for the defendant in the other case that Rule 19 addresses.

In sum, the policy considerations of Rule 19(b) are not relevant because Wellstar is not even a required party under Rule 19(a), and in any event, those factors do not support dismissal.

**B.    Aetna's belated motion to transfer venue must be denied because Aetna fails to carry its burden to present clear and convincing evidence that transfer is justified.**

Pursuant to Section 1404(a), district courts have the authority to "transfer any civil action to any other district or division where it may have been brought."  28 U.S.C. § 1404(a). This

transfer is made to further the interests of justice and facilitate "the convenience of parties and witnesses." *Id.* The district court has the sole discretion to determine whether the transfer is proper and, consequently, what precisely constitutes the interests of justice and the convenience of parties and witnesses. *See Albright v. Terraform Labs, Pte. Ltd.*, 641 F. Supp. 3d 48, 55 (S.D.N.Y. 2022). "Notwithstanding this broad discretion, district courts should aim to dispose of these motions in a way that promotes the underlying purposes of § 1404, namely, 'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Id.*

The factors that courts in the Second Circuit consider when deciding whether to transfer a case include: "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *Id.*; *see, e.g.*, *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 480 (S.D.N.Y. 2007), *aff'd sub nom. New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010).

"These factors are not to be given equal weight." *Albright*, 641 F. Supp. 3d at 55. Motions to transfer should be evaluated from a strong presumption in favor of the plaintiff's preferred forum. *See id.* "Because ... discretion [under § 1404] must be exercised at the very outset of [a] case, when relatively little is known about how the case will develop, courts have typically accorded substantial weight to the [] plaintiff's choice of forum, for that very choice reflects one side's assessment of the balance of relevant factors." *Id.* The party seeking a change of venue must

present *clear and convincing evidence* to demonstrate that the transfer is appropriate. *S.S. Owners*, 474 F. Supp. 2d at 480. Aetna has not presented any evidence – much less clear and convincing evidence. Thus, Aetna has not met (and cannot meet) its burden of showing that transfer is warranted.

### 1. *No* Section 1404(a) factors weigh in favor of transfer.

#### a. *The convenience of the witnesses*

The convenience of the witnesses weighs in favor of Plaintiff's choice of forum. When a party requests a venue transfer based on witness convenience under Section 1404(a), it must clearly identify the key witnesses who will be called and provide a general overview of the scope of their testimony. *Ultimate Nutrition, Inc. v. Leprino Foods Co.*, 707 F. Supp. 3d 199, 212 (D. Conn. 2023). Moreover, "determining the convenience of a forum to witnesses requires more than simply adding up the number of potential witnesses in the alternative fora. The nature and importance of a potential witness's testimony also inform the Court's determination." *Lynch ex rel. Tr. of Health & Welfare Fund of Patrolmen's Benevolent Ass'n of City of New York & Retiree Health & Welfare Fund of Patrolmen's Benevolent Ass'n of City of New York v. Nat'l Prescription Adm'rs*, No. 03 CIV. 1303 (GBD), 2004 WL 385156, at *2 (S.D.N.Y. Mar. 1, 2004) (considering convenience of witnesses as the most important factor in transfer analysis and found that defendants failed to establish that transfer would increase overall convenience, emphasizing that the determination requires more than a numerical count of witnesses and must consider the nature and importance of their testimony).

Aetna fails to identify its key witnesses, their location, and a general overview of their testimony, thus failing to satisfy its clear and convincing evidentiary burden out of the gate. Instead, it implies that testimony from WellStar witnesses will be crucial. Aetna is wrong. *First*, it is *Aetna's* employees who created and applied CPB 0327 as the basis for denying infertility

benefits that are the crucial witnesses. Aetna is headquartered in this District and, upon information and belief, the relevant employees involved in creating and applying clinical policy bulletins also will reside here. Indeed, Aetna named two individuals in its initial disclosures, who, on information and belief, reside in this District. Importantly, Aetna does not state that any of the *relevant* Aetna employee-witnesses reside in the Northern District of Georgia. In fact, based on the evidence that Aetna itself filed, the primary witnesses are not located in Georgia. *See, e.g.*, ECF No. 150-4, Declaration of Julie Evans (Indianapolis, Indiana); ECF No. 151-10 (email from Aetna employee Glori Perry containing business phone number with a "260" area code, which covers the northeast corner of Indiana); *see also* ECF No. 50-3 (Letters from Aetna's Customer Resolution Team in Kentucky sent to Plaintiff regarding Aetna's denials of her precertification request and appeals). This class action case alleges that *Aetna's* actions in creating and applying CPB 0327 to deny infertility benefits unlawfully discriminated against women nationwide who do not engage in heterosexual coitus. No testimony from Wellstar or any other employer plan sponsor is necessary to prove this.

