IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TARA KULWICKI, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> -v- <br><br> AETNA LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No. 3:22-cv-00229-VDO <br><br><br> April 4, 2025 |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
RENEWED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER**

# **TABLE OF CONTENTS**

A.   *Benefit Design:*  Aetna is entitled to partial summary judgment on the limited factual issue that Wellstar Health was responsible for the benefit design of the Wellstar Plan. [*See* Opp. at 26-34.] .................................................................................................... 1

B.   *Next Steps:*  The Court could next consider Plaintiff's novel legal theory under the ACA, but a better, more efficient, course would be to dismiss Plaintiff's complaint pursuant to Rule 19 or transfer this matter to Georgia pursuant to 28 USC § 1404(a). ....................... 4

   1.   Aetna requests that the Court reconsider and grant Aetna's motion to dismiss because Wellstar is a necessary and indispensable party under Rule 19 .................................... 5

   2.   Alternatively, Aetna requests that the Court transfer this matter to the Northern District of Georgia under 28 USC § 1404(a).  [*See* Opp. at 18-26.] ............................ 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Albright v. Terraform Labs, Pte. Ltd.*,
   641 F. Supp. 3d 48 (S.D.N.Y. 2022)...................................................................................8

*Am. S.S. Owners Mut. Prot. Ind. A. v. Larfarge N.A.*,
   474 F. Supp.2d 474 (S.D.N.Y. 2007)..................................................................................8

*Associated Dry Goods Corp. v. Towers Fin. Corp.*,
   920 F.2d 1121 (2d Cir. 1990)..............................................................................................7

*Berton v. Aetna Inc.*,
   No. 23-CV-01849, 2024 WL 869651 (N.D. Cal. Feb. 29, 2024) .....................................5, 6

*C. P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*,
   No. 3:20-CV-06145-RJB, 2022 WL 17788148 (W.D. Wash. Dec. 19, 2022) ....................5

*Fluent v. Salamanca Indian Lease Auth.*,
   928 F.2d 542 (2d Cir. 1991)................................................................................................7

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
   344 F.3d 1263 (11th Cir. 2003) ..........................................................................................7

*Hickerson v. Enter. Leasing Co. of Georgia, LLC*,
   818 F. App'x 880 (11th Cir. 2020) .....................................................................................8

*In re Torcise*,
   116 F.3d 860 (11th Cir. 1997) ............................................................................................6

*Kadel v. Folwell*,
   No. 1:19CV272, 2022 WL 17415050 (M.D.N.C. Dec. 5, 2022).........................................5

*Kulwicki v. Cobb Hosp.*,
   No. 24 Civ. 4658 (N.D. Ga. Dec. 31, 2024) (Dkt. No. 36)................................................10

*Lynch v. Sperry Rand Corp.*,
   62 F.R.D. 78 (SDNY 1973) ................................................................................................7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden*,
   11 F.4th 12 (1st Cir. 2021)..................................................................................................8

*Parchmann v. MetLife, Inc.*,
   No. 18-CV-780 (SJ), 2018 WL 5115075 (E.D.N.Y. Sept. 28, 2018).................................10

*Religious Sisters of Mercy v. Becerra*,
    55 F.4th 583 (8th Cir. 2022) ................................................................................................2

*Schmitt v. Kaiser Found. Health Plan of Washington*,
    965 F.3d 945 (9th Cir. 2020) ............................................................................................1, 5

*Scott v. St. Louis Univ. Hosp.*,
    600 F. Supp. 3d 956 (E.D. Mo. 2022) ..................................................................................5

*T.S. by & through T.M.S. v. Heart of CarDon, LLC*,
    43 F.4th 737 (7th Cir. 2022) .................................................................................................5

*U.S. v. Sabine Shell, Inc.*,
    674 F.2d 480 (5th Cir. 1982) ................................................................................................8

*U.S. v. San Juan Bay Marina*,
    239 F.3d 400 (1st Cir. 2001) ................................................................................................8

**STATUTES**

28 USC § 1404(a) .................................................................................................................4, 8, 10

**OTHER AUTHORITIES**

81 Fed. Reg. 31,375, 31,432 (May 18, 2016) ............................................................................2, 6

Fed. R. Civ. P. 12(b)(7) .............................................................................................................5, 10

Fed. R. Civ. P. 19 .............................................................................................................4, 5, 6, 10

Fed. R. Civ. P. 56 ........................................................................................................................2, 10

Aetna submits this Reply to Plaintiff's Memorandum of Law in Opposition to Aetna's Motion for Summary Judgment [Dkt. 153].

