UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x

TARA KULWICKI,                                    :
                                                  :
                        Plaintiff,                :
                                                  :        **MEMORANDUM &**
          -against-                               :        **ORDER**
                                                  :
AETNA LIFE INSURANCE COMPANY,                     :        3:22-CV-00229 (VDO)
                                                  :
                        Defendant.                :
------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

 Plaintiff, Tara Kulwicki, brings this putative class action against Defendant, Aetna

Insurance Company ("Defendant" or "Aetna"), claiming that Aetna violated the anti-

discrimination provisions of the Patient Protection and Affordable Care Act ("ACA") when it

denied her claim for infertility benefits under her employer-sponsored health insurance claim.

Specifically, Plaintiff alleges that when Aetna denied her, a homosexual woman, coverage

because she was unable to satisfy a specific requirement, which could only be satisfied by a

heterosexual woman, Aetna discriminated against her on the basis of her sexual orientation.

Defendant now files for partial summary judgment on the limited question of whether Wellstar

Health ("Wellstar") was responsible for the design of the infertility benefit offered by

Plaintiff's healthcare plan. Alternatively, Defendant files a renewed motion to dismiss for

failure to join necessary parties. Or, if all else fails, Defendant requests that this Court transfer

this case to the Northern District of Georgia.

I.    **BACKGROUND**

A.    **Factual Background**

The following facts are undisputed and are based on the record, including the parties' pleadings and Local Rule 56(a) statements.[1]

Plaintiff, Tara Kulwicki, a Georgia resident, worked for Wellstar in Atlanta Georgia.[2] Plaintiff was enrolled in the Wellstar Employee Medical Plan ("Wellstar Plan"), an employee health benefit plan sponsored and self-funded by Wellstar.[3] From 2016 through 2023, Aetna served as the claims administrator for the Wellstar Plan.[4] In June 2021, Plaintiff submitted a request to Aetna for precertification to receive benefits for artificial intrauterine insemination ("IUI").[5] Aetna denied Plaintiff's claim on the basis that she did not meet the medical definition of "Infertility" under the Wellstar Plan, as required to receive coverage for IUI treatments.[6]

a.    **"Infertility" Defined**

The Wellstar Plan identifies two ways to establish "Infertility" pursuant to its plan: (1) "[f]or a woman who is under 35 years of age: [if they are unable to conceive after] 1 year or more of timed, unprotected coitus, or 12 cycles of artificial insemination" or (2) "[f]or a woman

---

[1] The operative pleadings herein are the Plaintiff's Amended Complaint ("Am. Compl.," ECF No. 42) and the Defendant's Answer to the Amended Complaint (ECF No. 114). The parties' Local Rule 56(a) statements include: Defendant's Local Rule 56(a)1 Statement of Undisputed Material Facts ("Def. 56(a)," ECF No. 151) and Plaintiff's Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment ("Pl. 56(a)," ECF No. 154). All citations to documents refer to the ECF document number (i.e., "ECF No. __") and pagination in the ECF header unless otherwise noted.

[2] Pl. 56(a) ¶ 1.

[3] *Id.* ¶ 2.

[4] *Id.* ¶ 3.

[5] *Id.*¶ 4; Am Compl. ¶ 43; Ex U, ECF No. 154-2, 24:6–19.

[6] Pl. 56(a) ¶ 4.

who is 35 years of age or older: [if they are unable to conceive after] 6 months or more of timed unprotected coitus, or 6 cycles of artificial insemination."[7] This definition is consistent with that propagated by Aetna in its Policy Bulletin, which states that "a member is considered infertile if he or she is unable to conceive or produce conception after 1 year of frequent, unprotected heterosexual sexual intercourse, or 6 months of frequent, unprotected heterosexual intercourse if the female partner is 35 years of age or older."[8] This, Plaintiff alleges, constitutes discrimination on the basis of her sexual orientation because "Plaintiff and other similarly situated individuals are forced to pay thousands of dollars in out-of-pocket costs for IUI in order to qualify as 'infertile' under" the Wellstar Plan.[9]