*Second*, even if a Wellstar witness may have some tangential relevance to Plaintiff's individual claim, discovery as to Wellstar has already occurred under Rule 45 subpoenas served by both parties. Wellstar produced documents and its witness sat for a deposition. Aetna does not specify what additional information it believes it needs from Wellstar to defend the claim, or which additional Wellstar witnesses it intends to depose. On the other hand, discovery of Aetna's witnesses has barely begun, but there is no indication that any of the Aetna employees with relevant knowledge are located in Georgia. Accordingly, there is no convenience to be gained for witnesses in transferring to the Northern District of Georgia. Therefore, this factor clearly favors Plaintiff's choice of forum.

> *b.  The convenience of the parties*

This factor weighs in favor of Plaintiff's choice of forum. When analyzing the convenience to the parties, courts often consider the parties' primary places of business and the location of their offices. *Freeplay Music, LLC v. Gibson Brands, Inc.,* 195 F. Supp. 3d 613, 618 (S.D.N.Y. 2016). Courts have also ruled that when the movant has a nationwide network, the balance slightly favors the non-movant. *S.S. Owners*, 474 F. Supp. 2d at 484. Here, neither party is inconvenienced by litigating in this District. Aetna's primary business location is Hartford, Connecticut. Aetna cannot claim that it is inconvenienced by being required to litigate in the District it chose to make its home. Moreover, Aetna's self-serving argument purportedly in support of Plaintiff's convenience can be rejected. Plaintiff voluntarily chose to litigate in this District when filing this action.

> *c.  The location of relevant documents and the relative ease of access to sources of proof*

This factor is neutral. "The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *Id.* Access to documents and other evidence is not a compelling argument in favor of transfer without providing specific details about the bulkiness or difficulty in transporting such evidence. *See Freeplay*, 195 F. Supp. 3d 618. Indeed, most of the evidence in this case is electronically stored information ("ESI"), easily transferred from Aetna to Plaintiff over the internet. *See, e.g.*, *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 697 (S.D.N.Y. 2009) (finding location of relevant documents factor neutral where most, if not all, of the relevant documents will be electronic). Aetna has not presented (and cannot present) any evidence to support that this factor weighs in its favor. Therefore, this factor remains neutral, while affording deference to Plaintiff's choice of forum.

#### d.   The locus of operative facts

This factor favors Plaintiff, as the relevant events that give rise to the dispute occurred primarily in this District—where Aetna is headquartered and, upon information and belief, its discriminatory policy bulletin was created—and in certain of Aetna's other business locations, such as Kentucky, from where Aetna's relevant communications to Plaintiff were issued. *See* ECF No. 50-3 (Letters from Aetna's Customer Resolution Team in Kentucky sent to Plaintiff regarding Aetna's denials of her precertification request and appeals). The location of the actual events is a "primary factor" in deciding whether to change the venue. *S.S. Owners*, 474 F. Supp. 2d at 485. Here, the record to date indicates that Aetna's actions occurred primarily within this District and to some extent Kentucky, but not in Georgia.

#### e.   The availability of process to compel the attendance of unwilling witnesses

Plaintiff benefits from this factor, as key non-party witnesses, such as former Aetna employees, reside within this District's subpoena power. Plaintiff contends that the crucial non-party witnesses are predominantly current and former Aetna employees. Since these Aetna employee-witnesses reside outside the Northern District of Georgia, any unwilling former employees cannot be compelled to testify in that district. Fed. R. Civ. P. 45. Plaintiff anticipates that some of these non-party witnesses, who reside within 100 miles of this District, may be subject to subpoena by this Court. *See* Fed. R. Civ. P. 45(c)(3). As such, this factor weighs against transfer. *See, e.g.*, *Lynch*, 2004 WL 385156, at *4.