**A.    *Benefit Design:*    Aetna is entitled to partial summary judgment on the limited factual issue that Wellstar Health was responsible for the benefit design of the Wellstar Plan.  [*See* Opp. at 26-34.]**

Plaintiff says her claim "is only against Aetna and focuses on whether Aetna's actions were unlawfully discriminatory under the ACA."  Plaintiff's Opposition to Aetna's Motion for Summary Judgment [Dkt. 153] ("Opp.") 2.  "Plaintiff's enrollment in the Wellstar Plan," she says, merely serves "as a factual backdrop to her claim." *Id.* at 15.

The ACA creates no freestanding right to Plan benefits, however.  The ACA "does not…require covered entities to cover any particular procedure or treatment."  *Schmitt v. Kaiser Found. Health Plan of Washington*, 965 F.3d 945 (9th Cir. 2020).  Rather, the question under the ACA is whether the Wellstar Plan was discriminatory.  And it bears reemphasizing that Plaintiff does not claim that Aetna *violated* the terms of the Wellstar Plan; rather, Plaintiff asserts that Aetna is liable precisely because it *followed* the terms of the Plan.  The Wellstar Plan is no mere "backdrop" under the ACA.  Indeed, the "discriminatory acts" she alleges, *see* Opp. at 30, all turn directly on the terms of the Wellstar Plan and Aetna's following of those Plan terms.

That is why—as Plaintiff herself concedes in her complaint—liability under the ACA devolves to the question of who ultimately controlled the *benefit design* under the Wellstar Plan. Tellingly, nowhere in her opposition does Plaintiff discuss the Department of Health and Human Services Office of Civil Rights' ("OCR") implementing regulations that specifically explain how the ACA distinguishes between a self-funding plan sponsor and a third party claims administrator in this very situation.

In its 2016 rules, OCR expressly recognized that "third party administrators are generally not responsible for the benefit design of the self-insured plans they administer and that ERISA

(and likely the contracts into which third party administrators enter with the plan sponsors) requires plans to be administered consistent with their terms." 81 Fed. Reg. 31,375, 31,432 (May 18, 2016). For that reason, in processing claims of alleged discrimination by self-insured health plans, OCR assesses "whether responsibility for the decision or other action alleged to be discriminatory rests with the employer or the third party administrator." *Id.* Where the alleged discrimination "relates to the *benefit design* of a self-insured plan," as opposed to the administration of that plan, OCR will address the complaint against that employer. *Id.* (emphasis added). *See also Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 591 (8th Cir. 2022) (Through the OCR regulations, the Department of Health and Human Services "adopt[ed] specific procedures to govern the processing of complaints against third party administrators.")

The record here clearly establishes that Wellstar controlled the infertility benefit design in its own Wellstar Plan. Wellstar Health is a sophisticated hospital and healthcare organization. Years before it retained Aetna, Wellstar created the Wellstar Plan, in consultation with Mercer, a national health benefits consultant, and Wellstar's own internal medical staff. *See* Aetna's Rule 56(a)(1) Statement of Undisputed Material Facts [Dkt. 151] ("SOF") at ¶¶ 5-6. The preexisting Wellstar Plan design included an infertility benefit, subject to a requirement that a covered service must be medically necessary "in accordance with standards of good medical practice and consistent with scientifically based guidelines of medical, research, or healthcare coverage organizations or governmental agencies that are accepted by the Plan." *Id.* at ¶ 16.

In creating the 2016 plan, after hiring Aetna, Wellstar again consulted both Mercer and its own medical staff. *Id.* at ¶¶ 8, 10-11, 13. Wellstar understood that, in transitioning claims administration to Aetna, it could customize its infertility benefit however it wanted—including removal altogether of a medical necessity requirement or a definition of infertility as a medical

condition. *Id.* at ¶¶ 30, 31. Wellstar revised Aetna's customary infertility benefit template, and the application of Aetna's CPB 327 to the Wellstar Plan, by removing a particular infertility exclusion. *Id.* at ¶ 25. Wellstar chose to maintain the medical necessity requirement for infertility benefits and incorporated the definition of infertility as a medical condition adopted by the American Society of Reproductive Medicine ("ASRM") and reflected in Aetna's CPB. *Id.* at ¶¶ 20, 28, 28(a). Wellstar's witness testified that the ASRM definition of infertility was consistent with generally accepted medical consensus and medical necessity standards of the kind that Wellstar, as a healthcare and hospital system, typically followed and that the benefit design of the Wellstar Plan ultimately reflected Wellstar's own design choices. *Id.* at ¶ 29, 31.