### 2. Aetna's Role in Drafting the Wellstar Plan

The Wellstar Plan predated Aetna beginning its role as claims administrator.[10] Prior to Aetna's involvement, Piedmont Wellstar Health Plans, a joint venture between Wellstar and Piedmont Healthcare, acted as the claims administrator.[11] While the pre-Aetna version of the Wellstar Plan provided coverage for infertility and in vitro medical services and prescriptions when "medically necessary," it did not define "infertility."[12] Rather, it defined medical necessity as either "[c]ommonly recognized throughout the provider's specialty as appropriate for the diagnosis and/or treatment of your condition, illness, disease, or injury" or "[p]rovided in accordance with standards of good medical practice and consistent with scientifically based

---

[7] *Id.* ¶ 4; ECF No. 155-2, at 79.

[8] ECF No. 151-9 at 3; Pl. 56(a) ¶ 20.

[9] Am. Compl. ¶ 38.

[10] Pl. 56(a) ¶ 5.

[11] *Id.*

[12] *Id.* ¶ 16.

guidelines of medial, research, or healthcare coverage organizations or governmental agencies that are accepted by the [p]lan."[13]

The drafting and formulating of the plan Aetna administered when it took on the role of case administrator remains largely contested. The parties agree only that in creating the plan, Wellstar consulted with Mercer, a national health benefits consulting firm that specializes in employee benefits plan strategy and design.[14] As a part of their collaborative efforts, Mercer, Wellstar, and Aetna exchanged several documents,[15] including 2014 and 2015 Piedmont Wellstar Health Plan Documents[16] and Aetna's clinical policy bulletins, one of which defined infertility.[17] The 2014 and 2015 plans sent to Aetna were silent as to the definition of infertility.[18] Instead, an Aetna employee advised a Wellstar benefits analyst that "Wellstar elected to follow the Aetna guidelines for infertility for the 2016 plan," i.e., the language propagated by Aetna in its policy directive.[19]

The parties disagree as to who drafted the 2016 Wellstar Plan; while Plaintiff maintains that Aetna drafted the plan, with Mercer and Wellstar merely editing it, Aetna maintains that Mercer was solely responsible for drafting the 2016 Wellstar Plan.[20] Moreover, while Defendant asserts that Wellstar "issued substantive directives" to Aetna concerning the

---

[13] *Id.*

[14] *Id.* ¶¶ 6, 11.

[15] *Id.* ¶ 14.

[16] *Id.* ¶ 8.

[17] *Id.* ¶ 21.

[18] *Id.* at 25.

[19] *Id.* ¶ 8.

[20] *Id.* ¶ 9.

benefits and limitations of the plan, Plaintiff maintains that there was no contractual or legal requirement that Aetna accept those bases. [21]

Throughout the drafting process, Wellstar, Mercer, and Aetna discussed Wellstar's compliance with Section 1557 of the Affordable Care Act, which prohibits any health program that receive federal funds from discriminating on any of the grounds specified in Title VI of the Civil Rights Act of 1964, including on the basis of sexual orientation. *See* 42 U.S.C. § 18116(a); *see also* Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972, 86 Fed. Reg. 27,984, 27,984 (May 25, 2021) (stating that the Department of Health and Human Services would "interpret and enforce section 1557 of the Affordable Care Act prohibition on discrimination on the basis of sex to include: Discrimination on the basis of sexual orientation; and discrimination on the basis of gender identity"). On October 12, 2016, Aetna's account manager for Wellstar, Julie Evans, advised Wellstar's Manager of Employee Benefits, Kirsten Girguis, that "Wellstar ultimately needs their counsel to agree and advise if they are subjected to" Section 1557. [22] On October 29, 2016, Evans further advised that Aetna cannot provide legal advice to its self-insured customers and that Wellstar should have its own counsel review the ADA for its applicability to their employee benefit plan. [23] On November 21, 2016, a Mercer employee circulated a final draft of the Wellstar Plan Booklet, including a redline

---

[21] *Id.* ¶ 12.