#### f.   The relative means of the parties

This factor is neutral, as there is no indication that litigating in this District imposes any financial hardship on either party. "Where a disparity exists between the means of the parties, a court may consider the relative means of the parties in determining venue." *Id.* Plaintiff does not

claim any burden in litigating in this venue. Also, Aetna does not incur any additional financial costs by remaining in this District. *See, e.g.*, *Amos v. Aetna Life Ins. Co.*, No. 2:19-CV-202, 2019 WL 3773770, at *3 (S.D. Ohio Aug. 12, 2019) (finding Aetna's apparent lack of financial burden was a factor that did not support its motion to transfer venue.). Therefore, the cost of litigation is a neutral factor neither weighing in favor of or against transfer.

### g.    The forum's familiarity with the governing law

This factor also is neutral and does not support transfer. When the governing law is a federal statute, such as the ACA here, all federal courts are equally familiar, rendering this factor neutral. *See Flood v. Carlson Restaurants Inc.*, 94 F. Supp. 3d 572, 580 (S.D.N.Y. 2015).

### h.    The weight accorded the plaintiff's choice of forum

"A plaintiff's choice of forum is to be given substantial weight and 'should not be disturbed unless the balance of convenience and justice weighs heavily in favor of defendant's proposed forum.'" *S.S. Owners*, 474 F. Supp. 2d at 486. This deference is even more pronounced when, like here, the plaintiff's chosen forum serves as the defendant's primary place of business. *See id.* Given the significant deference afforded to Plaintiff's choice of forum, particularly where it aligns with the defendant's principal place of business, and the failure of Aetna to demonstrate that the balance of convenience and justice strongly favors transfer, this factor weighs against granting Aetna's motion.

### i.    Trial efficiency and the interests of justice.

Considerations of trial efficiency and the interests of justice weigh against transfer in this case. Courts assess whether substantially the same issues are being litigated between the same parties in another jurisdiction, as duplicative litigation may justify transfer. *See S.S. Owners*, 474 F. Supp. 2d at 486. However, unlike cases where collateral estoppel concerns arise, here, both actions against different defendants can proceed as both defendants can be independently liable

for their respective conduct, eliminating any risk of inconsistent rulings or unnecessary duplication of efforts. *See* Argument Section A, *supra*. Additionally, Plaintiff would be prejudiced by the indeterminant substantial delay given the procedural posture of the Northern District of Georgia case. Judicial efficiency has a temporal component, and courts seek to resolve matters at the earliest possible time. *See S.S. Owners*, 474 F. Supp. 2d at 486.

This weighs heavily against Aetna's motion, as Aetna waited three years into the litigation to seek transfer. Transferring this case to the Northern District of Georgia at this stage would result in substantial procedural delays, prolonging resolution rather than promoting efficiency, since the parties in the Northern District of Georgia have only recently completed briefing the motion to dismiss, discovery is stayed pending a ruling on the motion to dismiss, and there is no scheduling order in place. *See Kulwicki v. Cobb Hospital, Inc.*, 1:24-cv-4658 (N.D. Ga.) at ECF No. 38 (Order of Jan. 7, 2025, staying deadline to file joint discovery plan pending resolution of motion to dismiss). The transferee court would need time to familiarize itself not only with the legal and factual issues developed by the parties so far, but also this Court's previous rulings and the case's three-year long procedural history. The two actions are not even close to being at similar stages of progress, which minimizes the opportunities for efficiency gains through coordination.

In contrast, this case is far past the pleading stage, as Aetna answered on April 16, 2024 (ECF No. 114), and a scheduling order for additional discovery is in place. (ECF No. 149). Therefore, transferring this case would prejudice the Plaintiff's interest in litigating this matter, which has been pending for three years, more expeditiously. Maintaining venue in this District ensures that the case continues making progress, avoiding unnecessary administrative burdens associated with transfer. Moreover, there is no efficiency to be gained because the cases involve different causes of action, different putative classes, and different defendants. *Parchmann v.*

*MetLife, Inc.*, No. 18-CV-780 (SJ), 2018 WL 5115075, at *5 (E.D.N.Y. Sept. 28, 2018), *report and recommendation adopted*, No. 18 CV 780 (SJ) (RLM), 2018 WL 5113138 (E.D.N.Y. Oct. 19, 2018). Accordingly, trial efficiency and the interests of justice support denying Aetna's motion to transfer.