Wellstar's conduct was consistent with its MSA with Aetna, in which Wellstar expressly retained "the final and sole authority regarding the benefits and provisions of the Plan(s), as outlined in [Wellstar's] Plan document" and agreed that "Aetna shall have no responsibility or liability for the content of any of [Wellstar's] Plan documents. . ., regardless of the role Aetna may have played in the preparation of such documents." SOF, Exhibit T (Dkt. 151-21) at 21.

Plaintiff has no material facts to dispute any of this. Nor does she contend, because she cannot, that Aetna *controlled* the design of the infertility benefit in the Wellstar Plan. Instead, she argues merely that Aetna "participated" in drafting the Plan. Opp. at 4, 6, 27, 28, 31. But mere participation, of course, is not the standard; the test, as the ACA regulations make clear, is *control* of the Plan's benefit design. Wellstar sought design input from multiple sources. Wellstar's outside benefits consultant, Mercer, participated in developing the Plan. Wellstar's own internal medical experts also participated. That is why the Wellstar Plan carried forward a legacy medical necessity requirement for infertility coverage that long predated Aetna's retention as claims administrator.

3

The test is not who Wellstar consulted, but rather who had ultimate *control*, a standard Plaintiff readily acknowledged when she began this litigation. Plaintiff alleged in her complaint that it was Aetna who "designed" the pertinent terms of the Wellstar Plan, *see* Dkt. 42 at ¶¶ 6, 11, 25, 26, 59b, and opposed Aetna' motion to dismiss principally on this same ground, *see* Dkt. 55 at 2, 9, 13-14, 16. But discovery has now shown differently—that Wellstar was a sophisticated health care system that sought input from a variety of sources but ultimately made its own design decisions; that the design of the infertility benefit in the Wellstar Plan was exactly as Wellstar intended. So, Plaintiff now tries to morph the law and the facts to fit her "theory."

This case is no longer at the pleading stage. The parties conducted discovery on the plan design issue precisely so the Court could resolve this central question. That discovery is done, the facts are in, and the record is clear that the Wellstar Plan was Wellstar's own. Plaintiff's theory cannot square with the facts, and Aetna is entitled to summary judgment determination that Wellstar, not Aetna, controlled the infertility benefit design of the Wellstar Plan.

**B.**     ***Next Steps:*** **The Court could next consider Plaintiff's novel legal theory under the ACA, but a better, more efficient, course would be to dismiss Plaintiff's complaint pursuant to Rule 19 or transfer this matter to Georgia pursuant to 28 USC § 1404(a).**

Plaintiff's assertion that the Wellstar Plan serves as a mere "backdrop" under the ACA is plainly wrong. As the OCR regulations make clear, the benefit design of the Wellstar Plan is central to Plaintiff's claim under the ACA. And Plaintiff cites no authority for the proposition that the ACA required Aetna to provide and pay for a different benefit than Wellstar intended.

Plaintiff's theory raises a legal argument that the Court could address in the next phase of this litigation and that could be case dispositive.[1] Aetna suggests, however, that this question is

---

[1] Much of Plaintiff's opposition anticipates these legal arguments. Most of the ACA authorities Plaintiff cites, however, involve claims brought against *employers* or *insurers* under fully insured plans, not against third party claims administrators of an employer-funded plan like Aetna here.

4

best resolved where Wellstar can participate—in the Georgia court Plaintiff herself chose for that very purpose. This Court need not proceed in the artificial vacuum Plaintiff has created.

1.  **Aetna requests that the Court reconsider and grant Aetna's motion to dismiss because Wellstar is a necessary and indispensable party under Rule 19.**

    a.  **The Court may reconsider Aetna's motion to dismiss under Rules 12(b)(7) and 19 based on the new facts developed through the discovery the Court ordered and Plaintiff's initiation of a separate class action against Wellstar in Georgia. [*See* Opp. at 6-8.]**

In opposing Aetna's motion to dismiss, Plaintiff argued that Aetna "designed" the pertinent terms of the Wellstar Plan but offered to conduct discovery to determine if the facts supported that allegation. Plaintiff also noted that the Court could reconsider Aetna's motion with the benefit of that factual record. *See* Dkt. 55 at 14 n.7.