[22] *Id.* ¶ 48.

[23] *Id.* ¶ 49.

showing numerous revisions as directed by Wellstar.[24] Neither Wellstar nor Mercer raised any additional concerns regarding the infertility benefit design.[25]

After the implementation of the Wellstar Plain, the record reflects that Wellstar and Aetna personnel conferred concerning potential limitations of the definition of "infertility" in the plan. Yet, they did not discuss the limitations as it applies to those similarly situated to Plaintiff—that is, a homosexual woman. In June 2016, a Wellstar member requested coverage, but was denied because she was not deemed "infertile" because her infertility stemmed from a voluntary vasectomy.[26] Subsequently, Evans emailed Girguis, explaining the situation and writing, "[U]litmately if WellStar wants it covered we WILL find a way."[27] Evans later sent a follow up email to Girguis, summarizing the infertility policy of both Aetna's policy statement and the Wellstar Plan and explained, "Basically—our coverage policy for infertility treatment, . . . applies the logic that services are covered when there is a 'disease' which cause infertility. When there is voluntary sterilization that took place—you are no longer treating a disease which is causing infertility, rather it was a voluntary procedure which caused the infertility."[28] Several months later, on October 25, 2016, Girguis replied, "[W]e do not want Wellstar team members to be restricted from this benefit due to a past vasectomy. We have never restricted this benefit before and do not want to restrict it now. So for now, please let us know what we

---

[24] *Id.* ¶ 27.

[25] *Id.* ¶ 26.

[26] *Id.* ¶ 23.

[27] *Id.*

[28] *Id.* ¶ 24.

need to do to do to remove the vasectomy restriction."[29] She also advised, "I will comb through the information you gave me to see if we have any other issues we may need to discuss with infertility."[30] The Senior Account Manager at Aetna, Janie Valencia, then responded "We are changing the benefit to not apply the current restrictions effective [January 1, 2016]."[31]

### 3.    The Master Services Agreement

In retaining Aetna as claims administrator, Wellstar and Aetna entered into a Master Services Agreement.[32] In this agreement, Wellstar agreed that Aetna's review of the plan documents was limited to a determination that "Aetna's claim processing systems and internal policies and procedures are consistent with the [p]lan [d]ocuments and that Aetna will be able to perform the [s]ervices in the accordance with the [a]greement," and acknowledged that Aetna has NOT reviewed the [p]lan [d]ocuments for compliance with applicable law."[33] Wellstar also retained "the final and sole authority regarding the benefits and provisions of the [p]lan(s) outlined in [Wellstar's p]lan document" and agreed that "Aetna shall have no responsibility or liability for the content of any of [Wellstar's p]lan documents."[34] The agreement further notes that "performance of such fiduciary duties under ERISA necessarily involves the exercise of discretion on Aetna's part in the determination and evaluation of facts and evidence presented in support of any claim or appeal. . . . [Wellstar] hereby delegates to Aetna discretionary authority to determine initial entitlement to benefits under the applicable

---

[29] *Id.* ¶ 25.

[30] *Id.* ¶ 26.

[31] *Id.* ¶ 25.

[32] *Id.* ¶ 52.

[33] *Id.*

[34] *Id.* ¶ 54.

[p]lan documents."[35] Moreover, the agreement states that "Aetna shall comply with all applicable federal and state laws including, without limitation," the ACA[36] and that "Aetna has reviewed the [p]lan [d]ocuments and determined that Aetna's claim processing systems and internal policies and procedures are consistent with the [p]lan [d]ocuments and that Aetna will be able to perform the [s]ervices in accordance with this [a]greement."[37]