In sum, all the factors either weigh in Plaintiff's favor or are neutral. As none of the factors weighs in Aetna's favor, Aetna has fallen far short of meeting its clear and convincing evidentiary burden.

### C. Aetna's motion for partial summary judgment must be denied, as material facts concerning Aetna's role in designing the Wellstar Plan remain disputed.

Besides seeking dismissal under Rule 12(b)(7) or transfer under Section 1404, the only other relief Aetna seeks through its motion is "partial summary judgment … on the limited question that Wellstar Health was responsible for the design of the infertility benefit offered by the Wellstar Plan." Aetna Mot. at 1.

Pursuant to Rule 56, summary judgment is appropriate when the movant demonstrates that there is no genuine dispute regarding any material fact and is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of presenting evidence in the record, including depositions, documents, affidavits, or declarations, that they believe conclusively prove the absence of a genuine issue of material fact. *See Gochenour v. United States*, No. 20 CIV. 4607 (NSR), 2024 WL 1020259, at *4 (S.D.N.Y. Mar. 8, 2024), *appeal dismissed* (June 11, 2024) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A genuine dispute of material fact exists when the evidence presents a possibility that a reasonable jury could return a verdict in favor of the non-moving party. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Courts must 'draw all rational inferences in the non-movant's favor' when reviewing the record." *Id.* Crucially, the judge's role is not to weigh the evidence and determine the truth of the matter or

assess the credibility of witnesses. *See id.* Instead, the primary objective is to determine whether a trial is necessary. *See id.*

The Court should deny Aetna's partial motion for summary judgment for two reasons. First, Plaintiff disputes Aetna's purportedly undisputed "fact" because it is vague, inaccurate, and oversimplified to the extent it reflects an attempt by Aetna to establish that Aetna did not participate in the design of the allegedly discriminatory policy at issue in this case. The evidentiary record shows that Aetna extensively collaborated with Wellstar and its agents over a lengthy period of time to develop a form of the Wellstar Plan that Aetna would administer. While doing so, Aetna confirmed that the material infertility benefit aspects of Wellstar's proposed Plan were consistent with Aetna's standards. Aetna then ultimately agreed to administer that Plan, despite possessing contractual and legal rights to refuse to participate in any conduct Aetna believed violated applicable laws.

Second, Aetna's request does not meet the requirements of Rule 56(g) because Aetna has failed to make a full, proper Rule 56(a) motion, and Aetna's request for a singular finding of a non-dispositive fact is not a productive exercise. Even if Aetna's proposed fact were undisputed, the Court's recognition of it would not bring Plaintiff's claim any closer to resolution. Plaintiff's claim does not depend on proving that Aetna alone was "responsible" for the drafting of the Plan language. The ACA prohibits discrimination in the receipt of health program benefits, and its coverage is not limited to plan sponsors or drafters. Courts reviewing cases arising in similar contexts have rejected the argument Aetna is previewing (but not yet formally making): third-party administrators that participate in the discriminatory denial of health plan benefits are not exempt from ACA liability.

Because Aetna's purported "fact" is both disputed and not procedurally appropriate, the Court should deny Aetna's motion.

> 1. **Plaintiff disputes Aetna's proposed fact because Aetna participated in the drafting and implementation of the Plan and agreed the relevant portions of the Plan were consistent with Aetna's standard.**

Plaintiff disputes Aetna's proposed fact because Aetna fully participated in the drafting and implementation of the Wellstar Plan, so it would not be accurate for the Court to adopt it.

The process leading up to the implementation of the Wellstar Plan that Plaintiff was enrolled in required months of active collaboration between Aetna, Wellstar, and Wellstar's consultants, as Aetna's own facts demonstrate. Aetna SOF ¶¶ 8–15; Pl. RSOF ¶¶ 8–15. Aetna was not a bystander in this process, but instead provided Wellstar examples of its standard benefit designs, and reviewed proposals submitted by Wellstar and its agents in order to determine their conformity with, or deviation from, Aetna's standard practices. Pl. RSOF ¶¶ 8–15.