Now that the discovery is done and the facts are in, however, Plaintiff asks the Court to ignore them. And to ignore the separate action she has filed in Georgia challenging the Wellstar Plan. The Court need not do so. The Court can, and Aetna suggests should, take Plaintiff up on her original offer.[2]

---

*See* Opp. at 30-34; *Schmitt,* 965 F.3d 945 (suit against insurer under fully-insured plan); *Scott v. St. Louis Univ. Hosp.*, 600 F. Supp. 3d 956 (E.D. Mo. 2022) (suit against self-funding employer); *T.S. by & through T.M.S. v. Heart of CarDon, LLC*, 43 F.4th 737 (7th Cir. 2022) (suit against self-funding employer); *Kadel v. Folwell*, No. 1:19CV272, 2022 WL 17415050 (M.D.N.C. Dec. 5, 2022) (suit against state-funded plans). The sole exception is *C. P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*, No. 3:20-CV-06145-RJB, 2022 WL 17788148 (W.D. Wash. Dec. 19, 2022), where the defendant was the third party administrator. The court there, however, declined to apply the governing HHS regulations. *Id.* at *14. The court also noted that "there are issues of fact as to whether the Plan design originated with [the third party administrator]," but the court declined to address them. *Id.* at *17. The *Pritchard* decision currently on appeal before the Ninth Circuit.

[2] Plaintiff's citation to *Berton v. Aetna Inc.*, No. 23-CV-01849, 2024 WL 869651 (N.D. Cal. Feb. 29, 2024) is disingenuous. *See* Opp. at 11. While the court there held that the plan sponsor was not a necessary party at the pleading stage of the case, the court explicitly noted that it "may revisit this issue once a more complete factual record is developed" because "at the pleading

5

### b. Wellstar is a necessary and indispensable party under Rule 19.

Plaintiff argues that the Court can award complete relief simply by ordering Aetna to pay the benefits she seeks under the Wellstar Plan, irrespective of the terms of the Plan. She cites no legal authority for this proposition and, indeed, ignores the OCR regulations that refute it.

Plaintiff suggests that the ACA imposed on Aetna a "non-delegable duty" to provide the infertility coverage she seeks and cites case law involving joint tortfeasors. *See* Opp. at 12. But joint tortfeasor analysis is inapplicable to Aetna and Wellstar here. As the OCR regulations make clear, where the alleged discrimination "relates to the *benefit design* of a self-insured plan," as opposed to the administration of that plan, the employer is the responsible party. 81 Fed. Reg. at 31,432. Plaintiff's theory that the ACA required Aetna to pay for a different benefit than Wellstar intended is inconsistent with the governing ACA regulations.³

Plaintiff acknowledges that "[f]indings of indispensability must be based on stated pragmatic considerations, especially on parties and on litigation." Opp. at 9 (quoting *In re Torcise*, 116 F.3d 860, 865 (11th Cir. 1997)). And she cites as "typical examples of required parties" those "with known interests in a particular fund…that would be impaired or disposed in some way if the plaintiff prevailed against the present defendant(s)." Opp. at 9. But that is precisely the pragmatic consequence of the relief Plaintiff seeks here. She seeks benefits under the Wellstar Plan, which is funded by Wellstar's money. Any finding that the Wellstar Plan is discriminatory,

---

stage, the [c]ourt cannot say as a matter of law that [the] plaintiff necessarily would be able to obtain complete relief without the [plan sponsor] as a party." 2024 WL 869651 at *6.

³ Plaintiff suggests that the ACA required Aetna to refuse to administer the Wellstar Plan because it might be discriminatory. *See* Opp. at 27, 29. But, again, she cites no supporting authority. Indeed, as the OCR regulations make clear, responsibility under the ACA rests with the party that controlled the benefit design. In fact, that is exactly what happened here. Plaintiff filed a complaint against Wellstar with the Equal Employment Opportunity Commission, which investigated and authorized Plaintiff to file suit against *Wellstar*. Hence, the Georgia litigation. *See* Declaration of Sarah Reeves [Dkt. 150], Ex. A ("Georgia Am. Compl.") ¶¶ 3-4.