### 4.    Plaintiff's Case in the Northern District of Georgia

On October 15, 2024, after document productions by Aetna and Wellstar Health in this case, Plaintiff, through her counsel in this action, filed a separate class action against Wellstar Health in the Northern District of Georgia alleging that the Wellstar Plan, and its definition of infertility, violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3), as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1331.[38] Plaintiff subsequently amended her Complaint in that case on December 19, 2024.[39] Plaintiff alleges in the Georgia action that the Wellstar Plan, and its definition of infertility, "discriminates against non-heterosexual female employees on the basis of sex (female-sexual orientation and sex-stereotyping)."[40] The amended complaint specifically avers, moreover, that Wellstar had control over the plan, could have chosen to offer a different set of benefits thereunder, and is responsible for the resulting discrimination.[41]

---

[35] Def. 56(a) Ex. T, ECF No. 151-21 at 51.

[36] *Id.* at 9.

[37] *Id.* at 4.

[38] Def. Mot. Ex. A., ECF No. 150-2 ¶ 1.

[39] *Id.*

[40] *Id.* ¶ 23.

[41] *Id.* ¶ 22–25.

### B.    Procedural History

Plaintiff brought this complaint on February 9, 2022, alleging three claims: (1) disparate treatment discrimination in violation of Section 1557 of the Affordable Care Act, 42 U.S.C. §18116(a); (2) disparate impact discrimination in violation of Section 1557 of the Affordable Care Act, 42 I.S.C. §18116(a); and (3) declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201 et seq.[42] On April 1, 2022, Defendant filed a motion to dismiss,[43] which the Court denied as moot[44] following Plaintiff's filing of an amended complaint, in which she raised the same claims.[45]

On June 3, 2022, Defendant again filed a motion to dismiss on the ground that Wellstar Health and the Wellstar Plan were necessary and indispensable parties under Federal Rule of Civil Procedure 19, depriving the Court of jurisdiction because they are both Georgia residents.[46] The Court granted the motion in part and denied it in part. Specifically, the Court granted Defendant's motion to dismiss as to Count Three, the request for declaratory judgment, but allowed Plaintiff's discrimination claims to proceed.[47] Following the parties' submission of a Rule 26(f) report, the Court bifurcated discovery, limiting the initial phase to Aetna's role in designing the Wellstar plan.[48]

---

[42] Compl.

[43] ECF No. 19.

[44] ECF No. 46.

[45] Am. Compl.

[46] ECF No. 50.

[47] ECF No. 113.

[48] ECF No. 116.

On February 19, 2025, succeeding the parties' prefiling conference before this Court, Defendant filed a motion for summary judgment or, in the alternative, a renewed motion to dismiss or, in the alternative a motion to transfer.[49] On March 19, 2025, Plaintiff filed a memorandum in opposition.[50] Defendant filed its reply on April 4, 2025.[51]

## II.    LEGAL STANDARDS

### A.    Summary Judgment

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[52] A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material—they cannot preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Id.* The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010).

---

[49] Def. Mot., ECF No. 150..

[50] Pl. Mot., ECF No. 153.

[51] Reply, ECF No 157.

[52] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). The Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the relevant issue, summary judgment is improper. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). There must be evidence on which the jury reasonably could find for the non-moving party. *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

### B.    Motion to Dismiss

"Rule 12(b)(7) of the Federal Rules of Civil Procedure allows a motion to dismiss for failure to join a party under Rule 19," which governs joinder of persons needed for just adjudication. *Melgares v. Sikorsky Aircraft Corp.*, 613 F. Supp. 2d 231, 252 (D. Conn. 2009). "Upon review of a Rule 12(b)(7) motion, like any motion under Rules 12(b) or 12(c), a court must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party." *Quinn v. Fishkin*, 117 F. Supp. 3d 134, 139 (D. Conn. 2015). Moreover, the "court can deny the motion when there is insufficient or contradictory evidence concerning whether a party is a necessary party within the meaning of Rule 19(a)." *Id.* (citation modified).