Aetna's practice was to recommend to its clients a "standard" infertility benefit design, and although its clients could request alterations and customizations, Aetna required clients to request a "formal deviation" if they wanted to utilize a medical definition of infertility that materially differed from Aetna's standard definition, and Aetna would have had to review the request to ensure it could be "operationalized" by its infertility unit. Pl. Add'l SOF ¶ 19. Aetna did not consider the 2016 Wellstar Plan to be a deviation from Aetna's standard approach to the medical definition of infertility. Pl. Add'l SOF ¶ 20.

Wellstar has testified that it "elected to follow the Aetna guidelines for infertility" for the 2016 Wellstar Plan, including the guidelines in Aetna's Clinical Policy Bulletin 0327. Pl. Add'l SOF ¶ 6. Wellstar's previous plans in 2014 and 2015 did not define "infertility." Pl. Add'l SOF ¶ 7. Wellstar relied on Aetna's clinical expertise and the accuracy and information in CPB 0327 in adopting Aetna's infertility guidelines for the 2016 Wellstar Plan. Pl. Add'l SOF ¶ 9.

Aetna was not compelled by contract or statute to agree to administer the Wellstar Plan or any proposed aspect of it if Aetna did not want to do so. In the Master Services Agreement between Aetna and Wellstar, numerous provisions reflect the parties' agreement that Aetna held certain rights to approve or reject proposed elements of Wellstar's Plan for various reasons, including, for example: Aetna's determination that a proposed aspect of the Plan could not be "operationalized," or was inconsistent with Aetna's claim processing systems, internal policies and procedures, or interpretation of governing law. Pl. RSOF ¶ 12, Pl. Add'l SOF ¶¶ 16–18.

In light of the disputed facts, Aetna's motion for partial summary judgment must be denied.

> **2. Aetna's motion is procedurally improper, and in any event, summary judgment should be denied because Aetna is subject to liability under the ACA for its own role in discriminating against Plaintiff.**

The Court should also deny Aetna's motion because Aetna has not properly complied with Rule 56(a) by moving for judgment on a claim or defense. By its terms, Rule 56(g) contemplates the filing of a Rule 56(a) motion that identifies a claim or defense, or a specific part of a claim or defense, on which summary judgment is sought. *See* Fed. R. Civ. P. 56(g) (applicable only "[i]f the court does not grant all the relief requested by the [Rule 56(a)] motion."); *see also* Committee Notes on Rules—2010 Amendment, Fed. R. Civ. P. 56 ("Subdivision (g) applies when the court does not grant all the relief requested by a motion for summary judgment. It becomes relevant only after a court has applied the summary-judgment standard carried forward in subdivision (a)."); *Bezek v. First Nat'l Bank of Pennsylvania*, No. CV SAG-17-2902, 2023 WL 348967, at *11 (D. Md. Jan. 20, 2023) ("Rule 56(g) is inapplicable unless a party makes a proper Rule 56(a) motion.").

Aetna only asks the Court to issue a single finding of fact, but that relief is not available under Rule 56 in the absence of a fully-formed motion against Plaintiff's claim, which Aetna has declined to file.

Further, whether "Wellstar Health was responsible for the design of the infertility benefit offered by the Wellstar Plan" (Mot. at 1) is not a material fact that brings the case any closer to resolution, and any finding by the Court regarding that fact will not substantially limit the merits issues remaining to be decided. *See United States v. Kellogg Brown & Root, Inc.*, No. 1:04-CV-42, 2015 WL 10937548, at *2 (E.D. Tex. June 10, 2015) ("courts frequently deny these motions when establishing certain facts would not materially expedite the administrative process or would not enable the Court to dispose of any claims in the litigation.") (citations and quotation marks omitted).