6

with an order that Aetna process payment for a non-discriminatory plan benefit, would necessarily impact the coffers of Wellstar Health, whose funding supports the Plan. *See, e.g., Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78, 83-4 (SDNY 1973) (In action involving employer's retirement plan, unions that negotiated plan were necessary and indispensable parties: "[H]aving negotiated with Sperry Rand over the contents of the collective bargaining agreements, the absent unions clearly have an interest in litigation which seeks to rewrite portions of those agreements. Once the validity of certain provisions in the agreements has been ruled on, the absent union's interests are affected without their having been accorded an opportunity to be heard by the court.")[4]

    c. **Wellstar need not intervene in this action to have an interest in the outcome.**

Plaintiff devotes much of her opposition to the argument that because Wellstar has not voluntarily intervened in this action, it has no interest in the outcome. Wellstar has no interest in this action, Plaintiff asserts, because the Wellstar Plan is a mere "factual backdrop" to her claim here. Opp. at 15. But, as the OCR regulations make clear, that is incorrect; the focus under the ACA remains on the benefit design of the Wellstar Plan, which it is now undisputed Wellstar controlled.

Moreover, the fact that Wellstar has not intervened in this Court—in a forum where it is not subject to jurisdiction—is not surprising given that it already faced the same claim by Plaintiff in Wellstar's home jurisdiction. Plaintiff neglects to mention in her opposition that she filed a complaint against Wellstar with the Equal Employment Opportunity Commission ("EEOC") on

---

[4] The cases Plaintiff cites in her opposition strongly *support* the conclusion that Wellstar is a necessary and indispensable party here. *See* Opp. at 9-10; *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124 (2d Cir. 1990) (in sub-lease dispute, landlord was indispensable, because only they could provide the electrical service plaintiff sought); *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003) (bus station owner was necessary party because transit authority, by itself, lacked authority to require placement of plaintiff's advertisements at the station); *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 547 (2d Cir. 1991) ("[I]n an action to set aside a…contract, all parties who may be affected by the determination of the action are indispensable.").

*September 16, 2021*, nearly five months *before* she filed this action. So, Wellstar was aware, even before Plaintiff sued Aetna here, that the Wellstar Plan was the likely target of a discrimination suit in Georgia, the only forum where Wellstar is subject to jurisdiction. Accordingly, no inference can be drawn from Wellstar's not joining a second suit in a forum where it is not subject to jurisdiction. None of the case authorities Plaintiff cites in her opposition even suggest otherwise.[5]

### 2. Alternatively, Aetna requests that the Court transfer this matter to the Northern District of Georgia under 28 USC § 1404(a). [*See* Opp. at 18-26.]

As Plaintiff acknowledges, "[t]he district court has the sole discretion to determine whether the transfer is proper and, consequently, what precisely constitutes the interests of justice and the convenience of parties and witnesses." Opp. at 19 (citing *Albright v. Terraform Labs, Pte. Ltd.*, 641 F. Supp. 3d 48, 55 (S.D.N.Y. 2022)). And, further, "district courts should aim to dispose of these motions in a way that promotes the underlying purposes of § 1404, namely, 'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Id.* Plaintiff also notes that "[t]he location of the actual events is a 'primary factor' in deciding whether to change the venue. Opp. at 23 (citing *Am. S.S. Owners Mut. Prot. Ind. A. v. Larfarge N.A.*, 474 F. Supp.2d 474, 485 (S.D.N.Y. 2007)).

The locus of operative facts and location and availability of witnesses heavily favor the Georgia forum. Both Wellstar and its Wellstar Plan operate in Georgia. The Plan was created there and covers Wellstar employees, including Plaintiff, who reside there. Aetna is

---

[5] The cases Plaintiff cites on this point are inapposite. *See* Opp. at 13-16; *U.S. v. Sabine Shell, Inc.*, 674 F.2d 480, 482-83 (5th Cir. 1982) (joinder denied where not raised until three years after judgment); *Hickerson v. Enter. Leasing Co. of Georgia, LLC*, 818 F. App'x 880, 886 (11th Cir. 2020) (plaintiff could not join non-diverse defendant after removal by named defendant); *U.S. v. San Juan Bay Marina*, 239 F.3d 400, 406 (1st Cir. 2001) (non-party's interest was "wholly contingent"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden*, 11 F.4th 12, 17-18 (1st Cir. 2021) (Court declined to join defendant in her capacity as executor of an estate where she already was a defendant in her individual capacity and the interests were "therefore identical—or very nearly so.").

headquartered in Hartford, Connecticut, but its employees work from, and reside in, locations scattered across the nation. Plaintiff concedes, for example, that Plaintiff's request for precertification and appeals were handled by Aetna's Customer Resolution Team in Kentucky. Opp. at 23. The OCR regulations under the ACA—and, indeed, Plaintiff's own EEOC complaint that triggered the Georgia action—make clear that the operative question is whether the Wellstar Plan was discriminatory. And the Wellstar Plan operates entirely in Georgia.