C.    **Motion to Transfer**

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Semente v. Empire Healthchoice Assurance, Inc.*, No. 14-CV-5644, 2014 WL 4967193, at *1 (S.D.N.Y. Sept. 29, 2014) ("Even if venue is proper . . . the Court may still transfer the case to a more appropriate forum pursuant to Section 1404(a)."). A motion to transfer venue is "typically considered at an early stage in a case." *Jones v. Walgreen, Co.*, 463 F. Supp. 2d 267, 271 (D. Conn. 2006) (citing *Smith v. Woosley*, 399 F.3d 428, 434 (2d Cir. 2005)).

The movant bears the burden of showing that "the balance of convenience strongly favors the alternate forum . . . [and] discretionary transfers are not favored." *Xiu Feng Li v. Hock*, 371 Fed.Appx. 171, 175 (2d Cir. 2010) (citation modified); *see also New York Marine and Gen. Ins. Co. v. Lafarge North Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010) ("Although we have never explicitly approved a district court's use of the 'clear and convincing evidence' standard in ruling on a motion to transfer venue, the propriety of that standard to transfer-motions is evident. We have stated that the party requesting transfer carries the 'burden of making out a strong case for transfer.'"). Whether to grant a motion to transfer venue lies within the broad discretion of the district court and will be "determined upon notions of convenience and fairness on a case-by-case basis." *Publicker Indus., Inc. v. U.S. (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992).

III.    **DISCUSSION**

Defendant brings three motions in one. Defendant first argues that it is entitled to partial summary judgment on the factual question of whether Wellstar Health, not Aetna, the employer and self-funded sponsor of Plaintiff's health benefit plan, controlled the design and terms of the infertility benefit offered by the Wellstar Plan, and Aetna merely administered the plan as Wellstar directed.[53] This, Defendant believes, would allow the parties to later litigate the issue of whether Plaintiff's legal theory that, even as a mere administrator of a discriminatory health care plan, the ACA requires Aetna to provide a different infertility benefit than that offered by the Wellstar Plan or that Wellstar authorized.[54] Alternatively, Defendant argues that the Court should reconsider its previous motion to dismiss on the grounds that the Plaintiff failed to join Wellstar Health, a necessary and indispensable party.[55] Should its first two arguments fail, Defendant asks that the Court transfer this matter to the Northern District of Georgia, which it alleges would have complete jurisdiction over this dispute, pursuant to 28. U.S.C. § 1404(a).[56] The Court takes each of Defendant's requests in turn.[57]

A.    **Motion for Partial Summary Judgment**

Defendant first argues that it is entitled to partial summary judgment on the factual issue that Wellstar Health was responsible for the benefit design of the Wellstar Plan.[58]

---

[53] Def. Mot. at 1.

[54] *Id.*

[55] *Id.* at 2.

[56] *Id.*

[57] *Id.*

[58] Def. Mem., ECF No. 150-5, at 26.

Plaintiff rebuts that crucial facts remain in dispute as to this issue, precluding the Court from granting summary judgment.[59] For the following reasons, the Court agrees.

Defendant provides no legal citations as to what is considered "a designer" for the purposes of the ADA. Rather, Defendant relies solely on its characterization of the factual record. Specifically, Defendant alleges that the Wellstar Plan predates Aetna's relationship with Wellstar and that Wellstar and Mercer created the plan together.[60] Defendant further maintains that it was merely a third-claims administrator for the Wellstar Plan for that plan.[61] Morover, Defendant asserts, the Wellstar Plan before Aetna's involvement also offered an infertility benefit which was only available when "medically necessary."[62] In sum, Defendant states, "There is no material dispute that Wellstar controlled the benefit design of its own Plan and that the infertility coverage the Wellstar Plan offered ultimately reflected precisely the benefit Wellstar intended to provide."[63]

Defendant, however, fails to address the numerous facts that remain in dispute. Specifically, Defendant fails to acknowledge the extensive, collaborative effort that took place in formulating the plan. Moreover, Defendant fails to examine the manner in which the plan's requirements to demonstrate infertility changed after Aetna's involvement with the plan began. Specifically, Defendant does not address the shift from the pre-Aetna Wellstar Plan's language, which required only that a claimant establish "medical necessity" to qualify for

---

[59] Pl. Mem, ECF No. 153, at 33.