The degree of Wellstar's responsibility for Plan design is not material because Aetna's discriminatory acts against Plaintiff were multifaceted and not limited to Aetna's involvement in developing the Wellstar Plan. As explained above, the undisputed facts show that Aetna did the following: 1) collaborated with Wellstar and its agents to review and revise the Wellstar Plan so it could be administered by Aetna; 2) agreed to implement and enforce the Plan, including its provisions regarding access to infertility benefits, despite having contractual and legal rights to walk away from any aspects of the Plan Aetna believed were contrary to applicable law; and 3) directly denied Plaintiff's request for precertification and her appeals while relying at least in part on Aetna's standard plan design terms and internally developed clinical policy interpretations. *See* ECF No. 50-3 at pp. 28 (Aetna letter to Plaintiff denying her appeal, stating "We reviewed all available information, including: … Aetna policies; Clinical Policy Bulletin (CPB), Infertility" and the Wellstar Plan Summary Plan Description); *id.* at 29 ("This decision was made utilizing the Clinical Policy Bulletin (CPB), Infertility.").

Aetna would only be entitled to summary judgment on Plaintiff's ACA claim if *none* of those actions on the part of Aetna could subject it to liability under the ACA. But all of them do,

and Aetna's motion does not set forth a legal argument under Rule 56(a) that Aetna is entitled to judgment because none of its actions towards Plaintiff constituted unlawful discrimination. The ACA "imposes an affirmative obligation not to discriminate in the provision of health care…" *Schmitt v. Kaiser Found. Health Plan of Washington*, 965 F.3d 945, 955 (9th Cir. 2020). At all steps, Aetna knowingly and voluntarily participated in developing the Plan terms and clinical policy documents that Aetna itself interpreted, applied, and enforced to deny Plaintiff's requests for fertility benefits. Aetna is therefore not entitled to summary judgment on Plaintiff's ACA claim.

Aetna's motion suggests that in the future, it will make a more direct argument that it cannot be held liable for discrimination under the ACA because it was forced to abide by Wellstar's desire to implement a discriminatory plan design. Mot. at 24 (arguing that Plaintiff's theory of liability "raises a purely legal question that the Court *could address in the next phase* of the litigation and that *could be* case dispositive.") (emphasis added).

In the interests of avoiding any potential waiver, Plaintiff states here that Aetna's argument is at odds with both the factual record and governing law. First, as shown above, Aetna's contract with Wellstar reserved for Aetna the right to review the Plan and any proposed changes to confirm that its terms were consistent with Aetna's claim processing systems, internal policies and procedures, and interpretation of governing law. Pl. RSOF ¶¶ 12, Pl. Add'l SOF ¶¶ 16–18. In the event that Aetna determined that an aspect of its agreement with Wellstar was prohibited by law, Aetna had the right to terminate that aspect of the agreement. *See id.*

Second, in a variety of contexts, courts routinely reject arguments that a party's contractual obligations forced it to violate antidiscrimination laws. *E.g.*, *Tamosaitis v. URS Inc.*, 781 F.3d 468, 482 (9th Cir. 2015) ("we have long held that a customer's discriminatory preference does not

justify an employer's discriminatory practice."); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 229–30 (5th Cir. 2015) ("a purported contractual obligation to fire an employee on a discriminatory basis is no defense. As an employer, [defendant] had an independent obligation to comply with the ADA, and a contractual obligation to discriminate would be unenforceable.").

As it has done in previous filings, Aetna invokes ERISA to argue that third-party administrators are "obligated under ERISA to administer a self-funded plan according to its terms," and that they have "no right to unilaterally alter the benefits offered under the plan." Mot. at 25 (quoting *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 591 (8th Cir. 2022), and *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 150 (2001)). These cases do not stand for the proposition that ERISA requires third party administrators to collaborate in the development of discriminatorily designed benefit plans—and to enforce them by referencing and applying the administrator's own policies when denying claims—which is what Aetna would need the law to be in order for its arguments to carry any water.

First, *Religious Sisters of Mercy* is not on point because it does not address this legal question at all; its only mentions of ERISA appear in a background discussion of the 2016 implementing regulations promulgated by the Department of Health and Human Services. *Religious Sisters of Mercy*, 55 F.4th at 591 (explaining that HHS did not exclude third party administrators from the 2016 Rule but developed a process to refer claims of alleged discrimination to other federal agencies with jurisdiction).