Moreover, because Wellstar is neither a party to this suit nor subject to jurisdiction in this forum, Aetna and the Court have no ability to compel their attendance in this action. Transferring this action to Georgia, however, where both Aetna and Wellstar could be joined as defendants, would afford substantially greater access to witnesses from each of the interested parties.[6]

As for choice of forum, Plaintiff has chosen *both* forums. The two class actions Plaintiff seeks to pursue separately—one here and one in Georgia—necessarily and pragmatically overlap. Plaintiff asserts in both actions that the Wellstar Plan is discriminatory. And both actions seek relief under applicable civil rights statutes—Plaintiff sues directly under those statutes in the Georgia case and by incorporation through the ACA in this action. The class Plaintiff seeks here embraces all members of plans administered by Aetna. Amended Complaint [Dkt. 42] ¶ 56. The class she seeks in Georgia covers all members of the Wellstar Plan. Georgia Am. Compl. ¶ 29. Since Aetna administered the Wellstar Plan from 2016 to 2023, it is highly likely that members of the Georgia class also are members of the class Plaintiff pursues in this Court. Plaintiff is seeking the same relief, for the same people, in two different courts.

Finally, and important here, "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy.

---

[6] Aetna stipulates its consent to jurisdiction in the Northern District of Georgia for purposes of transferring this matter to that forum.

9

The courts of this Circuit favor resolution of related claims in the same forum to promote more efficient conduct of pretrial discovery, to save witnesses time and money in both trial and pretrial proceedings, and to avoid duplicative litigation and inconsistent results." *Parchmann v. MetLife, Inc.*, No. 18-CV-780 (SJ), 2018 WL 5115075, at *4 (E.D.N.Y. Sept. 28, 2018).

Indeed, Plaintiff's suggestion that additional discovery is necessary on the question of the Wellstar Plan design, *see* Opp. at 20-21, illustrates why courts so disfavor parallel related actions. Wellstar is actively defending its Wellstar Plan in the Georgia case, with the result that two different courts are developing facts on the same issues at the same time. While Aetna believes there is no need to continue litigating the factual question that Wellstar alone controlled the benefit design of the Wellstar Plan it created and funded, it is equally clear that any additional discovery Plaintiff may pursue is best conducted in a forum where the court has ready access to *both* Wellstar and Aetna. And only the Georgia court Plaintiff herself selected can exercise jurisdiction over all of the interested parties.[7]

\* \* \*

For the foregoing reasons, Aetna respectfully requests the Court grant Aetna's motion for partial summary judgment pursuant to Rule 56 or, in the alternative, dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(7) and 19 or, in the alternative, transfer this matter to the Northern District of Georgia pursuant 28 USC § 1404(a).

---

[7] For its part, Wellstar defends its Plan in the Georgia litigation on the ground that the infertility coverage under the Plan turned, not on the sexual orientation of the member, but rather the presence or absence of a male partner, and thus applied equally to heterosexual women without a male partner—for example, single women not in a relationship or married women whose husbands are unavailable (military deployment, incarceration, etc.). *See* Defs.' Mot. to Dismiss, *Kulwicki v. Cobb Hosp.*, No. 24 Civ. 4658 (N.D. Ga. Dec. 31, 2024) (Dkt. No. 36) at 8-9. And, it should be noted, Wellstar does *not* assert that the Wellstar Plan was Aetna's design. *Id.* at 2-3.

Dated at Hartford, Connecticut this 4th day of April, 2025.

*Theodore J. Tucci*
Theodore J. Tucci (ct05249)
Abby M. Warren (ct30077)
Christopher A. Costain (ct31612)
Robinson & Cole LLP
One State Street
Hartford, CT 06103-3195
Tel.: (860) 275-8200
Fax: (860) 275-8299
ttucci@rc.com
awarren@rc.com
ccostain@rc.com

Sarah Reeves (*pro hac vice*)
Earl B. Austin (*pro hac vice*)
Baker Botts LLP
30 Rockefeller Plaza
New York, NY 10112
Tel.: (212) 408-2649
Fax: (212) 408-2449
sarah.reeves@bakerbotts.com
earl.austin@bakerbotts.com

*Counsel for Defendant*
*Aetna Life Insurance Company*

11

## CERTIFICATION

      I hereby certify that on this 4th day of April, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.

                                                                               */s/ Theodore J. Tucci*
                                                                               Theodore J. Tucci