[60] Def. Mem. at 27.

[61] *Id.*

[62] *Id.*

[63] *Id.* at 28.

infertility treatment, to the language at issue in policy at issue. That latter language instead requires that infertility be demonstrated through a specific duration of timed, unprotected coitus or cycles of artificial insemination, and reflects the language perpetuated in Aetna's Policy Bulletin. Indeed, this language only appeared when Aetna became involved in the plan. This point is underscored by Aetna's own testimony that it "elected to follow the Aetna guidelines for infertility."[64] Defendant further fails to acknowledge that the contract between Aetna and Wellstar reserved for Aetna the right to review the Wellstar Plan and make proposed changes to confirm that its terms were consistent with Aetna's claim processing systems, internal policies and procedures, and interpretation of governing law.[65] In the event that Aetna determined that an aspect of its agreement with Wellstar was prohibited by law, Aetna had the right to terminate that aspect of the agreement.[66]

Accordingly, several factual disputes remain as to Aetna's role in designing the plan. Because summary judgment is appropriate *only* when the movant demonstrates that there is no genuine dispute regarding any material fact and is entitled to judgment as a matter of law, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the Court denies Defendant's motion for summary judgment.[67]

---

[64] Pl. 56(a) at 26.

[65] *Id.* at 27.

[66] *See id.*

[67] (Def. Mem. at 28–29.) Defendant further argues that the Court should address the legal question whether the ACA supports an action solely against the third-party administrator of a health benefit plan where the benefit design was controlled by the self-funding employer. (Def. Mem. at 24.) Because discovery on this question has been bifurcated and the parties have not yet explored the issue, the Court finds summary judgment would be premature at this stage of litigation.

### B.    Motion to Dismiss

Defendant next asks that the Court reconsider its previous decision in its order denying its motion to dismiss for failure to join necessary parties. Defendant asserts that joinder is necessary here and "incorporates by reference" its prior Rule 19 briefing.[68] Plaintiff responds that Wellstar is not a required party under Rule 19 because the Court can accord complete relief to Plaintiff by ordering Aetna to pay money damages. For the following reasons, the Court again denies Defendant's motion to dismiss.

To determine whether a case may proceed without an absent party, the Court must first determine whether a nonparty is a necessary party under Rule 19(a). *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). Under Rule 19(a), a party is necessary if "in that person's absence, the court cannot accord complete relief among the existing parties" or "that person claims an interest relating to the subject of the action" such that it would "impair or impede the person's ability to protect the interest" or would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(A)–(B). A necessary party must be joined if feasible.

Joinder is not feasible where joining the party would deprive this Court of subject matter jurisdiction or make venue improper. *See* Fed. R. Civ. P. 19(a)(1), (3); *see also Jayboy Music Corp v. Metro-Goldwyn-Mayer Pictures, Inc.*, No. 05-CV-8575, 2006 WL 1738079, at *2 (S.D.N.Y. June 23, 2006). If a party is necessary but joinder is not feasible, the Court must

---

[68] (Def. Mem. at 34.) It is unclear if Defendant merely asks the Court to reconsider its prior ruling. Plaintiff cites the standard of review for a motion for reconsideration (Def. Mem. at 25), but such a motion would be untimely. *See* L. R. Civ. Pro. 7(c) ("Motions for reconsideration . . . shall be filed and served within seven (7) days of the filing of the decision or order from which such relief is sought."). The Court, therefore, presumes Defendant wishes the Court to consider anew whether Wellstar is a necessary party based on evidence retrieved throughout the first stage of discovery.

determine whether the case can proceed without the absentee, or whether the absentee is an "indispensable party" such that the action must be dismissed. *Viacom*, 212 F.3d at 725. A party is indispensable under Rule 19(b) when "in equity and good conscience, the party is one without whom the action between the remaining parties cannot proceed." *Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 357 (2d Cir. 2015).