*Egelhoff* involved the question of whether ERISA preempted an irrelevant Washington state statute. *See id.*, 532 U.S. at 144–46. But ERISA does not preempt Section 1557 or require a third-party administrator to adhere to plan language that violates federal law. *See* 29 U.S.C. § 1144(d) ("Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair,

or supersede any law of the United States…"); *Scott v. St. Louis Univ. Hosp.*, 600 F. Supp. 3d 956, 960 (E.D. Mo. 2022) ("ERISA does not preempt other federal law claims, including Plaintiff's claims pursuant to Title VII and the ACA."); *see also Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 197 (1st Cir. 2015) ("ERISA does not preempt federal anti-discrimination laws."); *C. P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*, No. 3:20-CV-06145-RJB, 2022 WL 17788148, at *8 (W.D. Wash. Dec. 19, 2022) ("the statutory text is clear as is Congressional intent — there is no exclusion [to Section 1557's requirements] for third party administrators who did not draft the exclusion at issue.").

For these reasons, Aetna is subject to liability under the ACA regardless of whether Wellstar was "responsible" for the language in the Wellstar Plan, so its Rule 56(g) request does not move the ball forward. Aetna also invokes regulatory guidance Aetna believes supports the arguments that Aetna cannot be liable under the ACA unless it had control over benefit design, Mot. at 25–27, and more generally that Aetna is "not subject to Section 1557 with respect to its operations that do not receive federal financial assistance." *Id*. at 27–28. But Aetna does not presently seek any ruling from the Court on these grounds. *Id*. at 28 ("Aetna does not propose that the Court resolve this legal issue on this motion."). Further, as Aetna agrees, the parties have not completed discovery regarding Aetna's actions towards Plaintiff after the Wellstar Plan was first implemented, or discovery into which aspects of Aetna's operations receive federal funding. *Id.*

Although the issue is not ripe because Aetna seeks no ruling, Aetna's suggestion that it is not covered by the ACA is incorrect. Aetna is subject to the ACA's provisions if it operates a "health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance." 42 U.S.C. § 18116(a).

Applying this plain language, the majority of courts to evaluate the issue have held that health insurers that receive federal financial assistance in *any* part of their operations are subject to the ACA under the plain text of the statute. *See, e.g.*, *T.S. by & through T.M.S. v. Heart of CarDon, LLC*, 43 F.4th 737, 743 (7th Cir. 2022) ("'program or activity' in section 1557 is not limited to the discrete portion of its operations that receives Medicare and Medicaid reimbursements… The phrase 'health program or activity' in section 1557 plainly includes all the operations of a business principally engaged in providing healthcare."); *C. P. by & through Pritchard*, 2022 WL 17788148, at *5–6 (W.D. Wash. 2022) ("Under the plain language of Section 1557, Blue Cross's third party administrator activities constitute the operation of a 'health program or activity.'"); *Kadel v. Folwell*, No. 1:19CV272, 2022 WL 17415050, at *3 (M.D.N.C. Dec. 5, 2022), *aff'd,* 100 F.4th 122 (4th Cir. 2024).

Aetna's motion is not properly made under Rule 56(a), and its request that the Court make a finding of undisputed fact should be denied because that fact is disputed and would not materially narrow the issues before the Court.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Aetna's Motion in its entirety.

Dated: March 19, 2025                                     Respectfully submitted,

/s/ *Jamisen Etzel*

Gary F. Lynch (*pro hac vice*)
Jamisen Etzel (*pro hac vice*)
**LYNCH CARPENTER, LLP**
1133 Penn Ave.
Pittsburgh, PA 15232
Tel.: (412) 322-9243
Fax: (412) 231-0246
gary@lcllp.com
jamisen@lcllp.com

Erin Green Comite (ct24886)
**SCOTT+SCOTT     ATTORNEYS AT LAW LLP**
156 S. Main Street, P.O. Box 192
Colchester, CT 06415
Tel.: (860) 537-5537
Fax: (860) 537-4432
ecomite@scott-scott.com

Joseph P. Guglielmo (ct27481)
Amanda Rolon (*pro hac vice*)
**SCOTT+SCOTT     ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Ave., 24th Floor
New York, NY 10169
Tel.: (212) 223-6444
Fax: (212) 223-6334
jguglielmo@scott-scott.com
arolon@scott-scott.com

*Plaintiff's Counsel*