> Relevant factors include: the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Defendant's motion rests largely on its arguments made in its prior motion to dismiss. The sole material change Defendant cites is that Plaintiff has allegedly conceded that Wellstar was the master of its own plan because it has sued Wellstar in the Northern District of Georgia under Title VII.[69] The Court disagrees because Plaintiff has made no such concession and the Court has made no such finding. That a plaintiff brings a separate claim against a separate defendant in another forum does not render that party indispensable. Indeed, the underlying issue in Plaintiff's case in the Northern District of Georgia is whether Wellstar "intentionally denied Plaintiff and Class Members a term or condition of their employment because of their sexual orientation,"[70] which is distinct from the claim here that Aetna "has intentionally discriminated against Plaintiff on the basis of their sexual orientation."[71] These are two

---

[69] Def. Mem. at 36.

[70] Def. Mot. Ex. A ¶ 39.

[71] Am. Compl. ¶ 69

separate inquiries.  Even if Plaintiff prevails in her action against Aetna by showing that the Wellstar Plan included a discriminatory structure or definitions, Wellstar may still argue that it is not liable to Plaintiff under Title VII. Moreover, the Georgia court would not be bound to follow decisions made by this Court, negating any concerns about the application of *res judicata* or collateral estoppel. Simply because the outcome of this case may result in nonbinding precedent that is potentially unfavorable to an absent party is an insufficient ground upon which to require joinder.

Accordingly, just as it did a year ago, the Court concludes that Wellstar is not an indispensable party in this action. Aetna can provide complete relief for its own violations of the ACA without involvement of any other (absent) party. *See Berton v. Aetna Inc.*, No. 23-CV-01849, 2024 WL 869651, at *5–6 (N.D. Cal. Feb. 29, 2024) (holding, in factually analogous case, that a sponsor of a self-funded plan administered by Aetna was not a necessary party); *Carr v. United Healthcare Servs.*, No. 3:15-CV-1105, 2016 WL 7716060, at *1, *3–4 (W.D. Wash. May 31, 2016) (denying mandatory joinder of employer in part because plaintiff had "crafted her relief request such that she may obtain the relief she requests without [the plan administrator] as a party"). Moreover, where money damages are the only relief, complete relief can be afforded without an absent party. *See Errico v. Stryker Corp.*, No. 10-CV-3960, 2010 WL 5174361, at *2 (S.D.N.Y. Dec. 14, 2010). Therefore, the Court finds that Wellstar Health is not a necessary party, and thus it need not decide whether joinder is feasible.

C.    **Motion to Transfer**

Finally, Defendant argues that, should its first two motions fail, this Court transfer this matter to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).[72] Plaintiff counters that Defendant fails to carry its burden to establish by clear and convincing evidence that transfer is justified.[73] For the following reasons, the Court agrees.

Courts engage in a two-part inquiry when considering a motion to transfer venue under Section 1404(a). "First, the court must determine whether the action sought to be transferred is one that 'might have been brought' in the transferee court.'" *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006). Second, the court must consider whether to use its discretion to grant the transfer, in the interests of convenience and justice, by considering: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006) (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002) ); *see also MAK Mktg., Inc. v. Kalapos*, 620 F. Supp. 2d 295, 307 (D. Conn. 2009) ("In determining whether transfer of venue is appropriate, district courts must engage in a two-part inquiry, asking: (1) whether the action 'might have been brought' in the proposed transferee forum and, if so, (2) whether the transfer promotes convenience and justice"). "Courts also routinely consider judicial economy, the

---

[72] Def. Mot. at 2.

[73] Pl. Mem. at 33.

interest of justice, and 'the comparative familiarity of each district with the governing law.'" *Synca Direct Inc. v. SCIL Animal Care Co.*, No. 15-CV-2332, 2015 WL 3883281, at *1 (S.D.N.Y. June 22, 2015) (citing *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012)).

"[T]hese factors are not to be given equal weight." *Albright v. Terraform Labs, Pte, Ltd.*, 641 F. Supp. 3d 48, 55 (S.D.N.Y. 2022). Motions to transfer should be evaluated from a strong presumption in favor of the plaintiff's preferred forum. *See id.* "Because . . . discretion [under § 1404] must be exercised at the very outset of [a] case, when relatively little is known about how the case will develop, courts have typically accorded substantial weight to the [] plaintiff's choice of forum, for that very choice reflects one side's assessment of the balance of relevant factors." *Id.* The party seeking a change of venue present clear and convincing evidence to demonstrate that the transfer is appropriate. *See Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 480 (S.D.N.Y. 2007).

Defendant fails to fully analyze these factors and largely argues that the Court should transfer this case for the same reasons it should grant its motion to dismiss. However, after careful consideration of the relevant factors, the Court concludes that they weigh in favor of retaining this case in the District of Connecticut.

The Court must first acknowledge that, as Plaintiff has brought her case in the District of Connecticut and has repeatedly made known that she wishes it to so remain, the first factor weighs heavily in her favor. Second, as to the convenience of the witnesses, "determining the convenience of a forum to witnesses requires more than simply adding up the number of potential witnesses in the alternative fora. The nature and importance of a potential witness's testimony also inform the Court's determination." *Lynch v. Nat'l Prescription Adm'rs*, No. 03-

CV-1303, 2004 WL 385156, at *2 (S.D.N.Y. Mar. 1, 2004) (considering convenience of witnesses as the most important factor in transfer analysis and found that defendants failed to establish that transfer would increase overall convenience, emphasizing that the determination requires more than a numerical count of witnesses and must consider the nature and importance of their testimony). In the present case, Defendant fails to identify any key witnesses, their location, or an overview of their testimony, facially failing to meet its burden of establishing clear and convincing evidence as to this factor.

Third, in considering the location of relevant documents and the relative ease of access to sources of proof, the Court reaches no conclusions as to which way the scale tips. "The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *S.S. Owners*, 474 F. Supp. 2d at 484. Access to documents and other evidence is not a compelling argument in favor of transfer without providing specific details about the bulkiness or difficulty in transporting such evidence. *See Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 619 (S.D.N.Y. 2016). Indeed, most of the evidence in this case is electronically stored information, easily transferred from Aetna to Plaintiff over the internet. Aetna has not provided any evidence concerning this factor.

The fourth factor, the convenience of the parties, also weighs in Plaintiff's favor. When analyzing the convenience to the parties, courts often consider the parties' primary places of business and the location of their offices. *Freeplay*, 195 F. Supp. 3d 618. In the present case, Aetna's primary business location is Hartford, Connecticut, and it provides no support or argument as to why Georgia provides a more convenient forum.

Fifth, the locus of operative facts sounds in Connecticut. The location of the actual events is a "primary factor" in deciding whether to change the venue. *S.S. Owners*, 474 F.

Supp. 2d at 485. The events at issue here, specifically Aetna's drafting and administration of the Wellstar Plan, occurred primary in the District of Connecticut where it is headquartered. For this same reason, the sixth factor also weighs in Plaintiffs' favor, as the non-party witnesses Plaintiff wishes to bring, namely Aetna employees, are located in Connecticut.

Seventh, and finally, the relative means of the parties remains neutral. "Where a disparity exists between the means of the parties, a court may consider the relative means of the parties in determining venue." *Lynch*, 2004 WL 385156, at *4. Neither Plaintiff nor Aetna claim any burden in litigating in this venue. Accordingly, the cost of litigation is a neutral factor neither weighing in favor of or against transfer.

Therefore, the Court denies Defendant's motion to transfer this case to the Northern District of Georgia.

## IV.  **CONCLUSION**

For the foregoing reasons, the Court **denies** Defendant's motion for summary judgment, motion to dismiss, and motion to transfer.

**SO ORDERED.**

Hartford, Connecticut
September 24, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

22